1

2

3

4

5

6

7    **UNITED STATES DISTRICT COURT**
     **WESTERN DISTRICT OF WASHINGTON**
8    **AT SEATTLE**

9

10   STATE OF WASHINGTON, STATE OF          NO.
     COLORADO, STATE OF CALIFORNIA,
     STATE OF ARIZONA, STATE OF            COMPLAINT
11   DELAWARE, DISTRICT OF COLUMBIA,
     STATE OF HAWAIʻI, STATE OF
12   ILLINOIS, STATE OF MARYLAND,
     STATE OF MINNESOTA, STATE OF
13   NEW JERSEY, STATE OF NEW
     MEXICO, STATE OF NEW YORK,
14   STATE OF OREGON, STATE OF
     RHODE ISLAND, STATE OF VERMONT,
15   STATE OF WISCONSIN,

16                         Plaintiffs,

17        v.

18   U.S. DEPARTMENT OF
     TRANSPORTATION; SEAN DUFFY, IN
19   HIS OFFICIAL CAPACITY AS
     SECRETARY OF TRANSPORTATION;
20   FEDERAL HIGHWAY
     ADMINISTRATION; AND GLORIA M.
21   SHEPHERD, IN HER OFFICIAL
     CAPACITY AS ACTING
22   ADMINISTRATOR OF THE FEDERAL
     HIGHWAY ADMINISTRATION,
23
                           Defendants.
24

25

26

COMPLAINT                              i

# INTRODUCTION

1.      President Trump has unleashed an attack on an increasingly popular consumer choice—the electric vehicle. On Inauguration Day, the President issued an executive order entitled *Unleashing American Energy* ("Executive Order"), which proclaims it the policy of the United States to eliminate the "electric vehicle (EV) mandate." Exec. Order No. 14,154, 90 Fed. Reg. 8353 (Jan. 29, 2025). The federal government, however, has never adopted any such "EV mandate." But in the name of eliminating this fictional mandate, the Executive Order directs the Federal Highway Administration ("FHWA" or "Agency") to usurp the legislative and spending powers reserved to Congress by withholding congressionally appropriated funding for electric vehicle ("EV") charging infrastructure required by statute to be distributed to States.

2.      Specifically, in a section of the Executive Order entitled "Terminating the Green New Deal," the President mandated all federal agencies to "immediately pause the disbursement of funds appropriated through the Inflation Reduction Act of 2022 (Public Law 117-169) or the Infrastructure Investment and Jobs Act (Public Law 117-58), including but not limited to funds for electric vehicle charging stations made available through the National Electric Vehicle Infrastructure Formula Program . . . ." Exec. Order No. 14,154, 90 Fed. Reg. at 8357. This, the Executive Branch cannot do.

3.      Congress established the National Electric Vehicle Infrastructure ("NEVI") Formula Program, through enactment of the Infrastructure Investment and Jobs Act ("IIJA"), also known as the Bipartisan Infrastructure Law. The IIJA appropriated $5 billion for the explicit purpose of "providing funding to the States to strategically deploy electric vehicle charging infrastructure and to establish an interconnected network to facilitate data collection, access, and reliability." Pub. L. No. 117-58, 135 Stat. 429, 1421 (2021). Importantly, Congress

/ / /

/ / /

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

required the distribution of this $5 billion among the States[1] over fiscal years 2022 through 2026 according to a mandatory formula. *Id.* at 1422.

4.    The FHWA, although tasked with faithfully administering the NEVI Formula Program, almost immediately carried out President Trump's anti-NEVI directive in diametric opposition to statutory mandate.

5.    On February 6, 2025, the FHWA notified States via letter ("FHWA Letter") that it had taken three actions to categorically and indefinitely "suspend" the NEVI Formula Program. First, the Agency announced it had rescinded all versions of statutorily required NEVI Formula Program Guidance. Second—with no advance notice and without reasoned explanation—the Agency unlawfully revoked all prior approvals of NEVI Formula Program implementation plans ("State Electric Vehicle Infrastructure Deployment Plans" or "State Plans"), which States are required to submit to access their share of NEVI Formula Program funds. In fact, the FHWA retroactively and categorically revoked its prior approval of every State Plan—more than 150 in total—on the sole basis of its recission of the NEVI Formula Program Guidance.

6.    Finally, the FHWA informed the States that "no new obligations may occur under the NEVI Formula Program until the updated final NEVI Formula Program Guidance is issued and new State [P]lans are submitted and approved." The FHWA cited no other reasons for prohibiting new obligations other than its own retroactive revocation of all State Plan approvals, an action that itself was predicated only on the Agency's recission of the NEVI Formula Program Guidance.

7.    The FHWA's actions had the effect of withholding or withdrawing from States NEVI Formula Program funds available to the States for obligation, functionally abrogating the congressionally mandated NEVI Formula Program by executive fiat.

---

[1] For the purposes of this Complaint, the term "States" includes Puerto Rico and the District of Columbia.

1    8.    This action seeks declaratory and injunctive relief against the Defendants'

2  unlawful actions.

3    9.    Plaintiff States each have invested in programs to encourage adoption of EVs as

4  a means of reducing smog, air toxics, and other harmful pollution from combustion engine

5  vehicle emissions, which cause grave health problems such as cancer and asthma, and

6  contributes to the devastating effects of climate change in these States.

7    10.    The Defendants' actions impede Plaintiff States' ability to build the EV

8  charging infrastructure envisioned under the IIJA and necessary for widespread EV adoption.

9  This infrastructure is critical to the success of Plaintiff States' environmental, public health,

10  and transportation programs—projects Congress actively chose to support in enacting the IIJA

11  and establishing the NEVI Formula Program. The harms to Plaintiff States will continue and

12  become increasingly damaging if unabated.

13    11.    To prevent irreparable injury to Plaintiff States, this Court should declare that

14  the Defendants' actions to implement the President's directive are unlawful under the

15  Administrative Procedure Act, violate the United States Constitution, and are contrary to the

16  law, outside the Defendants' authority, and unlawful under the common law *ultra vires*

17  doctrine. Plaintiff States therefore request that this Court vacate the Defendants' unlawful

18  actions and preliminarily and permanently enjoin Defendants from, among other things,

19  implementing or effectuating the directive in the Executive Order to withhold NEVI Formula

20  Program funds in contravention of the express congressional mandates in the IIJA.

21                          **JURISDICTION AND VENUE**

22    12.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and

23  1346(a)(2). The Court has further remedial authority under the Declaratory Judgment Act,

24  28 U.S.C. §§ 2201(a) and 2202. Jurisdiction is also proper under the judicial review provisions

25  of the Administrative Procedure Act ("APA"). 5 U.S.C. § 702.

26  / / /

COMPLAINT                          3

1    13.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and

2    1391(e)(1). Defendants are United States agencies or officers sued in their official capacities.

3    The State of Washington is a resident of this district, and a substantial part of the events or

4    omissions giving rise to this Complaint occurred and continues to occur within the Western

5    District of Washington.

6                                          **PARTIES**

7    14.    Plaintiffs are sovereign states of the United States of America. Plaintiffs bring

8    this action in their sovereign and proprietary capacities. As set forth below, Defendants'

9    actions directly harm Plaintiff States' interests, including but not limited to financial and

10   environmental harms that flow from the Defendants' unlawful actions announced in the

11   FHWA Letter.

12   15.    The State of Washington is represented by and through Attorney General

13   Nicholas W. Brown, who is the chief legal adviser to the State and is authorized to act in

14   federal court on behalf of the State on matters of public concern.

15   16.    The State of Colorado is represented by and through Attorney General Phil

16   Weiser, who acts as the chief legal representative of the State.

17   17.    The State of California is represented by and through Attorney General Rob

18   Bonta, California's chief law enforcement officer, and by and through Governor Gavin

19   Newsom, the California Department of Transportation ("Caltrans"), and the California Energy

20   Commission ("CEC"). Caltrans and CEC jointly administer the implementation of the NEVI

21   Formula Program in California.

22   18.    The State of Arizona is represented by Attorney General Kris Mayes, who is the

23   chief law enforcement officer of Arizona and is authorized to act in federal court on behalf of

24   the State.

25   ///

26   ///

COMPLAINT                                      4                    ATTORNEY GENERAL OF WASHINGTON
                                                                    Environmental Protection Division
                                                                    800 Fifth Avenue STE 2000
                                                                    Seattle, WA 98104
                                                                    (206) 464-7744

19.     The State of Delaware is represented by and through Attorney General Kathleen Jennings, who is the chief law officer of Delaware and is authorized to bring this action on behalf of the State.

20.     The District of Columbia is represented by and through Attorney General Brian L. Schwalb, who is the chief legal officer of the District of Columbia.

21.     The State of Hawaiʻi is represented by and through Attorney General Anne Lopez, who is the chief law enforcement officer and chief legal officer of the State.

22.     The State of Illinois is represented by and through Attorney General Kwame Raoul, who is the chief law enforcement officer of Illinois.

23.     The State of Minnesota is represented by and through Attorney General Keith Ellison, who is authorized to file suit to challenge action by the federal government that threatens the public interest and welfare of Minnesota residents and to vindicate the State's sovereign and quasi-sovereign interests.

24.     The State of Maryland is represented by Attorney General Anthony G. Brown, who is the chief law enforcement officer of Maryland.

25.     The State of New Jersey is represented by Attorney General Matthew Platkin, who is the chief law enforcement officer of New Jersey.

26.     The State of New Mexico is represented by and through Attorney General Raúl Torrez, who is the chief law enforcement officer of New Mexico.

27.     The State of New York is represented by and through Attorney General Letitia A. James, who acts as the chief legal representative of the State.

28.     The State of Oregon is represented by and through Attorney General Dan Rayfield, who is the chief legal officer of Oregon.

29.     The State of Rhode Island is represented by and through Attorney General Peter F. Neronha, who is the chief law enforcement officer of Rhode Island.

/ / /

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

30.     The State of Vermont is represented by and through Attorney General Charity Clark, who is authorized to initiate litigation on Vermont's behalf.

31.     The State of Wisconsin is represented by and through Attorney General Josh Kaul, who is the chief law enforcement officer of Wisconsin.

32.     Defendant United States Department of Transportation is a cabinet agency within the Executive Branch of the United States government. 49 U.S.C. § 102(a).

33.     Defendant Sean Duffy is the Secretary of the United States Department of Transportation and that agency's highest ranking official. He is charged with the supervision and management of all decisions and actions of that agency. 49 U.S.C. § 102(b). He is sued in his official capacity.

34.     Defendant Federal Highway Administration is an administration within the United States Department of Transportation. 49 U.S.C. § 104.

35.     Defendant Gloria M. Shepherd is the Executive Director and Acting Administrator of the Federal Highway Administration within the United States Department of Transportation. The Acting Administrator is responsible for carrying out the duties and powers vested in the Secretary of Transportation by chapter 4 of title 23 of the United States Code for highway safety programs, research, and development related to highway design, construction and maintenance, traffic control devices, identification and surveillance of accident locations, and highway-related aspects of pedestrian safety; and additional duties and powers prescribed by the Secretary. 49 U.S.C. § 104(b)(1). She is sued in her official capacity.

## ALLEGATIONS

**A.     Congress Established the National Electric Vehicle Infrastructure Formula Program to Fund Strategic Deployment of Electric Vehicle Charging Infrastructure**

36.     On November 15, 2021, President Biden signed into law the Bipartisan Infrastructure Law, enacted as the IIJA. 135 Stat. 429.

/ / /

37.    The IIJA establishes the NEVI Formula Program. Through the IIJA, Congress appropriated $5 billion and mandated that those funds "shall be to carry out the [NEVI] Formula Program" and must "remain available until expended." *Id.* at 1421.

38.    NEVI Formula Program funds are "formula" funds. S*ee, e.g., City of Los Angeles v. Barr*, 941 F.3d 931, 935 (9th Cir. 2019). Unlike discretionary funding, formula funds are appropriated by Congress for a specific purpose and must be distributed on the basis of a statutory formula. The NEVI Formula Program applies the same federal formula as that which is used to distribute highway funds. 135 Stat. at 1422.

39.    The purpose of the NEVI Formula Program is to "provide funding to States to strategically deploy electric vehicle charging infrastructure and to establish an interconnected network to facilitate data collection, access, and reliability." *Id.* at 1421.

40.    More specifically, after setting aside funds for NEVI Formula Program administration and an additional grant program, NEVI Formula Program funds apportioned to States "shall be used for: (1) the acquisition and installation of electric vehicle charging infrastructure to serve as a catalyst for the deployment of such infrastructure and to connect it to a network to facilitate data collection, access, and reliability; (2) proper operation and maintenance of electric vehicle charging infrastructure; and (3) data sharing about electric vehicle charging infrastructure to ensure the long-term success of investments made under [the NEVI Formula Program provisions of the IIJA]." *Id.* at. 1421-22; *see also id.* at 1425 (discussing set-asides).

41.    The NEVI Formula Program first prioritizes building out "alternative fuel corridor[s]" with EV charging infrastructure along the national highway system to support long-distance travel and increase driver confidence in charging port availability during intra- and interstate travel. *Id.* at 1423-24. Focusing first on this national network of alternative fuel corridors ("AFCs") helps ensure that drivers beyond urban commuter areas have the option to choose an EV.

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

42.     Distribution of NEVI Formula Program funds is not discretionary: The Secretary of Transportation ("Secretary") "***shall distribute*** among the States the [NEVI Formula Program funds] so that each State receives" the amount determined by the formula. *Id.* at 1422 (emphasis added). Indeed, as explained below, even in the limited circumstances a State may become ineligible to receive its share of NEVI Formula Program funds for a particular fiscal year, the IIJA requires the Secretary to distribute all lawfully withheld or withdrawn funds to local jurisdictions within that State, or to other States, for the congressionally mandated purpose of building out EV charging infrastructure. *See id.* at 1422-23.

43.     Congress established a single prerequisite for a State to receive its share of the NEVI Formula Program funding appropriated by Congress: Each State must submit a State Electric Vehicle Infrastructure Deployment Plan, by a deadline established by the Secretary, describing how it "intends to use funds distributed to the State . . . to carry out the [NEVI Formula] Program for each fiscal year in which funds are made available." *Id.* at. 1422.

44.     The IIJA further requires the Secretary, within 90 days of the statute's enactment, and in coordination with the Secretary of Energy, to develop "guidance for States and localities to strategically deploy electric vehicle charging infrastructure" consistent with the NEVI Formula Program provisions of the IIJA ("NEVI Formula Program Guidance"). *Id.* at 1423.

45.     The FHWA issued NEVI Formula Program Guidance on February 10, 2022, and has updated the guidance annually. The FHWA issued the most recent update on June 11, 2024.

**B.     Process to Distribute Nondiscretionary NEVI Formula Program Funds to States**

46.     NEVI Formula Program funds are distributed in accordance with a well-defined process. The first step in this process was the congressional **appropriation**, which authorized the FHWA to incur financial obligations that will result in immediate or future disbursements

of funds from the U.S. Treasury. *See* 2 U.S.C. § 622(2)(A)(i). In the IIJA, Congress appropriated $5 billion, "to remain available until expended," to carry out the NEVI Formula Program in accordance with specific directives and subject to express constraints. 135 Stat. at 1421.

47.    Next, the U.S. Office of Management and Budget ("OMB"), which administers the federal budget, **apportioned** the funds appropriated by Congress by dividing the $5 billion appropriation across five fiscal years and distributed the funds to the FHWA. *See* U.S. Gov't Accountability Off., GAO-05-734SP, *A Glossary of Terms Used in the Federal Budget Process,* at 12-13 (Sept. 2005) ("Budget Glossary").[2] The FHWA, which is within the U.S. Department of Transportation ("U.S. DOT"), annually certifies a further apportionment. This further apportionment includes setting aside the funds for NEVI Formula Program administration of the and an additional grant program. The FHWA then divides the remaining funds for that fiscal year among the States according to the non-discretionary statutory formula.

48.    The IIJA's formula explicitly requires the Secretary to apportion NEVI Formula Program funds among the States, such that each receives a share of funding proportional to the combined amount that the FHWA distributes in Federal-aid highway apportionments.[3, 4] 135 Stat. at 1422 (citing 23 U.S.C. § 104(c) and § 165). Those amounts are fixed in statute based on historical apportionments and congressionally determined shares, 23 U.S.C. §§ 104(c), 165. Neither the Secretary nor the FHWA, nor any other part of the Executive Branch has discretion to determine the amount of funding apportioned to any State under the NEVI Formula Program.

---

[2] Available at https://www.gao.gov/assets/gao-05-734sp.pdf.
[3] Puerto Rico's share is equal to the amount the FHWA distributes in Puerto Rico Highway Program funding.
[4] *See, e.g.*, FHWA, Notice: Apportionment of Fiscal Year (FY) 2022 Highway Infrastructure Program Funds for the National Electric Vehicle Infrastructure Formula Program Pursuant to the Infrastructure Investment and Jobs Act (Feb. 10, 2022), a true and accurate copy of which is attached hereto as Exhibit A.

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

49.     After reviewing each State Electric Vehicle Infrastructure Deployment Plan submitted, the FHWA notifies each State by letter that its funds for the fiscal year(s) covered by the Plan are "available for obligation."[5]

50.     An **obligation** is a "definite commitment that creates a legal liability of the government for the payment of goods and services ordered or received, or a legal duty on the part of the United States that could mature into" such a liability; an "expenditure," also known as a "disbursement," is the actual spending of federal funds. Budget Glossary at 45, 48, 70.

51.     States **obligate** their share of apportioned NEVI Formula Program funds by submitting to the FHWA an authorization request for specific activities. So long as the activities for which a State requests authorization meet the minimum standards and requirements to be funded by NEVI Formula Program funds, *see* 23 C.F.R. Part 680, the FHWA must approve State's requests for authorization. Upon FHWA authorization, NEVI Formula Program funds are obligated for those activities. When the State submits to the FHWA expenses incurred for those activities, it can draw down the obligated funds, which are then **disbursed** into State accounts. The FHWA's authority to withhold or withdraw those funds is tightly conscribed by the IIJA.

52.     By way of analogy, the amounts made "available for obligation" are like the credit limit on a credit card; the obligation is the swipe of the credit card at a point-of-sale device; and the disbursement is the transfer of funds to pay the bill.

C.    **Congress Expressly Prescribed the Circumstances and Procedures Under Which the Federal Highway Administration is Authorized to Withhold or Withdraw NEVI Formula Program Funds from States**

53.     Congress expressly limited the Secretary's discretion to withhold or withdraw NEVI Formula Program funds from States. The Secretary must distribute to each State its share of NEVI Formula Program funds unless the State fails to timely submit its State Electric

---

[5] *See, e.g.*, FHWA Letter to Washington State, Approval of Washington State Electric Vehicle Infrastructure Deployment Plan (September 14, 2022), a true and accurate copy of which is attached hereto as Exhibit B.

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1    Vehicle Infrastructure Deployment Plan or if the Secretary "determines a State has not taken

2    action to carry out its [State P]lan." 135 Stat. at 1422.

3        54.    In addition to clear substantive parameters, Congress imposed strict procedural

4    requirements the Secretary must follow: "[P]rior to the Secretary making a determination that a

5    State has not taken actions to carry out its plan, the Secretary shall notify the State, consult

6    with the State, and identify actions that can be taken to rectify concerns, and provide at least 90

7    days for the State to rectify concerns and take action to carry out its [State P]lan." *Id.* Then, if

8    the Secretary still makes a determination that the State has not taken actions to carry out its

9    State Plan, the Secretary must give additional notice and an opportunity to be heard before

10   withholding or withdrawing any funds: "The Secretary shall provide notice to a State on the

11   intent to withhold or withdraw funds not less than 60 days before withholding or withdrawing

12   any funds, during which time the State[] shall have an opportunity to appeal a decision to

13   withhold or withdraw funds directly to the Secretary." *Id.*

14       55.    To further cement that NEVI Formula Program funds must be distributed for the

15   purpose of building EV charging infrastructure, the IIJA expressly mandates that the Secretary

16   redistribute all funds lawfully withheld or withdrawn from a State in a given fiscal year to

17   other jurisdictions. To redistribute withheld or withdrawn funds, the Secretary may "award

18   such funds on a competitive basis to local jurisdictions within the State for use on projects that

19   meet the eligibility requirements." *Id.* If the Secretary cannot fully award these funds to local

20   jurisdictions within the State, "any such funds remaining **shall be distributed** among other

21   States . . . in the same manner as funds distributed for that fiscal year." *Id.* at 1422-23

22   (emphasis added). Whatever the scenario, the NEVI Formula Program funds appropriated by

23   Congress must always be distributed to support State or local government EV charging

24   infrastructure projects.

25       56.    Congress did not give the Secretary authority to suspend or revoke its approval

26   of State Electric Vehicle Infrastructure Deployment Plans and certainly did not authorize the

FHWA to suspend or revoke approval of every State Plan categorically. If a State submits a Plan by the deadline, the FHWA must provide that State with its share of NEVI Formula Program funds for the fiscal year(s) covered by that Plan unless the State fails to take action to carry out the Plan **_and_** the Secretary follows the required statutory procedures, including but not limited to notice and an opportunity to appeal prior to any redistribution of the funds.

**D.    Plaintiff States Submitted State Electric Vehicle Infrastructure Deployment Plans for Fiscal Years 2022 through 2025, and the Federal Highway Administration Made NEVI Formula Program Funds Available for Obligation**

57.    Consistent with the IIJA, the deadlines established by the Secretary, and the NEVI Formula Program Guidance, States prepared and submitted to the FHWA their State Electric Vehicle Infrastructure Deployment Plans describing how they intended to use their share of funds to carry out the NEVI Formula Program. The FHWA approved the States' Plans making their shares of NEVI Formula Program funds available to the States for obligation.

58.    In total, as of February 6, 2025, the FHWA made $3.27 billion available for obligation for fiscal years 2022 through 2025, including approximately $1.1 billion made available for obligation to Plaintiff States.[6]

59.    Washington, through the Washington State Department of Transportation ("WSDOT"), submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans covering the first four fiscal years of NEVI Formula Program funds apportioned by the FHWA, representing federal fiscal years 2022 through 2025.

60.    The FHWA approved Washington's initial Electric Vehicle Infrastructure Deployment Plan, which covered fiscal years 2022 and 2023 in a letter dated September 14, 2022. The FHWA approved the State's two subsequent plans covering fiscal years 2024 and 2025 on September 29, 2023, and November 15, 2024, respectively. In each approval letter, the

---

[6] U.S. Department of Transportation, Federal Highway Administration Fiscal Management Information System, *NEVI Formula Program Status of Funds* (Feb. 6, 2025), a true and accurate copy of which is attached hereto as Exhibit C. Also available at https://www.fhwa.dot.gov/environment/nevi/resources/nevi-formula-program-status-funds-feb-6-24.pdf (last accessed May 5, 2025).

1    FHWA explicitly stated: "With this approval, Fiscal Year . . . funds are now available to

2    Washington State for obligation."

3        61.    Colorado submitted to the FHWA State Electric Vehicle Infrastructure

4    Deployment Plans covering the first four years of NEVI Formula Program funds apportioned

5    by the FHWA, representing fiscal years 2022 through 2025.

6        62.    Colorado's first Plan, developed over the course of 2022 in partnership between

7    the Colorado Department of Transportation ("CDOT") and the Colorado Energy Office

8    ("CEO"), and with the input and engagement from a broad range of stakeholders, establishes

9    the State of Colorado's overall approach to the investment of approximately $57 million of

10   NEVI Formula Program funds over five years.

11       63.    The FHWA approved Colorado's initial State Electric Vehicle Infrastructure

12   Deployment Plan, which covered fiscal years 2022 and 2023 in a letter dated September 14,

13   2022. Colorado submitted additional State Electric Vehicle Infrastructure Deployment Plans

14   and Plan updates covering fiscal years 2024 and 2025. These Plans and Plan updated were

15   approved on September 29, 2023, and November 11, 2024. In each approval letter, the FHWA

16   explicitly stated: "With this approval, Fiscal Year . . . funds are now available to Colorado for

17   obligation."

18       64.    California submitted to the FHWA State Electric Vehicle Infrastructure

19   Deployment Plans covering the first four fiscal years of NEVI Formula Program funds

20   apportioned by the FHWA, representing fiscal years 2022 through 2025.

21       65.    California's initial Plan, developed by Caltrans and CEC, forecast the need for

22   1.2 million EV charging ports for light-duty vehicles and 157,000 charging ports for medium-

23   and heavy-duty vehicles to meet California's ambitious transportation electrification policies,

24   and detailed California's plans to leverage public funding and private investment to build out

25

26

COMPLAINT                                    13                ATTORNEY GENERAL OF WASHINGTON
                                                                  Environmental Protection Division
                                                                    800 Fifth Avenue STE 2000
                                                                       Seattle, WA 98104
                                                                        (206) 464-7744

the State's charging infrastructure, including $384 million from the NEVI Formula Program.[7]
The FHWA approved California's initial Plan in a letter dated September 14, 2022.

66.    California updated its State Electric Vehicle Infrastructure Deployment Plan
annually, with the most recent update submitted in August 2024. The FHWA approved each of
California's annual updates on September 14, 2022, September 29, 2023, and November 15,
2024. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal Year …
funds are now available to California for obligation."

67.    Arizona, through the Arizona Department of Transportation ("ADOT"),
submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans covering the
first four fiscal years of NEVI Formula Program funds apportioned by the FHWA, representing
fiscal years 2022 through 2025.

68.    The FHWA approved Arizona's 2022, 2023, and 2024 State Plans in letters
dated September 14, 2022, September 29, 2023, and November 15, 2024, respectively, making
funds available for obligation for fiscal years 2022 through 2025. In each approval letter, the
FHWA explicitly stated: "With this approval, Fiscal Year … funds are now available to
Arizona for obligation."

69.    The District of Columbia ("District"), through the District Department of
Transportation ("DDOT"), submitted to the FHWA its Electric Vehicle Infrastructure
Deployment Plans covering the first four fiscal years of NEVI Formula Program funds
apportioned by the FHWA, representing fiscal years 2022 through 2025.

70.    The FHWA approved the District's 2022 Plan on September 14, 2022. The
District submitted additional Plans and Plan updates for later fiscal years, which the FHWA
approved in September 2023 and November 2024, making funds available for fiscal years 2024
and 2025. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal

---

[7] In California's 2024 State Plan, this projection was updated to 1 million light-duty EV charging ports
and 114,500 medium- and heavy-duty EV charging ports.

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

Year. . . funds are now available to the District of Columbia for obligation."

71.     Delaware, through the Delaware Department of Transportation ("DelDOT"), submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans covering the first four fiscal years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal years 2022 through 2025.

72.     The FHWA approved Delaware's State Plans and Plan updates on September 14, 2022, September 29, 2023, and November 15, 2024. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal Year. . . funds are now available to Delaware for obligation."

73.     Hawai'i, through the Hawai'i Department of Transportation ("HDOT"), submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans covering the first four fiscal years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal years 2022 through 2025.

74.     The FHWA approved Hawai'i's State Plans on September 27, 2022, October 2, 2023, and November 15, 2024. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal Year. . . funds are now available to Hawai'i for obligation."

75.     Illinois, through the Illinois Department of Transportation ("IDOT"), submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans covering the first four fiscal years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal years 2022 through 2025.

76.     The FHWA approved Illinois's Plans on September 27, 2022, September 29, 2023, and November 15, 2024. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal Year. . . funds are now available to Illinois for obligation."

77.     Maryland, through the Maryland State Highway Administration ("MSHA"), submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans covering the

/ / /

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

first four years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal years 2022 through 2025.

78.    The FHWA approved Maryland's first Plan, covering fiscal years 2022 and 2023 on September 14, 2022. The FHWA approved Maryland's Plans for fiscal years 2024 and 2025 on September 29, 2023, and November 15, 2024, respectively. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal Year. . . funds are now available to Maryland for obligation."

79.    Minnesota, through the Minnesota Department of Transportation ("MnDOT"), submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans covering the first four years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal years 2022 through 2025.

80.    The FHWA approved Minnesota's State Plans in letters dated September 14, 2022, September 29, 2023, and November 15, 2024. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal Year. . . funds are now available to Minnesota for obligation."

81.    New Jersey, through the New Jersey Department of Transportation ("NJDOT"), submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans and Plan updates covering the first four years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal years 2022 through 2025. New Jersey submitted its initial State Plan in August 2022 and has updated its State Plans annually, with the most recent update submitted in September 2024.

82.    The FHWA approved New Jersey's State Plans in letters dated September 27, 2022, October 2, 2023, and November 15, 2024. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal Year . . . funds are now available to New Jersey for obligation."

/ / /

16

83.     New Mexico, through the New Mexico Department of Transportation ("NMDOT"), submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans covering the first four years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal years 2022 through 2025.

84.     The FHWA approved New Mexico's State Plans on October 4, 2023, and November 15, 2024. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal Year. . . funds are now available to New Mexico for obligation."

85.     New York, through the State Department of Transportation, ("NYSDOT"), submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans covering the first four years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal years 2022 through 2025.

86.     The FHWA approved New York's initial State Electric Vehicle Infrastructure Deployment Plan, which covered fiscal years 2022 and 2023 in a letter dated September 27, 2022. The FHWA approved New York's two subsequent Plans covering fiscal years 2024 and 2025 on September 29, 2023, and November 15, 2024, respectively. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal Year . . . funds are now available to New York State for obligation."

87.     Oregon, through the Oregon Department of Transportation ("ODOT"), submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans covering the first four years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal years 2022 through 2025.

88.     Oregon's first Plan was intended to cover all five years of NEVI Formula Program funding. In a letter dated September 14, 2022, the FHWA approved funding for fiscal years 2022 and 2023 based on that Plan. Oregon subsequently submitted Plans covering fiscal years 2024 and 2025, and the FHWA approved these Plans in letters dated September 29, 2023, and November 15, 2024, respectively. In each approval letter, the FHWA

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

explicitly stated: "With this approval, Fiscal Year . . . funds are now available to Oregon for obligation."

89.    Rhode Island, through the Rhode Island Department of Transportation ("RIDOT"), submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans covering the first four years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal years 2022 through 2025.

90.    The FHWA approved Rhode Island's State Plans in letters dated September 14, 2022, September 29, 2023, and November 15, 2024. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal Year . . . funds are now available to Rhode Island for obligation."

91.    Vermont, through the Vermont Agency of Transportation ("VTrans"), submitted to the FHWA State Electric Vehicle Infrastructure Development Plans covering the first four years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal years 2022 through 2025.

92.    The FHWA approved Vermont's initial Plan and Plan updates in letters dated September 27, 2022, September 29, 2023, and November 15, 2024. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal Year . . . funds are now available to Vermont for obligation."

93.    Wisconsin, through the Wisconsin Department of Transportation ("WisDOT"), submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans covering the first four years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal years 2022 through 2025.

94.    The FHWA approved Wisconsin's first Plan, which covered fiscal years 2022 and 2023, in a letter dated September 14, 2022. Wisconsin submitted additional State Electric Vehicle Infrastructure Deployment Plans and Plan updates for later fiscal years.

/ / /

COMPLAINT

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

95.     The FHWA approved Wisconsin's subsequent Plans and Plan updates on September 29, 2023, and November 15, 2024, making funds available for obligation for fiscal years 2024 and 2025. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal Year . . . funds are now available to Wisconsin for obligation."

**E.     The *Unleashing American Energy* Executive Order**

96.     On January 20, 2025, the President issued an executive order entitled *Unleashing American Energy*. Exec. Order No. 14,154, 90 Fed. Reg. 8353.

97.     In the Executive Order, the President declared it "the policy of the United States to 'eliminate the electric vehicle (EV) mandate' and promote true consumer choice, which is essential for economic growth and innovation, by removing regulatory barriers to motor vehicle access; by ensuring a level regulatory playing field for consumer choice in vehicles; by terminating, where appropriate, state emissions waivers that function to limit sales of gasoline-powered automobiles; and by considering the elimination of unfair subsidies and other ill-conceived government-imposed market distortions that favor EVs over other technologies and effectively mandate their purchase by individuals, private businesses, and government entities alike by rendering other types of vehicles unaffordable." *Id.*

98.     To "[t]erminat[e] the Green New Deal," and effectuate his own policy priorities, including the "eliminat[ion of] the electric vehicle (EV) mandate," the President ordered all agencies to "immediately pause the disbursement of funds appropriated through . . . [IIJA], including but not limited to funds for electric vehicle charging stations made available through the National Electric Vehicle Infrastructure Formula Program." *Id.* at 8357.

99.     The President further directed all agencies to "review their processes, policies, and programs for issuing grants, loans, contracts, or any other financial disbursements of such appropriated funds for consistency with the law and [the President's energy policy priorities] outlined in section 2 of the [Executive Order]." *Id.*

/ / /

COMPLAINT                                      19

100.    The President also ordered agency heads to submit to the Directors of OMB and the National Economic Council ("NEC") a report detailing the agencies' review, including "recommendations to enhance their alignment with [the President's energy policy priorities] set forth in section 2." The President made clear that agencies were not to disburse any funds appropriated under the IIJA "until the Director of OMB and Assistant to the President for Economic Policy have determined that such disbursements are consistent with any review recommendations they have chosen to adopt." *Id.*

101.    In short, the President directed agencies to withhold congressionally appropriated funds, including NEVI Formula Program funds, as a tool to terminate programs the President dislikes.

102.    But agencies have no authority to rescind or revise statutes, or to withhold funds duly appropriated by Congress based on the President's disagreement with the policies and priorities of Congress.

103.    Indeed, several federal district courts have already enjoined agency actions effectuating the President's directive to withhold IIJA and IRA funds as *ultra vires*, contrary to law, and arbitrary and capricious. *See State of New York v. Trump*, No. 1:25-cv-00039-JJM-PAS, ECF No. 161 (D.R.I. Mar. 6, 2025) (granting preliminary injunction against categorical freezes of obligated funds); *Woonasquatucket River Watershed Council v. U.S. Dept. of Agric.*, No. 1:25-cv-00097-MSM-PAS, ECF No. 45 (D.R.I. Apr. 15, 2025) (same); *Nat'l Council of Nonprofits v. Off. of Mgmt. and Budget*, No. 1:25-cv-00239-LLA, ECF No. 51 (D.D.C. Feb. 25, 2025).

**F.    The Federal Highway Administration Implemented the President's Directive by Retroactively and Unlawfully Revoking All State Electric Vehicle Infrastructure Deployment Plan Approvals**

104.    Consistent with the President's directive to illegally withhold all IIJA funding, including NEVI Formula Program funds, on February 6, 2025, the FHWA informed States that

/ / /

the current NEVI Formula Program Guidance and all prior versions were rescinded. A true and accurate copy of the FHWA Letter is attached hereto as Exhibit D.

105.    The FHWA gave no rationale for rescinding the NEVI Formula Program Guidance, other than stating that the "new leadership" at the U.S. DOT had "decided to review the policies underlying the implementation of the NEVI Formula Program."

106.    The FHWA Letter further stated that the "FHWA is updating the NEVI Formula Program Guidance to align with current U.S. DOT policy and priorities, including those set forth in DOT Order 2100.7." A true and accurate copy of DOT Order 2100.7 is attached hereto as Exhibit E.

107.    Unlike the factors Congress enumerated in the IIJA to inform the Secretary's development of the NEVI Formula Program Guidance, such as "the distance between publicly available electric vehicle charging infrastructure," "connections to the electric grid," and "long-term operation and maintenance," 135 Stat. at 1423, DOT Order 2100.7 requires the U.S. DOT—and therefore the FHWA—to, for example, "prioritize projects and goals that . . . give preference to communities with marriage and birth rates higher than the national average . . . ."

108.    In the FHWA Letter, the FHWA suggests that it "aims to have [an] updated draft NEVI Formula Guidance published for public comment in the spring." The Agency states it will, at some unknown date, after the close of a public comment period of unknown length "publish updated final NEVI Formula Guidance that responds to comments received."

109.    Without citing any legal authority, the FHWA further explains that "[a]s a result of the rescission of the NEVI Formula Program Guidance, [the] FHWA is also immediately suspending the approval of all State Electric Vehicle Infrastructure Deployment [P]lans for all fiscal years. Therefore, effective immediately, no new obligations may occur under the NEVI Formula Program until the updated final NEVI Formula Program Guidance is issued and new State [P]lans are submitted and approved."

110.    By announcing that the updated final NEVI Formula Program Guidance—if it ever comes—will include "[i]nstructions for the submission of new State [P]lans for all fiscal years," the FHWA made clear it has no intention of reapproving any previously approved plan. The FHWA's so-called "suspension" is therefore a revocation of all prior State Plan approvals.

111.    The FHWA's actions are consistent with multiple executive orders that demonstrate that this Administration's policy goals conflict with the NEVI Formula Program itself, and the recission of the NEVI Formula Program Guidance represents mere pretext for the FHWA's real objective—implementing the President's directive to illegally withhold NEVI Formula Program funds.

112.    In the Executive Order, the President declared it the policy of the United States to eliminate the "electric vehicle (EV) mandate," including, in the words of the order, any "unfair subsidies and other ill-conceived government-imposed market distortions that favor EVs over other technologies and effectively mandate their purchase." Exec. Order No. 14,154, 90 Fed. Reg. at 8353. The President's explicit directive to withhold funds "for electric vehicle charging stations made available through the National Electric Vehicle Infrastructure Formula Program" indicates he considers federal assistance for the construction of EV charging infrastructure—despite that being Congress's express objective—to represent one such "market distortion." The President's anti-EV pronouncements likewise include his declaration of an unfounded national "energy emergency," announcing the Administration's focus on prioritizing and maximizing the nation's use of fossil fuels, Exec. Order No. 14,156, 90 Fed. Reg. 8433 (Jan. 29, 2025), and his denouncement of state policies that "burden[]" the "use" of domestic oil resources in the *Protecting American Energy from State Overreach* executive order, Exec. Order No. 14,260, 90 Fed. Reg 15513 (Apr 14, 2025).

113.    The President directed the FHWA to unlawfully withhold funds for "electric vehicle charging stations made available through the National Electric Vehicle Infrastructure Formula Program." Exec. Order No. 14,154, 90 Fed. Reg. at 8357. The FHWA lacks authority

under the IIJA to withhold NEVI Formula Program funds from States except in the exclusive circumstances expressly set forth by Congress in the IIJA. It thus contrived a way to implement the President's directive—in direct conflict with the statute and without lawful and reasoned explanation for its actions.

**G.      Unlawfully Revoking All State Electric Vehicle Infrastructure Deployment Plans Approval Harms Plaintiff States**

114.      The FHWA's retroactive and unlawful revocation of all State Electric Vehicle Infrastructure Deployment Plan approvals and illegal withholding or withdrawing of statutorily appropriated and apportioned NEVI Formula Program funds "made available to [a State] for obligation" has harmed and will continue to harm Plaintiff States and their residents in myriad ways.

115.      In total, the FHWA is withholding approximately $2.74 billion of the $3.27 million in NEVI Formula Program funds available to the States for obligation for fiscal years 2022 through 2025. Collectively, Plaintiff States have been immediately and indefinitely deprived of access to approximately $1 billion in available NEVI Formula Program funds for those four fiscal years.

**Washington**

116.      Washington, through the WSDOT, was apportioned under the NEVI Formula an approximate total of $71 million in funds over five years dedicated to carrying out the NEVI Formula Program. Washington's shares of NEVI Formula Program funds for fiscal years 2022 through 2025 (approximately $55 million) were made available to Washington to obligate upon FHWA approval of Washington's State Electric Vehicle Infrastructure Deployment Plans covering those fiscal years.

117.      Washington is a national leader in electric vehicles, remaining in the top five for EV adoption for more than a decade. The State has proactively invested in EV charging infrastructure for many years to reduce the environmental effects of the transportation sector.

118.    Transportation is the largest source of carbon pollution in Washington, contributing approximately twenty-two percent (22%) of total air pollution and thirty-nine percent (39%) of greenhouse gas ("GHG") emissions throughout the State. Pollution from combustion engine vehicle emissions causes health problems, such as cancer and asthma, and contributes to climate change.

119.    To help combat climate change and protect the health and welfare of its residents, Washington has adopted zero-emission vehicle standards that require a percentage of the vehicles sold in Washington to be zero emissions, starting with the 2025 model year. The State has also adopted California's vehicle emissions standards, which increases zero emissions vehicle sales of passenger cars, light-duty trucks, and medium-duty vehicles to one-hundred percent (100%) by 2035.

120.    In response to the FHWA's unlawful revocation of its State Electric Vehicle Infrastructure Deployment Plan approvals and its unlawful withholding of NEVI Formula Program funds to implement the President's directive, Washington was forced to cease work related to the NEVI Formula Program.

121.    In October 2024, WSDOT issued a notice of funding opportunity ("NOFO") and request for proposals ("RFP") for up to $25 million in projects funded through the NEVI Formula Program for EV charging infrastructure along five key corridors (I-90, US-97, US-2, US-195, and US-395). The NOFO/RFP closed on January 31, 2025. WSDOT received 40 proposals but because Washington does not have funds to cover these projects in the absence of its share of the NEVI Formula Program funding, the State has not been able to select a single awardee.

122.    As a result of the FHWA's unlawful actions, the State of Washington has been immediately and indefinitely deprived of access to approximately $55 million if its available NEVI Formula Program funds that Congress expressly directed toward to the State to build out its EV charging infrastructure. All current and future NEVI Formula Program NOFOs, RFPs,

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1    and all proposed EV charging infrastructure projects in Washington are therefore on hold

2    indefinitely. The FHWA's unlawful actions thus create costly delays in project implementation

3    and erode industry confidence in Washington's ability to fund EV charging infrastructure

4    projects, which will hamper the State's ability to find project partners in the future.

5        123.    The FHWA's unlawful actions to revoke Washington's State Electric Vehicle

6    Infrastructure Deployment Plan approvals and withhold the State's share of available NEVI

7    Formula Program funds significantly impede Washington's ability to develop a statewide

8    network of EV charging infrastructure. Widespread, publicly accessible, and reliable EV

9    charging infrastructure is critical to promote EV adoption and ensure the success of

10   Washington's clean car programs, which aim to improve air quality and combat climate change

11   to protect the health and the welfare of its residents.

12       **California**

13       124.    California, through Caltrans, was apportioned a total of approximately $384

14   million in funds over five fiscal years dedicated to carrying out the NEVI Formula Program.

15   California's share of NEVI Formula Program funds for fiscal years 2022 through 2025

16   (approximately $302 million) was made available to California to obligate upon the FHWA's

17   approval of California's State Electric Vehicle Infrastructure Deployment Plans covering those

18   fiscal years.

19       125.    Caltrans and CEC jointly implement the State's Electric Vehicle Infrastructure

20   Deployment Plans to support California's environmental, public health, and transportation

21   policies. California's efforts to promote the widespread adoption of zero-emitting EVs are

22   critical to its Climate Change Scoping Plan, developed to meet the California Legislature's

23   GHG reduction targets, and its attainment of federal ambient air quality standards, which

24   require significant measures to reduce smog precursors like nitrogen oxides and particulate

25   matter. Failure to attain and maintain these ambient concentrations not only increases the

26   public health risks, including cardiovascular and respiratory illnesses, it also risks

noncompliance penalties to the State, including the loss of highway funds. 42 U.S.C. §§ 7409, 7410, 7509(b); 89 Fed. Reg. 16,202, 16,223-49 (Mar. 6, 2024) (detailing health effects of particulate matter); 83 Fed. Reg. 17,226, 17,232-46 (Apr. 18, 2018) (health effects of nitrogen oxides).

126.    Under California's Assembly Bill 118, which created the Clean Transportation Program administered by CEC, CEC prepares an annual Zero-Emission Vehicle Infrastructure Plan setting forth the State's goals for the charging and fueling infrastructure for zero-emission vehicles (including EVs) that will support the State's climate and air pollution policies, and CEC's strategies for building out that infrastructure. In the 2024 Zero-Emission Vehicle Infrastructure Plan, CEC projected 7.1 million plug-in passenger EVs in California in 2030 and 15.2 million in 2035.

127.    The EV charging infrastructure needed to support California drivers is significant. Fast charging is particularly important along long-distance travel corridors, where drivers place a premium on quickly recharging their vehicles for the next leg of their journey. California's State Electric Vehicle Infrastructure Deployment Plans and its Zero-Emission Vehicle Infrastructure Plans thus focus NEVI Formula Program funds on building out a statewide network of fast charging ports along major travel corridors. CEC estimates that NEVI Formula Program funds will support the deployment of roughly 7,500 charging ports by 2030.

128.    These fast charging ports serve a demand for EV charging infrastructure that would otherwise have to be met by a substantially larger number of slower Level 2 charging ports. A 2023 modeling analysis showed that if California builds out 63,000 additional fast charging ports, 400,000 fewer Level 2 charging ports are needed to meet the State's EV demand by 2030. Without its share of NEVI Formula Program funds, the success of California's zero-emission transportation policies will be seriously impeded, and California will be forced to identify other, less cost-effective funding sources.

129.    In October 2023, CEC opened its first solicitation for NEVI Formula Program funded projects in California. That first solicitation closed in September 2024 with awards totaling $36.6 million to fund projects along the State's busiest transportation corridors. Most of the awards from that solicitation have been finalized in award agreements executed between CEC and the awardees. A second solicitation closed in March 2025, and application evaluation is underway. A third round of solicitation is slated to open later this year.

130.    EV charging infrastructure projects funded through the NEVI Formula Program in California generally proceed in three phases: "preliminary engineering," "right of way," and "construction." Several California awardees from the first NEVI Formula Program solicitation are ready to move into their construction phases; others are proceeding with environmental reviews and obtaining necessary rights of way. These awardees have expressed concern to Caltrans and CEC that the actions announced in the FHWA Letter will prevent them from being reimbursed for their costs, and they have therefore delayed proceeding with construction.

131.    One awardee has requested to withdraw its project because the FHWA is withholding NEVI Formula Program funding. If the awardee withdraws, the charging project it proposed will be delayed significantly, if not abandoned altogether.

132.    Another awardee reported to CEC that it had letters of intent or memoranda of understanding with several site hosts—i.e., locations where the awardee could build a charging station—but those site hosts decided not to enter into site host agreements once they learned the FHWA was withholding California's NEVI Formula Program funds. This too will result in the delay or possible failure of that project.

133.    The withholding of NEVI Formula Program funds threatens the successful execution of grant agreements with the awardees of California's second solicitation and will likely result in potential applicants declining to participate in the third solicitation at all.

134.    As a result of the FHWA's unlawful revocation of State Electric Vehicle Infrastructure Deployment Plan approvals and illegal withholding of NEVI Formula Program

1  funds, California has been immediately and indefinitely deprived of access to approximately

2  $300 million of its available NEVI Formula Program funds that Congress expressly directed

3  toward to the State to build out its EV charging infrastructure.

4      135.    The FHWA confirmed the effect of its action in denying Caltrans's request to

5  obligate funds for construction of a charging station in San Diego. In an email dated March 31,

6  2025, the FHWA notified Caltrans that "[a]s a result of the February 6[th] [NEVI Notice]," "no

7  funds are available for obligation." A true and accurate copy of this email is attached hereto as

8  Exhibit F.

9      **Colorado**

10      136.    Colorado, through CDOT, was apportioned approximately $57 million in funds

11  over five years dedicated to carrying out the NEVI Formula Program. Colorado's annual shares

12  of NEVI Formula Program funds for fiscal years 2022 through 2025 were made available to

13  Colorado to obligate upon FHWA approval of Colorado's State Electric Vehicle Infrastructure

14  Deployment Plans covering those fiscal years. CEO has contracted with CDOT to implement

15  projects for the first four fiscal years of apportioned funding, representing approximately $44.5

16  million.

17      137.    Acting in reliance on the FHWA's approval of its Plans, which, consistent with

18  the IIJA, NEVI Formula Program Guidance, and the FHWA's representations, made NEVI

19  Formula Program funds available for obligation until expended, Colorado has awarded

20  approximately $33 million for approved projects. It has contractual obligations with awardees

21  for $18 million. However, the FHWA has only distributed $8 million in NEVI Formula

22  Program funds to Colorado. The FHWA is now unlawfully and indefinitely withholding

23  Colorado's remaining NEVI Program Formula funds on the basis of its illegal revocation of

24  Colorado's State Electric Vehicle Infrastructure Deployment Plan approvals.

25      138.    Colorado has long supported the deployment of EVs and other zero-emission

26  vehicles (ZEVs) across multiple vehicle classes as a means of reducing the environmental

1   effects of the transportation sector and achieving its State GHG reduction targets.

2   139.   Widespread EV adoption is limited by the availability of publicly accessible EV

3   charging ports. As a result, Colorado State agencies, local governments, nonprofits, and the

4   private sector have been collaborating to fund, construct, and operate more than 1,500 Level 2

5   and fast charging ports across the State over the past decade. Colorado intended to utilize the

6   additional funding appropriated by Congress and apportioned to the States under the NEVI

7   Formula Program to deploy EV charging infrastructure in the gaps remaining in its charging

8   station network, including in rural and other underserved communities. Colorado also intended

9   to upgrade existing charging ports in need of greater capacity and address the growing demand

10  for charging in parts of the State that already see higher EV adoption and usage. Finally,

11  Colorado expected to use its share of NEVI Formula Program funding to help lay the

12  groundwork for future charging projects focused on medium- and heavy-duty commercial

13  users.

14  140.   The FHWA's unlawful actions to revoke Colorado's State Electric Vehicle

15  Infrastructure Deployment Plan approvals and its unlawful withholding of NEVI Formula

16  Program funds significantly impedes Colorado's ability to develop a statewide network of EV

17  charging stations. Such a network is necessary to promote EV adoption as required by

18  Colorado's legislature and executive branch, which have enacted ambitious emissions

19  reduction goals for the transportation sector. The FHWA's unlawful actions interfere with

20  existing projects, and sow uncertainty that undermines confidence in Colorado's ability to fund

21  EV charging infrastructure projects and creates costly delays in project implementation.

22  **Arizona**

23  141.   Arizona, through ADOT, was apportioned an approximate total of $76 million

24  over five fiscal years to carry out the NEVI Formula Program's goals. Arizona's shares of

25  NEVI Formula Program funds for fiscal years 2022 through 2025 (approximately $60 million)

26  were made available to Arizona to obligate upon FHWA's approval of Arizona's State Electric

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1    Vehicle Infrastructure Deployment Plans covering those fiscal years.

2        142.    Transportation was the single largest contributing factor to GHG emissions in

3    Arizona in 2021. As a result, Arizona has prioritized public fleet electrification and developing

4    publicly available EV charging infrastructure. These two initiatives are estimated to reduce

5    cumulative GHG emissions by almost 3 million metric tons between 2025 and 2050. Funding

6    from the NEVI Formula Program is critical to achieving these emission-reduction goals.

7        143.    On January 19, 2025, ADOT issued a solicitation for 35 prospective EV

8    charging station locations identified in its 2023 and 2024 State Plans. ADOT spent a

9    significant amount of funds and staff time preparing this solicitation, which it had to canceled

10    after the FHWA announced its unlawful actions.

11        144.    As a result of the FHWA's unlawful actions, Arizona has been immediately and

12    indefinitely deprived of access to approximately $48 million of its available NEVI Formula

13    Program funds.

14        **District of Columbia**

15        145.    The District of Columbia, through DDOT, was apportioned approximately

16    $16.7 million over five fiscal years to carry out the NEVI Formula Program's goals. The

17    District's shares of NEVI Formula Program funds for fiscal years 2022 through 2025

18    (approximately $13 million) were made available to the District to obligate upon FHWA's

19    approval of the District's Electric Vehicle Infrastructure Deployment Plans covering those

20    fiscal years.

21        146.    The District acted in reliance on the FHWA complying with the IIJA to obligate

22    and disburse the District's share of NEVI Formula Program funds to build a robust, reliable,

23    and interconnected charging network across all eight District Wards to promote EV adoption.

24        147.    Specifically, DDOT planned to build out a reliable network of NEVI Formula

25    Program compliant fast charging stations, to install at least one fast charging station in each

26    Ward, and to have a robust stakeholder and public engagement to help identify additional

1    regional priorities and how best to use any remaining NEVI Formula Program funds.

2        148.    As a direct result of the FHWA's unlawful actions, the District has been

3    immediately and indefinitely deprived of access to approximately $9.5 million of its available

4    NEVI Formula Program funds, and its ability to develop a District-wide network of EV

5    charging stations and help support develop a local workforce with experience in EV charging

6    infrastructure installation, maintenance, and repair has been significantly impeded.

7        **Delaware**

8        149.    The transportation sector is the largest source of GHG emissions in Delaware.

9    One of the commitments of Delaware's Climate Action Plan is to minimize transportation

10    related emissions and transition to vehicles reliant on clean and renewable energy. This goal,

11    along with federal investment in EVs and their charging stations, will increase Delaware's

12    resiliency to the damaging environmental effects of climate change, reduce harmful emissions,

13    and create a network of accessible EV charging infrastructure that is accessible to everyone in

14    the State.

15        150.    Delaware's General Assembly has enacted statutory provisions for sharing State

16    vehicle charging infrastructure, 29 *Del. C.* Section 8062, an electric vehicle rebate program,

17    Section 8064, and incentives to residential users to install chargers, Section 8065.

18        151.    As a result of the FHWA's unlawful actions, Delaware has been immediately

19    and indefinitely deprived of access to approximately $3.8 million of its available NEVI

20    Formula Program funds and its ability to develop a statewide network of EV charging stations

21    has been seriously impeded.

22        **Hawaiʻi**

23        152.    Hawaiʻi, through Hawaiʻi Department of Transportation, ("HDOT"), was

24    apportioned approximately $18 million over five fiscal years to carry out the NEVI Formula

25    Program's goals.

26    */ / /*

COMPLAINT

31

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

153.    Hawaiʻi has long been a leader in EV adoption, which is essential to reducing GHG emissions that contribute to climate change. For example, charging sessions at the Kahului station and Aloha Tower station—built using NEVI Formula Program funds—providing approximately 806,912 kWh roughly translates to a reduction of nearly 528,000 kilograms of GHGs omitted into the atmosphere. That amount of GHG emission reduction is equivalent to the amount of carbon sequestered by 14,600 trees.

154.    Hawaiʻi relies on the NEVI Formula Program funds apportioned to the State to help transition to a sustainable transportation future and meet the State's renewable energy goals by increasing availability of fast, affordable, and dependable EV charging.

155.    As a result of the FHWA's unlawful actions, Hawaiʻi has been immediately and indefinitely deprived of access to approximately $2 million of its available NEVI Formula Program funds and its ability to develop a statewide network of EV charging stations has been significantly impeded.

**Illinois**

156.    Illinois's State Plans detail the State's approach to expending its total share of the NEVI Formula Program funds to build out an EV charging network in service of the State's goal of one million EVs on the road by 2030. 20 ILCS 627/45(a)(1).

157.    Through IDOT, Illinois has contractual obligations for $25.4 million for approved NEVI Formula Program funded projects. IDOT is currently evaluating applications from a NOFO that closed on January 31, 2025, and intends to award up to $24 million to complete build out of EV charging infrastructure along Illinois's AFCs. Additionally, IDOT is in final negotiations with a consultant to assist with construction oversight of awarded and obligated NEVI Formula Program funded projects. To pay for these consultant services and proceed with EV charging infrastructure projects, IDOT will need to obligate additional NEVI Formula Program funds, which the FHWA is unlawfully withholding.

/ / /

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

158.    Consistent with the IIJA and the FHWA's representations, IDOT has acted in reliance on NEVI Formula Program funding to cover contractual obligations related to EV charging infrastructure projects. Illinois does not have funds to cover these projects in the absence of its share of the NEVI Formula Program funding. To date, the FHWA has not distributed any NEVI Formula Program funds to IDOT.

**Maryland**

159.    In 2020, transportation was the source of over one third of Maryland's GHG emissions and a significant source of the air pollutants that form smog. Maryland is committed to increasing registrations of EVs to address these pollution issues and the State has seen tremendous growth in the number of registered EVs over the past five years from 14,930 EVs in 2020 to 132,973 EVs to date in 2025—an increase of 891 percent (891%). The State envisions further growth in EV adoption over the next decade with a goal of registering 1.1 million passenger EVs by 2031 and the implementation of the State's Advanced Clean Cars II regulation.

160.    Maryland was apportioned approximately $69 million in NEVI Formula Program funds for fiscal years 2022 through 2026 and roughly $49 million of those funds were available for obligation to Maryland upon the FHWA's approval of Maryland's State Electric Vehicle Infrastructure Deployment Plans covering fiscal years 2022 through 2025. These funds would go towards completing the buildout of fast charging infrastructure along Maryland's designated AFCs before building out Level 2 charging infrastructure in areas of the State without such infrastructure.

161.    The FHWA previously authorized the obligation of approximately $14.5 million of NEVI Formula Program funds for Round 1 design-build procurement and administration, as designated in Maryland's State Plans. Those funds will support the construction of public charging infrastructure at only 22 of the 50 sites needed to complete the State's AFCs.

/ / /

162.    On December 17, 2024, MSHA launched its Round 2 procurement and simultaneously requested that the FHWA authorize the obligation of $475,000 to support Round 2. MSHA's December 17, 2024, RFP was originally slated to close on March 26, 2025.

163.    As a result, however, of the FHWA's unlawful actions, Maryland has been immediately and indefinitely deprived of access to approximately $34.5 million of its available NEVI Formula Program funds and the State has been forced to delay the deadline for Round 2 proposal submissions. Based on Round 1 procurement data and available market estimates, MSHA estimates that the FHWA's withholding of its remaining NEVI Formula Program funds would jeopardize the buildout of 180 additional fast charging ports along AFCs and 1,611 additional Level 2 charging ports in Maryland communities.[8]

164.    The delay in Round 2 procurement is also expected to increase costs to build charging infrastructure at the 29 sites targeted by that procurement. This increase in cost will necessarily reduce the total number of charging ports that can be built at sites away from AFCs. And this reduction in charging infrastructure may, in turn, lead to reduced adoption of EVs in the State, harming Maryland's ability to meet its emission reduction goals and implement its Advanced Clean Cars II regulation.

**Minnesota**

165.    Transportation is the largest source of carbon emissions in Minnesota. The State is seeing more frequent extreme weather events, drought, smoke from forest fires and potential loss of several species due to warming rivers and lakes as a result of climate change. To mitigate the damaging effects of climate change, MnDOT set interim GHG emissions targets in the Statewide Multimodal Transportation Plan for 2025, 2030, 2035, and 2040. The Minnesota legislature updated the State goal to include interim targets, which align with the Statewide Multimodal Transportation Plan and the State's Climate Action Framework. Minnesota's Next

---

[8] This MSHA estimate of fast charging and Level 2 charging ports includes infrastructure planned for development using the funds the FHWA is currently withholding unlawfully and Maryland's apportioned share of funds for fiscal year 2026.

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

Generation Energy Act of 2007, Minnesota Statutes, section 216H.02 requires Minnesota to reduce GHG emissions statewide to net zero by 2050.

166.    To decrease transportation sector GHG emissions, Minnesota needs to invest in a range of strategies, including vehicle electrification, increasing travel options, and low carbon infrastructure and systems management. The State identified increased EV adoption as one way to reduce GHG emissions from transportation. A reliable statewide EV charging network is required to help alleviate Minnesota residents' range anxiety and encourage EV adoption. The FHWA's unlawful actions jeopardize Minnesota's ability to reduce GHG emissions from transportation and ultimately put its climate change mitigation goals at risk.

167.    In reliance on the FHWA's compliance with the IIJA, MnDOT included NEVI Formula Program funds as a set-aside in its State Transportation Improvement Program ("STIP"). The 2025-2028 STIP includes the entire $68 million in funds apportioned to Minnesota under the NEVI Formula Program. When individual projects are identified, funds are broken out from the set-aside, reviewed through Metropolitan Planning Organization ("MPO") processes, and modified in local Transportation Improvement Plans and the STIP, before federal obligation.

168.    As of January 10, 2025, the FHWA had authorized obligation of NEVI Formula Program funds for 19 projects in Minnesota. A Round 1 RFP was opened December 2023 and closed April 2024. Round 1 resulted in 12 executed contracts to build 12 EV charging stations. Work on these projects is continuing.

169.    A Round 2 RFP was opened October 2024 and closed January 2025. In April 2025, MnDOT awarded an additional 12 conditional awards to build an additional 12 EV charging stations. MnDOT is taking steps towards executing contracts for these projects, which will result in a total of 24 fully executed contracts in summer 2025.

170.    As stated previously, the FHWA has only obligated funds for 19 of these 24 projects.

171.    As a result of the FHWA's unlawful action, which the Agency announced just before the MPO process for the five Round 2 projects without authorized obligations was complete, Minnesota cancelled those processes. To fulfill MnDOT's commitment to encouraging EV use as a means to combat climate change, State funds were identified to move forward with Round 2 conditional awards.

172.    However, Minnesota's Electric Vehicle Infrastructure Needs Assessment, which resulted in the identification of future EV charging infrastructure projects throughout Minnesota, was completed in reliance on the State receiving its entire share of NEVI Formula Program funds—all $68 million. These projects are on hold.

173.    In addition, the majority of work to establish replicable and accountable frameworks for procurement and implementation of the NEVI Formula Program has already been done. The next step is to construct the tangible benefits for the public. Should any one of the three partners (federal, state, or awardee) back out at this time, it will have been a considerable waste of public and private resources and the benefits of a reliable statewide network of EV charging infrastructure will not be realized.

**New Jersey**

174.    As a result of the FHWA's unlawful actions, New Jersey has been immediately and indefinitely deprived of access to approximately $73 million of its available NEVI Formula Program funds.

175.    Relying on the FHWA's statutory obligation to disburse NEVI Formula Program funds, the Agency's approval of New Jersey's State Plans, and its prior authorizations, NJDOT awarded in December 2024 a publicly advertised contract for the development, planning, design, installation, five-year operation, and maintenance of 76 NEVI Formula Program compliant EV charging stations along 19 designated AFCs.

176.    In the absence of the NEVI Formula Program funds the FHWA is unlawfully withholding, NJDOT cannot move forward with this initiative, and New Jersey is impeded

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1    from meeting its EV charging infrastructure goals, which are aimed at reducing environmental

2    harms stemming from the transportation sector.

3    **New Mexico**

4    177.    The NEVI Formula Program joined numerous other climate action efforts

5    occurring in New Mexico. In January 2019, New Mexico Governor Lujan Grisham signed

6    Executive Order (EO) 2019-003, announcing New Mexico will continue to support the 2015

7    Paris Agreement goals and setting a statewide goal to reduce GHG emissions by at least forty-

8    five percent (45%) by 2030, relative to 2005 levels. EO 2019-003 also created the Interagency

9    Climate Change Task Force ("CCTF") to direct the efforts of multiple state agencies to reduce

10   GHG emissions, improve air quality, and protect natural resources.

11   178.    The CCTF established ten interagency Climate Action Teams to propose, plan,

12   and implement strategies. The CCTF has identified transportation decarbonization, including

13   electrification, as key to reaching state GHG reduction goals. State agencies, including

14   NMDOT, have been working together to advance decarbonization strategies, and recent

15   successes include the May 2022 adoption of a Clean Cars Rule.

16   179.    As a member of the CCTF and in support of statewide goals, NMDOT is also

17   actively working to build a climate action program that includes resiliency planning,

18   developing carbon reduction strategies, implementing multimodal plans, and updating facilities

19   with energy efficiency technologies and solar.

20   180.    The deployment of EVs and EV charging infrastructure in New Mexico will

21   improve quality of life across the State by reducing GHG emissions and air pollution.

22   181.    As a result of the FHWA's unlawful actions, New Mexico has been

23   immediately and indefinitely deprived of access to approximately $18.5 million of its available

24   NEVI Formula Program funds. Without that funding, New Mexico's carefully planned efforts

25   to build a network of EV charging infrastructure across the State to ensure all residents have

26   the ability to choose an EV will be wasted and the State is unlikely to achieve its goal of

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

building a future transportation system that serves all its people, including those in disadvantaged communities.

**New York**

182.    New York, through NYSDOT was apportioned a total of approximately $175.5 million in funds over five fiscal years (fiscal years 2022 through 2026) dedicated to carrying out the NEVI Formula Program. New York's share of NEVI Formula Program funds for fiscal years 2022 through 2025 (approximately $138 million) was made available to New York to obligate upon the FHWA's approval of New York's State Electric Vehicle Infrastructure Deployment Plans covering those first four fiscal years.

183.    NYSDOT engaged the Power Authority of New York to perform the first set of NEVI Formula Program funded projects in New York. That procurement concluded on September 8, 2023, wherein NYSDOT obligated $16.1 million to fund 23 initial projects along some of the State's busiest transportation corridors. Eleven stations are operational and the remaining 12 stations are in development.

184.    NYSDOT also engaged the New York State Energy Research and Development Authority ("NYSERDA") to conduct two solicitations for the next stage of NEVI Formula Program funded projects in New York.

185.    NYSERDA issued its first competitive solicitation, Program Opportunity Notice ("PON") 5865, in September 2024 calling for proposals to develop fast charging stations along designated AFCs in New York with a focus on areas north of and including I-84. PON 5865 made $21.5 million in NEVI Formula Program funds available to proposers. Proposals in response to PON 5865 were received by December 4, 2024. NYSERDA's evaluation of PON 5865 proposals is complete.

186.    In December 2024, NYSERDA issued a second solicitation for NEVI Formula Program funded fast charging station proposals, PON 5866, which focused on the areas around New York City, Long Island, and the lower Hudson Valley. PON 5866 made $28.5 million in

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

NEVI Formula Program funds available to proposers. Proposals in response to PON 5866 were received by March 18, 2025. NYSERDA's evaluation of PON 5866 proposals is in progress.

187.    On or about April 28, 2025, NYSDOT reviewed its unobligated NEVI Formula Program fund balance—estimated to be approximately $120 million for fiscal years 2022 through 2025 as NYSDOT had obligated approximately $17.7 million of its apportionment for those years as of that date—and discovered such funds unavailable for obligation in the FHWA portal.

188.    As a direct result of the FHWA's actions, New York has been immediately and indefinitely deprived of access to approximately $120 million of its available NEVI Formula Program funds, NYSDOT and NYSERDA cannot move forward under the two recently issued PONs, and all future uses of NEVI Formula Program funding are now on hold indefinitely.

189.    NEVI Formula Program funded EV charging infrastructure projects are critical to the economy and health of New York by broadening the availability of charging for all makes and models of EVs, addressing climate change, and protecting the health and welfare of New York's residents.

**Oregon**

190.    Oregon, through ODOT, was apportioned approximately $52 million in funds over five fiscal years (fiscal years 2022 through 2026) dedicated to carrying out the NEVI Formula Program. Oregon's share of NEVI Formula Program funds for fiscal years 2022 through 2025 (approximately $41 million) were made available to Oregon to obligate upon the FHWA's approval of Oregon's State Electric Vehicle Infrastructure Deployment Plans covering those fiscal years.

191.    For nearly 20 years, Oregon has actively pursued multi-pronged strategies to reduce harmful GHG emissions in the State. In 2019, the Oregon Legislature passed Senate Bill 1044, setting specific light-duty vehicle electrification goals for the State. The legislation established the following goals: 250,000 registered zero-emission vehicles by 2025, over one

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1    million by 2030 (50% of new vehicle sales), and 2.5 million by 2035 (90% of new vehicle

2    sales). Installing publicly available EV charging stations throughout the State is essential for

3    Oregon to meet its electrification goals. Oregon has determined it needs 8,000-13,000 public

4    fast charging ports and 12,000-50,000 public Level 2 charging ports by 2030 to reach its

5    goals. Oregon planned to use its NEVI Formula Program funds to develop a total of eleven

6    AFCs, each to contain publicly accessible charging and alternative fueling infrastructure.

7        192.    ODOT has thus far obligated approximately $26 million of its approximately

8    $41 million in available NEVI Formula Program funds for planning, preliminary engineering,

9    and construction phases for the installation of EV charging stations in eleven major Oregon

10    corridors.

11        193.    As a result of the FHWA's unlawful actions, ODOT has been immediately and

12    indefinitely deprived of more than $12 million of its available NEVI Formula Program funds.

13    Without those funds, ODOT cannot develop eight of the eleven corridors, representing a loss

14    of at least 40 fast charging stations, or a minimum of 160 charging ports. This accounts for

15    roughly seventy-five percent (75%) of the estimated number of stations ODOT planned to

16    develop. If the FHWA continues to withhold Oregon's NEVI Formula Program funds, the

17    State cannot move forward with the projects described in its State Plans and is highly unlikely

18    to meet its goals of significantly reducing GHG emissions through transportation

19    electrification.

20        **Rhode Island**

21        194.    Rhode Island's State Electric Vehicle Infrastructure Deployment Plans were

22    designed to establish a reliable, accessible, and interconnected EV fast charging network along

23    critical transportation corridors, beginning with the designated Alternative Fuel Corridor (I-95)

24    and expanding statewide. The Plans aimed to reduce range anxiety, promote EV adoption,

25    support GHG emissions reductions, prioritize investments in disadvantaged communities, and

26    prepare the State's workforce and infrastructure for a sustainable, zero-emission transportation

COMPLAINT                                40          ATTORNEY GENERAL OF WASHINGTON
                                                        Environmental Protection Division
                                                        800 Fifth Avenue STE 2000
                                                        Seattle, WA 98104
                                                        (206) 464-7744

future. Each Plan was sequentially structured to build upon prior progress, moving from AFC compliance to equitable and sustainable statewide EV infrastructure expansion.

195.    During Phase 1, for AFC buildout, infrastructure was deployed through a competitive procurement process with a selected vendor. The project was fully completed, all invoices were paid, and all contractual obligations were fulfilled. No pending invoices, encumbrances, or outstanding deliverables remain.

196.    Acting in reliance on the FHWA's compliance with the IIJA, the State issued a Phase 2 Request for Applications (RFA) in November 2024 to award $10 million to eligible public, tribal, higher education, and nonprofit entities. As a result of the FHWA's unlawful actions, Rhode Island halted the open Phase 2 RFA process.

197.    Forcing the closure of an active RFA period caused immediate disruption as many applicants had already initiated or completed their applications. Rhode Island has been unable to award funds to communities and public entities that invested time and resources preparing proposals.

198.    The short- and long-term harms to Rhode Island resulting from the FHWA's unlawful actions are significant and numerous. Rhode Island has been immediately and indefinitely deprived of access to more than $16 million of its available NEVI Formula Program funds.

199.    Rhode Island is steadfast in its commitment to combat climate change and its harmful effects. To that end, the 2021 Act on Climate sets aggressive decarbonization requirements for the State. *See* R.I. Gen. Laws § 42-6.2-1, et. seq. This includes mandates that statewide GHG emissions reach forty-five percent (45%) below 1990 levels by 2030; eighty percent (80%) below 1990 levels by 2040, and that the State achieves net-zero emissions by 2050. *See* R.I. Gen. Laws § 42-6.2-9.

200.    In furtherance of its climate goals, Rhode Island is also firmly committed to reducing transportation-sector GHG emissions and advancing transportation electrification as a

COMPLAINT                                           41                ATTORNEY GENERAL OF WASHINGTON
                                                                        Environmental Protection Division
                                                                           800 Fifth Avenue STE 2000
                                                                             Seattle, WA 98104
                                                                               (206) 464-7744

critical element of its broader climate strategy. Transportation emissions account for over thirty percent (30%) of Rhode Island's total GHG emissions, making it the largest single source of emissions in the state. Delays in EV infrastructure deployment caused by the FHWA's unlawful actions jeopardize the State's ability to meet its GHG reduction mandates under the Act on Climate, as well as other regional air quality improvement goals.

201.    In addition, future EV charging infrastructure projects are likely to face increased construction, equipment, and labor costs due to inflation and ongoing supply chain instability.

202.    The uncertainty caused by the FHWA's unlawful actions also stands to reduce the pool of capable partners willing to engage in future solicitations. Moreover, workforce development efforts, including EV technician training and pipeline programs associated with Phase 2 of the program in Rhode Island, have been delayed, undermining economic development opportunities tied to growth of the clean transportation sector.

203.    Reopening or redesigning paused solicitations will also require additional State resources and will extend project delivery timelines.

**Vermont**

204.    Vermont, through VTrans, was apportioned an approximate total of $21 million in funds over five fiscal years dedicated to carrying out the NEVI Formula Program. Vermont's shares of NEVI Formula Program funds for fiscal years 2022 through 2025 were made available to Vermont to obligate upon the FHWA's approval of its State Electric Vehicle Infrastructure Deployment Plans covering those fiscal years. The first four fiscal years of apportioned funding equaled approximately $16.7 million.

205.    Vermont has long supported the deployment of EVs and other ZEVs across multiple vehicle classes as a means of reducing the environmental effects of the transportation sector and achieving its State GHG emissions reduction targets. For example, Vermont's Global Warming Solutions Act requires Vermont to significantly reduce GHG emissions

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

below historic levels in the coming decades, and Vermont has prepared a Climate Action Plan to identify steps to meet those goals. Development of EV charging infrastructure to support transportation electrification is a Climate Action Plan priority.

206.    Acting in reliance on the FHWA's approval of its State Plans, which, consistent with the IIJA, NEVI Formula Program Guidance, and the FHWA's representations, made NEVI Formula Program funds available for obligation until expended, Vermont, among other things, awarded EV fast charging port projects totaling approximately $9.3 million. Without its NEVI Formula Program funds, Vermont cannot fund all of the projects the State has awarded.

**Wisconsin**

207.    In response to the FHWA's unlawful actions, Wisconsin was forced to cease work related to 15 NEVI Formula Program awards and a current RFP issued to solicit proposals for additional NEVI Formula Program funded projects.

208.    In January 2024, WisDOT issued a NOFO and RFP through the NEVI Formula Program for charging infrastructure along Wisconsin's approved AFCs. The NOFO/RFP closed on May 23, 2024. WisDOT issued 53 awards. As a result of the FHWA's unlawful actions, WisDOT cannot take any further action on 15 of these awards, which represents approximately $7.3 million.

209.    On October 14, 2024, WisDOT issued a second RFP with the intention of issuing awards in Spring 2025. As a result of the FHWA's unlawful actions, WisDOT cannot issue any awards under this RFP.

210.    WisDOT has been immediately and indefinitely deprived of access to approximately $62.65 million of its available NEVI Formula Program funds. In the absence of those funds, WisDOT cannot fund the 15 projects awarded under its January 2024 RFP or issue any new awards to carry out EV charging infrastructure projects.

211.    NEVI Formula Program funded EV charging infrastructure projects are critical to the economy and health of Wisconsin by broadening the availability of EV charging for all

makes and models of EVs, which helps address climate change and protects the health and welfare of Wisconsin's residents.

212.    Even if the FHWA issues new final NEVI Formula Program Guidance in the very near future, Plaintiff States will shoulder the unnecessary cost and burden of developing new State Electric Vehicle Infrastructure Deployment Plans despite having invested months and significant resources developing its previous plans.

**CAUSES OF ACTION**

**COUNT I**

**Violation of the Administrative Procedure Act – In Excess of Statutory Authority**
**Revocation of State Plan Approvals and Withholding of Funds**

213.    Plaintiff States incorporate by reference the allegations contained in the preceding paragraphs.

214.    Each of the Defendants is an "agency" as defined in 5 U.S.C. § 551(1).

215.    Under the APA, the court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

216.    An agency may not take any action that exceeds the scope of its statutory authority.

217.    Neither the IIJA nor any other federal statute or regulation authorizes the Defendants to suspend or revoke State Electric Vehicle Infrastructure Deployment Plan approvals, either individually or categorically.

218.    Neither the IIJA nor any other federal statute or regulation authorizes the Defendants to categorically withhold or withdraw NEVI Formula Program funds.

219.    Each of Defendants' actions represents the consummation of their decision-making and is therefore a final agency action justiciable under the APA.

220.    Accordingly, the Defendants' actions to categorically "suspend" or revoke all State Electric Vehicle Infrastructure Deployment Plan approvals and to categorically withhold

1  or withdraw NEVI Formula Program funds exceed Defendants' statutory authority and must be

2  set aside.

3      221.    Plaintiff States are all aggrieved persons suffering a legal wrong or adversely

4  affected by the federal Defendants' conduct under 5 U.S.C. § 702 and are entitled to

5  declaratory and injunctive relief pursuant to 28 U.S.C. § 2201.

6                                    **COUNT II**

7  **Violation of the Administrative Procedure Act – Arbitrary and Capricious and Not in
   Accordance with Law**

8  **Revocation of State Plan Approvals and Withholding of Funds**

9      222.    Plaintiff States incorporate by reference the allegations contained in the

10  preceding paragraphs.

11      223.    Each of the Defendants is an "agency" as defined in 5 U.S.C. § 551(1).

12      224.    The APA requires that a court "hold unlawful and set aside agency action,

13  findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or

14  otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

15      225.    Agency action is not in accordance with the law if the action contravenes or

16  otherwise fails to implement the statutory directives of Congress consistent with the statute's

17  text, structure, and purpose.

18      226.    Agency action is arbitrary and capricious if the agency fails to articulate a

19  reasoned explanation for its action, fails to consider reasonable alternatives, fails to consider

20  important factors, and/or considers factors Congress did not intend it to consider. Agency

21  action is also arbitrary and capricious if, when departing from a prior policy, an agency fails to

22  display awareness it is changing its position, fails to consider serious reliance interests, or fails

23  to demonstrate that there are good reasons for the new policy, which also must be permissible

24  under the statute.

25      227.    Agency action taken on pretextual grounds violates the APA's requirements of

26  reasoned agency decision-making.

COMPLAINT                              45                  ATTORNEY GENERAL OF WASHINGTON
                                                              Environmental Protection Division
                                                                 800 Fifth Avenue STE 2000
                                                                    Seattle, WA 98104
                                                                      (206) 464-7744

228.    The Defendants made no factual or legal findings, nor did they provide any reasoned basis for their actions to categorically "suspend" or revoke all State Electric Vehicle Deployment Plan approvals.

229.    The Defendants' sole stated rationale for their action to "suspend" or revoke all State Electric Vehicle Deployment Plan approvals—that the recission of the NEVI Formula Program Guidance necessitated the retroactive and categorical "suspension" or revocation of all State Electric Vehicle Deployment Plan approvals—is a contrived, irrational, and insufficient explanation and thus not a reasoned basis for the action.

230.    The Defendants failed to consider whether "suspending" or revoking all State Electric Vehicle Deployment Plan approvals was consistent with the purpose and objectives of the IIJA and the NEVI Formula Program as established by Congress.

231.    The Defendants failed to engage in reasoned consideration of any individual State Electric Vehicle Deployment Plan before categorically "suspending" or revoking all Plan approvals and did not provide reasoned explanation for doing so.

232.    Likewise, Defendants failed to engage in reasoned, individualized consideration of any State Electric Vehicle Deployment Plan or any actions taken by Plaintiff States to carry out those Plans before categorically withdrawing or withholding NEVI Formula Program funds.

233.    The Defendants failed to consider obvious, reasonable, and lawful alternatives to their actions, such as complying with the requirements of the IIJA and honoring their prior approval of Plaintiff States' State Electric Vehicle Infrastructure Deployment Plans for fiscal years 2022 through 2025 while updating NEVI Formula Program Guidance to govern the submission of fiscal year 2026 Plans.

234.    The Defendants' stated rationale for their action to "suspend" or revoke all State Electric Vehicle Deployment Plan approvals and their failure to consider reasonable alternatives exposes the pretextual nature of the Defendants' actions. Upon information and

belief—and as a matter of common sense—the Defendants "suspended" or revoked all State Electric Vehicle Infrastructure Deployment Plan approvals to implement the President's directive to withhold funds "for electric vehicle charging stations made available through the National Electric Vehicle Infrastructure Formula Program . . . ." Exec. Order 14154, 90 Fed. Reg. at 8357.

235.    The Defendants failed to consider Plaintiff States' serious reliance interests, including on the FHWA's prior approvals of their State Plans and the States' expectation that the FHWA would distribute their NEVI Formula Program funds as required.

236.    The Defendants therefore failed to consider the consequences of categorically "suspending" or revoking approval of all State Plans and categorically withholding or withdrawing NEVI Formula Program funds.

237.    The Defendants also failed to demonstrate good reasons for their change in position and their new position directly conflicts with the IIJA and is therefore impermissible under the statute.

238.    Each of Defendants' actions represents the consummation of their decision-making and is therefore a final agency action justiciable under the APA.

239.    Accordingly, the Defendants' actions to categorically "suspend" or revoke all State Electric Vehicle Infrastructure Deployment Plan approvals and to categorically withhold or withdraw NEVI Formula Program funds must be set aside as arbitrary, capricious, and not in accordance with law.

240.    Plaintiff States are all aggrieved persons suffering a legal wrong or adversely affected by the federal Defendants' conduct under 5 U.S.C. § 702 and are entitled to declaratory and injunctive relief pursuant to 28 U.S.C. § 2201.

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

**COUNT III**

**Violation of the Administrative Procedure Act – Not in Accordance with Law and Without Observance of Procedure Required By Law Withholding of Funds**

241.    Plaintiff States incorporate by reference the allegations contained in the preceding paragraphs.

242.    Each of the Defendants is an "agency" as defined in 5 U.S.C. § 551(1).

243.    The APA requires that a court "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law . . . [or] without observance of procedure required by law" 5 U.S.C. § 706(2)(A), (D).

244.    Agency action is not in accordance with the law if the action contravenes or otherwise fails to implement the statutory directives of Congress consistent with the statute's text, structure, and purpose.

245.    Judicial review of an agency's procedural compliance is "exacting." *See Kern Cnty. Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006).

246.    The IIJA provides an exclusive list of circumstances in which the Defendants may withhold or withdraw from a State its share of NEVI Formula Program funds for a fiscal year.

247.    The Defendants may withhold a State's funds if it fails to timely submit a State Electric Vehicle Infrastructure Deployment Plan. After a State has submitted its Plan, the Defendants may withhold or withdraw a State's funds for the fiscal year(s) covered by the Plan only after determining that the State has not taken actions to carry out that Plan, and only after following all statutorily required procedure.

248.    Specifically, before determining that a State has not taken actions to carry out its Plan, the Defendants must comply with the strict procedural requirements set out in the IIJA, including to "notify the State, consult with the State, and identify actions that can be

48

1    taken to rectify concerns, and provide at least 90 days for the State to rectify concerns and take

2    action to carry out its plan." 135 Stat. at 1422.

3        249.    After making a determination that a State has not taken action to carry out its

4    Plan, the Defendant must comply with additional procedural requirements before withholding

5    or withdrawing NEVI Formula Program funds from the State. Specifically, the Defendants

6    must give a further 60 days' notice, an opportunity to be heard, and an opportunity to appeal

7    before withholding or withdrawing any funds." *Id.*

8        250.    The Defendants' action to prohibit obligations of NEVI Formula Program funds

9    made available for obligation through the FHWA's approval of each State's State Electric

10   Vehicle Infrastructure Deployment Plans constitutes a withdrawal or withholding of NEVI

11   Formula Program funds.

12       251.    The Defendants have therefore withdrawn and withheld NEVI Formula

13   Program funds from Plaintiff States without making the statutorily required determination that

14   Plaintiff States have not taken action to carry out their plans and without following any

15   statutorily required procedure.

16       252.    The Defendants failed to provide notice, consult with Plaintiff States, or identify

17   any concerns with Plaintiff States' actions to carry out their State Electric Vehicle

18   Infrastructure Deployment Plans.

19       253.    The Defendants failed to provide at least 90 days for Plaintiff States to rectify

20   any concerns, failed to provide the statutorily required 60-day notice to Plaintiff States on their

21   intent to withhold or withdraw funds, and failed to provide any opportunity to appeal the

22   FHWA's decision to withhold or withdraw funds.

23       254.    Rather than follow the procedure to withhold or withdraw funds set forth by

24   Congress in the IIJA, the Defendants achieved their goal of withholding NEVI Formula

25   Program funds by prohibiting new obligations on the basis of their own unlawful "suspension"

26   or revocation of all State Electric Vehicle Infrastructure Deployment Plan approvals, which

was predicated solely on their recission of the NEVI Formula Program Guidance.

255.    Each of Defendants' actions represents the consummation of their decision-making and is therefore a final agency action justiciable under the APA.

256.    Accordingly, Defendants' action to withhold or withdraw NEVI Formula Program funds must therefore be set aside as not in accordance with law and without observance of procedure required by law.

257.    Plaintiff States are all aggrieved persons suffering a legal wrong or adversely affected by the federal Defendants' conduct under 5 U.S.C. § 702 and are entitled to declaratory and injunctive relief pursuant to 28 U.S.C. § 2201.

## COUNT IV
### Violation of the Separation of Powers Doctrine, Usurping Congressional Authority Revocation of State Plan Approvals and Prohibition on Obligations

258.    Plaintiff States incorporate by reference the allegations contained in the preceding paragraphs.

259.    Congress possesses exclusive power to legislate. Article I, Section 1 of the Constitution states that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and a House of Representatives." U.S. Const. art. I, § 1; *see Clinton v. City of New York*, 524 U.S. 417, 438 (1998) ("There is no provision in the Constitution that authorizes the President to enact, to amend, or to repeal statutes.").

260.    The Constitution also "grants the power of the purse to Congress, not the President." *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1231 (9th Cir. 2018); *see* U.S. Const. art. I, §9, cl. 7 (Appropriations Clause); U.S. Const. art. I, § 8, cl. 1 (Spending Clause).

261.    The Constitution strictly controls how legislation enacted by Congress and signed into law by the President may be amended or repealed. Article I of the Constitution prescribes a "single, finely wrought and exhaustively considered[] procedure" for enacting

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1   such an amendment or repeal: passage of a new bill by both houses of Congress and

2   presentment to the President for his signature or veto. *Immigration & Naturalization Serv. v.*

3   *Chadha*, 462 U.S. 919, 951 (1983); *see* U.S. Const. art. I, § 7, cl. 2, 3. The Constitution

4   identifies specific roles for the Executive in the lawmaking process, via the Recommendation

5   Clause and the Presentment Clause, which creates the President's veto power; outside these

6   roles, the Executive Branch has no authority to change the law to suit the President's policy.

7   U.S. Const. art. II, § 3; *id.* § 7, cl. 2; *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579,

8   587 (1952) ("In the framework of our Constitution, the President's power to see that the laws

9   are faithfully executed refutes the idea that he is to be a lawmaker. The Constitution limits his

10  functions in the lawmaking process to the recommending of laws he thinks wise and the

11  vetoing of laws he thinks bad."); *cf. Perry v. Merit Sys. Prot. Bd.*, 582 U.S. 420, 441 (2017)

12  (Gorsuch, J., dissenting) ("If a statute needs repair, there's a constitutionally prescribed way to

13  do it. It's called legislation. To be sure, the demands of bicameralism and presentment are real

14  and the process can be protracted. But the difficulty of making new laws isn't some bug in the

15  constitutional design: it's the point of the design, the better to preserve liberty.").

16      262.    Consistent with these principles, the Executive acts at the lowest ebb of his

17  constitutional authority and power when he acts contrary to the will of Congress by attempting

18  to unilaterally decline to spend appropriated funds. *See Youngstown*, 343 U.S. at 637-638

19  (1952) (Jackson, J., concurring).

20      263.    The Executive's authority is particularly limited where, as here, Congress

21  mandated that the Defendants disburse congressionally appropriated NEVI Formula Program

22  funds to States in amounts in accordance with a specific formula, and the Defendants' actions

23  are incompatible with congressional directive. Congress established the NEVI Formula

24  Program and appropriated funds for the express purpose of providing the States with funding

25  for EV charging infrastructure and directed precise amounts to each State leaving no discretion

26  for the Executive Branch with respect to those amounts.

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

264.    Congress has generally provided for a procedure by which the Executive may propose to Congress to either rescind or cancel funds. *See* Congressional Budget and Impoundment Control Act of 1974, 2 U.S.C. §§ 682 *et seq*. Congress also specifically prescribed the exclusive grounds for which the Defendants could withhold or withdraw NEVI Formula Program funds from a State and the procedure with which the Defendants must comply before doing so. Congress also mandated that funds lawfully withheld or withdrawn from a State be redistributed to other States and local jurisdictions for EV infrastructure development.

265.    The Impoundment Control Act precludes the Executive from refusing to spend or distribute congressionally appropriated funds, instead requiring the President to "propose[]" any rescission to Congress (which Congress must then affirmatively approve). 2 U.S.C. §§ 683, 684(a). The Impoundment Control Act also does not authorize the Executive to defer funding for the reasons the Defendants invoke here. As described above, the Administration generally opposes the IIJA, and the NEVI Formula Program specifically, on policy grounds. Accordingly, the Executive's authority is at its "lowest ebb." *See Youngstown*, 343 U.S. at 637-638 (Jackson, J., concurring).

266.    The Defendants' actions to "suspend" or revoke all State Electric Vehicle Infrastructure Deployment Plan approvals and to categorically withhold or withdraw NEVI Formula Program funds violate the constitutional separation of powers doctrine and impermissibly arrogates to the Executive legislative and spending powers reserved to Congress.

267.    Federal courts possess the power in equity to grant injunctive relief "with respect to violations of federal law by federal officials." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). Plaintiff States are "entitled to invoke the equitable jurisdiction to restrain enforcement" of unconstitutional acts by federal officials. *Panama Ref. Co. v. Ryan*, 293 U.S. 388, 414 (1935). Federal courts may also set aside agency action found to be

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1    "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

2        268.    Plaintiff States are all aggrieved persons suffering a legal wrong or adversely

3    affected by the Defendants' conduct under 5 U.S.C. § 702.

4        269.    Pursuant to 5 U.S.C. § 706(2)(B) and 28 U.S.C. § 2201, Plaintiff States are

5    entitled to a declaration that the Defendants' actions to categorically "suspend" or revoke all

6    State Electric Vehicle Infrastructure Deployment Plan approvals and to categorically withhold

7    or withdraw NEVI Formula Program funds violate the constitutional separation of powers

8    doctrine and impermissibly arrogate to the Executive power reserved to Congress.

9                                    **COUNT V**
                            **Violation of Take Care Clause**
10        **Revocation of State Plan Approvals and Withholding of Funds**

11        270.    Plaintiff States incorporate by reference the allegations contained in the

12    preceding paragraphs.

13        271.    The Take Care Clause provides that the Executive must "take Care that the

14    Laws be faithfully executed." U.S. Const. art. II, § 3; *Utility Air Reg. Grp. v. EPA*, 573 U.S.

15    302, 327 (2014) ("Under our system of government, Congress makes laws and the President

16    . . . 'faithfully execute[s]' them.").

17        272.    The Executive Branch violates the Take Care Clause where it declines to

18    execute or otherwise undermines statutes enacted by Congress and signed into law. *See In re*

19    *United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 551 (D.C. Cir. 1999) ("[T]he President

20    is without authority to set aside congressional legislation by executive order."); *Kendall v.*

21    *United States*, 37 U.S. 524, 613 (1838) (rejecting argument that by charging the President with

22    faithful execution of the laws, the Take Care clause "implies a power to forbid their

23    execution").

24        273.    The Defendants' actions to carry out President Trump's directive to

25    "[t]erminat[e] the Green New Deal," and specifically his directive to withhold funds

26    / / /

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1  appropriated through the IIJA for EV charging infrastructure violates the Take Care Clause of

2  the Constitution.

3      274.    The Defendants' actions to categorically "suspend" or revoke all State Electric

4  Vehicle Infrastructure Deployment Plans approvals and to categorically withhold or withdraw

5  NEVI Formula Program funds are contrary to the Executive's duty to faithfully execute the

6  IIJA as enacted by Congress and therefore violate the Take Care Clause.

7      275.    Federal courts possess the power in equity to grant injunctive relief "with

8  respect to violations of federal law by federal officials." *Exceptional Child Ctr., Inc.*, 575 U.S.

9  at 327. Plaintiff States are "entitled to invoke the equitable jurisdiction to restrain enforcement"

10 of unconstitutional acts by federal officials. *Panama Ref. Co.*, 293 U.S. at 414. Federal courts

11 may also set aside agency action found to be "contrary to constitutional right, power, privilege,

12 or immunity." 5 U.S.C. § 706(2)(B).

13     276.    Plaintiff States are all aggrieved persons suffering a legal wrong or adversely

14 affected by the Defendants' conduct under 5 U.S.C. § 702.

15     277.    Pursuant to 5 U.S.C. § 706(2)(B) and 28 U.S.C. § 2201, Plaintiff States are

16 entitled to a declaration that the Defendants' actions to categorically "suspend" or revoke all

17 State Electric Vehicle Infrastructure Deployment Plan approvals and to categorically withhold

18 or withdraw NEVI Formula Program funds violate the Take Care Clause.

19                                **COUNT VI**

20                          **Common Law *Ultra Vires***

21  **Conduct Outside the Scope of Statutory Authority Conferred on the Executive
    Revocation of State Plan Approvals and Withholding of Funds**

22     278.    Plaintiff States incorporate by reference the allegations contained in the

23 preceding paragraphs.

24     279.    Plaintiff States have a non-statutory right of action to have action take in excess

25 of legal authority declared unlawful.

26 */ / /*

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

280.    Agency or executive officer action taken in excess of legal authority is *ultra vires*.

281.    A court reviewing executive action has an independent duty to determine what the law is and whether executive officers invoking statutory authority exceed their statutory power. *Exceptional Child Ctr., Inc.*, 575 U.S. at 327.

282.    Neither the IIJA nor any other federal statute or regulation authorizes the Defendants to suspend or revoke State Electric Vehicle Infrastructure Deployment Plan approvals, either individually or categorically.

283.    Neither the IIJA nor any other federal statute or regulation authorizes the Defendants to categorically withhold or withdraw NEVI Formula Program funds.

284.    The Defendants have therefore acted contrary to law and *ultra vires* by categorically "suspending" or revoking all State Electric Vehicle Infrastructure Deployment Plan approvals and categorically withholding or withdrawing NEVI Formula Program funds.

285.    Federal courts possess the power in equity to grant injunctive relief "with respect to violations of federal law by federal officials." *Exceptional Child Ctr., Inc.*, 575 U.S. at 327. Plaintiff States are "entitled to invoke the equitable jurisdiction to restrain enforcement" of unconstitutional acts by federal officials. *Panama Ref. Co.*, 293 U.S. at 414.

286.    Pursuant to 28 U.S.C. § 2201, Plaintiff States are entitled to a declaration that Defendants' actions to categorically "suspend" or revoke all State Electric Vehicle Infrastructure Deployment Plans and to categorically withhold or withdraw NEVI Formula Program funds are *ultra vires*.

/ / /

/ / /

/ / /

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1

**PRAYER FOR RELIEF**

2

WHEREFORE, Plaintiff States pray that the Court:

3
4
5

    a.  Declare the Defendants' actions to categorically "suspend" or revoke all State Electric Vehicle Infrastructure Deployment Plan approvals and to categorically withhold or withdraw NEVI Formula Program funds violate the APA.

6
7
8
9

    b.  Declare the Defendants' actions to categorically "suspend" or revoke all State Electric Vehicle Infrastructure Deployment Plan approvals and to categorically withhold or withdraw NEVI Formula Program funds violate the separation of powers doctrine and the Take Care Clause of the U.S. Constitution.

10
11
12
13
14

    c.  Declare the Defendants' actions to categorically "suspend" or revoke all State Electric Vehicle Infrastructure Deployment Plan approvals and to categorically withhold or withdraw NEVI Formula Program funds are contrary to the law, outside the Defendants' authority, and therefore unlawful under the common law *ultra vires* doctrine.

15
16
17

    d.  Vacate the Defendants' actions to categorically "suspend" or revoke Plaintiff States' Electric Vehicle Infrastructure Deployment Plan approvals and to categorically withhold or withdraw NEVI Formula Program funds.

18
19

    e.  Preliminarily and permanently enjoin the Defendants from "suspending" or revoking Plaintiff States' Electric Vehicle Deployment Plan approvals.

20
21
22
23

    f.  Preliminarily and permanently enjoin the Defendants from withholding or withdrawing NEVI Formula Program funds for any reason not set forth in the IIJA or applicable FHWA regulations, and without following the IIJA's procedural requirements, including by refusing to review and process Plaintiff

24
25
26

56

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1    States' requests for authorization to obligate funds for specific EV charging

2    infrastructure development activities in the normal course.

3    g.  Preliminarily and permanently enjoin the Defendants from implementing any

4    requirement, policy, or guidance that contravenes congressional intent and

5    directive in making authorization request decisions and obligating funds for

6    specific activities.

7    h.  Preliminarily and permanently enjoin the Defendants from implementing or

8    effectuating through any action the directive in the Executive Order to withhold

9    or withdraw NEVI Formula Program funds in contravention of the express

10   congressional mandates in the IIJA.

11   i.  Retain jurisdiction to ensure compliance with the orders of this Court.

12   j.  Award the Plaintiff States their reasonable fees, costs, and expenses, including

13   attorneys' fees, pursuant to 28 U.S.C. § 2412.

14   k.  Grant other such relief as this Court may deem proper.

15

16   DATED this 7th day of May 2025.

17

18   **NICHOLAS W. BROWN**
     Attorney General for the State of Washington

19   *s/ Caitlin M. Soden*
     CAITLIN M. SODEN, WSBA # 55457
20   LEAH A. BROWN, WSBA # 45803
     TERA HEINTZ, WSBA #54921
21   CRISTINA SEPE, WSBA #53609
     Assistant Attorneys General
22   800 Fifth Avenue, Suite 2000
     Seattle, Washington 98104
23   (206) 464-7744
     caitlin.soden@atg.wa.gov
24   leah.brown@atg.wa.gov
     tera.heintz@atg.wa.gov
25   cristina.sepe@atg.wa.gov

26   *Attorneys for the State of Washington*

COMPLAINT                          57          ATTORNEY GENERAL OF WASHINGTON
                                               Environmental Protection Division
                                               800 Fifth Avenue STE 2000
                                               Seattle, WA 98104
                                               (206) 464-7744

**ROB BONTA**
Attorney General for the State of California

By: /s/ *Theodore A. McCombs*
THEODORE A. MCCOMBS, SBN 316243*
Deputy Attorney General
ROBERT SWANSON, SBN 295159*
Acting Supervising Deputy Attorney General
NATALIE COLLINS, SBN 338348*
ELIZABETH JONES, SBN 326118*
ELIZABETH SONG, SBN 326616*
Deputy Attorneys General
(619) 738-9003
theodore.mccombs@doj.ca.gov

*Attorneys for the State of California*

**PHILIP J. WEISER**
Attorney General for the State of Colorado

By: /s/ *Carrie Noteboom*
CARRIE NOTEBOOM, CBA # 52910*
Assistant Deputy Attorney General
DAVID MOSKOWITZ, CBA # 61336*
Deputy Solicitor General
JESSICA L. LOWREY, CBA # 45158*
First Assistant Attorney General
SARAH WEISS, NYSBA # 4898805*
Senior Assistant Attorney General
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6000
carrie.noteboom@coag.gov
david.moskowitz@coag.gov
jessica.lowrey@coag.gov
sarah.weiss@coag.gov
FAX: (720) 508-6040

*Attorneys for the State of Colorado*

**KRISTIN K. MAYES**
Attorney General for the State of Arizona

By: /s/ *Lauren Watford*
LAUREN WATFORD, SBA # 037346**
Assistant Attorney General
Arizona Attorney General's Office
2005 North Central Avenue
Phoenix, Arizona 85004
(602) 542-3333
Lauren.Watford@azag.gov

*Attorneys for the State of Arizona*

**KATHLEEN JENNINGS**
Attorney General of the State of Delaware

By: /s/ *Vanessa L. Kassab*
IAN R. LISTON, DSBA # 5507**
Director of Impact Litigation
RALPH K. DURSTEIN III, DSBA # 0912**
VANESSA L. KASSAB, DSBA # 5612**
Deputy Attorneys General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

*Attorneys for the State of Delaware*

**BRIAN L. SCHWALB**
Attorney General

/s/ *Lauren Cullum*
LAUREN CULLUM, DCB # 90009436**
Special Assistant Attorney General
Office of the Attorney General

**ANNE E. LOPEZ**
Attorney General for the State of Hawai'i

By: /s/ *Kaliko'onālani D. Fernandes*
DAVID D. DAY, HSBA # 9427**
Special Assistant to the Attorney General

for the District of Columbia
400 6th Street, N.W., 10th Floor
Washington, D.C. 20001
Email: lauren.cullum@dc.gov

*Attorneys for the District of Columbia*

KALIKOʻONĀLANI D. FERNANDES,
HSBA # 9964**
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov

*Attorneys for the State of Hawaiʻi*

**KWAME RAOUL**
Attorney General for the State of Illinois

*/s/ Jason E. James*
JASON E. JAMES, ISBA ARDC #
6300100**
Assistant Attorney General
Office of the Attorney General
Environmental Bureau
201 W. Pointe Drive, Suite 7
Belleville, IL 62226
Phone: (217) 843-0322
Email: jason.james@ilag.gov

*Attorneys for the State of Illinois*

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: */s/ Steven J. Goldstein*
STEVEN J. GOLDSTEIN, MSBA #
1612130206**
*Assistant Attorney General*
Office of the Attorney General of Maryland
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
(410) 576-6414
sgoldstein@oag.state.md.us

*Attorneys for the State of Maryland*

**KEITH ELLISON**
Attorney General for the State of Minnesota

*s/ Peter N. Surdo*
PETER N. SURDO, MSBA # 339015**
Special Assistant Attorney General
Environmental and Natural Resources
Division
445 Minnesota Street, Suite 1800
Saint Paul, Minnesota 55101
651-757-1061
peter.surdo@ag.state.mn.us

*Attorneys for the State of Minnesota*

**MATTHEW J. PLATKIN**
Attorney General for the State of New Jersey

*/s/ Morgan L. Rice*
MORGAN L. RICE, NJSBA Bar #
018782012**
JUSTINE M. LONGA, NJSBA Bar #
305062019**
*Deputy Attorneys General*
RACHEL U. DOOBRAJH, NJSBA #
020952002**
*Assistant Attorney General*
Office of the Attorney General
25 Market Street
Trenton, NJ 08625
(609) 696-4527
Morgan.Rice@law.njoag.gov
Justine.Longa@law.njoag.gov
Rachel.Doobrajh@law.njoag.gov

*Attorneys for the State of New Jersey*

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1

2

3  **RAÚL TORREZ**
   Attorney General for the State of New
   Mexico

4

5  /s/ *Amy Senier*
   AMY SENIER, MBA # 672912**
   Senior Counsel

6  New Mexico Department of Justice
   P.O. Drawer 1508

7  Santa Fe, NM 87504-1508
   505-490-4060

8  asenier@nmdoj.gov

9  *Attorneys for the State of New Mexico*

10 **DAN RAYFIELD**
   Attorney General of the State of Oregon

11

12 /s/ *Sarah Van Loh*
   SARA VAN LOH OSB # 044398**
   Senior Assistant Attorney General

13 100 SW Market Street
   Portland, Oregon 97201

14 Tel (971) 673-1880
   Fax (971) 673-5000

15 Sara.VanLoh@doj.oregon.gov

16 *Attorneys for State of Oregon*

17

18 **CHARITY R. CLARK**
   Attorney General of the State of Vermont

19

20 /s/ *Jonathan T. Rose*
   JONATHAN T. ROSE, VBA # 4415**
   Solicitor General

21 Office of the Vermont Attorney General
   109 State Street

22 Montpelier, VT 05609
   (802) 828-3171

23 Jonathan.rose@vermont.gov

24 *Attorneys for Plaintiff State of Vermont*

25

26 *pro hac vice application pending
   **pro hac vice application forthcoming*

**LETITIA JAMES**
Attorney General of the State of New York

/s/ *Kyle Burns*
KYLE BURNS, NYSBA # 5589940**
Environmental Protection Bureau
28 Liberty Street
New York, NY 10005
(212) 416-8451

*Attorneys for the State of New York*

**PETER F. NERONHA**
Attorney General of Rhode Island

/s/ *Nicholas M. Vaz*
NICHOLAS M. VAZ, RIBA # 9501**
Special Assistant Attorney General
Office of the Attorney General
Environmental and Energy Unit
150 South Main Street
Providence, Rhode Island 02903
(401) 274-4400 ext. 2297
nvaz@riag.ri.gov

*Attorneys for State of Rhode Island*

**JOSHUA L. KAUL**
Attorney General for the State of Wisconsin

s/ *Tressie K. Kamp*
TRESSIE KAMP, WI SBN # 1082298**
Assistant Attorney General
Public Protection Unit
17 West Main Street
Madison, Wisconsin 53703
608-266-9595
tressie.kamp@wisdoj.gov

*Attorneys for Plaintiff State of Wisconsin*