1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| STATE OF WASHINGTON, et al., | NO.  2:25-CV-00848 |
| PLAINTIFFS, | PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |
| v. | NOTE ON MOTION CALENDAR: **JUNE 4, 2025** |
| U.S. DEPARTMENT OF TRANSPORTATION, et al., | |
| DEFENDANTS. | ORAL ARGUMENT REQUESTED |

1

**TABLE OF CONTENTS**

2  I.    INTRODUCTION...............................................................................................1

3  II.   BACKGROUND................................................................................................2

4      A.   Congress Mandated FHWA to Distribute NEVI Formula Program Funds to
5           States for Strategic Deployment of Electric Vehicle Charging Infrastructure .........2

       B.   Consistent with the Statute, States Submitted Implementation Plans, Entitling
6           Them to Apportioned Funds ................................................................................3

7      C.   President Trump Directed Elimination of an "Electric Vehicle Mandate" and
            an Immediate Pause on Disbursement of NEVI Formula Program Funds................6
8
       D.   FHWA Abruptly Revoked All State Implementation Plan Approvals and Is
9           Categorically Withholding NEVI Formula Program Funds ....................................6

10     E.   Defendants' Actions Have Caused, and Will Continue to Cause, Irreparable
            Harm to Plaintiff States........................................................................................7
11
12 III.   LEGAL STANDARD .........................................................................................8

13 IV.   ARGUMENT ....................................................................................................8

14     A.   Plaintiffs Are Likely to Succeed on the Merits.......................................................8

15          1.   Defendants took final agency action ...............................................................9

16          2.   Defendants' actions were in excess of statutory authority and contrary to
                 law ............................................................................................................10

17          3.   Defendants' actions were arbitrary and capricious .........................................12

18          4.   Defendants acted "without observance of procedure required by law"...........15

19          5.   Defendants' failure to follow the IIJA's statutory mandate violates the
                 separation of powers..................................................................................15
20
21     B.   Plaintiff States Face Irreparable Harm Absent a Preliminary Injunction ...............17

22          1.   Harm to Plaintiff States' EV Infrastructure Programs ....................................18

23          2.   Increased administrative burden to states......................................................21

       C.   The Balance of Equities and Public Interest Factors Strongly Favor Entry of a
24          Preliminary Injunction.......................................................................................22

25     D.   Plaintiff States Are Entitled to Preliminary Relief .................................................25

26 V.    CONCLUSION................................................................................................25

# I.    INTRODUCTION

In 2021, Congress passed the Infrastructure Investment and Jobs Act ("IIJA"), a bipartisan law enacted to provide historic investments in a broad swath of infrastructure projects, including broadband, rail and transit, clean energy, and water. Through the IIJA, Congress created the National Electric Vehicle Infrastructure ("NEVI") Formula Program. The Program distributes $5 billion in critical funding to States to build electric vehicle charging infrastructure that improves the reliability and accessibility of electric vehicles. Importantly, Congress did not commit the funding for this Program to Executive Branch discretion; rather, it mandated that NEVI Formula Program funds be apportioned to States according to a statutory formula. But the Federal Highway Administration ("FHWA") now refuses to comply with the law. FHWA abruptly halted the Program and is withholding these funds. FHWA took this unlawful action because the President issued an executive order mandating all federal agencies to "immediately pause the disbursement of funds appropriated through . . . the Infrastructure Investment and Jobs Act . . . including but not limited to funds for electric vehicle charging stations made available through the National Electric Vehicle Infrastructure [NEVI] Formula Program." Exec. Order No. 14,154, *Unleashing American Energy*, 90 Fed. Reg. 8353, 8357 (Jan. 29, 2025).

On February 6, 2025, FHWA told States it had categorically halted the NEVI Formula Program. FHWA declared it had rescinded all NEVI Formula Program Guidance and immediately and unilaterally revoked its approval of all State Plans, which the IIJA requires States to submit to access their dedicated shares of NEVI funds. Finally, FHWA announced it was categorically withholding billions of dollars of congressionally mandated funding from the States, stating that "effective immediately, no new obligations may occur under the NEVI Formula Program until [] updated final NEVI Formula Program Guidance is issued and new State [P]lans are submitted and approved." Through these actions, FHWA has functionally abrogated the NEVI Formula Program by executive fiat.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No.  2:25-cv-000848

1

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

The Court should grant a preliminary injunction to enjoin Defendants' unlawful actions and restore the NEVI Formula Program. The IIJA imposes clear, mandatory commands to provide NEVI funds to the States, does not authorize the categorical revocation of State Plans, and strictly limits the withholding of NEVI funds to narrow circumstances not applicable here. Defendants' actions to implement the President's anti-NEVI directive are thus unlawful under the Administrative Procedure Act because they are contrary to law and arbitrary and capricious, and Defendants failed to follow required procedure. For similar reasons, Defendants also violated the Constitution's separation of powers principles. Because Defendants' withholding of billions of dollars has arrested Plaintiff States' NEVI funded infrastructure programs mid-stream—halting everything from awarding and contracting processes to project construction—Plaintiff States will suffer irreparable harm in the absence of preliminary injunctive relief. Finally, the public interest suffers greatly from the delay or cancellation of these electric vehicle infrastructure projects, while Defendants suffer no harm from executing the precise instructions Congress imposed in the IIJA.

## II.    BACKGROUND

### A.    Congress Mandated FHWA to Distribute NEVI Formula Program Funds to States for Strategic Deployment of Electric Vehicle Charging Infrastructure

On November 15, 2021, then President Biden signed into law the Bipartisan Infrastructure Law, enacted as the Infrastructure Investment and Jobs Act. Pub. L. No. 117-58, 135 Stat. 429 (2021). In the IIJA, Congress established the NEVI Formula Program and appropriated $5 billion to provide "funding to the States to strategically deploy electric vehicle charging infrastructure and to establish an interconnected network to facilitate data collection, access, and reliability." 135 Stat. at 1421. Congress instructed federal officials to provide NEVI funds to States according to a specific statutory formula—the same federal formula used to distribute highway funds. *Id.* at 1422.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No.  2:25-cv-000848

2

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

The IIJA directs how States must use their NEVI funds. After pre-apportionment set-asides for administration and an additional grant program, the NEVI funds apportioned to States "shall be used for: (1) the acquisition and installation of electric vehicle charging infrastructure to serve as a catalyst for the deployment of such infrastructure and to connect it to a network to facilitate data collection, access, and reliability; (2) proper operation and maintenance of electric vehicle charging infrastructure; and (3) data sharing about electric vehicle charging infrastructure to ensure the long-term success of investments made under [the NEVI Formula Program provisions of the IIJA]." *Id.* at 1421-22; *see also id.* at 1425 (discussing set-asides). Distribution of NEVI funds is not discretionary: The Secretary of Transportation ("Secretary") "**shall distribute** among the States the [NEVI Formula Program funds] so that each State receives" the amount determined by the formula. *Id.* at 1422 (emphasis added).

The IIJA also specifies how NEVI funds must be administered. Within 90 days of the statute's enactment, and in coordination with the Secretary of Energy, the Secretary was required to develop "guidance for States and localities to strategically deploy electric vehicle charging infrastructure" consistent with the NEVI Formula Program provisions of the IIJA" ("NEVI Formula Program Guidance"). *Id.* at. 1423. FHWA issued NEVI Formula Program Guidance on February 10, 2022, and has updated the Guidance annually.

**B.    Consistent with the Statute, States Submitted Implementation Plans, Entitling Them to Apportioned Funds**

Congress established a single prerequisite for States to receive their share of the NEVI funding appropriated by Congress: Each State must provide a State Electric Vehicle Infrastructure Deployment Plan ("State Plan"), by a deadline established by the Secretary, describing how the State "intends to use funds distributed to the State . . . to carry out the [NEVI Formula] Program for each fiscal year in which funds are made available." *Id.* at. 1422. Beginning in 2022, after reviewing State Plans, FHWA notified States by letter that its Plan

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No.  2:25-cv-000848

3

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

was approved and its share of funds for the fiscal year(s) covered by the Plan are available for obligation. *See, e.g.*, Meredith Decl. ¶¶24-25 & Exs. 4-6.

"Obligation" refers to a "definite commitment that creates a legal liability of the government for the payment of goods and services ordered or received, or a legal duty on the part of the United States that could mature into" such a liability. *See* U.S. Gov't Accountability Off., *A Glossary of Terms Used in the Federal Budget Process*, GAO-05-734SP, at 70 (Sept. 2005).[1] An "expenditure" or "disbursement" is the actual spending of federal funds. *Id.* at 45, 48. States obligate their share of apportioned NEVI funds by submitting an authorization request for specific activities. So long as the proposed activities meet minimum standards for NEVI funded projects and other applicable regulatory standards for federal-aid highway projects, FHWA must approve States' requests for authorization. *See* 23 C.F.R. § 635.309; 23 C.F.R. Part 680. Upon FHWA authorization, NEVI funds are obligated for those activities. When the State submits to FHWA expenses incurred for those activities, it can draw down the obligated funds, which are then disbursed into State accounts.

Consistent with the IIJA, the deadlines established by the Secretary, and the NEVI Formula Program Guidance, Plaintiff States prepared and submitted to FHWA State Plans describing how they intended to use their share of funds to carry out the NEVI Formula Program. *See* Collins-Worachek Decl. ¶9; de Alba Decl. ¶7; Hastings Decl. ¶9; Irvin Decl. ¶9; Kearns Decl. ¶¶13-15; Kelly Decl. ¶¶7, 9; Meredith Decl. ¶¶22-23; Nelson Decl. ¶13; Patel Decl. ¶8; Pietz Decl. ¶¶9-10; Pines Decl. ¶10; Shishido Decl. ¶9; Valdez Decl. ¶8; Ward Decl. ¶9. FHWA's approval letters explicitly stated that "[w]ith this approval, Fiscal Year . . . funds are now available to [each State] for obligation." Collins-Worachek Decl. ¶10; de Alba Decl. Exh. 2; Hastings Decl. ¶10; Irvin Decl. ¶10; Kearns Decl. ¶16; Meredith ¶25; Nelson Decl. ¶15; Patel Decl. ¶9; Pietz Decl. ¶11; Pines Decl. ¶12; Shishido Decl. ¶10; Valdez Decl. ¶9; Ward Decl. ¶10.

---

[1] Available at https://www.gao.gov/assets/gao-05-734sp.pdf.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No.  2:25-cv-000848

4

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1    Defendants' ability to withhold or withdraw NEVI funds from States is expressly

2    limited by statute. Under the IIJA, the Secretary must distribute to each State its apportioned

3    share of funds unless the State fails to timely submit a State Plan or the Secretary "determines

4    a State has not taken action to carry out its [P]lan." 135 Stat. at 1422.

5    In addition to these clear substantive limitations, Congress also imposed strict

6    procedural requirements the Secretary must follow before withholding or withdrawing a

7    State's funds: "[P]rior to the Secretary making a determination that a State has not taken

8    actions to carry out its [P]lan, the Secretary shall notify the State, consult with the State, and

9    identify actions that can be taken to rectify concerns, and provide at least 90 days for the State

10    to rectify concerns and take action to carry out its [P]lan." *Id.* Even then, the Secretary is

11    required to give additional notice and an opportunity to be heard before withholding or

12    withdrawing any funds: "[T]he Secretary shall provide notice to a State on the intent to

13    withhold or withdraw funds not less than 60 days before withholding or withdrawing any

14    funds, during which time the States shall have an opportunity to appeal a decision to withhold

15    or withdraw funds directly to the Secretary." *Id.*

16    To further cement that NEVI funds must be distributed to the States for building

17    electric vehicle ("EV") charging infrastructure, the IIJA expressly mandates an alternative path

18    for distributing funds lawfully withheld or withdrawn from a State in a given fiscal year. In

19    that instance, the Secretary will "award such funds on a competitive basis to local jurisdictions

20    within the State for use on projects that meet the eligibility requirements." *Id.* If the Secretary

21    cannot fully award these funds to local jurisdictions within the State, "any such funds

22    remaining **shall** be distributed among other States . . . in the same manner as funds distributed

23    for that fiscal year." *Id.* at 1422-23 (emphasis added).

24    Thus, if State submits Plan(s) by the deadline, FHWA must provide that State with its

25    share of NEVI funding unless the State fails to take action to carry out its Plan **and** the

26    Secretary follows the statutorily defined procedural requirements to provide the State multiple

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-cv-000848

5

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

notices, a chance to cure deficiencies, and an opportunity to appeal prior to any redistribution of the funds. Even then, FHWA must redistribute the apportioned funds to be used for NEVI Formula Program purposes.

## C.    President Trump Directed Elimination of an "Electric Vehicle Mandate" and an Immediate Pause on Disbursement of NEVI Formula Program Funds

The NEVI Formula Program was enacted by Congress and implemented for several years in partnership with the States. But hours after being sworn in on January 20, 2025, President Trump issued an executive order entitled *Unleashing American Energy* directing agencies to undo the Program. *See* Exec. Order No. 14,154, 90 Fed. Reg. 8353. In the Executive Order, the President declared it "the policy of the United States" to "eliminate the 'electric vehicle (EV) mandate' and promote true consumer choice," by, among other things, "considering the elimination of unfair subsidies and other ill-conceived government-imposed market distortions that favor EVs over other technologies and effectively mandate their purchase by individuals, private businesses, and government entities alike by rendering other types of vehicles unaffordable." *Id.*

To "[t]erminat[e] the Green New Deal" and effectuate his own policy priorities, the President ordered all agencies to "immediately pause the disbursement of funds appropriated through the . . . [IIJA], including but not limited to funds for electric vehicle charging stations made available through the [NEVI] Formula Program." *Id.* at 8357.

The Executive Order makes clear that the President directed agencies to unilaterally and categorically "pause" disbursement of funds duly appropriated by Congress to terminate statutory programs that the President regards as bad policy.

## D.    FHWA Abruptly Revoked All State Implementation Plan Approvals and Is Categorically Withholding NEVI Formula Program Funds

Consistent with the President's directive to illegally withhold NEVI funds, FHWA sent a letter to the States on February 6, 2025, notifying them it had taken three actions to categorically "suspend" the NEVI Formula Program. Brown Decl., Exh. 1 ("FHWA Letter").

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No.  2:25-cv-000848

6

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

First, the Agency announced it had rescinded all versions of statutorily required NEVI Formula Program Guidance. Second, with no advance notice, FHWA revoked all State Plan approvals. Third, FHWA would make no new obligations of NEVI funds. FHWA Letter at 1-2.

The sole rationale FHWA gave for withholding Program funds was its categorical, retroactive revocation of State Plans, which itself was predicated only on FHWA's rescission of the NEVI Formula Program Guidance. The only rationale FHWA gave for rescinding the NEVI Formula Program Guidance was that the "new leadership" at the U.S. Department of Transportation had "decided to review the policies underlying the NEVI Formula Program." FHWA Letter at 1-2. The FHWA Letter further stated that "FHWA is updating the NEVI Formula Program Guidance to align with current U.S. DOT policy and priorities, including those set forth in DOT Order 2100.7." *Id.*[2]

FWHA's action had the effect of eliminating States' access to NEVI funds that were available for obligation, functionally abrogating the congressionally mandated NEVI Formula Program. Since FHWA issued the Notice, Plaintiff States have been unable to obligate new NEVI funds, even for projects in previously approved State Plans. Collins-Worachek Decl. ¶¶19-20; de Alba Decl. ¶¶22-23; Hastings Decl. ¶18; Kearns Decl. ¶¶18, 25; Kelly Decl. ¶¶11-13, 16; Lam Decl. ¶¶11-13; Meredith Decl. ¶36; Nelson Decl. ¶23; Patel Decl. ¶19; Pietz Decl. ¶26-31; Pines Decl. ¶¶21-22; Ruder Decl. ¶11; Valdez Decl. ¶18; Ward Decl. ¶19. FHWA confirmed this effect, informing California on March 31, 2025, that "[a]s a result of the February 6th [FHWA Letter]," "no funds are available for obligation." Lam Decl. ¶¶11

**E.    Defendants' Actions Have Caused, and Will Continue to Cause, Irreparable Harm to Plaintiff States**

As further detailed in Section IV. B, *infra*, and in the accompanying Declarations, Defendants' abrupt and unlawful revocation of all State Plans and withholding of statutorily

---

[2] DOT 2100.7, *Ensuring Reliance Upon Sound Economic Analysis in Department of Transportation Policies, Programs, and Activities*, "updates and resets the principles and standards underpinning U.S. [DOT] policies, programs, and activities to mandate reliance on rigorous economic analysis and positive cost-benefit calculations." Exh. 2.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No.  2:25-cv-000848

7

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

appropriated and apportioned funds has harmed and will continue to harm Plaintiff States and their residents. Defendants' actions have caused disruptions to State NEVI implementation programs; delays in construction of infrastructure necessary to promote wider adoption of EVs and to achieve state air quality and climate emissions reductions goals; impacts on budgeting, contracting, and future project deployment caused by uncertainty in federal funding for these projects; and unnecessary costs and staff time to develop new State Plans after investing significant time and resources to develop the previously approved Plans.

### III.    LEGAL STANDARD

A plaintiff seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) irreparable harm in the absence of relief; (3) that the balance of equities tips in the movant's favor; and (4) that granting relief is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The final two factors—the balance of equities and the public interest—merge when a government entity is a party to a case in which a preliminary injunction is sought. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). The Ninth Circuit has also adopted a "'sliding scale' variant of the *Winter* test," *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024), that requires "a lesser showing than likelihood of success on the merits" if the equities tip sharply in the plaintiffs' favor. *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017).

### IV.    ARGUMENT

**A.    Plaintiffs Are Likely to Succeed on the Merits**

Plaintiff States have a strong likelihood of success on the merits. As detailed below, Defendants' actions to revoke State Plans and withhold appropriated NEVI funds violate the Administrative Procedure Act ("APA") and separation of powers principles.

**1.    Defendants took final agency action**

The APA permits judicial review of "final agency action." 5 U.S.C. § 704. Here,

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No.  2:25-cv-000848

8

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

Defendants' action to "suspend" the NEVI Formula Program, as announced in the FHWA Letter, and the specific individual actions detailed in the Letter to revoke all State Plans for all fiscal years and to categorically withhold NEVI funds were final agency actions. These actions marked "the 'consummation' of the agency's decisionmaking process"—any solicitation of new State Plans or decision to release funds would require separate action and a reversal of Defendants' current policy. *See Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citations omitted); *see, e.g.*, *Pacito v. Trump*, No. 2:25-CV-255-JNW, 2025 WL 655075, at *16 (W.D. Wash. Feb. 28, 2025) (determining agency suspension of statutory refugee program was a final agency action); *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, No. 25-239 (LLA), 2025 WL 368852, at *11 (D.D.C. Feb. 3, 2025) (finding agency memo directing withholding of funds was a final agency action). Defendants have admitted that their actions also determined "rights or obligations" or were actions "from which 'legal consequences'" flowed. *Bennett*, 540 U.S. at 178. (citations omitted). For example, FHWA informed California that "[a]s a result of the February 6th [FHWA Letter]," "no funds are available for obligation." Lam Decl. ¶11. Similarly, following the FHWA Letter, Colorado has been unable to access its unobligated NEVI funds, with attempts to request additional obligations generating a notice of "expired appropriated authority program code(s)." Kelly Decl. ¶16. Consequently, the actions Defendants announced on February 6 have "a direct and immediate effect on the day-to-day operations" of Plaintiff States. *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (citations omitted).

Moreover, Defendants' actions are not part of the narrow class of agency actions that are "committed to agency discretion by law" and unreviewable in federal court. *See* 5 U.S.C. § 701(a)(2). Where, as here, there are applicable statutory or regulatory standards that cabin agency discretion, there are "meaningful standard[s] by which to judge the [agency]'s action," and the actions are reviewable. *Dep't of Com. v. New York*, 588 U.S. 752, 772 (2019). Whether Defendants had statutory or constitutional authority to suspend the NEVI

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No.  2:25-cv-000848

9

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1    Formula Program, revoke all approved State Plans, and withhold NEVI funds is exactly the

2    type of statutory and constitutional question federal courts regularly address.

3         **2.      Defendants' actions were in excess of statutory authority and contrary to law**

4         By unilaterally revoking all State Plans and withholding congressionally appropriated

5    funding, Defendants acted in excess of statutory authority and contrary to the IIJA.

6    "Administrative agencies are creatures of statute. They accordingly possess only the authority

7    that Congress has provided." *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety*

8    *& Health Admin.*, 595 U.S. 109, 117 (2022). Under the APA, a court "shall . . . hold unlawful

9    and set aside agency action, findings, and conclusions found to be . . . in excess of statutory

10   jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). The

11   APA further prohibits agency action "not in accordance with law." *Id.* § 706(2)(A).

12        Congress mandated in the IIJA that $5 billion "**shall** be to carry out" the NEVI Formula

13   Program, and that the funds be apportioned according to a statutory formula. 135 Stat. at 1421-

14   22 (emphasis added). Congress limited Executive discretion by providing that the Secretary of

15   Transportation "**shall distribute** among the States the [NEVI funds] so that each State

16   receives" the amount determined by the formula. *Id*. at 1422 (emphasis added). Indeed,

17   Congress expressly restricted Defendants' ability to "withhold or withdraw" funding to two

18   narrow circumstances, neither of which apply here. *See id.* Given the IIJA's carefully

19   circumscribed statutory scheme, Defendants lack the authority to categorically "withhold or

20   withdraw" NEVI funds for reasons not enumerated in the statute.

21        Similarly, Defendants lack authority to take *post hoc* actions revoking State Plans.

22   Congress established a single prerequisite for a State to receive its NEVI funding: Each State

23   must timely submit a State Plan "describing how such State intends to use funds distributed to

24   the State . . . to carry out the [NEVI Formula] Program for each fiscal year in which funds are

25   made available." *Id.* at 1422. Outside the designation of national EV charging corridors, the

26   IIJA essentially limits Defendants' role in States' planning processes to informational and

ministerial functions and provides no authority to Defendants to revoke State Plans once they are approved. *Id.* at 1422-25. Specifically, the IIJA instructs the Secretary to establish a deadline for State Plan submittals for each fiscal year. *Id.* at 1422. Upon receipt of the Plans, the Secretary must post and submit to Congress "a report summarizing each [P]lan submitted . . . and an assessment of how such [P]lans make progress towards the establishment of a national network of electric vehicle charging infrastructure." *Id*. Here, Plaintiff States each submitted Plans by the deadline established by the Secretary. *See supra*, Section II.B. Nothing in the IIJA authorizes Defendants to revoke State Plans once they are submitted and finalized, much less to do so unilaterally, categorically, and retroactively.

Defendants' actions are also contrary to the IIJA and in excess of statutory authority because they contravene the very congressional purposes set forth therein. Congress stated in the IIJA that it intended "to provide funding to States to strategically deploy electric vehicle charging infrastructure and to establish an interconnected network to facilitate data collection, access, and reliability." *Id*. at 1421. Even in the limited circumstances where a State's funding is lawfully withdrawn or withheld, Congress requires the Secretary to redistribute those funds to local jurisdictions within that State, or to other States, for the same fiscal year, and for the same purpose of building out EV charging infrastructure. *Id*. at 1422-23. Thus, the IIJA evinces an intent for States to spend congressionally appropriated NEVI funding for this purpose. Withholding NEVI funds necessarily frustrates this congressional purpose. *See New York v. Trump*, No. 25-CV-39-JJM-PAS, 2025 WL 715621, at *1 (D.R.I. Mar. 6, 2025), *stay pending appeal denied*, 133 F.4th 51 (1st Cir. Mar. 26, 2025) ("Federal agencies and departments can spend, award, or suspend money based only on the power Congress has given to them—they have no other spending power.").

By categorically withholding congressionally appropriated NEVI funds and revoking all State Plans for all fiscal years, Defendants' contravened the terms and purposes of the IIJA and their actions should be enjoined as unlawful under the APA.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-cv-000848

11

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1          **3.     Defendants' actions were arbitrary and capricious**

2          Plaintiff States are also likely to succeed on their claim that Defendants' actions

3   announced in the FHWA Letter are arbitrary and capricious. An agency action is "arbitrary and

4   capricious" where "the agency has relied on factors which Congress has not intended it to

5   consider, entirely failed to consider an important aspect of the problem, offered an explanation

6   for its decision that runs counter to the evidence before the agency, or is so implausible that it

7   could not be ascribed to a difference in view or the product of agency expertise." *Motor*

8   *Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

9   Courts across the country have determined that actions to withhold funds in violation of a

10  statutory directive are arbitrary and capricious, particularly where federal defendants acted

11  abruptly and categorically without providing a reasoned explanation or considering reliance

12  interests. *E.g.*, *Nat'l Council of Nonprofits*, 2025 WL 368852, at *11; *AIDS Vaccine Advoc.*

13  *Coal. v. United States Dep't of State*, No. 25-00400, 2025 WL 485324, at *5 (D.D.C. Feb. 13,

14  2025); *Pacito*, 2025 WL 655075, at *20-21; *New York v. Trump*, 2025 WL 715621, at *12.

15         First, Defendants' actions announced in the FHWA Letter are arbitrary and capricious

16  because they are not "reasonable and reasonably explained." *Fed. Commc'ns Comm'n v.*

17  *Prometheus Radio Project*, 592 U.S. 414, 423 (2021). Courts must ensure that the agency has

18  "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action[,]

19  including 'a rational connection between the facts found and the choice made.'" *State Farm*,

20  463 U.S. at 43 (citations omitted). Defendants have failed to articulate any satisfactory

21  explanation for their decision to revoke State Plans and withhold NEVI funds.

22         The FHWA Letter provided no explanation for revoking State Plans or withholding

23  funds other than a desire to "review the policies underlying implementation of the NEVI

24  Formula Program," and conform the NEVI Formula Program Guidance to Trump

25  Administration "policy and priorities." FHWA Letter at 1-2. There is no discussion of policies

26  within the FHWA Letter itself, and no explanation for how such policies could be relevant to

implementing a formula funding program that Congress established for a very specific purpose and subject to precise directives. Changed Executive Branch priorities cannot alter the Federal-aid highway formula that determines States' apportionments, *see* 135 Stat. at 1422; nor can changed priorities provide any grounds to withdraw funds from States, *see id*. Defendants' explanation that they plan to update the Guidance to "align" with "policy and priorities, including those set forth in DOT Order 2100.7" thus does not constitute a reasoned explanation for the revocation of State Plans and the withholding of funds. Indeed, DOT Order 2100.7 lays out no principle intended by Congress for the Secretary to consider in administering the NEVI Formula Program. *See* Brown Decl., Exh. 2. And no principle set forth in DOT Order 2100.7 can override the text of the IIJA, which substantially limits the Secretary's discretion under the Program.

Second, Defendants failed to consider the effects of their abrupt change in policy on Plaintiff States. Where an agency changes its policy, it bears the burden to "show that there are good reasons for the new policy." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). And where an agency action rescinds a prior policy, the agency must show consideration of "serious reliance interests." *Id.*; *see also DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 30 (2020) (longstanding policies may engender serious reliance interests that must be considered). Congressionally appropriated funding programs can engender reliance interests and agencies must consider those interests when suspending funds. *See, e.g.*, *AIDS Vaccine Advocacy Coal.*, 2025 WL 485324 at *5 (agency failed to consider and had no rational reason to disregard reliance interests of businesses that would have to shutter programs due to funding suspension). Here, Defendants plainly changed their policy—from one that comported with the IIJA's statutory requirements and disbursed money according to the predetermined formula for predetermined purposes, to one that disregards that law to obstruct investment in EV infrastructure that the Administration disfavors. In enacting this change, Defendants did not consider Plaintiff States' serious reliance interests in receiving funding according to the

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No.  2:25-cv-000848

13

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

formula and timeline Congress mandated. It is critical for Plaintiff States that federal funds remain available as promised. The uncertainty sown by Defendants' actions chills industry participation in the NEVI Formula Program and makes it harder for Plaintiff States to successfully implement their State Plans. *See infra*, Section IV.B. Defendants' failure to explain their change in position and to consider serious reliance interests makes their action arbitrary and capricious.

Third, Defendants relied on factors that Congress did not intend them to consider. *State Farm*, 463 U.S. at 43. The FHWA Letter revokes State Plans and categorically withholds funds on the basis that the NEVI Formula Guidance will be updated to account for new "policy and priorities." FHWA Letter at 2. But the IIJA sets out specific, limited circumstances where NEVI formula-apportioned funds may be withheld. 135 Stat. at 1422. Congress did not include rescission of Guidance for policy reasons as a legitimate basis to revoke State Plans or withhold funds.

Furthermore, Congress did not intend for Defendants to consider the policies set out in DOT Order 2100.7 even for the limited purpose of updating NEVI Formula Program Guidance. The IIJA requires Guidance to be developed no later than 90 days after enactment of the Act and specifies that certain factors "shall" be considered in developing the Guidance. *Id.* at 1423. Although the Secretary may come up with "other factors" to be considered, the Guidance's purpose is to help States and localities "strategically deploy electric vehicle charging infrastructure, consistent with this paragraph in this Act." *Id.* In other words, the Guidance is in service of the NEVI Formula Program's purpose and the specific uses for which Congress made funds available. In addition, the "other factors" that can influence the Guidance follow more specific terms. "Under the principle of *ejusdem generis*, when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration." *Norfolk & Western R. Co. v. Train Dispatchers*, 499 U.S. 117, 129 (1991). Congress never intended Defendants to consider factors so far afield as

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No.  2:25-cv-000848

14

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

"giv[ing] preference to communities with marriage and birth rates higher than the national average," prohibiting "imposi[tion] of vaccine and mask mandates," or "local compliance or cooperation with Federal immigration enforcement" in their administration of the NEVI Formula Program. Brown Decl., Exh. 2 at § 5(f). Defendants' reliance on factors Congress did not intend them to consider renders their action arbitrary and capricious.

**4.    Defendants acted "without observance of procedure required by law"**

Defendants' actions further violate the APA because Defendants failed to observe the procedural safeguards required by law. *See* 5 U.S.C. § 706(2)(D) (prohibiting agency action taken "without observance of procedure required by law"). As set forth above, the IIJA has specific procedures for the withholding or withdrawal of NEVI funds. *See supra,* Section II.B. Defendants failed to follow these procedures.

**5.    Defendants' failure to follow the IIJA's statutory mandate violates the separation of powers**

In passing the IIJA, Congress provided a clear mandate to Defendants: So long as States meet the program requirements explicitly set forth in the IIJA—as Plaintiff States have all done here—Defendants must distribute NEVI funds in accordance with the IIJA's prescribed formula. But Defendants have failed to follow this mandate, and in doing so, have violated the separation of powers prescribed by the U.S. Constitution.

The President's authority to act "must stem either from an act of Congress or from the Constitution itself." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952). And where, as here, "the President takes measures incompatible with the expressed or implied will of Congress, his power is at its lowest ebb, for then he can rely only upon his own constitutional powers minus any constitutional powers of Congress over the matter." *Youngstown*, 343 U.S. at 637 (Jackson, J., concurring). In *City and County of San Francisco v. Trump*, 897 F.3d 1225, 1233 (9th Cir. 2018), the Ninth Circuit confronted a weaker form of the question presented here: In the absence of congressional authorization, can the

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No.  2:25-cv-000848

15

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1   Executive Branch withhold duly appropriated federal funds? The Court answered this

2   question with a resounding no, on the basis that such action violates separation of powers:

3   "Aside from the power of veto, the President is without authority to thwart congressional will

4   by canceling appropriations passed by Congress. Simply put, the President does not have

5   unilateral authority to refuse to spend the funds. And[] the President may not decline to

6   follow a statutory mandate or prohibition simply because of policy objections." *Id.* at 1232

7   (internal quotation marks and citations omitted). "[B]ecause Congress has the exclusive

8   power to spend and has not delegated authority to the Executive . . . , the President's 'power

9   is at its lowest ebb.' And when it comes to spending, the President has none of 'his own

10  constitutional powers' to 'rely' upon." *Id.* at 1233-34 (quoting *Youngstown*, 343 U.S. at 637);

11  rather, the President must "take Care that the Laws be faithfully executed." U.S. Const. art.

12  II, § 3. This obligation to faithfully execute the law "refutes the idea that [the President] is to

13  be a lawmaker." *Youngstown*, 343 U.S. at 587.

14          Indeed, courts have repeatedly struck down as unconstitutional efforts by the

15  Executive Branch to "redistribute or withhold properly appropriated funds in order to

16  effectuate its own policy goals." *City & County of S.F.*, 897 F.3d at 1235; *City & County of*

17  *San Francisco v. Trump*, No. 25-CV-01350-WHO, 2025 WL 1186310, at *2 (N.D. Cal. Apr.

18  24, 2025) (plaintiffs likely to prevail in demonstrating that the Trump administration violated

19  separation of powers in withholding federal funding); *Washington v. Trump*, No. 2:25-CV-

20  00244-LK, 2025 WL 659057, at *12 (W.D. Wash. Feb. 28, 2025) (plaintiffs likely to succeed

21  on merits of argument that executive orders barring the receipt of federal funds to medical

22  institutions that provide gender-affirming care to youth violated constitutional separation-of-

23  powers principles).

24          Just as the Ninth Circuit rejected the first Trump administration's attempt to withhold

25  congressionally appropriated funds in violation of statutory directive, this Court should reject

26  Defendants' attempt to withhold NEVI funds from Plaintiff States in violation of the clear

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No.  2:25-cv-000848

16

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

language of the IIJA. Congress established the NEVI Formula Program and appropriated funds based on a precise formula for the express purpose of providing States with funding for EV charging infrastructure. 135 Stat. at 1422. The IIJA mandates the distribution of these funds and sets out the exclusive circumstances under which Defendants may withhold funds—none of which are present here—leaving Defendants no discretion to interfere with the statutorily established funding scheme. *Id.* If Defendants cannot withhold funds in the absence of congressional authorization, *City & County of S.F.*, 897 F.3d at 1235, *a fortiori* they cannot do so in direct contravention of Congress's specific prescriptions. Congress has also established a general procedure by which the Executive may propose to Congress to either rescind or cancel funds, but that procedure does not authorize the President to take unilateral action or defer funding on the bases asserted by Defendants here. *See* Congressional Budget and Impoundment Control Act of 1974, 2 U.S.C. § 682 *et seq*. Thus, by following President Trump's directive to "pause the disbursement of funds appropriated through the . . . [IIJA], including but not limited to funds for electric vehicle charging stations made available through the [NEVI] Formula Program," Exec. Order No. 14,154, 90 Fed. Reg. at 8357, Defendants "claimed for [themselves] Congress's exclusive spending power," while "also attempt[ing] to coopt Congress's power to legislate," *City & County of S.F.*, 897 F.3d at 1234. That they cannot do. Absent congressional authorization, the Executive Branch simply may not withhold congressionally appropriated funding.

**B.      Plaintiff States Face Irreparable Harm Absent a Preliminary Injunction**

Plaintiff States are "likely to suffer irreparable harm in the absence of preliminary relief." *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 668 (9th Cir. 2021). Irreparable harm is "harm for which there is no adequate legal remedy," i.e., it is not compensable with money damages. *Id.* at 677 (quoting *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014)). Thus, economic harm is irreparable "where parties cannot typically recover monetary damages flowing from their injury—as is often the case in APA cases." *Id.* (citing

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No.  2:25-cv-000848

17

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1    *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018)). Likewise, "[i]ntangible injuries," such

2    as reputational harm or loss of goodwill, may establish irreparable harm where supported by

3    evidence. *Id.* (citing *Brewer*, 757 F.3d at 1068); *adidas America, Inc. v. Skechers USA, Inc.*,

4    890 F.3d 747, 756-7 (2018)).

5          Here, Defendants' actions to revoke State Plans and categorically withhold

6    appropriated funds will irreparably harm Plaintiff States. First, Defendants' actions interrupt

7    and impede Plaintiff States' ongoing programs to deploy EV charging infrastructure, thwarting

8    policies these States adopted to combat climate change, reduce harmful pollution, broaden

9    access to EVs, and create jobs. Second, Defendants' abrupt and arbitrary actions increase

10   Plaintiff States' administrative burdens in implementing the NEVI Formula Program and

11   interfere with their ability to budget, plan, and serve their residents. Neither type of harm is

12   compensable with money damages. Nor are these harms merely likely or imminent; they

13   already have occurred and, absent entry of an injunction, will continue. Where, as here,

14   irreparable injury to Plaintiff States is real and immediate, the Court should enter an injunction

15   to preserve the status quo. *See Flathead-Lolo-Bitterroot Citizen Task Force*, 98 F.4th at 1191.

16       **1.**    **Harm to Plaintiff States' EV infrastructure programs**

17         Absent injunctive relief, Defendants' actions will cause significant irreparable harm by

18   arresting Plaintiff States' programs created to further their sovereign interests in protecting

19   residents' welfare, their economies, and the environment. *See Kansas v. United States*, 249

20   F.3d 1213, 1227-28 (10th Cir. 2001) (threats to State's public policy and sovereign interests

21   constitute irreparable harm); *New York v. Trump*, 2025 WL 715621, at *14 (freeze on federal

22   financial assistance caused irreparable harm to States by impeding public health,

23   transportation, and environmental programs); *New York v. Trump*, 490 F. Supp. 3d 225, 243-44

24   (D.D.C. 2020) (federal actions impeding States' public health programs caused irreparable

25   harm); *New York v. U.S. Dep't of Homeland Sec.*, 475 F. Supp. 3d 208, 226-27 (S.D.N.Y.

26   2020) (same). And where Congress has appropriated funds to support States' effectuation of

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-cv-000848

18

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

those programs, the denial of that statutory entitlement is itself irreparable harm. *See Endo Par*

*Innovation Co., LLC v. Becerra*, No. 24-999, 2024 WL 2988904, at *7 (D.D.C. Jun. 10, 2024)

("[A] clear statutory entitlement is not merely economic harm, and its loss may be sufficiently

irreparable to justify emergency injunctive relief.").

Plaintiff States have each adopted ambitious plans to expand EV charging

infrastructure to mitigate climate change; reduce smog, air toxics, and other harmful vehicle

pollution; and realize the significant economic benefits of broad access to EVs, including job

creation, increased domestic manufacturing, and consumer savings. Collins-Worachek Decl.

¶5; de Alba Decl. ¶¶13-15; Hastings Decl. ¶¶4-6; Irvin Decl. ¶5; Kearns Decl. ¶¶5-9, 15;

Meredith Decl. ¶¶7-17, 38, 45; Patel Decl. ¶4; Pietz Decl. ¶¶4-6; Pines Decl. ¶¶5-6; Ruder

Decl. ¶¶7, 17; Shishido Decl. ¶5; Toor Decl. ¶¶32-36; Valdez Decl. ¶19; Ward Decl. ¶5.

Congress, with the support of bipartisan majorities, decided to underwrite States' EV

infrastructure build-outs with the NEVI Formula Program. And in reliance on that support,

Plaintiff States developed deployment plans, sought out private partnerships, conducted public

outreach, committed state tax dollars, and hired or redirected existing staff resources to carry

out the NEVI Formula Program. Collins-Worachek Decl. ¶9; de Alba Decl. ¶¶7, 10; Hastings

Decl. ¶19; Irvin Decl. ¶¶6, 9, 12, 19; Kearns Decl. ¶¶14-15; Kelly Decl. ¶¶7, 17; Meredith

Decl. ¶¶22-23; Nelson Decl. ¶¶5, 10, 13, 23; Pietz Decl. ¶¶9, 16, 24; Pines Decl. ¶9; Ruder

Decl. ¶¶6, 9; Shishido Decl. ¶6, 9; Ward Decl. ¶¶6, 9, 12, 19. All Plaintiff States are in the

midst of award and contracting processes to distribute NEVI funds to projects; Plaintiffs

Colorado, California, Maryland, and Wisconsin have entered into contracts with awardees; and

several California and Maryland EV charging projects have moved or are about to move into

construction phase. Collins-Worachek Decl. ¶¶12, 19-20; de Alba Decl. ¶¶10, 17-18, 22;

Hastings Decl. ¶12; Irvin Decl. ¶12, Kearns Decl. ¶¶18, 25; Meredith Decl. ¶¶29, 36; Nelson

Decl. ¶¶6-7; Patel Decl. ¶¶12, 19; Pietz Decl. ¶¶15, 25-29; Pines Decl. ¶¶13-14, 21; Ruder

Decl. ¶9; Shishido Decl. ¶12, 19; Toor Decl. ¶¶10-11; Ward Decl. ¶¶12, 19.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No.  2:25-cv-000848

19

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1    But Defendants' actions have halted these processes and threaten to scuttle projects—or

2    even entire state programs—altogether. First, the unavailability of NEVI funds prevents States

3    from proceeding with solicitations and awarding funds to projects. Collins-Worachek Decl.

4    ¶¶19-20; de Alba Decl. ¶¶22-23; Kearns Decl. ¶¶18, 25; Kelly Decl. ¶21; Meredith Decl. ¶36;

5    Nelson Decl. ¶23; Patel Decl. ¶19; Pietz Decl. ¶30; Pines Decl. ¶¶21-22; Ruder Decl. ¶11;

6    Shishido Decl. ¶19, 20; Valdez Decl. ¶18; Ward Decl. ¶19. That harm is uncompensable. Even

7    if Defendants eventually return to distributing funds as required, that will not cure the delay

8    and loss of industry confidence in States' NEVI implementation programs. de Alba Decl. ¶¶18-

9    24; Hastings Decl. ¶20; Kearns Decl. ¶26; Meredith Decl. ¶40; Patel Decl. ¶20; Pietz Decl.

10   ¶29; Pines Decl. ¶¶21-22; Ruder Decl. ¶¶13-15; Toor Decl. ¶38. And because a robust public

11   charging network is integral to EV adoption, delay means more unrecoverable greenhouse gas

12   pollution, air toxics inhaled, and unrealized job creation in the interim. de Alba Decl. ¶¶13, 15;

13   Irvin Decl. ¶20; Kearns Decl. ¶26; Meredith Decl. ¶¶38, 41-46; Patel Decl. ¶20; Ruder Decl.

14   ¶¶13, 16-17; Toor Decl. ¶¶40-41; *see also* Pietz Decl. ¶¶28-30 (loss of 75% charging stations

15   Oregon planned to construct with NEVI funds, including two to three corridors connecting

16   rural Oregon to charging network). For many Plaintiff States, NEVI funding is an irreplaceable

17   majority of their EV charging infrastructure programs, such that Defendants' actions arrest

18   their programs altogether. Collins-Worachek Decl. ¶4 (Wisconsin's EV infrastructure program

19   "rel[ies] completely on federal funding" and a private cost-share); Patel Decl. ¶19 (New Jersey

20   unable to execute an FHWA approved contract with an awardee "because there are no

21   alternative funding sources available"); Pietz Decl. ¶28; Pines Decl. ¶4.

22   Second, for already-awarded projects, the delay and uncertainty around NEVI funds

23   exposes them to rising costs; loss of site hosts, financing, and other critical partners; and

24   similar opportunity costs. de Alba Decl. ¶¶16-21; Kearns Decl. ¶26; Pines Decl. ¶25-26; Ruder

25   Decl. ¶¶11, 13. In turn, those risks have caused and will continue to cause harm to States'

26   programs as awardees and applicants postpone or cancel projects or withdraw from

solicitations. de Alba Decl. ¶¶16-23; Kearns Decl. ¶26; Pietz Decl. ¶¶30-31; Ruder Decl. ¶¶14-15. The loss of these critical partners and the overall chilling effect Defendants' actions have on States' EV charging infrastructure build-outs cannot be cured by money damages. *See also East Bay Sanctuary Covenant v. Biden*, 993 F.3d at 677 (damages not available for APA claims). For similar reasons, federal district courts have repeatedly found irreparable harm to States from indefinite pauses on federal financial assistance. *See, e.g.*, *New York v. Trump*, 2025 WL 715621, at *13; *Washington v. Trump*, 2025 WL 659057, at *26; *Pacito*, 2025 WL 655075, at *23; *see also Maine v. Dep't of Agriculture*, No. 1:25-cv-00131, 2025 WL 1088946, at *26-27 (D. Me. Apr. 11, 2025) (granting temporary restraining order).

### 2. Increased administrative burden to states

The budgetary confusion and uncertainty constitute further irreparable harm. Courts have recognized that financial and operational harms to state agencies caused by abrupt interruptions to federal funding can constitute irreparable harm. *See, e.g.*, *New York v. Trump*, 2025 WL 715621, at *15 (finding irreparable harm "resulting from the chaos and uncertainty" arising out of federal freeze of Inflation Reduction Act and IIJA funds); *Michigan v. DeVos*, 481 F. Supp. 3d 984, 995-96 (N.D. Cal. 2020) (irreparable harm from "the financial and operational harms" to state agencies from federal actions); *County of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 537 (N.D. Cal. 2017) (uncertainty prompted by withholding federal funds caused irreparable harm by "interfer[ing] with the Counties' ability to budget, plan for the future, and properly serve their residents").

Plaintiff States have suffered similar financial and operational harms here. Since the FHWA Letter, Plaintiff States' agencies have experienced confusion and budgetary uncertainty as their access to fund to which they are legally entitled has been cut off. de Alba Decl. ¶24; Kearns Decl. ¶¶25-26; Kelly Decl. ¶¶21-22; Pines Decl. ¶22. Plaintiff States face an increased burden in administering the NEVI Formula Program, for example, from increased staff time spent fielding industry inquiries, redesigning paused solicitations, or reconfiguring budgets, de

Alba Decl. ¶24; Kearns Decl. ¶26; Ward Decl. ¶19, or redeveloping State Plans, after having invested substantial resources in timely creating and submitting their original Plans. Collins-Worachek Decl. ¶20; Kearns Decl. ¶25; Kelly Decl. ¶17; Pietz Decl. ¶17. Even if these extra staff hours are recoverable as eligible program expenses, the increase in administrative costs— in addition to other cost increases from delayed construction—necessarily decreases the NEVI funds available for building EV chargers. Pines Decl. ¶26. Moreover, the interference with Plaintiff States' ability to budget, plan for the future, and properly serve their residents is itself an intangible, uncompensable harm. *County of Santa Clara*, 250 F. Supp. 3d at 537; *see, e.g.*, Meredith Decl. ¶37 (Washington agency reassigned one full-time employee and has been unable to hire a second due to withholding of NEVI funds). Likewise, the suspended solicitations, deferred finalization of awards, and inability to obligate committed NEVI funds for awardees all cause reputational harm to States' agencies, which makes it more difficult for them to attract industry partners for concurrent or future solicitations in their EV infrastructure programs. de Alba Decl. ¶¶22-23; Kearns Decl. ¶26; Meredith Decl. ¶¶39-40; Pines Decl. ¶23; Pietz Decl. ¶31; Ruder Decl. ¶¶14-15; *see East Bay Sanctuary Covenant*, 993 F.3d at 677 (intangible injuries to reputation and goodwill support irreparable harm showing).

## C.    The Balance of Equities and Public Interest Factors Strongly Favor Entry of a Preliminary Injunction

Where the government is a party, the Court's inquiry into the balance of the equities and the public interest merges. *Drakes Bay Oyster Co.* 747 F.3d at 1092 (9th Cir. 2014). When considering whether to grant a preliminary injunction, the Court "must balance the competing claims of injury and consider the effect of granting or withholding the requested relief, paying particular regard to the public consequences." *Winter*, 555 U.S. at 24; *see also N. Cheyenne Tribe v. Norton*, 503 F.3d 836, 843-44 (9th Cir. 2007).

Here, the balance of equities and public interest factors strongly favor entry of a preliminary injunction, for three reasons.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No.  2:25-cv-000848

22

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

First, Plaintiff States' high likelihood of success on the merits is a strong indicator that a preliminary injunction would serve the public interest. *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). There is a substantial public interest "in having governmental agencies abide by the federal laws that govern their existence and operations." *Id.* (internal quotation omitted). This Court recently reiterated that "[t]he rule of law is secured by a strong public interest that the laws 'enacted by their representatives are not imperiled by executive fiat.'" *Washington v. Trump*, 2025 WL 659057, at *27 (quoting *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018)). And where a statute "sets out a categorical requirement"—like the IIJA's requirements directing NEVI funds to States' EV infrastructure programs—the equities favor an injunction ensuring compliance with that statute because "Congress has already done the relevant balancing of interests." *N.D. v. Reykdal*, 102 F.4th 982, 996 (9th Cir. 2024). Similarly, Plaintiff States' likelihood of success on the merits of their constitutional claims tips the merged third and fourth factors "decisively in [their] favor . . . [b]ecause 'all citizens have a stake in upholding the Constitution.'" *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (quoting *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005)); *see also Am. Beverage Ass'n v. City & County of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (en banc) (a showing of serious questions going to the merits of a constitutional claim "compels a finding" that the balance of hardships and the public interest favor a preliminary injunction).

Second, the harm to the public interest from Defendants' unlawful actions is egregious. Defendants' abrupt revocation of State Plans and categorical withholding of approximately $1 billion of their NEVI funds have forced Plaintiff States to interrupt their planned NEVI Formula Program work and suspend in-progress award and contracting processes, and project partners have stopped or postponed construction or abandoned States' NEVI-funded program altogether. *See supra*, Section IV.B. In short, without preliminary relief, Defendants will succeed in effectively terminating the NEVI Formula Program.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-cv-000848

23

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

So long as Defendants continue to withhold NEVI funds, Plaintiff States will be unable to proceed with—and the public will not benefit from—full implementation of their plans to deploy EV charging infrastructure. Without the widespread adoption of EVs anticipated in each Plaintiff State, Plaintiff States will be unable to reduce vehicle emissions to improve public health, carry out their climate change policies, and realize the benefits of widespread EV adoption for their economies and residents. *See supra*, Section IV.B. And with each day Defendants unlawfully withhold funds, the chilling effect of funding uncertainties on industry increases; thus, the harms to Plaintiff States and their residents—the public—become increasingly detrimental. *See supra*, Section IV.B.

Third, Defendants suffer no hardship from sending appropriated and apportioned federal dollars to Plaintiff States. The purported objective of Defendants' revocation of State Plans and withholding of funds is to align NEVI Formula Program Guidance with the new administration's policy priorities. But as discussed in Section IV.A, *supra*, those new priorities cannot affect States' apportionments or force changes to their State Plans. In the IIJA, Congress left *no* discretion for Defendants to revise States' apportionment of NEVI funds, or to direct those funds be spent on anything but EV charging infrastructure, with a priority for building out alternative fuel corridors. 135 Stat. at 1422-23. Because Defendants' changed priorities—which, under the requested injunction, they are free to continue to develop—cannot support potential redirection of NEVI funds in the first place, Defendants can suffer no harm from being unable to categorically withhold those funds.

## D.    Plaintiff States Are Entitled to Preliminary Relief

Considering the serious and irreparable harm resulting from Defendants' unlawful actions, Plaintiff States are entitled to a preliminary injunction to preserve the *status quo ad litem*—not just the situation before Plaintiff States filed the instant matter, but "the last uncontested status which preceded the pending controversy." *Flathead-Lolo-Bitterroot Citizen Task Force*, 98 F.4th at 1191 (citation omitted). Accordingly, Plaintiff States

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No.  2:25-cv-000848

24

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1  respectfully request that Defendants be enjoined from (1) categorically "suspending" or

2  revoking Plaintiff States' State Plans approvals; (2) withholding or withdrawing NEVI

3  Formula Program funds for any reason not set forth in the IIJA or applicable FHWA

4  regulations, and without following the IIJA's procedural requirements, including by refusing

5  to review and process requests for authorization to obligate funds; and (3) effectuating a

6  categorical suspension or termination of the NEVI Formula Program for Plaintiff States

7  through any other means.

8                               **V.    CONCLUSION**

9        Plaintiff States respectfully request that the Court grant their motion.

10                                          I certify that this memorandum contains
                                            8290 words, in compliance with the Local
11                                          Civil Rules.

12                                          **NICHOLAS W. BROWN**
                                            Attorney General for the State of Washington
13
                                            *s/ Caitlin M. Soden*
14                                          CAITLIN M. SODEN, WSBA # 55457
                                            LEAH A. BROWN, WSBA # 45803
15                                          TERA HEINTZ, WSBA #54921
                                            CRISTINA SEPE, WSBA #53609
16                                          Assistant Attorneys General
                                            800 Fifth Avenue, Suite 2000
17                                          Seattle, Washington 98104
                                            (206) 464-7744
18                                          caitlin.soden@atg.wa.gov
                                            leah.brown@atg.wa.gov
19                                          tera.heintz@atg.wa.gov
                                            cristina.sepe@atg.wa.gov
20                                          *Attorneys for the State of Washington*

21  **ROB BONTA**                           **PHILIP J. WEISER**
    Attorney General for the State of California    Attorney General for the State of Colorado
22
    By: */s/ Theodore A. McCombs*          By: */s/ Carrie Noteboom*
23  THEODORE A. MCCOMBS, SBN 316243*        CARRIE NOTEBOOM, CBA # 52910*
    Deputy Attorney General                Assistant Deputy Attorney General
24  ROBERT SWANSON, SBN 295159*            DAVID MOSKOWITZ, CBA # 61336*
    Acting Supervising Deputy Attorney General    Deputy Solicitor General
25  NATALIE COLLINS, SBN 338348*           JESSICA L. LOWREY, CBA # 45158*
    ELIZABETH JONES, SBN 326118*           First Assistant Attorney General
26  ELIZABETH SONG, SBN 326616*            SARAH WEISS, NYSBA # 4898805*

1   Deputy Attorneys General                    Senior Assistant Attorney General
    (619) 738-9003                              Ralph L. Carr Judicial Center
2   theodore.mccombs@doj.ca.gov                 1300 Broadway, 10th Floor
                                                Denver, CO  80203
3   *Attorneys for the State of California*     (720) 508-6000
                                                carrie.noteboom@coag.gov
4                                               david.moskowitz@coag.gov
                                                jessica.lowrey@coag.gov
5                                               sarah.weiss@coag.gov
                                                FAX: (720) 508-6040
6
                                                *Attorneys for the State of Colorado*
7

8   **KRISTIN K. MAYES**                        **KATHLEEN JENNINGS**
    Attorney General for the State of Arizona   Attorney General of the State of Delaware
9
    By: */s/ Lauren Watford*                    By: */s/ Vanessa L. Kassab*
10  LAUREN WATFORD, SBA # 037346**              IAN R. LISTON, DSBA # 5507**
    Assistant Attorney General                  Director of Impact Litigation
11  Arizona Attorney General's Office           RALPH K. DURSTEIN III, DSBA # 0912**
    2005 North Central Avenue                   VANESSA L. KASSAB, DSBA # 5612**
12  Phoenix, Arizona 85004                      Deputy Attorneys General
    (602) 542-3333                              Delaware Department of Justice
13  Lauren.Watford@azag.gov                     820 N. French Street
                                                Wilmington, DE 19801
14  *Attorneys for the State of Arizona*        (302) 683-8899
                                                vanessa.kassab@delaware.gov
15
                                                *Attorneys for the State of Delaware*
16

17  **BRIAN L. SCHWALB**                        **ANNE E. LOPEZ**
    Attorney General                           Attorney General for the State of Hawaiʻi
18
    */s/ Lauren Cullum*                         By: */s/ Kalikoʻonālani D. Fernandes*
19  LAUREN CULLUM, DCB # 90009436**             DAVID D. DAY, HSBA # 9427**
    Special Assistant Attorney General          Special Assistant to the Attorney General
20  Office of the Attorney General              KALIKOʻONĀLANI D. FERNANDES,
    for the District of Columbia                HSBA # 9964**
21  400 6th Street, N.W., 10th Floor            Solicitor General
    Washington, D.C. 20001                      425 Queen Street
22  Email: lauren.cullum@dc.gov                 Honolulu, HI 96813
                                                (808) 586-1360
23  *Attorneys for the District of Columbia*    david.d.day@hawaii.gov
                                                kaliko.d.fernandes@hawaii.gov
24
                                                *Attorneys for the State of Hawaiʻi*
25

26

| | |
|---|---|
| **KWAME RAOUL**<br>Attorney General for the State of Illinois | **ANTHONY G. BROWN**<br>Attorney General for the State of Maryland |

**KWAME RAOUL**
Attorney General for the State of Illinois

*/s/ Jason E. James*
JASON E. JAMES, ISBA ARDC #
6300100**
*Assistant Attorney General*
Office of the Attorney General
Environmental Bureau
201 W. Pointe Drive, Suite 7
Belleville, IL 62226
Phone: (217) 843-0322
Email: jason.james@ilag.gov

*Attorneys for the State of Illinois*

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: */s/ Steven J. Goldstein*
STEVEN J. GOLDSTEIN, MSBA #
1612130206**
*Assistant Attorney General*
Office of the Attorney General of Maryland
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
(410) 576-6414
sgoldstein@oag.state.md.us

*Attorneys for the State of Maryland*

**KEITH ELLISON**
Attorney General for the State of Minnesota

s/ *Peter N. Surdo*
PETER N. SURDO, MSBA # 339015**
Special Assistant Attorney General
Environmental and Natural Resources
Division
445 Minnesota Street, Suite 1800
Saint Paul, Minnesota 55101
651-757-1061
peter.surdo@ag.state.mn.us

*Attorneys for the State of Minnesota*

**MATTHEW J. PLATKIN**
Attorney General for the State of New Jersey

*/s/ Morgan L. Rice*
MORGAN L. RICE, NJSBA Bar #
018782012**
JUSTINE M. LONGA, NJSBA Bar #
305062019**
*Deputy Attorneys General*
RACHEL U. DOOBRAJH, NJSBA #
020952002**
*Assistant Attorney General*
Office of the Attorney General
25 Market Street
Trenton, NJ 08625
(609) 696-4527
Morgan.Rice@law.njoag.gov
Justine.Longa@law.njoag.gov
Rachel.Doobrajh@law.njoag.gov

*Attorneys for the State of New Jersey*

**RAÚL TORREZ**
Attorney General for the State of New
Mexico

*/s/ Amy Senier*
AMY SENIER, MBA # 672912**
Senior Counsel
New Mexico Department of Justice
P.O. Drawer 1508
Santa Fe, NM 87504-1508
505-490-4060

**LETITIA JAMES**
Attorney General of the State of New York

*/s/ Kyle Burns*
KYLE BURNS, NYSBA # 5589940**
Environmental Protection Bureau
28 Liberty Street
New York, NY 10005
(212) 416-8451

*Attorneys for the State of New York*

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
-- No. 2:25-cv-000848

27

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1    asenier@nmdoj.gov

2    *Attorneys for the State of New Mexico*

3

4    **DAN RAYFIELD**                          **PETER F. NERONHA**
     Attorney General of the State of Oregon    Attorney General of Rhode Island

5    /s/ *Sarah Van Loh*                       /s/ *Nicholas M. Vaz*
     SARA VAN LOH OSB # 044398**              NICHOLAS M. VAZ, RIBA # 9501**
6    Senior Assistant Attorney General        Special Assistant Attorney General
     100 SW Market Street                     Office of the Attorney General
7    Portland, Oregon 97201                   Environmental and Energy Unit
     Tel (971) 673-1880                       150 South Main Street
8    Fax (971) 673-5000                       Providence, Rhode Island 02903
     Sara.VanLoh@doj.oregon.gov               (401) 274-4400 ext. 2297
9                                             nvaz@riag.ri.gov

10   *Attorneys for State of Oregon*           *Attorneys for State of Rhode Island*

11

12   **CHARITY R. CLARK**                      **JOSHUA L. KAUL**
     Attorney General of the State of Vermont  Attorney General for the State of Wisconsin

13   /s/ *Jonathan T. Rose*                    s/ *Tressie K. Kamp*
     JONATHAN T. ROSE, VBA # 4415**           TRESSIE KAMP, WI SBN # 1082298**
14   Solicitor General                        Assistant Attorney General
     Office of the Vermont Attorney General   Public Protection Unit
15   109 State Street                         17 West Main Street
     Montpelier, VT 05609                     Madison, Wisconsin 53703
16   (802) 828-3171                           608-266-9595
     Jonathan.rose@vermont.gov                tressie.kamp@wisdoj.gov
17
     *Attorneys for Plaintiff State of Vermont*   *Attorneys for Plaintiff State of Wisconsin*
18

19   *pro hac vice application pending
     **pro hac vice application forthcoming
20

21

22

23

24

25

26