1

2

3

4

5                                                    The Honorable Tana Lin

6                  **UNITED STATES DISTRICT COURT**
         **FOR THE WESTERN DISTRICT OF WASHINGTON**
7                          **AT SEATTLE**

8   STATE OF WASHINGTON, STATE OF
    COLORADO, STATE OF CALIFORNIA, STATE
9   OF ARIZONA, STATE OF DELAWARE,
    DISTRICT OF COLUMBIA, STATE OF HAWAI'I,
10  STATE OF ILLINOIS, STATE OF MARYLAND,
    STATE OF MINNESOTA, STATE OF NEW            Case No. 2:25-cv-00848-TL
11  JERSEY, STATE OF NEW MEXICO, STATE OF
    NEW YORK, STATE OF OREGON, STATE OF
12  RHODE ISLAND, STATE OF VERMONT, STATE       PUBLIC INTEREST
    OF WISCONSIN,                               ORGANIZATIONS'
13                                              MOTION TO INTERVENE
                         *Plaintiffs,*          AS PARTY PLAINTIFFS
14
    and
15
    SIERRA CLUB, NATURAL RESOURCES
16  DEFENSE COUNCIL, CLIMATE SOLUTIONS,         Noted for consideration:
    SOUTHERN ALLIANCE FOR CLEAN ENERGY,         June 12, 2025
17  CLEANAIRE NC, WEST END
    REVITALIZATION ASSOCIATION, PLUG IN
18  AMERICA,

19                  *Plaintiff-Intervenor-Movants,*

20  v.

21  U.S. DEPARTMENT OF TRANSPORTATION,

22  SEAN DUFFY, in his official capacity as Secretary
    of the U.S. Department of Transportation,
23

24

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA 98104*
*(206) 343-7340*

FEDERAL HIGHWAY ADMINISTRATION, and

GLORIA M. SHEPHERD, in her official capacity as
Executive Director and Acting Administrator of the
Federal Highway Administration,

*Defendants.*

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 2

STATEMENT OF MOVANTS' INTERESTS AND STANDING ............................... 3

    I.      MOVANTS' INTERESTS. ......................................................... 3

    II.     MOVANTS HAVE STANDING. ............................................... 4

ARGUMENT ............................................................................................................. 8

    I.      MOVANTS ARE ENTITLED TO INTERVENE AS OF RIGHT. ...................... 8

        A.   Movants' Motion to Intervene is Timely. ......................................... 8

        B.   Movants Have Significant Protectable Interests in This Action. ...................... 9

        C.   Movants' Interests May Be Impaired as a Result of This Litigation. .............10

        D.   Movants' Interests May Not Be Adequately Represented by Existing Parties.. .........................................................................11

    II.     ALTERNATIVELY, MOVANTS SATISFY THE STANDARD FOR PERMISSIVE INTERVENTION. ..................................................... 13

CONCLUSION ......................................................................................................... 14

PUBLIC INTEREST
ORGANIZATIONS' MOTION
TO INTERVENE                                    - iii -
CASE NO. 2:25-cv-00848-TL

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

# TABLE OF AUTHORITIES

**Cases**

*Arakaki v. Cayetano,*
    324 F.3d 1078 (9th Cir. 2003) ................................................................. 11, 13

*Cal. Rest. Ass'n v. City of Berkeley,*
    89 F.4th 1094 (9th Cir. 2024). ................................................................... 6

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca,*
    152 F.3d 1184 (9th Cir. 1998) ................................................................. 10

*CC Distributors, Inc. v. United States,*
    883 F.2d 146 (D.C. Cir. 1989) ................................................................... 6

*Cnty. of Fresno v. Andrus,*
    622 F.2d 436 (9th Cir. 1980). .................................................................... 9

*Forest Conserv. Council v. U.S. Forest Serv.,*
    66 F.3d 1489 (9th Cir. 1995). ................................................................ 8, 10

*Hunt v. Wash. State Apple Advert. Comm'n,*
    432 U.S. 333 (1977)............................................................................... 4, 8

*Idaho Farm Bureau Fed'n v. Babbit,*
    58 F.3d 1392 (9th Cir. 1995) .................................................................... 12

*Int'l Union v. Scofield,*
    382 U.S. 205 (1965).................................................................................. 8

*Nat. Res. Def. Council v. U.S. Env't Prot. Agency,*
    735 F.3d 873 (9th Cir. 2013) .................................................................... 6

*Nw. Forest Res. Council v. Glickman,*
    82 F.3d 825 (9th Cir. 1996). ................................................................. 9, 13

*Prete v. Bradbury,*
    438 F.3d 949 (9th Cir. 2006); ................................................................. 10

*Sagebrush Rebellion, Inc. v. Watt,*
    713 F.2d 525 (9th Cir. 1983). .............................................................. 10, 14

*Sierra Club v. Env't'l Prot. Agency,*
    995 F.2d 1478 (9th Cir. 1993). .................................................................. 9

PUBLIC INTEREST
ORGANIZATIONS' MOTION
TO INTERVENE
CASE NO. 2:25-cv-00848-TL

- iv -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA 98104*
*(206) 343-7340*

*Spangler v. Pasadena City Bd. of Educ.*,
    552 F.2d 1326 (9th Cir. 1977) ........................................................................... 14

*Sw. Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001). ............................................................... 8, 12, 13

*Trbovich v. United Mine Workers*,
    404 U.S. 528 (1972) ............................................................................... 11, 12

*UAW v. Brock*,
    477 U.S. 274 (1986) .................................................................................... 8

*United States v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004). ...................................................................... 9

*United States v. City of Los Angeles*,
    288 F.3d 391 (9th Cir. 2002) ................................................................ 8, 10

**Statutory Authorities**

Pub. L. 117-58, 135 Stat 429 (Nov. 15, 2021). ............................................... 2

**Rules and Regulations**

Fed. R. Civ. P. 24 ........................................................................... 1, 8, 10

Fed. R. Civ. P. 24(a). ............................................................................ 8

Fed. R. Civ. P. 24(a)(2). ............................................................... 2, 9, 13

Fed. R. Civ. P. 24(b). ............................................................................ 8

Fed. R. Civ. P. 24(b)(1)…………………………………………………………..2, 15

Fed. R. Civ. P. 24(b)(1)(B). ................................................................. 14

PUBLIC INTEREST
ORGANIZATIONS' MOTION
TO INTERVENE                                              - v -
CASE NO. 2:25-cv-00848-TL

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA 98104*
*(206) 343-7340*

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 24, Sierra Club, Natural Resources Defense Council, Climate Solutions, Southern Alliance for Clean Energy, CleanAIRE NC, West End Revitalization Association, and Plug In America ("Movants") move to intervene as party plaintiffs in this action.

Movants seek intervention to protect their significant interests in the National Electric Vehicle Infrastructure ("NEVI") Formula Program—a transformative $5 billion initiative to accelerate deployment of essential electric vehicle ("EV") charging infrastructure along the nation's highways. In the interest of judicial economy and efficiency, Movants propose to intervene here rather than file a separate challenge to Defendants' unlawful, indefinite suspension of the NEVI Formula Program.

Movants are nonprofit public interest organizations working to reduce transportation-related pollution, accelerate EV adoption, and promote an equitable EV transition. Movants' members seek to travel long distances freely, safely, and reliably in EVs without fear of being hindered by lack of access to charging infrastructure. NEVI investments are essential for these members and for rural, underserved, and low-income communities that rely on public charging to make EVs viable, support local jobs, enable safe evacuation, and cut pollution. For these reasons and more, Movants' members are among the intended beneficiaries of the robust, reliable nationwide charging network the NEVI Formula Program was enacted to create.

Defendants' indefinite suspension of the NEVI Formula Program now thwarts the development of that network, directly impacting Movants and their members. Because the outcome of this case may impair Movants' ability to protect their interests—and because no existing party adequately represents them—Movants respectfully seek intervention as of right

PUBLIC INTEREST
ORGANIZATIONS' MOTION
TO INTERVENE
CASE NO. 2:25-cv-00848-TL

- 1 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA 98104*
*(206) 343-7340*

under Rule 24(a)(2). In the alternative, Movants request permissive intervention under Rule 24(b)(1).

The Plaintiff States take no position on the motion. Defendants oppose the motion.

## BACKGROUND[1]

In 2021, Congress created and appropriated $5 billion for the NEVI Formula Program. Pub. L. 117-58, 135 Stat 429, 1421 (Nov. 15, 2021). Congress made this funding available to all 50 states, the District of Columbia, and Puerto Rico ("States") to "strategically deploy electric vehicle charging infrastructure" and "establish an interconnected network" along the nation's highways. *Id.* at 1421. As a formula program, the distribution of NEVI funding is not discretionary: each fiscal year, Defendants must apportion funds based on a statutory formula, and the funds must remain available to the States until expended. *Id.* at 1422.

Following FHWA guidance, States developed detailed annual plans ("NEVI Plans") outlining how they would use their allocations. Dkt. #1, Compl. ¶¶57-95. After FHWA review, States began implementing those plans, selecting projects and entering agreements with Defendants to commit—or "obligate"—their funds to eligible projects. Dkt. #5, Pls.' Mot. for Prelim. Inj. p. 19. To date, Defendants have apportioned $3.27 billion for fiscal years 2022 through 2025, of which only $526 million has been obligated. Dkt. #1, Exhibit C.

On February 6, 2025, FHWA sent a letter to the States rescinding FHWA's current and prior NEVI guidance, categorically suspending States' NEVI Plans for fiscal years 2022-2025, and prohibiting new obligations of available but uncommitted funds—effectively freezing $2.74 billion. Dkt. #1, Exhibit D. As a direct result, States were forced to halt their implementation of

---

[1] Movants' motion is based upon the specific allegations set forth in its accompanying Complaint-in-Intervention and the declarations cited herein.

PUBLIC INTEREST
ORGANIZATIONS' MOTION
TO INTERVENE
CASE NO. 2:25-cv-00848-TL

- 2 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA 98104*
*(206) 343-7340*

the NEVI Formula Program. On May 7, 2025, a coalition of States filed a Complaint and Motion for a Preliminary Injunction. *See* Dkt. #1; Dkt. #5. Briefing on the Plaintiff States' motion for a preliminary injunction is not yet complete.

In the accompanying Complaint-in-Intervention, Movants now challenge the same agency actions set forth in FHWA's February 6 Letter—namely, the nullification of approved State NEVI Plans and the prohibition on new fund obligations—as arbitrary and capricious and contrary to law under the Administrative Procedure Act, as unconstitutional under separation of powers and the Take Care Clause, and as *ultra vires*. Movants seek vacatur, as well as declaratory and injunctive relief, to void Defendants' unlawful and indefinite suspension of the NEVI Formula Program and to restore its lawful implementation.

## STATEMENT OF MOVANTS' INTERESTS AND STANDING

I.    MOVANTS' INTERESTS.

Movants include nonprofit environmental, equity, consumer, and community-based organizations dedicated to promoting the widespread adoption of EVs and realizing their associated health, climate, economic, and equity benefits.[2] Movants also work to protect their members from vehicle-related air pollution and its disproportionate impacts on underserved communities.[3] Movants have a significant interest in preventing the harms posed by Defendants' indefinite suspension of the NEVI Formula Program and in resuming its lawful implementation.

Movants have long advocated for widespread EV adoption by working to reduce barriers

---

[2] Garcia Decl. ¶¶3, 5-6; Hammon Decl. ¶6; Levin Decl. ¶¶2, 4, 6-7; Robbins Decl. ¶8; Small Decl. ¶6; Smith Decl. ¶¶6-7; O. Wilson Decl. ¶¶14-15.

[3] Garcia Decl.¶5; Hammon Decl. ¶6; Levin Decl. ¶¶9, 15, 21; Robbins Decl. ¶2; O. Wilson Decl. ¶¶10, 14-15.

PUBLIC INTEREST
ORGANIZATIONS' MOTION
TO INTERVENE                        - 3 -
CASE NO. 2:25-cv-00848-TL

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA 98104*
*(206) 343-7340*

to EV use, including improving access to charging infrastructure.[4] Movants' supported the

establishment of the NEVI Formula Program and have actively participated in its

implementation[5]—submitting comments on FHWA's proposed minimum standards for NEVI-

funded charging stations[6] and its NEVI guidance,[7] and engaging in numerous state-level

stakeholder processes related to the development of State NEVI Plans,[8] among other related

activities.

II.     MOVANTS HAVE STANDING.

Movants satisfy the three criteria for associational standing. *Hunt v. Wash. State Apple

Advert. Comm'n*, 432 U.S. 333, 343 (1977). First, Movants' members would have Article III

standing to sue in their own right. As demonstrated by the more than 55 attached declarations,

Defendants' indefinite suspension of the NEVI Formula Program concretely harms Movants'

members by impeding the buildout of a nationwide EV charging network and denying them the

program's intended benefits, resulting in economic, health, consumer, and recreational injuries.

Movants' members include individuals who live, travel, or plan to travel in states across

the country using EVs along designated Alternative Fuel Corridors.[9] Many are motivated to drive

---

[4] Garcia Decl.¶¶5-8; Hammon Decl. ¶¶6-7; Levin Decl. ¶¶2, 17; Robbins Decl. ¶¶11-14; Small Decl. ¶¶7-10; Smith Decl. ¶¶9-11; O. Wilson Decl. ¶¶23-30.
[5] Garcia Decl. ¶¶7-8; Hammon Decl. ¶¶8-9; Levin Decl. ¶¶8-11, 17; Robbins Decl. ¶15; Small Decl. ¶¶9-10; Smith Decl. ¶¶7-11; A. Wilson Decl. ¶7.
[6] Garcia Decl. ¶8; Hammon Decl. ¶9.
[7] Garcia Decl. ¶8.
[8] Garcia Decl. ¶8; Hammon Decl. ¶9; Robbins Decl. ¶15; Small Decl. ¶10; Smith Decl. ¶8.
[9] *See generally* Movants' Decls. (detailing nationwide travel on dozens of designated Alternative Fuel Corridors).

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

EVs to reduce their environmental and climate impact,[10] save on fuel and maintenance,[11] and enjoy the clean,[12] quiet[13] driving experience. Members have encountered frequent problems with the current public charging network, including unreliable,[14] crowded,[15] poorly signed,[16] slow,[17] or inconveniently located stations,[18] as well as confusing pricing[19] and incompatible payment systems.[20] As a result, they face added stress[21] and inconvenience,[22] must engage in time-consuming trip planning,[23] and often forgo[24] or alter[25] desired travel—including limiting travel to

---

[10] *E.g.*, Besa Decl. ¶8; Blumberg Decl. ¶6; Campobasso Decl. ¶9; D'Adamo Decl. ¶4; Dalstrom Decl. ¶3; Dolgert Decl. ¶5; English Decl. ¶3; Frier Decl. ¶5; Hiza Decl. ¶6; Jester Decl. ¶4; Koch Decl. ¶7; Kran-Annexstein Decl. ¶4; Lawrence Decl. ¶5; Mathieu Decl. ¶5; McCurdy Decl. ¶3; Meyer Decl. ¶6; Pollinger Decl. ¶8; Rossi Decl. ¶8; Ruiz Decl. ¶5; Schultz Decl. ¶6; Sharpless Decl. ¶5; Walsh Decl. ¶6.

[11] *E.g.*, Caffery Decl. ¶8; Eastwood Decl. ¶7; Frier Decl. ¶5; Heyman Decl. ¶8; Hiza Decl. ¶6; Koch Decl. ¶7; Mathieu Decl. ¶5; Rossi Decl. ¶8.

[12] *E.g.*, Dubaniewicz Decl. ¶7; Levene Decl. ¶5 (describing sensitivity to gas fumes; "I will never drive another kind of car again because I don't feel sick while driving EVs. It's a miracle.").

[13] *E.g.*, Banashek Decl. ¶8; Erb Decl. ¶12; Mathieu Decl. ¶5; Timberlake Decl. ¶13.

[14] *E.g.*, Banashek Decl. ¶12; Binder Decl. ¶¶6-7; Blumberg Decl. ¶8; Campobasso Decl. ¶11; Dolgert Decl. ¶¶7-8; Eastwood Decl. ¶9; English Decl. ¶8; Levene Decl. ¶10; Minault ¶9; Schultz Decl. ¶11; Von Seggern Decl. ¶8.

[15] *E.g.*, Banashek Decl. ¶12; Besa Decl. ¶15; D'Adamo Decl. ¶8; Dalstrom Decl. ¶6; Dolgert Decl. ¶5; Lawrence Decl. ¶6; Meyer Decl. ¶9; Timberlake Decl. ¶19; Walsh Decl. ¶¶10-12.

[16] *E.g.*, Timberlake Decl. ¶19.

[17] *E.g.*, Walsh Decl. ¶10.

[18] *E.g.*, English Decl. ¶8; Gaskill Decl. ¶6; Jester Decl. ¶7; Meyer Decl. ¶8; Schultz Decl. ¶10.

[19] *E.g.*, Dolgert Decl. ¶7; Dubaniewicz Decl. ¶10.

[20] Jester Decl. ¶7; Timberlake Decl. ¶20.

[21] *E.g.*, Frier Decl. ¶9; Huibregtse Decl. ¶10; Kran-Annexstein Decl. ¶13; Meyer Decl. ¶9; Minault Decl. ¶9.

[22] *E.g.*, D'Adamo Decl. ¶8; Eastwood Decl. ¶10; Schultz Decl. ¶10.

[23] *E.g.*, D'Adamo Decl. ¶6; Dolgert Decl. ¶8; Frier Decl. ¶9; Kran-Annexstein Decl. ¶13; Ramos Decl. ¶9; Rossi Decl. ¶11; Timberlake Decl. ¶18; Von Seggern Decl. ¶9.

[24] *E.g.*, Blumberg Decl. ¶11; Frier Decl. ¶10; Huibregtse Decl. ¶11; Levene Decl. ¶¶8-9; Minault Decl. ¶17; Von Seggern Decl. ¶11.

[25] *E.g.*, Minault Decl. ¶17. Members described needing to rent a gasoline vehicle to make a trip, Eastwood Decl. ¶11; Lawrence Decl. ¶7, needing to borrow a friend's gasoline-powered car, Rossi Decl. ¶12, or choosing to fly despite preferring to travel by car, *e.g.,* Cruickshank Decl. ¶8; Gaskill Decl. ¶7.

---

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

times when chargers are less crowded.[26] Even members who also own gas-powered vehicles are harmed by being unable to take trips in their EVs, missing out on opportunities for cost savings and preferred use.[27] Some members bought EVs in reliance on NEVI's promised buildout and are now harmed by the freeze.[28] Others have postponed EV purchases while awaiting a more reliable charging network, and the freeze impacts their ability to obtain and use their preferred vehicle technology and to realize fuel and maintenance savings.[29] In addition, some members suffer from asthma that is exacerbated by vehicle pollution[30] or live in areas impacted by vehicle pollution,[31] and the delay in NEVI implementation prolongs that exposure by slowing the EV transition.

The denial of access to a nationwide network of EV fast chargers inflicts classic pocketbook, health, and consumer harms on Movants' members. Courts have long held that cognizable injuries arise from the loss of an opportunity to pursue a government benefit—even if the benefit is not guaranteed—and from ongoing or threatened harm from restricted use of preferred technologies, pollution-related health risks, or risks to physical safety from environmental damage. *See CC Distributors, Inc. v. United States*, 883 F.2d 146, 150 (D.C. Cir. 1989); *Nat. Res. Def. Council v. U.S. Env't Prot. Agency*, 735 F.3d 873, 878 (9th Cir. 2013); *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1100 (9th Cir. 2024). Here, reduced access to

---

[26] *E.g.*, Von Seggern Decl. ¶9.
[27] *E.g.*, Besa Decl. ¶16; Bhatt Decl. ¶¶9-10; Binder Decl. ¶10; Caffery Decl. ¶9; Gaskill Decl. ¶7; Lawrence Decl. ¶7; Schumann Decl. ¶¶6-7; Shoaff Decl. ¶8.
[28] *E.g.*, Lawrence Decl. ¶9.
[29] *E.g.*, Binder Decl. ¶13; Hiza Decl. ¶5; Hoffmann Decl. ¶9; Koch Decl. ¶8; Pollinger Decl. ¶8; Robbins Decl. ¶18; Shoaff Decl. ¶10; Wermers Decl. ¶6; White-Williamson Decl. ¶¶13, 15; A. Wilson Decl. ¶¶13-14.
[30] *E.g.*, Besa Decl. ¶9; Dubaniewicz Decl. ¶6; Lawrence Decl. ¶3; Mathieu Decl. ¶5; Ramos Decl. ¶3; Ross Decl. ¶14; Ruiz Decl. ¶3.
[31] *E.g.*, Fearrington Decl. ¶¶9, 18; Ross Decl. ¶¶14-15; Ruiz Decl. ¶3.

PUBLIC INTEREST
ORGANIZATIONS' MOTION
TO INTERVENE                    - 6 -
CASE NO. 2:25-cv-00848-TL

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

NEVI-supported charging restricts highway mobility and use of EVs, raises travel and vehicle

operating costs, and heightens health and environmental risks.

Vacating Defendants' actions and restoring NEVI funding would redress Movants'

injuries by allowing continued buildout of the nationwide fast-charging network. The State

NEVI Plans include stations on Alternative Fuel Corridors that members use[32] and this buildout

would support members' EV travel—making highway trips,[33] longer journeys,[34] and access to

remote areas[35] more feasible—while reducing stress,[36] improving safety during evacuations,[37]

and addressing concerns like limited payment options at public stations.[38] It would also give

members the confidence to purchase an EV.[39] Increased EV adoption spurred by NEVI would

reduce air pollution, improving health outcomes for members with asthma and other

sensitivities.[40]

Movants also meet the additional requirements for associational standing: The interests

they seek to protect are germane to their organizational purposes—promoting EV adoption and

reducing transportation-related air pollution[41]—and neither the claims nor the relief sought

---

[32] *E.g.*, Banashek Decl. ¶11; Heyman Decl. ¶11; Rossi Decl. ¶15.

[33] *E.g.*, Blumberg Decl. ¶7; Gaskill Decl. ¶10; Von Seggern Decl. ¶13.

[34] *E.g.*, Binder Decl. ¶¶11-12; Cruickshank Decl. ¶12; Dubaniewicz Decl. ¶12; Dunn Decl. ¶10; Frier Decl. ¶12; Heyman Decl. ¶11; Lawrence Decl. ¶8; Ruiz Decl. ¶11; Sharpless Decl. ¶10; Shoaff Decl. ¶¶8-9.

[35] *E.g.*, Sharpless Decl. ¶10; Von Seggern Decl. ¶12.

[36] *E.g.*, Blumberg Decl. ¶15; Caffery Decl. ¶14; D'Adamo Decl. ¶12; Dalstrom Decl. ¶11; Dolgert Decl. ¶¶8, 10, 13; Kran-Annexstein Decl. ¶13; Timberlake Decl. ¶23; Walsh Decl. ¶16.

[37] *E.g.*, Caffery Decl. ¶15; Erb Decl. ¶23; Heyman Decl. ¶12-15; Timberlake Decl. ¶24, 26.

[38] *E.g.*, Erb Decl. ¶18.

[39] *E.g.*, Binder Decl. ¶13; Hiza Decl. ¶10; Hoffman Decl. ¶11; Koch Decl. ¶15; Pollinger Decl. ¶¶9, 14; Robbins Decl. ¶18; Shoaff Decl. ¶10; Wermers Decl. ¶12.

[40] *E.g.*, Besa Decl. ¶9; Dubaniewicz Decl. ¶6; Lawrence Decl. ¶3; Mathieu Decl. ¶5; Ramos Decl. ¶¶3, 11; Ross Decl. ¶¶15, 31; Ruiz Decl. ¶3.

[41] Garcia Decl. ¶¶3, 5-8; Hammon Decl. ¶¶6-9; Levin Decl. ¶¶2, 12-15, 19-23; Robbins Decl. ¶¶2, 8, 15; Small Decl. ¶¶6-11; Smith Decl. ¶¶5-13; O. Wilson Decl. ¶¶10, 14-15.

---

PUBLIC INTEREST
ORGANIZATIONS' MOTION
TO INTERVENE                    - 7 -
CASE NO. 2:25-cv-00848-TL

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA 98104*
*(206) 343-7340*

requires individual member participation. *See Hunt*, 432 U.S. at 343; *UAW v. Brock*, 477 U.S. 274, 282 (1986).

## ARGUMENT

Federal Rule of Civil Procedure 24 provides for two types of intervention: intervention of right and permissive intervention. A court may grant a motion to intervene on either basis. *See Int'l Union v. Scofield*, 382 U.S. 205, 217 n.10 (1965). Rule 24 is "generally construe[d] . . . broadly in favor of proposed intervenors." *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002) (internal citations omitted). Permitting interested persons to participate serves "both efficient resolution of issues and broadened access to the courts" while also helping to prevent future related litigation. *Forest Conserv. Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 n.8 (9th Cir. 1995). In this case, judicial economy and efficiency are best served by Movants' intervention in this action, rather than a separate lawsuit.

Movants respectfully request intervention as of right under Rule 24(a), or alternatively, permissive intervention under Rule 24(b).

## I.    MOVANTS ARE ENTITLED TO INTERVENE AS OF RIGHT.

To intervene as of right under Rule 24(a), a movant must demonstrate that: (1) the application is timely; (2) the movant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the movant's ability to protect its interest; and (4) the existing parties may not adequately represent the movant's interest. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001). Movants meet all four of these criteria.

### A.    Movants' Motion to Intervene is Timely.

To assess timeliness, courts evaluate the stage of the proceedings, the potential for

PUBLIC INTEREST
ORGANIZATIONS' MOTION
TO INTERVENE                    - 8 -
CASE NO. 2:25-cv-00848-TL

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

1   prejudice to other parties, and the reasons for any delay in seeking intervention. *United States v.*

2   *Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004). Here, Movants have filed to intervene just

3   15 days after the Plaintiff States filed their complaint, at a point when the litigation is still in its

4   early stages. No hearings have been held, and no substantive rulings have been issued. In

5   addition, Movants do not intend to participate in briefing on the Plaintiff States' motion for a

6   preliminary injunction. The timing of this motion will thus not prejudice any of the parties' rights

7   or interests. These factors collectively support a finding that the motion is timely. *See Nw. Forest*

8   *Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996).

9       B.    Movants Have Significant Protectable Interests in This Action.

10      Under Rule 24(a)(2), a movant must show that the interest asserted is protectable under

11  some law and that there is a relationship between that interest and the claims at issue. *Sierra*

12  *Club v. Envt'l Prot. Agency*, 995 F.2d 1478, 1481 (9th Cir. 1993). This requirement is "primarily

13  a practical guide to disposing of lawsuits by involving as many apparently concerned persons as

14  is compatible with efficiency and due process." *Cnty. of Fresno v. Andrus*, 622 F.2d 436, 438

15  (9th Cir. 1980).

16      Movants are public interest organizations committed to accelerating the adoption of EVs

17  and reducing transportation-related air pollution by advancing policies that expand access to

18  charging infrastructure.[42] Their members seek access to the nationwide EV charging network the

19  NEVI Formula Program was created to support.[43] Movants therefore have a significant interest in

20  the lawful implementation of the NEVI Formula Program. *See Californians for Safe &*

21

22

23  _____

[42] Garcia Decl.¶¶3, 5-6; Hammon Decl. ¶6; Levin Decl. ¶¶2, 4, 6-7; Robbins Decl. ¶8; Small
Decl. ¶6; Smith Decl. ¶¶6-7; O. Wilson Decl. ¶¶14-15.
[43] *See generally* Movants' Decls.

24

PUBLIC INTEREST
ORGANIZATIONS' MOTION
TO INTERVENE                      - 9 -
CASE NO. 2:25-cv-00848-TL

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

*Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1189-90 (9th Cir. 1998) (allowing union to intervene in challenge to wage laws where members had a substantial interest in receiving the affected wages). Movants also played a key role in advocating for NEVI's inclusion in the Infrastructure Investment and Jobs Act and have participated extensively in administrative proceedings and stakeholder efforts related to its implementation. This sustained involvement reflects a direct, protectable interest sufficient to support intervention as of right. *See Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983).

C.     Movants' Interests May Be Impaired as a Result of This Litigation.

Under Rule 24(a)(2), a movant must demonstrate that the disposition of the action "*may as a practical matter,*" impede its ability to protect its interests. Fed. R. Civ. P. 24(a)(2) (emphasis added). This is a "minimal" burden—intervention is appropriate where there is a possibility that denial could impair the movant's legal interest. *City of Los Angeles*, 288 F.3d at 401. Importantly, the inquiry "is not limited to consequences of a strictly legal nature." *Forest Conserv. Council*, 66 F.3d at 1497-98.

The relief sought in Movants' Complaint-in-Intervention is essential to safeguarding their interests, which would be directly and adversely affected if they are not permitted to participate in this litigation. Defendants' unlawful and indefinite suspension of the NEVI Formula Program disrupts the development of a nationwide EV charging network—an outcome that directly undermines the interests of Movants and their members. Granting intervention would enable Movants to advance their strong interest in accelerating the widespread adoption of EVs, as well as to protect their members' ability to access and rely on the charging network that the NEVI Program was designed to deliver. If intervention is denied, Movants will be unable to protect

PUBLIC INTEREST
ORGANIZATIONS' MOTION
TO INTERVENE                                    - 10 -
CASE NO. 2:25-cv-00848-TL

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

their interests, and those interests will necessarily be impaired.

D.    Movants' Interests May Not Be Adequately Represented by Existing Parties.

The final requirement for intervention as of right is a "minimal" showing that the existing

parties to the litigation "may" not adequately represent the interests of Movants. *Arakaki v.*

*Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (citing *Trbovich v. United Mine Workers*, 404

U.S. 528, 538 n.10 (1972)). In evaluating this requirement, courts assess whether: (1) an existing

party "will *undoubtedly* make all of a proposed intervenor's arguments;" (2) an existing party is

"capable and willing to make such arguments;" and (3) a proposed intervenor "would offer any

necessary elements to the proceedings" that would be neglected by an existing party. *Arakaki*,

324 F.3d at 1086 (emphasis added).

Here, no existing party adequately represents Movants' interests. Defendants plainly hold

interests adverse to Movants. The Plaintiff States' interests are also not coextensive with

Movants' for several reasons, each of which supports a finding of inadequate representation.

First, the geographic scope of Movants' interests is broader than that of the Plaintiff

States, whose sovereign interests are confined to their individual jurisdictions. Movants include

organizations with national reach and members that reside in every state as well as the District of

Columbia and Puerto Rico.[44] As detailed above, Movants have submitted declarations from

dozens of members who travel nationwide on Alternative Fuel Corridors, demonstrating that

Movants' harms span well beyond the boundaries of the states participating in this litigation.

Second, the Plaintiff States must balance a broader range of competing interests than

Movants in determining their policy and litigation positions, including cost, administrative

---

[44] *See, e.g.*, Garcia Decl. ¶4; Hammon Decl. ¶5; Levin Decl. ¶¶4-5.

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

resource constraints, and political pressures. Movants, by contrast, are focused specifically on accelerating EV adoption and improving access to reliable EV charging infrastructure, consistent with their organizational missions and the interests of their members. It is well established that a proposed intervenor's narrower, more focused interests may independently support a finding of inadequate representation. *See, e.g.*, *Trbovich*, 404 U.S. at 538-39; *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823-24.

Third, Movants represent the interests of members that are current or prospective EV drivers that are directly impacted by the freeze of the NEVI Formula Program. Their injuries—including reduced access to reliable public charging, delayed EV purchases, air pollution, constrained travel, and the loss of expected public investment in their communities—differ in nature and focus from the Plaintiff States' asserted interests. The Plaintiff States' interests center on state sovereignty and access to congressionally appropriated formula funds for not only the NEVI Formula Program but other transportation priorities that Movants may not share. For example, Movants include organizations that are actively litigating challenges to federally-funded transportation projects advanced by individual states within the Plaintiff States' coalition.[45] *Cf. Idaho Farm Bureau Fed'n v. Babbit*, 58 F.3d 1392, 1398 (9th Cir. 1995) (finding inadequate representation prong satisfied where movant's prior litigation led to the challenged agency action).

Finally, although a rebuttable presumption of adequate representation may arise where a

---

[45] *See, e.g.*, *Md. Chapter of the Sierra Club v. Fed. Highway Admin.*, No. 24-1447 (4th Cir. argued Jan. 28, 2025) (Sierra Club and NRDC challenge to Maryland's planned expansion of I-270); *Milwaukee Inner City Congregations Allied for Hope v. U.S. Dep't of Transp.*, No. 2:24-CV-01043 (E.D. Wis. filed Aug. 19, 2024) (Sierra Club challenge to Wisconsin's planned expansion of I-94).

PUBLIC INTEREST
ORGANIZATIONS' MOTION
TO INTERVENE                                        - 12 -
CASE NO. 2:25-cv-00848-TL

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

proposed intervenor and an existing party share the same "ultimate objective," *see Sw. Ctr. for Biological Diversity*, 268 F.3d at 823 (citing *Nw. Forest Res. Council*, 82 F.3d at 838), that presumption is inapplicable here. Movants seek relief for their members' injuries, including harms in states beyond those represented by Plaintiff States, demonstrating that Movants' "ultimate objective" is distinct. And, for the reasons detailed above, "even if the presumption did apply, it is rebutted here because [Movants] and [Plaintiff States] do not have sufficiently congruent interests." *Id.*

Because Movants' interests are distinct and more narrowly focused than those of the Plaintiff States, Movants easily meet the "minimal" burden to show that the Plaintiff States may not be "capable and willing" to adequately represent Movants' particularized interests or to "undoubtedly make all of [Movants'] arguments." *Arakaki*, 324 F.3d at 1086. Indeed, "it is not [Movants'] burden at this stage in the litigation to anticipate specific differences in trial strategy;" rather, Movants need only "show that, because of the difference in interests, it is *likely* that [the Plaintiff States] will not advance the same arguments as [Movants]." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 824 (emphasis added). For these reasons, Movants' distinct interests satisfy Rule 24(a)(2)'s requirement that existing parties may not adequately represent their interests.

## II.    ALTERNATIVELY, MOVANTS SATISFY THE STANDARD FOR PERMISSIVE INTERVENTION.

Alternatively, this Court should grant permissive intervention. Under Rule 24(b)(1)(B), a court may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact."

Movants' claims, set forth in the accompanying Complaint-in-Intervention, are factually and legally related to the main action. Movants challenge the same agency actions as the Plaintiff

PUBLIC INTEREST
ORGANIZATIONS' MOTION
TO INTERVENE
CASE NO. 2:25-cv-00848-TL

- 13 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

States and seek to restore lawful implementation of the NEVI Formula Program to protect their own interests and those of their members. While Movants may present distinct arguments, their claims are unquestionably related.

In addition, Movants' focused interests in accelerating EV adoption, along with their broader geographic scope and specialized knowledge of EV policy, including the NEVI Formula Program itself, position them to meaningfully contribute to the development of a complete factual record and inform the proceedings. The Ninth Circuit has long recognized that such contributions support permissive intervention. *See Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977); *Sagebrush Rebellion, Inc.* 713 F.2d at 528 (noting specialized expertise and differing perspective of environmental nonprofit as a basis for intervention).

Allowing Movants to intervene here, rather than pursue a separate lawsuit concerning the same program and government action, also serves the interests of judicial economy and efficiency. Intervention avoids overlapping litigation and ensures that the Court has before it the full range of legal arguments and stakeholder perspectives necessary to resolve the case fairly and efficiently.

Movants seek to intervene early in the litigation and do not seek to disrupt the existing schedule. Their participation will not unduly delay or prejudice the adjudication of the rights of the original parties. Accordingly, Movants satisfy the requirements for both intervention as of right and permissive intervention under Rule 24(b)(1).

**CONCLUSION**

For the foregoing reasons, the Court should grant Movants leave to intervene.

/ / /

/ / /

PUBLIC INTEREST
ORGANIZATIONS' MOTION
TO INTERVENE                          - 14 -
CASE NO. 2:25-cv-00848-TL

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA 98104*
*(206) 343-7340*

I certify that this memorandum contains 4,176 words, in compliance with the Local Civil Rules.

_s/ Jan E. Hasselman_

JAN E. HASSELMAN, WSBA #29017
Earthjustice
810 Third Avenue, Suite 610
Seattle, WA 98104
Tel: (206) 343-7340
jhasselman@earthjustice.org

_Counsel for Plaintiff-Intervenors Sierra Club, Climate Solutions, Southern Alliance for Clean Energy, CleanAIRE NC, West End Revitalization Association, and Plug In America_

_s/ Joshua Berman_
_s/ Joshua Stebbins_

JOSHUA BERMAN*
JOSHUA STEBBINS*
Sierra Club
50 F St. NW, 8th Floor
Washington, DC 20001
Tel: (202) 650-6062
josh.berman@sierraclub.org
josh.stebbins@sierraclub.org

_Counsel for Plaintiff-Intervenor Sierra Club_

_s/ Atid Kimelman_

ATID KIMELMAN*
Natural Resources Defense Council
111 Sutter Street, 21st Floor
San Francisco, CA 94104
Tel: (415) 875-6100
akimelman@nrdc.org

_Counsel for Plaintiff-Intervenor Natural Resources Defense Council_

 _s/ Jennifer A. Sorenson_

JENNIFER A. SORENSON, WSBA #60084
P.O. Box 31936
Seattle, WA 98103
Tel: (415) 361-9495
jen.sorenson@gmail.com

_Counsel for Plaintiff-Intervenor Natural Resources Defense Council_

_s/ Joseph Halso_

JOSEPH HALSO*
Sierra Club
1536 Wynkoop St., Suite 200
Denver, CO 80206
Tel: (303) 454-3365
joe.halso@sierraclub.org

_Counsel for Plaintiff-Intervenor Sierra Club_

_s/ Thomas Zimpleman_

THOMAS ZIMPLEMAN*
Natural Resources Defense Council
1152 15th Street NW, Suite 300
Washington, D.C. 20005
Tel: (202) 289-6868
tzimpleman@nrdc.org

_Counsel for Plaintiff-Intervenor Natural Resources Defense Council_

PUBLIC INTEREST
ORGANIZATIONS' MOTION
TO INTERVENE                    - 15 -
CASE NO. 2:25-cv-00848-TL

_Earthjustice_
_810 Third Ave., Suite 610_
_Seattle, WA 98104_
_(206) 343-7340_

_s/ Megan Kimball_
_s/ Kasey Moraveck_

MEGAN KIMBALL*
KASEY MORAVECK*
Southern Environmental Law Center
136 E Rosemary St., Suite 500
Chapel Hill, NC 27514
Tel: (919) 967-1450
mkimball@selc.org
kmoraveck@selc.org

_Counsel for Plaintiff-Intervenors_
_Southern Alliance for Clean Energy,_
_CleanAIRE NC, West End Revitalization_
_Association, and Plug In America_

_s/ Garrett Gee_

GARRETT GEE*
Southern Environmental Law Center
122 C Street NW, Suite 325
Washington, DC 20001
Tel: 202-828-8382
ggee@selc.org

_Counsel for Plaintiff-Intervenors_
_Southern Alliance for Clean Energy,_
_CleanAIRE NC, West End Revitalization_
_Association, and Plug In America_

PUBLIC INTEREST
ORGANIZATIONS' MOTION
TO INTERVENE                            - 16 -
CASE NO. 2:25-cv-00848-TL

_Earthjustice_
_810 Third Ave., Suite 610_
_Seattle, WA 98104_
_(206) 343-7340_

1

## CERTIFICATION OF CONFERRAL

2

I, Jan E. Hasselman, hereby certify, pursuant to Section II.D. of the Court's Standing

3

Order, that I have conferred with counsel for the parties regarding their positions on the

4

foregoing motion. Counsel for Plaintiff States represented that Plaintiff States take no position on

5

the motion. Counsel for Defendants represented that Defendants oppose the motion. The parties'

6

positions are accurately reflected in the motion.

7

*s/ Jan E. Hasselman*

8

JAN E. HASSELMAN, WSBA #29017
Earthjustice

9

810 Third Avenue, Suite 610
Seattle, WA 98104

10

Tel: (206) 343-7340
jhasselman@earthjustice.org

11

12

13

14

15

16

17

18

19

20

21

22

23

24

PUBLIC INTEREST
ORGANIZATIONS' MOTION
TO INTERVENE                              - 17 -
CASE NO. 2:25-cv-00848-TL

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*