1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON**

STATE OF WASHINGTON, *et al.*,

               Plaintiffs,

     v.

DEPARTMENT OF TRANSPORTATION, *et al.*,

               Defendants.

No. 2:25-cv-00848-TL

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

**TABLE OF CONTENTS**

TABLE OF CONTENTS................................................................................................................i

TABLE OF AUTHORITIES .......................................................................................................ii

INTRODUCTION .......................................................................................................................1

BACKGROUND .........................................................................................................................3

    I.    Statutory Background ...................................................................................................3

    II.   Factual Background ......................................................................................................3

    III.  Procedural History .......................................................................................................6

LEGAL STANDARD..................................................................................................................6

ARGUMENT ..............................................................................................................................7

    I.    Plaintiffs Cannot Establish Likelihood of Success on the Merits....................................7

        A. Plaintiffs' Claims Are Not Ripe.................................................................................7

        B..Plaintiffs' APA Claims Fail Because They Do Not Seek Judicial Review of a Discrete,
        Final Agency Action. ................................................................................................ 10

        C. Defendants Are Engaging in Reasoned Decision-Making in Accordance with Statutory
        Authority. ................................................................................................................ 12

            i.  FHWA Has the Authority to Revoke and Update NEVI Program Guidance and it
            Has Appropriately Exercised Such Authority.............................................................. 13

            ii. FHWA Has the Authority to Suspend State Plans for Unobligated Funds Pending
            the Issuance of New Guidance and It Has Appropriately Exercised Such Authority. 14

        D. Plaintiffs Cannot Show a Likelihood of Success on their Separation of Powers Claim.
        .............................................................................................................................. 16

    II.   Plaintiffs Have Failed to Demonstrate that They Will Suffer Irreparable Harm Unless the
    Court Grants the Requested Relief. ................................................................................ 21

    III.  The Balance of the Equities and the Public Interest Support Rejection of Plaintiffs'
    Motion........................................................................................................................... 24

    IV.  Plaintiffs Should Be Ordered to Post Security in Connection with Any Preliminary
    Injunctive Relief And Any Preliminary Relief Should Be Stayed To Allow Consideration of
    Whether to Appeal ........................................................................................................ 25

CONCLUSION ......................................................................................................................... 27

i

DEFENDANTS' OPPOSITION TO              U.S. Department of Justice
PLAINTIFFS'MOTION FOR           Civil Division, Federal Programs Branch
PRELIMINARY INJUNCTION                1100 L Street, N.W.
Case No. 25-cv-00848-TL                 Washington, D.C.  20005
                                   (202) 598-7409

# TABLE OF AUTHORITIES

**CASES**

*Advanced Integrative Med. Sci. Inst., PLLC v. Garland*, 24 F.4th 1249 (9th Cir. 2022) ............. 11

*Arc. of Cal. v. Douglas*, 757 F.3d 975 (9th Cir. 2014) ................................................................ 21

*Benisek v. Lamone*, 585 U.S. 155 (2018)..................................................................................... 21

*Bennett v. Spear*, 520 U.S. 154 (1997) ....................................................................................... 10

*Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103 (1948) ..................................... 11

*Ciba–Geigy Corp. v. EPA*, 801 F.2d 430 (D.C. Cir. 1986) ......................................................... 12

*City of New Haven v. United States*, 809 F.2d 900 (D.C. Cir. 1987) .......................................... 18

*City of San Diego v. Whitman*, 242 F.3d 1097 (9th Cir. 2001)................................................... 12

*Clinton v. Acequia, Inc.*, 94 F.3d 568 (9th Cir. 1996) .................................................................. 8

*Dalton v. Specter*, 511 U.S. 462 (1994)................................................................................. 16, 17

*Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891 (2020) ............. 15

*Department of Education v. California*, No. 24A910, 2025 WL 1008354 (Apr. 4, 2025) .......... 10

*Dist. 4 Lodge of the Int'l Assoc. of Machinists & Aerospace Workers Local Lodge 207 v.*
*Ctr. for Biological Diversity*, 18 F.4th 38 (1st Cir. 2021) ..................................................... 24

*DSE, Inc. v. United States*, 169 F.3d 21 (D.C. Cir. 1999) .......................................................... 25

*EPA v. Brown*, 431 U.S. 99 (1977) ............................................................................................. 11

*F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009)....................................................... 16

*Friends of the Wild Swan, Inc. v. Dir. of United States Fish & Wildlife Serv.*, 745 Fed.
App'x 718 (9th Cir. 2018) .................................................................................................... 10

*Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949 (9th Cir. 2007)......................................... 7

DEFENDANTS' OPPOSITION TO
PLAINTIFFS'MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 598-7409

*hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022) .................................................. 22

*Long v. Amazon.com Services LLC*, No. C23-209RSL, 2023 WL 7305134
(W.D. Wash. Oct. 4, 2023) ...................................................................................................... 7

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197
(9th Cir. 1980) ...................................................................................................................... 22

*Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211 (9th Cir. 1984).................................... 22

*Maryland v. King*, 567 U.S. 1301 (2012) .................................................................................. 24

*Mazurek v. Armstrong,* 520 U.S. 968 (1997)................................................................................ 6

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003)........................................... 8, 9

*Nat'l Treasury Employees Union v. Trump*, No. 25-5157, 2025 WL 1441563
(D.C. Cir. May 16, 2025) ...................................................................................................... 25

*Nken v. Holder*, 556 U.S. 418 (2009) ................................................................................... 6, 24

*NLRB v. Cal. Pac. Med. Ctr.*, 991 F.2d 536 (9th Cir. 1993) ...................................................... 22

*Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374 (9th Cir. 1985)......................... 22

*Porter v. Jones*, 319 F.3d 483 (9th Cir. 2003) ............................................................................. 8

*S. California All. of Publicly Owned Treatment Works v. EPA*, 8 F.4th 831 (9th Cir. 2021) ...... 12

*Sampson v. Murray*, 415 U.S. 61 (1974) .................................................................................... 21

*Sharp Mgmt., LLC v. United States*, No. C07-402JLR, 2007 WL 1367698
(W.D. Wash. May 8, 2007).................................................................................................... 22

*Solar Energy Indus. Ass'n v. FERC*, 80 F.4th 956 (9th Cir. 2023)............................................. 14

*Texas v. United States*, 523 U.S. 296 (1998) ............................................................................... 8

*Trump v. Mazars USA, LLP*, 591 U.S. 848 (2020) ..................................................................... 18

*Trump v. New York*, 529 U.S. 125 (2020)..................................................................................... 7

iii

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

*United States v. Streich*, 560 F.3d 926 (9th Cir. 2009) ........................................................ 7

*Valeo Intellectual Prop., Inc. v. Data Depth Corp.*, 368 F. Supp. 2d 1121
(W.D. Wash. May 5, 2005) ..................................................................................................... 21

*W. Watersheds Project v. Salazar*, 692 F.3d 921 (9th Cir. 2012) ....................................... 22

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997 (9th Cir. 2021) ......... 11

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008). ...................................................... 6

*Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1 (2015) ....................................................... 13

**STATUTES**

2 U.S.C. § 681 ......................................................................................................................... 19

2 U.S.C. § 683 ......................................................................................................................... 17

2 U.S.C. § 684 ......................................................................................................................... 17

2 U.S.C. § 687 ......................................................................................................................... 17

2 U.S.C. § 688 ......................................................................................................................... 17

28 U.S.C. § 1491 ..................................................................................................................... 10

5 U.S.C. § 704 .................................................................................................................... 10, 11

Pub. L. No. 117-58, 135 Stat. 429 (2021) ...................................................................... passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 65(c) ............................................................................................................... 25

U.S. Gov't Accountability Off., Decision No. B-337137, *U.S. Department of Transportation, Federal Highway Administration—Application of the Impoundment Control Act to Memorandum Suspending Approval of State Electric Vehicle Infrastructure Deployment Plans* (May 22, 2025)
.................................................................................................................................................. 20

iv

DEFENDANTS' OPPOSITION TO
PLAINTIFFS'MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

1

**INTRODUCTION**

2      Plaintiffs—sixteen States and the District of Columbia—seek to enjoin the Department of

3  Transportation's ("DOT") Federal Highway Administration ("FHWA") from exercising its

4  statutorily authorized discretion to develop and implement guidance for the National Electric

5  Vehicle Infrastructure ("NEVI") Formula Program.  Under the NEVI Program, FHWA

6  apportions funds to States pursuant to a statutory formula.  Following its annual approval of each

7  State's infrastructure deployment plans submitted in accordance with FHWA's annual NEVI

8  Program guidance, States are authorized to obligate apportioned funds to projects that are

9  consistent with the State's approved deployment plan.  Since the NEVI Program was enacted in

10 2021, the former administration issued four guidance documents imposing requirements beyond

11 the statutory text and that aligned with that administration's policies and priorities.  In February

12 2025, as it began to update NEVI guidance while remaining in line with the stated statutory

13 purpose, FHWA rescinded all former guidance, suspended the approval of State plans submitted

14 under prior guidance, and temporarily paused new obligations pending its issuance of updated

15 draft guidance and promulgation of that guidance for public comment.  Notably, FHWA has

16 permitted reimbursement of existing obligations until new guidance is issued.  Three months

17 later, Plaintiffs seek a preliminary injunction, claiming that they will be irreparably harmed if

18 non-obligated NEVI Program funds are not immediately disbursed.  Plaintiffs' motion fails.

19      As a threshold matter, Plaintiffs' claims are not ripe for review.  FHWA is working

20 diligently to issue updated guidance.  Once that draft guidance is issued, Plaintiffs will have the

21 opportunity to submit new deployment plans, along with requests for approval of new

22 obligations under those plans.   Until then, Plaintiffs may continue processing existing

23 obligations.  Their conjecture that the updated guidance may inhibit future obligation of funds is

24

1

DEFENDANTS' OPPOSITION TO
PLAINTIFFS'MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

grounded only in speculation about Defendants' potential, future actions. These hypothetical scenarios are not justiciable.

Plaintiffs' claims also fail on the merits. Defendants have not taken final action that is redressable under the Administrative Procedure Act ("APA"). FHWA's decision to review and update NEVI guidance is merely an interim step that will ultimately manifest into final agency action in the form of new guidance and new approvals. Plaintiffs cannot now speculate about what the forthcoming guidance will contain and how it will potentially affect their interests. Eliminating the ability to manage the programs administered under agency guidance would improperly divest Defendants of their statutory authority. Nor has FHWA acted arbitrarily and capriciously; rather, Congress granted the agency authority to issue NEVI guidance, and with that authority comes the ability to revise that guidance, as the previous administration did multiple times. Moreover, it is reasonable to pause the obligation of future funds for a short time while ensuring that the guidance comports with statutory and policy requirements. Indeed, FHWA properly considered reliance interests by ensuring reimbursement of obligated funds. Finally, Plaintiffs' claims about a violation of "separation of powers" is really a dispute about the purported impoundment of funds for which it claims disbursement is statutorily required. But this claim is just an Impoundment Control Act claim in another garb—and that Act cannot be enforced by private parties, as the Plaintiffs here improperly attempt to do.

Plaintiffs have also failed to show that they are suffering, or will suffer, irreparable harm in the absence of preliminary relief. Their months-long delay in seeking preliminary relief is itself dispositive. Moreover, Plaintiffs failed to show that they need access to new obligations on a preliminary basis or that any delay in accessing funds cannot be redressed through monetary means. The balance of equities and the public interest also cut against Plaintiffs' request. The Court should, therefore, deny Plaintiffs' request for a preliminary injunction.

2

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 598-7409

## BACKGROUND

### I.    Statutory Background

The Infrastructure Investment and Jobs Act ("IIJA") was passed on November 15, 2021. Pub. L. No. 117-58, 135 Stat. 429 (2021).  The IIJA established the NEVI Program "to provide funding to States to strategically deploy electric vehicle charging infrastructure and to establish an interconnected network to facilitate data collection, access, and reliability." *Id*. at 1421. Appropriated funds are apportioned to States in amounts that are based on a statutory formula. *Id*. at 1422.

Under the Program, States shall use NEVI funds for "(1) the acquisition and installation of electric vehicle charging infrastructure . . . ; (2) proper operation and maintenance of electric vehicle charging infrastructure; and (3) data sharing about electric vehicle charging infrastructure . . . ." *Id*. at 1421–22.  By statute, FHWA, in coordination with the Department of Energy ("DOE"), is required to develop "guidance for States and localities to strategically deploy electric vehicle charging infrastructure." *Id*. at 1423.  Each State must submit a plan to FHWA "in such form and such manner" as FHWA requires, describing how the State "intends to use funds distributed to the State" in "carry[ing] out the Program for each fiscal year in which funds are made available." *Id*. at 1422.  If a State fails to submit a plan as required or FHWA "determines a State has not taken action to carry out its plan," FHWA may "withhold or withdraw" funds from the State and may "award such funds on a competitive basis to local jurisdictions within the State." *Id*. at 1422.

### II.    Factual Background

FHWA is a DOT operating administration.  Emily Biondi Decl. ("Biondi Decl.") ¶ 1. The Joint Office of Energy and Transportation ("Joint Office"), which was created by the IIJA, was established and utilized to facilitate required collaboration between DOT and DOE. *Id*. ¶ 4.

3

DEFENDANTS' OPPOSITION TO
PLAINTIFFS'MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

FHWA and the Joint Office administered the NEVI Program.  *Id*.  Congress appropriated funds for fiscal years 2022 through 2026 for the NEVI Program.  *Id*. ¶ 5.  FHWA apportions appropriated funds "using a formula that the IIJA prescribes."  *Id*.  "For purposes of the NEVI Program, 'apportionment' means distributing funds to the various States as the statutory formula requires making them available for obligation by the States pursuant to an approved State Plan."  *Id*.  FHWA does not exercise any discretion in determining the amounts available to each State under the Program.  *Id*.

However, to access funds, States must submit infrastructure deployment plans, "which FHWA then reviews and approves."  *Id*. ¶ 9 (quoting 135 Stat. 1422); *see, e.g.*, Exhibit A at 1 ("Under this program, each State is required to submit an EV Infrastructure Deployment Plan (Plan) that describes how the State intends to use its apportioned NEVI Formula Program funds in accordance with this guidance. No NEVI Formula Program funds shall be obligated by a State until FHWA approves that State's Plan . . . .").  Once a State plan is approved, NEVI funds are made available to the States for obligation.  Biondi Decl. ¶ 10.  "For purposes of the NEVI Formula Program, 'obligating funds' means executing a legally binding agreement that contractually commits FHWA to reimburse states for eligible expenses associated with certain projects."  *Id*.  State plans "were reviewed by the Joint Office and FHWA to ensure, at a minimum, they comply with the information requested in the guidance."  *Id*. ¶ 9.  If FHWA and the Joint Office found that "more information was needed to determine whether the Plan fully complies with the guidance," they "contacted the State and requesedt additional details" before issuing approval.  *Id*. "Only after approval of their Plans may States begin the process of obligating funds."  *Id*. ¶ 10.

States may "choose the order, number, and dollar amount of electronic project agreements they choose to submit under the NEVI Program, and may include more than one

4

DEFENDANTS' OPPOSITION TO
PLAINTIFFS'MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

project in the same electronic project agreement." *Id.* ¶ 13. Once a State obligates funds, it submits electronic project agreements through FHWA's Fiscal Management Information System ("FMIS"). *Id.* ¶ 12. Funds are approved for expenditure and apportioned to the State once the State and FHWA have executed an electronic project agreement. *Id.* Thereafter, States submit "documentation on their expenses for eligible work on the projects for which they executed electronic project agreements and obligated funds," and "FHWA reimburses the States for eligible expenses." *Id.* ¶ 13.

Between 2022 and 2024, FHWA—in accordance with its statutory discretion—promulgated various NEVI Program guidance documents, reflecting "the administration's policy and priorities in achieving the NEVI Program's stated purpose." *Id.* ¶ 6. Each guidance document imposed additional requirements upon the States above and beyond the text of the statute, including for example, requirements regarding the States' hiring practices and the communities the States were to prioritize. *Id.* ¶¶ 7–8. On February 6, 2025, FHWA rescinded all prior NEVI Program guidance. *See* Exhibit F. FHWA explained that it is "updating the NEVI Formula Program Guidance to align with current U.S. DOT policy and priorities." *Id.* at 1–2. "FHWA aims to have updated NEVI Formula Guidance published for public comment in the spring." *Id.* at 2. "After the public comment period has closed, FHWA will publish updated final NEVI Formula Guidance that responds to the comments received." *Id.*

FHWA's update to the NEVI Program guidance is currently ongoing. Biondi Decl. ¶ 16. "Because no guidance currently exists under which State Plans may be reviewed and approved, FHWA suspended its approval of all State Plans until it has issued new guidance." *Id.* ¶ 14 (citing Exhibit F). As a result, States cannot currently "submit electronic project agreements to obligate new funds until FHWA has issued new guidance and approved States' plans under that guidance." *Id.* However, States "that have already obligated funds through electronic project agreements, but

DEFENDANTS' OPPOSITION TO
PLAINTIFFS'MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 598-7409

have not yet received all the obligated funds, will still receive reimbursement for their ongoing projects for which funds have been obligated.  FHWA's suspension of its approval of all state Plans does not affect funds that are already obligated."  *Id.*

## III.    Procedural History

On May 7, 2025, Plaintiffs filed suit, seeking declaratory and injunctive relief.  ECF No. 1.  On the same day, Plaintiffs filed a Motion for Preliminary Injunction. ECF No. 5.  Plaintiffs request a "preliminary injunction to preserve the *status quo ad litem—*not just the situation before Plaintiff States filed the instant matter."  *Id*. at 24.  Specifically, Plaintiffs' proposed injunction enjoins Defendants from: (1) "[c]ategorically 'suspending' or revoking approvals of Plaintiff States' State Electric Vehicle Infrastructure Deployment Plans"; (2) "[w]ithholding or withdrawing NEVI Formula Program funds for any reason not set forth in the IIJA or applicable FHWA regulations, and without following the IIJA's procedural requirements"; and (3) "[e]ffectuating a categorical suspension or termination of the NEVI Formula Program for Plaintiff States through any other means."  ECF No. 5-2 at 2.

## <u>LEGAL STANDARD</u>

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing*,* carries the burden of persuasion."  *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (quotation omitted).  To warrant preliminary relief, the movant must satisfy a four-prong test, establishing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The third and fourth factors of the analysis—harm to others and the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).  In the Ninth Circuit, likelihood of success on the merits and the

6

DEFENDANTS' OPPOSITION TO
PLAINTIFFS'MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

balance of hardships are considering using a sliding scale approach. *Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007).

## ARGUMENT

**I.    Plaintiffs Cannot Establish Likelihood of Success on the Merits.**

**A.  Plaintiffs' Claims Are Not Ripe.**

Pursuant to the IIJA, the disbursement of NEVI funds involves a multi-step process. The statute first requires that FHWA issue Program implementation guidance. 135 Stat. at 1423. The States are then directed to submit deployment plans to FHWA that conform with the statutory requirements and FHWA guidance. *Id*. at 1422. FHWA reviews the plans to ensure that they conform with all requirements. Biondi Decl. ¶ 9. Once FHWA approves a State plan, the State may obligate its apportioned funds. *Id*. ¶ 10. To obligate apportioned funds, the State and FHWA execute a project agreement in FMIS. *Id*. ¶ 12. Upon obligation of funds through the execution of a project agreement, a State may expend NEVI Program funds. *Id*. ¶¶ 12–13. After completing an expenditure, a State must submit supporting documentation to obtain reimbursement from FHWA. *Id*. ¶ 13.

Plaintiffs challenge FHWA's revocation of prior NEVI guidance, the suspension of State plans approved under that guidance, and the temporary pause on new obligations while FHWA reviews and updates its guidance. These claims, however, are not ripe for review. Article III requires that the Court only adjudicate those claims that are ripe for review. Ripeness requires that an alleged injury be "certainly impending." *Long v. Amazon.com Services LLC*, No. C23-209RSL, 2023 WL 7305134, at *1 (W.D. Wash. Oct. 4, 2023) (citing *United States v. Streich*, 560 F.3d 926, 931 (9th Cir. 2009)). A claim is not ripe if it is "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 529 U.S. 125, 131 (2020) (citation omitted). "Determining whether administrative action is ripe

7

DEFENDANTS' OPPOSITION TO
PLAINTIFFS'MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

1  for judicial review requires [courts] to evaluate (1) the fitness of the issues for judicial decision

2  and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hosp. Ass'n*

3  *v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (citation omitted).

4      Plaintiffs' complaint about the revocation of prior NEVI guidance and their subjective

5  fears about future guidance are not ripe for review. *See* ECF No. 5 at 8–9.  They speculate that

6  Defendants aim "to terminate statutory programs that the President regards as bad policy," and as

7  a result, threaten to scuttle" their "ambitious plans to expand EV charging infrastructure." *Id*. at

8  6, 19–20.  However, Plaintiffs' alleged potential future injuries stemming from the possibility

9  that FHWA's future guidance will negatively impact their projects cannot form the basis for the

10  Court's subject-matter jurisdiction.  On their face, these allegations are dependent on

11  contingencies and speculation regarding the content of FHWA's updated guidance that may not

12  materialize. *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for

13  adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed

14  may not occur at all." (citations omitted)); *Porter v. Jones*, 319 F.3d 483, 490 (9th Cir. 2003) ("A

15  case is not ripe where the existence of the dispute itself hangs on future contingencies that may

16  or may not occur." (alterations adopted) (quoting *Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th

17  Cir. 1996)).

18      Plaintiffs' claims stemming from the suspension of their plans are un-ripe because, as

19  previously noted, approval of State plans is a preliminary step in the NEVI obligation process.

20  Injury can only accrue after the obligation phase because it is only at that point that a State is

21  entitled to receive reimbursement for its expenditure of NEVI funds—before then, all actions are

22  contingent upon FHWA approvals.  To date, existing obligations remain unaffected.  *See* Exhibit

23  F at 2.    Plaintiffs' conjecture about how FHWA *may* discharge its discretion in developing new

24  guidance and how FHWA's future decisions *may* impact their deployment plans and future

8

DEFENDANTS' OPPOSITION TO
PLAINTIFFS'MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

requests for obligations is not justiciable.  Accordingly, this Court lacks Article III jurisdiction to the extent Plaintiffs' claims relate to the NEVI guidance.

Plaintiffs also complain about FHWA's decision to temporarily pause approval of new obligations pending its guidance update.  ECF No. 5 at 9.  As previously noted, States are not entitled to reimbursement for expenditure of NEVI funds until FHWA approves a proposed obligation.  Once a State's obligation is approved, the State may enter into agreements for the expenditure of NEVI funds.  Here, FHWA has not disrupted existing, approved obligations— indeed, reimbursement of those existing obligations remains available "to not disrupt current financial commitments."  Exhibit F at 2.  FHWA has merely temporarily paused new obligations pursuant to rescinded plans, so that it may update the relevant guidance.  Plaintiffs' theorize that they *may* be unable to access appropriated funds at some future date.  *See, e.g.*, ECF No. 5 ¶ 18 (describing New Jersey's uncertainty regarding funds made available under previous plans and regarding future apportionments); ECF No. 18 ¶ 17 (same as to New Mexico).  But FHWA has made clear that it is working diligently to publish revised guidance.  Biondi Decl. ¶ 16.  "FHWA plans to publish the updated draft guidance for public comment, which will allow NEVI Formula Program participants and the public to explain any concerns they may have with the updated guidance."  *Id*.  Thereafter, "FHWA will publish final updated NEVI Formula Program guidance that responds to the comments."  *Id*.  At that juncture, States will be able to submit plans pursuant to the updated guidance and may submit new requests for obligations.  Plaintiffs claim that they may be unable to access funds in the future is not ripe because it depends on speculation that they will require new obligations before the agency updates its guidance.  At a minimum, Plaintiffs claims related to projects that do not require obligations in the near future are not a basis for immediate preliminary relief.  *See Nat'l Park Hosp. Ass'n*, 538 U.S. at 807–08 (Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of

DEFENDANTS' OPPOSITION TO
PLAINTIFFS'MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." (cleaned up)).[1]

### B. Plaintiffs' APA Claims Fail Because They Do Not Seek Judicial Review of a Discrete, Final Agency Action.

Plaintiffs' claims also fail because Defendants' have not taken "final agency action" reviewable under the APA. 5 U.S.C. § 704.  To constitute final agency action: (1) "the action must mark the consummation of the agency's decisionmaking process" and (2) it "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up); *Friends of the Wild Swan, Inc. v. Dir. of United States Fish & Wildlife Serv.*, 745 Fed. App'x 718, 720 (9th Cir. 2018) ("[C]ourts are to focus on the practical and legal effects of the agency action, so as to determine finality in a pragmatic and flexible manner." (cleaned up)).  The APA expressly excludes "preliminary, procedural, or intermediate agency action[s] or ruling[s]." 5 U.S.C. § 704.

Plaintiffs' claims regarding future guidance and future, obligated funds cannot satisfy the first *Bennett* prong.  An "agency's action is final and thus reviewable when the agency has

---

[1] Plaintiffs do not claim that Defendants have withheld funds under existing agreements with FHWA that obligate funds—instead, their claims focus on the inability to make new requests for obligations. *See, e.g.*, ECF No. 7 ¶ 12 (stating that California has been unable to submit requests for authorization of new NEVI Program obligations). Nor could they in this Court because under the Tucker Act, Congress vested the Court of Federal Claims with exclusive jurisdiction over contract claims against the United States. *See* 28 U.S.C. § 1491(a).  Under the NEVI Program, approved obligations are "legally binding agreement[s] that contractually commit[] FHWA to reimburse states for eligible expenses associated with certain projects." Biondi Decl. ¶ 10.   As a result, jurisdiction for any claims related to disbursement of existing obligations would lie exclusively in the Court of Federal Claims. *See Dep't of Ed. v. California*, No. 24A910, 2025 WL 1008354, at *1 (Apr. 4, 2025) ("[T]he Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" (quoting 28 U.S.C. § 1491(a)(1)).

10

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

rendered its last word on the matter in question." *Advanced Integrative Med. Sci. Inst., PLLC v. Garland*, 24 F.4th 1249, 1257 (9th Cir. 2022) (cleaned up). In contrast, decisions that are "preliminary" in nature are "not directly reviewable." *See* 5 U.S.C. § 704. "[They] may be a step, which if erroneous will mature into a prejudicial result." *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 112 (1948). But that does not make the decisions themselves the "consummation of the administrative process" reevaluating the agency's priorities. *Id*. at 113; *see EPA v. Brown*, 431 U.S. 99, 104 (1977) ("For [courts] to review [agency actions] not yet promulgated, the final form of which has only been hinted at, would be wholly novel."). The first *Bennett* prong is not met when agency action "merely 'facilitates the *beginning* of the [] review process for proposed' agency action." *Id*. (emphasis in original) (citing *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1008 (9th Cir. 2021)).

Here, FHWA has not asserted its ultimate administrative position with respect to NEVI guidance, rather it has merely stated that it is reviewing NEVI guidance and evaluating whether it accords with current policies and priorities. *See* Exhibit F at 1–2. FHWA has made clear that its updated guidance is forthcoming, and that States will be able to submit new NEVI plans under that guidance. Recall, under the statutory scheme, FHWA's issuance of guidance is an initial step in the NEVI obligation process. States are not authorized to enter into project agreements for the obligation and expenditure of funds until FHWA approves their deployment plans *and* their obligation agreements. FHWA will re-issue NEVI guidance, and pursuant to that guidance, States will be permitted to submit updated plans and requests for obligations. A final agency action will not be issued until FHWA authorizes or affirmatively denies obligations, which is a prerequisite to the States ability to enter into binding agreements with third parties for the expenditure of NEVI Program funds. Because FHWA's interim decisions with respect to

11

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 598-7409

prior guidance will be subsumed by its ultimate consideration of State obligations submitted

pursuant to updated guidance, its preliminary steps to review NEVI Program guidance do not

mark the consummation of its administrative process.  *See City of San Diego v. Whitman*, 242

F.3d 1097, 1102 (9th Cir. 2001) (considering whether agency action was "subject to further

agency consideration or possible modification" in ascertaining finality (quoting *Ciba–Geigy*

*Corp. v. EPA*, 801 F.2d 430, 436–37 (D.C. Cir. 1986)).

Likewise, Plaintiffs cannot satisfy the second *Bennett* prong.  Prong two turns on whether

the agency's actions result in "concrete consequences."  *S. California All. of Publicly Owned*

*Treatment Works v. EPA*, 8 F.4th 831, 836 (9th Cir. 2021).  That threshold is not cleared if

"subsequent agency decision making is necessary to create any practical consequences."  *Id.* at

837 (citing *Whitman*, 242 F.3d at 1102).  Here, concrete consequences arise later in the NEVI

apportionment process.  FHWA has not disturbed "existing obligations," which would "disrupt

current financial commitments."  Exhibit F at 2.  Instead, FHWA took preliminary action.  It

rescinded prior guidance and suspended portions of State plans related to *unobligated* funds

submitted under that guidance while it updates the relevant guidance.  To be sure, because there

are currently no approved State plans, Plaintiffs are unable to submit requests for new

obligations.  But this pause illustrates the lack of final agency action: subsequent action—

FHWA's promulgation of updated guidance, its approval of State plans under that guidance, its

approval of States' request for obligation, and ultimately its approval of specific funding

requests—is necessary to create any legal ability to disburse funds.  Although the renewed NEVI

Program guidance may manifest in a final agency action further downstream, Plaintiffs cannot

maintain this suit now by speculating about the contours of that future action.

## C. Defendants Are Engaging in Reasoned Decision-Making in Accordance with Statutory Authority.

Plaintiffs claim that the agency lacks authority to revoke prior guidance, issue new

12

DEFENDANTS' OPPOSITION TO
PLAINTIFFS'MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

guidance, and suspend the obligation of new funds while that congressionally required guidance is forthcoming. FHWA has acted in accordance with its statutory authority and its action comports with the APA. "[W]hen the President acts pursuant to an express or implied authorization of Congress, his authority is at its maximum, for it includes all that he possesses in his own right plus all that Congress can delegate." *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 10 (2015). Congress charged FHWA with the authority to "develop guidance for States and localities to strategically deploy electric vehicle charging infrastructure." 135 Stat. at 1423. Defendants' have not violated the APA in discharging that authority.

### i. FHWA Has the Authority to Revoke and Update NEVI Program Guidance and it Has Appropriately Exercised Such Authority.

As previously noted, the IIJA requires that FHWA develop NEVI Program guidance. 135 Stat. at 1423. In developing that guidance, Congress expressly permitted FHWA to consider "any [] factors" it deems necessary. *Id*. Taken together, these provisions explicitly authorize FHWA to wield significant discretion in crafting and promulgating guidance. Although the statute establishes a high-level purpose and directs the agency to engage in various enumerated considerations when determining implementation, it largely defers to the agency to set NEVI Program policies and administer funds. There is no question that the statute formulaically identifies the amounts that are to be apportioned to each State, but through its ability to set Program guidance, FHWA is authorized to guide precisely how apportioned funds are utilized. Indeed, FHWA has exercised this discretion since 2022. For example, "[r]eflecting the Biden Administration's policies and priorities, the February 2022 guidance imposed additional requirements upon the States that exceeded the text of the statute." Biondi Decl. ¶ 7. The guidance required that States "target at least 40 percent of the benefits towards disadvantaged communities," utilize "hiring preferences or innovative contracting approaches authorized by law to maximize job creation and economic benefits for local communities," and install "EV

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 598-7409

charging infrastructure no greater than 1 mile from Interstate exits or highway intersections along designated corridors." Exhibit A at 18–19, 21. "The February 2022 guidance required a narrative description of how each state planned to implement each provision of the guidance, including those provisions that imposed requirements above and beyond the NEVI statute." Biondi Decl. ¶ 7. Subsequent guidance continued to impose requirements exceeding the statutory text. *Id*. ¶ 8. And in each instance, States were "required to submit [plans] on an annual basis that describe how the State intends to use its apportioned NEVI Formula Program funds in accordance with th[e] guidance." *See* Exhibit A at 1.

Consistent with statutory authority and established practice, Defendants are currently exercising their right to promulgate NEVI guidance that incorporates factors that align with the current administration's policies and priorities, while fully embodying the statutory purpose. The statutory authority to develop and promulgate guidance necessarily includes the authority to revisit and reevaluate past guidance, at least absent a specific statutory restriction. To hold otherwise would mean that agencies could never correct past actions, and instead would be perpetually bound by policies with which they disagree. *See Solar Energy Indus. Ass'n v. FERC*, 80 F.4th 956, 979 (9th Cir. 2023) ("The APA does not require regulatory agencies to establish rules of conduct to last forever, and agencies may adapt their rules and policies to the demands of changing circumstances. An agency may change its position for any number of reasons, such as a change in factual circumstances or a shift in its policy priorities." (cleaned up)). The NEVI statute affords Defendants the authority to control Program guidance, which includes control over past and present guidance and plans approved thereunder.

**ii.    FHWA Has the Authority to Suspend State Plans for Unobligated Funds Pending the Issuance of New Guidance and It Has Appropriately Exercised Such Authority.**

As an adjunct of its ability to update new NEVI Program guidance, FHWA has the

14

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 598-7409

authority to suspend state plans for unobligated funds pending the issuance of that guidance. This follows from the fact that Congress required the issuance of guidance for a program that necessarily extends across multiple administrations and delegated the issuance of that guidance to the agency tasked with administering the program. *See* 135 Stat. at 1423. Nor, as a matter of practice, has it been understood that the guidance cannot be changed, by contrast, as discussed above, such guidance is routinely updated. To permit new obligations under prior plans that no longer align with administration priorities would be to divest Defendants of their statutory authority to control Program guidance. *See id.* Congress did not establish a pass-through statute that merely assigned Defendants ministerial tasks; instead, it granted FHWA significant discretion in implementing the Program and setting its policies and priorities. Accordingly, FHWA must have the authority to briefly suspend State plans while the congressionally required guidance is updated.

In exercising such statutorily authorized control over NEVI Program guidance, Defendants have incorporated appropriate administrative safeguards and considered reliance interests. FHWA will publish the updated draft guidance for public comment, which will allow NEVI Program participants and the public to explain any concerns they may have with the updated guidance. *See* Exhibit F. And to avoid disruptions to current financial commitments, FHWA has ensured that States may continue to receive NEVI Program funds that were already obligated, including reimbursement for projects that used obligated funds. *Id.* States that planned to obligate funds under plans submitted pursuant to previous guidance will be able to do so under the new guidance. This balancing: suspending future obligations pending new guidance while allowing previously incurred obligations to proceed without interpretation comports with the APA's limited requirement for reasoned decision-making. *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1913 (2020) ("When an agency changes

15

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 598-7409

course, . . . it must be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account. (quotations omitted)); *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (An agency "need not demonstrate to a court's satisfaction that the reasons for the new policy are *better* than the reasons for the old one; it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better, which the conscious change of course adequately indicates." (emphasis supplied)).

### D.  Plaintiffs Cannot Show a Likelihood of Success on their Separation of Powers Claim.

Plaintiffs also bring a separation of powers claim, arguing, in essence, that Defendants have failed to distribute funding in accordance with the applicable statutory requirements.  ECF No. 5 at 15–17. As a threshold matter, Plaintiffs' asserted constitutional claims are merely statutory claims that the agency has violated its Congressional mandates, dressed up in constitutional garb. *See id.* ("So long as States meet the program requirements explicitly set forth in the IIJA—as Plaintiff States have all done here—Defendants must distribute NEVI funds in accordance with the IIJA's prescribed formula.  But Defendants have failed to follow this mandate, and in doing so, have violated the separation of powers prescribed by the U.S. Constitution.").

As the Supreme Court has confirmed, "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims."  *Dalton v. Specter*, 511 U.S. 462, 473 (1994).  In *Dalton*, the Supreme Court rejected the proposition that "whenever the President acts in excess of his statutory authority, he also violates the constitutional separation of powers doctrine."  *Id.* at 471.  Not "every action by the President, or by another executive official, in excess of his statutory authority is ipso facto in violation of the Constitution." *Id.* at 472.  In reaching this conclusion, the Supreme Court carefully "distinguished between claims of

16

DEFENDANTS' OPPOSITION TO
PLAINTIFFS'MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

constitutional violations and claims that an official has acted in excess of his statutory authority."
*Id*. (collecting cases).  The Constitution is implicated only if executive officers rely on it as "[t]he
only basis of authority" or if the officers rely on an unconstitutional statute.  *Id*. at 473 & n.5.
Here, Plaintiffs' claims focus entirely on their contentions that the Defendant agencies have not
acted consistent with statutory obligations.  ECF No. 5 at 15–17.  Under *Dalton*, such
constitutional claims cannot succeed as constitutional claims—rather, they are properly
understood as APA accordance with law claims.

Moreover, Plaintiffs' separation of powers theory is that *Youngstown*'s tripartite
framework applies to claims regarding alleged impoundment of appropriated funds and thus, in
practice, seeks to enforce the Impoundment Control Act.  *See* ECF No. 5 at 16–17.  However, the
Impoundment Control Act provides a framework for guiding inter-Branch engagement on certain
decisions regarding the obligation of appropriated funds—a process which is ongoing. The Act
does not confer any judicially enforceable rights on third parties, and Plaintiffs attempt to
enforce the Act via the garb of an amorphous constitutional claim ought to be rejected.

The Impoundment Control Act directs the President to notify Congress when he proposes
to defer or rescind appropriated funds, *see* 2 U.S.C. §§ 683(a), 684(a), which allows Congress to
determine how to respond given the particular circumstances of a specific proposal.  The statute
specifies particular forms of legislative action that Congress may undertake to address proposed
rescissions.  *See id*. § 688.  To the extent that the Impoundment Control Act contemplates
litigation to enforce any obligation to spend appropriate funds, it provides for suits brought by
the Comptroller General, an official within the Legislative Branch.  2 U.S.C. § 687.  And the
statute imposes limitations on the on any such suit that reinforce Congress's desire to control any
response to the Executive's actions: no such suit may be brought until the Comptroller General
files "an explanatory statement" of "the circumstances giving rise to the" contemplated suit

17

DEFENDANTS' OPPOSITION TO
PLAINTIFFS'MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

"with the Speaker of the House of Representatives and the President of the Senate" and then "25 calendar days of continuous session of the Congress" elapse. *Id*. Regardless of whether such a suit would be cognizable under Article III and the separation of powers, the statute does not contemplate enforcement at the behest of private parties. And the statute certainly does not contemplate that private parties would be entitled to bring enforcement actions without regard to the procedural limitations that Congress imposed for the Comptroller General. *See Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 347 (1984).

The Impoundment Control Act provides a variety of mechanisms for legislative responses to any proposal by the Executive Branch to defer or rescind appropriated funds and, to the extent it contemplates litigation at all, it contemplates only suits brought by a Legislative Branch official and only after Congress has first had the opportunity to act. That scheme provides no role for third parties like Plaintiffs to play in either the legislative or judicial enforcement processes. In so doing, the scheme preserves the political branches' accountability for enacting and implementing the appropriations laws. *Cf. City of New Haven v. United States*, 809 F.2d 900, 901 (D.C. Cir. 1987) (Congress has previously acknowledged that "the executive branch necessarily withholds funds on hundreds of occasions during the course of a fiscal year" and such delays may result from "the normal and orderly operation of the government" (quotation omitted)). Congress has ample political tools to address any perceived problem itself, including by altering existing or future appropriations or engaging in its traditional oversight functions. *See Trump v. Mazars USA, LLP*, 591 U.S. 848, 859 (2020) (Any disputes between the President and Congress may be "hashed out in the hurly-burly, the give-and-take of the political process between the legislative and the executive." (quotation omitted)).

Moreover, emphasizing the point, the Impoundment Control Act expressly provides that "[n]othing contained in this Act, or in any amendments made by this Act, shall be construed" as

18

DEFENDANTS' OPPOSITION TO
PLAINTIFFS'MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 598-7409

"affecting in any way the claims or defenses of any party to litigation concerning any impoundment." 2 U.S.C. § 681. That provision makes clear Congress's intent that third parties do not rely on the statute's provisions to generate a judicially enforceable right to compel spending that did not otherwise exist. Yet, Plaintiffs improperly attempt to do so here by relying on provisions of the Impoundment Control Act. *See* ECF No. 5 at 17 (arguing that Defendants have violated separation of powers by "withhold[ing] congressionally appropriated funding" in contravention of the Impoundment Control Act); *see also* Complaint, ECF No. 1, ¶ 265 ("The Impoundment Control Act also does not authorize the Executive to defer funding for the reasons the Defendants invoke here. As described above, the Administration generally opposes the IIJA, and the NEVI Formula Program specifically, on policy grounds.).

In short, permitting Plaintiffs to challenge the Executive Branch's spending decisions through an APA suit alleging, in essence, a violation of the Impoundment Control Act would "severely disrupt" the statute's "complex and delicate" enforcement scheme. *Block*, 467 U.S. at 348. It is thus "clear that Congress intended that" any response to the Executive's actions in this sphere should "be confined to" the Legislative Branch-directed responses undertaken "in accordance with" the statute's scheme. *Id.* Defendants acknowledge that Plaintiffs have not explicitly pled an Impoundment Control Act claim. But they should not be able to ignore the restrictions that this statute imposes—ones negotiated by the political branches—solely by artful pleading, when they seek a broader remedy. This Court should reject Plaintiffs' attempts to enforce appropriations statutes directly.

Finally, any reliance on the Government Accountability Office's recent finding that FHWA's withholding of NEVI funds violates the Impoundment Control Act would be equally misplaced. *See* GAO, Decision No. B-337137, *U.S. Department of Transportation, Federal Highway Administration—Application of the Impoundment Control Act to Memorandum*

19

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 598-7409

*Suspending Approval of State Electric Vehicle Infrastructure Deployment Plans* (May 22, 2025). As an initial matter, GAO is an agency within the Legislative Branch and its decision highlights that the Impoundment Control Act can only be enforced by Congress. *See id.* at 17–18 ("GAO's institutional role is to support the Congress, including in Congress's exercise of its constitutional power of the purse.").  Moreover, on the merits, the GAO decision misunderstands key provisions of the NEVI statute and chapter 1 of title 23 that have for decades been consistently interpreted to set the point of obligation for all FHWA program funds, which would include funds made available for the NEVI program, at execution of the project agreement. Under the IIJA, NEVI Program funds are "to remain available until expended." 135 Stat. 1422.  Under GAO's erroneous interpretation, "DOT's legal liability to distribute the funds to states pursuant to the statutory formula arises when funds for the program become available for obligation each fiscal year." GAO decision at 10.  This interpretation effectively renders the period of availability superfluous because it treats the funds as already expended on a per fiscal year basis. It also contradicts the prior implementation of the NEVI Program and ignores the treatment of State plans as mandatory prerequisites to obligation pursuant to the NEVI statute.

GAO's decision—which assumes that FHWA has no control over the obligation of NEVI funds—also glosses over an essential detail: the IIJA requires that NEVI funds (with certain exceptions such as those used for Joint Office expenses) "shall be administered as if apportioned under chapter 1 of title 23, United States Code," 135 Stat. 1425, which in turn requires States to "submit to the Secretary for approval such plans, specifications, and estimates for each proposed project as the Secretary may require," 23 U.S.C. § 106(a). Thus, even if GAO's interpretation is correct that the IIJA "is silent as to whether the Secretary has discretion to reject timely state submissions," GAO decision at 10, Section 106(a) vests the Secretary with such discretion by expressly requiring the agency's approval of the States' plans.  Any interpretation to the contrary

20

DEFENDANTS' OPPOSITION TO
PLAINTIFFS'MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

is illogical and would require FHWA to enter into binding contracts for deficient or noncompliant State projects.  Section 106(a) also explicitly states: "The execution of the project agreement shall be deemed a contractual obligation of the Federal Government for the payment of the Federal share of the cost of the project."  23 U.S.C. § 106(a)(3).  Therefore, FHWA has a clear statutory basis for its decades-long treatment of the execution of the project agreement as the point of obligation for FHWA program funds.

* * * * * * *

In sum, for all the reasons discussed above, Plaintiffs cannot show a likelihood of success on their claims.[2]

## II.    Plaintiffs Have Failed to Demonstrate that They Will Suffer Irreparable Harm Unless the Court Grants the Requested Relief.

Apart from the lack of any likelihood of success, Plaintiffs also have failed to demonstrate that they will suffer irreparable harm if the Court does not enter the requested preliminary injunction.  Irreparable harm is the essential "prerequisite for equitable relief." *Valeo Intellectual Prop., Inc. v. Data Depth Corp.*, 368 F. Supp. 2d 1121, 1128 (W.D. Wash. May 5, 2005); *see also Sampson v. Murray*, 415 U.S. 61, 88 (1974) ("[T]he basis of injunctive relief in the federal courts has always been irreparable harm.").

At the outset, Plaintiffs waited too long to seek preliminary relief—a circumstance which weighs against finding that irreparable harm or the balance of the equities favor Plaintiffs.  *See Arc. of Cal. v. Douglas*, 757 F.3d 975, 989 (9th Cir. 2014); *Benisek v. Lamone*, 585 U.S. 155, 160 (2018).  Plaintiffs filed their Motion on May 7, 2025, more than twelve weeks after FHWA's February 6, 2025 letter pausing new NEVI Program obligations.  Plaintiffs' delay forecloses

---

[2] Plaintiffs' Complaint also includes a Take Care Clause claim and an *ultra vires* claim, *see* ECF No. 1 at 53–55, but Plaintiffs do not rely on those claims in their Motion.  *See* ECF No. 5. Accordingly, although those claims also lack merit, Defendants do not address them herein.

21

DEFENDANTS' OPPOSITION TO
PLAINTIFFS'MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

preliminary injunctive relief because it "implies a lack of urgency and irreparable harm." *NLRB v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993); *see also Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm"); *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief"); *W. Watersheds Project v. Salazar*, 692 F.3d 921, 923 (9th Cir. 2012) (holding that the district court properly considered the plaintiff's "delay in seeking a preliminary injunction" when it found that "the balance of equities and the public interest" "weighed against issuing a preliminary injunction").

Additionally, Plaintiffs' claimed economic injuries are not irreparable. It is well established that "monetary injury is not normally considered irreparable." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980). A narrow exception exists where the moving party shows "a threat of extinction" absent preliminary relief. *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022); *Sharp Mgmt., LLC v. United States*, No. C07-402JLR, 2007 WL 1367698, at *4 (W.D. Wash. May 8, 2007) ("Because the property in question is money—fungible property [plaintiff] can recover should it prevail on the merits—there can be no irreparable harm to [plaintiff's] rights.").

Here, Plaintiffs' allegations illustrate why economic harms generally are not cognizable as irreparable harm for purposes of preliminary equitable relief; money is generally fungible, and, unless the very existence of an enterprise is threatened, a litigant suffering financial loss may be made whole through money damages. Plaintiffs effectively concede the point in arguing alleged irreparable harm based on impeded access to sum certain amounts. *See, e.g.*, ECF No. 9 ¶ 11 (In Colorado, "only $8 million has been obligated . . . , meaning that only $8 million has been requested and approved in FMIS. This leaves a gap of $10 million that has been contracted

22

DEFENDANTS' OPPOSITION TO
PLAINTIFFS'MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 598-7409

to grantees but not obligated by FHWA. It also leaves a further gap of the $15 million of projects that have been awarded but not contracted."); ECF No. 24 ¶ 24 ("The February 6 letter therefore made clear that Rhode Island would not have access to the net outstanding $16,150,711.84 which had been made available to Rhode Island through its State Plan Approvals.  FHWA has further given the RIDOT no sense of how it can apply for the remaining $4,869,424 it expected to receive for FY 2026.").  Although Plaintiffs generally claim that they rely on NEVI funds to support their infrastructure projects, ECF No. 5 at 19, they have not established that a temporary pause on the distribution of NEVI funds threatens the very existence of their projects.  As Defendants have emphasized, NEVI Program guidance is currently under review and restructuring.  Updated guidance is forthcoming, and Plaintiffs will be able to submit updated plans under that guidance in order to renew fund obligations.  In the interim, Plaintiffs' speculations about the temporary pause cannot form the basis for irreparable harm.

The other potential harms alleged are either 1) even more speculative than the assumption that Plaintiffs will be unable to access appropriated funds; or 2) economic, and therefore not cognizable as irreparable harm at all.  As to the latter, Plaintiffs assert they experienced an increased burden in NEVI Program administration through "increase[d] administrative costs—in addition to other costs increases from delayed construction—[which] necessarily decreases the NEVI funds available for building EV chargers."  ECF No. 5 at 22.  These allegations are squarely economic in nature, and therefore, do not qualify as irreparable.

Nor can unsupported speculation about the potential "loss of industry confidence . . . greenhouse gas pollution, air toxics inhaled, and unrealized job creation" be grounds for preliminary relief.  *Id*. at 20.  Each of the dire outcomes that Plaintiffs identify depends on an attenuated chain of possibilities.  Perhaps most importantly, for purposes of assessing the relief that Plaintiffs request, Plaintiffs offer no basis upon which to conclude that such dire

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

consequences would obtain in the near future.  In fact, Plaintiffs recognize that once Defendants

resume NEVI Program fund distribution, their alleged injury will be ameliorated.  *See* ECF No. 5

at 20.  Plaintiffs attempt to qualify this admission by stating that resumption would not "cure the

delay" in fund access.  *Id.*  This assertion is belied by the record.  FHWA's guidance recission

and pause on new obligations went into effect on February 6, 2025.  Plaintiffs' lawsuit was filed

three months later, on May 7, 2025, in a regular preliminary injunction posture.  Plaintiffs' delay,

therefore, undermines any claimed urgency.  For all these reasons, Plaintiffs have failed to

establish irreparable harm that could support the entry of a preliminary injunction; to the extent

they have alleged economic harm, none of the Plaintiffs have met the narrow exception made for

circumstances in which economic harm threatens an entity's very existence.

III.    **The Balance of the Equities and the Public Interest Support Rejection of Plaintiffs' Motion.**

         A preliminary injunction also is not appropriate because the balance of the equities and

the public interest tip in Defendants' favor.  *See Nken*, 556 U.S. at 435 (holding that "[t]hese

factors merge when the Government is the opposing party").  In this setting, granting the

preliminary injunction that Plaintiffs seek would disrupt Defendants' efforts to finalize and

promulgate NEVI guidance in accordance with current policies and priorities.

         Contrary to Plaintiffs' assertions that the public interest will suffer no cognizable harm if

a preliminary injunction is entered, ECF No. 5 at 23, such an order here would effectively bar

FHWA from implementing the President's priorities consistent with legal authorities.  "Any time

a [government] is enjoined by a court from effectuating statutes enacted by representatives of its

people, it suffers a form of irreparable injury."  *Maryland v. King*, 567 U.S. 1301, 1303 (2012)

(Roberts, C.J., in chambers) (brackets omitted); *see also See Dist. 4 Lodge of the Int'l Assoc. of*

*Machinists & Aerospace Workers Local Lodge 207 v. Ctr. for Biological Diversity*, 18 F.4th 38,

47 (1st Cir. 2021).

DEFENDANTS' OPPOSITION TO
PLAINTIFFS'MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

1

2

### IV.    Plaintiffs Should Be Ordered to Post Security in Connection with Any Preliminary Injunctive Relief And Any Preliminary Relief Should Be Stayed To Allow Consideration of Whether to Appeal

3

4

5

For the reasons stated above, Defendants submit that the Court can and should deny

Plaintiffs' Motion in its entirety.  However, should the Court be inclined to order any injunctive

relief, the Court should also order Plaintiffs to post security.  Under Federal Rule of Civil

6

7

Procedure 65(c), the Court may issue a preliminary injunction "only if the movant gives

security" for "costs and damages sustained" by Defendants if they are later found to "have been

8

wrongfully enjoined." Fed. R. Civ. P. 65(c).  In the event the Court issues a preliminary

9

injunction here, the Court should require Plaintiffs to post an appropriate bond commensurate

10

with the scope of any such order.  *See Nat'l Treasury Employees Union v. Trump*, No. 25-5157,

11

2025 WL 1441563, at *3 n.4 (D.C. Cir. May 16, 2025) ("[W]e clarify that injunction bonds are

12

generally required.") (citing Fed. R. Civ. P. 65(c)); *DSE, Inc. v. United States*, 169 F.3d 21, 33

13

(D.C. Cir. 1999) (stating that Rule 65(c) places "broad discretion in the district court to

14

determine the appropriate amount of an injunction bond").  As Plaintiffs are, in part, seeking the

15

premature disbursement of funds, the Court should order the posting of a bond equal to the size

16

of any payment that the Court orders on a preliminary basis here.  Without such a protective

17

measure, there may be no way to recover the funds lost to United States taxpayers if the Court

18

were later to find that Defendants were "wrongfully enjoined." *See* Fed. R. Civ. P. 65(c); *cf.*

19

*Department of Education v. California*, No. 24A910, 2015 WL 1008354, at *2 (Apr. 4, 2025)

20

("respondents have not refuted the Government's representation that it is unlikely to recover the

21

grant funds once they are disbursed. No grantee promised to return withdrawn funds should its

22

grant termination be reinstated, and the District Court declined to impose bond") (quotation

23

omitted).

24

Finally, Defendants respectfully request that if this Court does enter injunctive relief, that

25

DEFENDANTS' OPPOSITION TO
PLAINTIFFS'MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

1    relief be stayed for a period of seven days to allow the Solicitor General to determine whether to

2    appeal and seek a stay pending appeal.

3    //

4    //

5    //

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

26

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

1

## **CONCLUSION**

2     For all the reasons discussed herein, the Court should deny Plaintiffs' Motion.

3

4     Dated: May 28, 2025

5                                    Respectfully submitted,

6                                    YAAKOV M. ROTH
                                     Acting Assistant Attorney General
7

8                                    JOSEPH E. BORSON
                                     Assistant Branch Director
9                                    Federal Programs Branch

10                                   */s/ Heidy L. Gonzalez*
                                     HEIDY L. GONZALEZ (FL Bar No. 1025003)
11                                   *Trial Attorney*
                                     U.S. Department of Justice
12                                   Civil Division, Federal Programs Branch
                                     1100 L Street, N.W.
13                                   Washington, DC  20005
                                     Tel. (202) 598-7409
14                                   heidy.gonzalez@usdoj.gov

15

16                                   Attorneys for Defendants

17                                   *I certify that this memorandum*
                                     *contains 8,398 words, in compliance*
18                                   *with the Local Civil Rules*

19

20

21

22

23

24

27

DEFENDANTS' OPPOSITION TO                         U.S. Department of Justice
PLAINTIFFS' MOTION FOR                     Civil Division, Federal Programs Branch
PRELIMINARY INJUNCTION                              1100 L Street, N.W.
Case No. 25-cv-00848-TL                           Washington, D.C.  20005
                                                      (202) 598-7409