The Honorable Tana Lin

1

2

3

4

5

6 **UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**
7

8 | STATE OF WASHINGTON, STATE OF COLORADO, STATE OF CALIFORNIA, | NO. 2:25-cv-00848-TL |
STATE OF ARIZONA, STATE OF
9 DELAWARE, DISTRICT OF COLUMBIA, FIRST AMENDED COMPLAINT
STATE OF HAWAI'I, STATE OF
10 ILLINOIS, OFFICE OF THE GOVERNOR
*ex rel.* Andy Beshear, in his official capacity
11 as Governor of the COMMONWEALTH
OF KENTUCKY, STATE OF
12 MARYLAND, STATE OF MICHIGAN,
STATE OF MINNESOTA, STATE OF
13 NEW JERSEY, STATE OF NEW
MEXICO, STATE OF NEW YORK,
14 STATE OF NORTH CAROLINA, STATE
OF OREGON, Governor Josh Shapiro, in
15 his official capacity as Governor of the
COMMONWEALTH OF
16 PENNSYLVANIA, STATE OF RHODE
ISLAND, STATE OF VERMONT, STATE
17 OF WISCONSIN,

18                     Plaintiffs,

19          v.

20 U.S. DEPARTMENT OF
TRANSPORTATION; SEAN DUFFY, IN
21 HIS OFFICIAL CAPACITY AS
SECRETARY OF TRANSPORTATION;
22 FEDERAL HIGHWAY
ADMINISTRATION; AND GLORIA M.
23 SHEPHERD, IN HER OFFICIAL
CAPACITY AS ACTING
24 ADMINISTRATOR OF THE FEDERAL
HIGHWAY ADMINISTRATION,

25                     Defendants.

26

i

**INTRODUCTION**

1.      President Trump has unleashed an attack on an increasingly popular consumer choice—the electric vehicle. On Inauguration Day, the President issued an executive order entitled *Unleashing American Energy* ("Executive Order"), which proclaims it the policy of the United States to eliminate the "electric vehicle (EV) mandate." Exec. Order No. 14,154, 90 Fed. Reg. 8353 (Jan. 29, 2025). The federal government, however, has never adopted any such "EV mandate." But in the name of eliminating this fictional mandate, the Executive Order directs the Federal Highway Administration ("FHWA" or "Agency") to usurp the legislative and spending powers reserved to Congress by withholding congressionally appropriated funding for electric vehicle ("EV") charging infrastructure required by statute to be distributed to States.

2.      Specifically, in a section of the Executive Order entitled "Terminating the Green New Deal," the President mandated all federal agencies to "immediately pause the disbursement of funds appropriated through the Inflation Reduction Act of 2022 (Public Law 117-169) or the Infrastructure Investment and Jobs Act (Public Law 117-58), including but not limited to funds for electric vehicle charging stations made available through the National Electric Vehicle Infrastructure Formula Program . . . ." Exec. Order No. 14,154, 90 Fed. Reg. at 8357. This, the Executive Branch cannot do.

3.      Congress established the National Electric Vehicle Infrastructure ("NEVI") Formula Program, through enactment of the Infrastructure Investment and Jobs Act ("IIJA"), also known as the Bipartisan Infrastructure Law. The IIJA appropriated $5 billion for the explicit purpose of "providing funding to the States to strategically deploy electric vehicle charging infrastructure and to establish an interconnected network to facilitate data collection, access, and reliability." Pub. L. No. 117-58, 135 Stat. 429, 1421 (2021). Importantly, Congress

/ / /

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL                                    1                ATTORNEY GENERAL OF WASHINGTON
                                                                                     Environmental Protection Division
                                                                                        800 Fifth Avenue STE 2000
                                                                                            Seattle, WA 98104
                                                                                               206-464-7744

required the distribution of this $5 billion among the States1 over fiscal years 2022 through 2026 according to a mandatory formula. *Id.* at 1422.

4.      The FHWA, although tasked with faithfully administering the NEVI Formula Program, almost immediately carried out President Trump's anti-NEVI directive in diametric opposition to statutory mandate.

5.      On February 6, 2025, the FHWA notified States via letter ("FHWA Letter") that it had taken three actions to categorically and indefinitely "suspend" the NEVI Formula Program. First, the Agency announced it had rescinded all versions of statutorily required NEVI Formula Program Guidance. Second—with no advance notice and without reasoned explanation—the Agency unlawfully revoked all prior approvals of NEVI Formula Program implementation plans ("State Electric Vehicle Infrastructure Deployment Plans" or "State Plans"), which States are required to submit to access their share of NEVI Formula Program funds. In fact, the FHWA retroactively and categorically revoked its prior approval of every State Plan—more than 150 in total—on the sole basis of its recission of the NEVI Formula Program Guidance.

6.      Finally, the FHWA informed the States that "no new obligations may occur under the NEVI Formula Program until the updated final NEVI Formula Program Guidance is issued and new State [P]lans are submitted and approved." The FHWA cited no other reasons for prohibiting new obligations other than its own retroactive revocation of all State Plan approvals, an action that itself was predicated only on the Agency's recission of the NEVI Formula Program Guidance.

7.      The FHWA's actions had the effect of withholding or withdrawing from States NEVI Formula Program funds available to the States for obligation, functionally abrogating the congressionally mandated NEVI Formula Program by executive fiat.

---

[1] For the purposes of this Complaint, the term "States" includes Puerto Rico and the District of Columbia.

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

2

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1      8.      This action seeks declaratory and injunctive relief against the Defendants'

2  unlawful actions.

3      9.      Plaintiff States have invested in programs to encourage adoption of EVs as a

4  means of reducing smog, air toxics, and other harmful pollution from combustion engine

5  vehicle emissions, which cause grave health problems such as cancer and asthma, and

6  contributes to the devastating effects of climate change in these States.

7      10.     The Defendants' actions impede Plaintiff States' ability to build the EV

8  charging infrastructure envisioned under the IIJA and necessary for widespread EV adoption.

9  This infrastructure is critical to the success of Plaintiff States' environmental, public health,

10  and transportation programs—projects Congress actively chose to support in enacting the IIJA

11  and establishing the NEVI Formula Program. The harms to Plaintiff States will continue and

12  become increasingly damaging if unabated.

13      11.     To prevent irreparable injury to Plaintiff States, this Court should declare that

14  the Defendants' actions to implement the President's directive are unlawful under the

15  Administrative Procedure Act, violate the United States Constitution, and are contrary to the

16  law, outside the Defendants' authority, and unlawful under the common law *ultra vires*

17  doctrine. Plaintiff States therefore request that this Court vacate the Defendants' unlawful

18  actions and preliminarily and permanently enjoin Defendants from, among other things,

19  implementing or effectuating the directive in the Executive Order to withhold NEVI Formula

20  Program funds in contravention of the express congressional mandates in the IIJA.

21                          **JURISDICTION AND VENUE**

22      12.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and

23  1346(a)(2). The Court has further remedial authority under the Declaratory Judgment Act,

24  28 U.S.C. §§ 2201(a) and 2202. Jurisdiction is also proper under the judicial review provisions

25  of the Administrative Procedure Act ("APA"). 5 U.S.C. § 702.

26  / / /

1    13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and

2   1391(e)(1). Defendants are United States agencies or officers sued in their official capacities.

3   The State of Washington is a resident of this district, and a substantial part of the events or

4   omissions giving rise to this Complaint occurred and continues to occur within the Western

5   District of Washington.

6                                        **PARTIES**

7    14.     Plaintiffs are sovereign states of the United States of America. Plaintiffs bring

8   this action in their sovereign and proprietary capacities. As set forth below, Defendants'

9   actions directly harm Plaintiff States' interests, including but not limited to financial and

10   environmental harms that flow from the Defendants' unlawful actions announced in the

11   FHWA Letter.

12    15.     The State of Washington is represented by and through Attorney General

13   Nicholas W. Brown, who is the chief legal adviser to the State and is authorized to act in

14   federal court on behalf of the State on matters of public concern.

15    16.     The State of Colorado is represented by and through Attorney General Phil

16   Weiser, who acts as the chief legal representative of the State.

17    17.     The State of California is represented by and through Attorney General Rob

18   Bonta, California's chief law enforcement officer, and by and through Governor Gavin

19   Newsom, the California Department of Transportation ("Caltrans"), and the California Energy

20   Commission ("CEC"). Caltrans and CEC jointly administer the implementation of the NEVI

21   Formula Program in California.

22    18.     The State of Arizona is represented by Attorney General Kris Mayes, who is the

23   chief law enforcement officer of Arizona and is authorized to act in federal court on behalf of

24   the State.

25   / / /

26   / / /

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL                    4          ATTORNEY GENERAL OF WASHINGTON
                                                        Environmental Protection Division
                                                           800 Fifth Avenue STE 2000
                                                              Seattle, WA 98104
                                                                206-464-7744

1    19.    The State of Delaware is represented by and through Attorney General Kathleen

2    Jennings, who is the chief law officer of Delaware and is authorized to bring this action on

3    behalf of the State.

4    20.    The District of Columbia is represented by and through Attorney General Brian

5    L. Schwalb, who is the chief legal officer of the District of Columbia.

6    21.    The State of Hawai'i is represented by and through Attorney General Anne

7    Lopez, who is the chief law enforcement officer and chief legal officer of the State.

8    22.    The State of Illinois is represented by and through Attorney General Kwame

9    Raoul, who is the chief law enforcement officer of Illinois.

10    23.    The Office of the Governor of Kentucky, *ex rel.* Andy Beshear, brings this suit

11    in his official capacity as Governor of the Commonwealth of Kentucky. The Kentucky

12    Constitution makes the Governor the Chief Magistrate with the "supreme executive power of

13    the Commonwealth," Ky. Const. § 69, and gives the Governor, and only the Governor, the

14    duty to "take care that the laws be faithfully executed," *id.* § 81; *Beshear v. Bevin*, 498 S.W.3d

15    355, 369 (Ky. 2016) (citing Ky. Const. § 81). Under Kentucky statute, the Governor is the head

16    of his General Cabinet and his Executive Cabinet. Ky. Rev. Stat. §§ 11.060, 11.065. The

17    Governor's Executive Cabinet consists of the Secretaries of executive branch cabinets,

18    including the Kentucky Transportation Cabinet. In fulfilling his constitutional duties, the

19    Governor has authority to bring this action.

20    24.    The State of Maryland is represented by Attorney General Anthony G. Brown,

21    who is the chief law enforcement officer of Maryland.

22    25.    The State of Michigan is represented by Attorney General Dana Nessel, who is

23    the chief law enforcement officer of Michigan.

24    26.    The State of Minnesota is represented by and through Attorney General Keith

25    Ellison, who is authorized to file suit to challenge action by the federal government that

26    / / /

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

5

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

threatens the public interest and welfare of Minnesota residents and to vindicate the State's

sovereign and quasi-sovereign interests.

27.    The State of New Jersey is represented by Attorney General Matthew Platkin,

who is the chief law enforcement officer of New Jersey.

28.    The State of New Mexico is represented by and through Attorney General Raúl

Torrez, who is the chief law enforcement officer of New Mexico.

29.    The State of New York is represented by and through Attorney General Letitia

A. James, who acts as the chief legal representative of the State.

30.    The State of North Carolina is represented by Attorney General Jeff Jackson,

who is the chief law enforcement officer of North Carolina.

31.    The State of Oregon is represented by and through Attorney General Dan

Rayfield, who is the chief legal officer of Oregon.

32.    Josh Shapiro brings this suit in his official capacity as Governor of the

Commonwealth of Pennsylvania. The Pennsylvania Constitution vests "[t]he supreme

executive power" in the Governor, who "shall take care that the laws be faithfully executed."

Pa. Const. art. IV, § 2. The Governor oversees all executive agencies in Pennsylvania and is

authorized to bring suit on his own behalf and on behalf of executive agencies under his

jurisdiction. 71 P.S. §§ 732-301(6), 732-303, 732-204(c).

33.    The State of Rhode Island is represented by and through Attorney General

Peter F. Neronha, who is the chief law enforcement officer of Rhode Island.

34.    The State of Vermont is represented by and through Attorney General Charity

Clark, who is authorized to initiate litigation on Vermont's behalf.

35.    The State of Wisconsin is represented by and through Attorney General Josh

Kaul, who is the chief law enforcement officer of Wisconsin.

36.    Defendant United States Department of Transportation is a cabinet agency

within the Executive Branch of the United States government. 49 U.S.C. § 102(a).

6

37.     Defendant Sean Duffy is the Secretary of the United States Department of Transportation and that agency's highest ranking official. He is charged with the supervision and management of all decisions and actions of that agency. 49 U.S.C. § 102(b). He is sued in his official capacity.

38.     Defendant Federal Highway Administration is an administration within the United States Department of Transportation. 49 U.S.C. § 104.

39.     Defendant Gloria M. Shepherd is the Executive Director and Acting Administrator of the Federal Highway Administration within the United States Department of Transportation. The Acting Administrator is responsible for carrying out the duties and powers vested in the Secretary of Transportation by chapter 4 of title 23 of the United States Code for highway safety programs, research, and development related to highway design, construction and maintenance, traffic control devices, identification and surveillance of accident locations, and highway-related aspects of pedestrian safety; and additional duties and powers prescribed by the Secretary. 49 U.S.C. § 104(b)(1). She is sued in her official capacity.

## ALLEGATIONS

**A.     Congress Established the National Electric Vehicle Infrastructure Formula Program to Fund Strategic Deployment of Electric Vehicle Charging Infrastructure**

40.     On November 15, 2021, President Biden signed into law the Bipartisan Infrastructure Law, enacted as the IIJA. 135 Stat. 429.

41.     The IIJA establishes the NEVI Formula Program. Through the IIJA, Congress appropriated $5 billion and mandated that those funds "shall be to carry out the [NEVI] Formula Program" and must "remain available until expended." *Id.* at 1421. NEVI Formula Program funds are "formula" funds. S*ee, e.g., City of Los Angeles v. Barr*, 941 F.3d 931, 935 (9th Cir. 2019). Unlike discretionary funding, formula funds are appropriated by Congress for a specific purpose and must be distributed on the basis of a statutory formula. The

/ / /

NEVI Formula Program applies the same federal formula as that which is used to distribute highway funds. 135 Stat. at 1422.

42.     The purpose of the NEVI Formula Program is to "provide funding to States to strategically deploy electric vehicle charging infrastructure and to establish an interconnected network to facilitate data collection, access, and reliability." *Id.* at 1421.

43.     More specifically, after setting aside funds for NEVI Formula Program administration and an additional grant program, NEVI Formula Program funds apportioned to States "shall be used for: (1) the acquisition and installation of electric vehicle charging infrastructure to serve as a catalyst for the deployment of such infrastructure and to connect it to a network to facilitate data collection, access, and reliability; (2) proper operation and maintenance of electric vehicle charging infrastructure; and (3) data sharing about electric vehicle charging infrastructure to ensure the long-term success of investments made under [the NEVI Formula Program provisions of the IIJA]." *Id.* at. 1421-22; *see also id.* at 1425 (discussing set-asides).

44.     The NEVI Formula Program first prioritizes building out "alternative fuel corridor[s]" with EV charging infrastructure along the national highway system to support long-distance travel and increase driver confidence in charging port availability during intra- and interstate travel. *Id.* at 1423-24. Focusing first on this national network of alternative fuel corridors ("AFCs") helps ensure that drivers beyond urban commuter areas have the option to choose an EV.

45.     Distribution of NEVI Formula Program funds is not discretionary: The Secretary of Transportation ("Secretary") "***shall distribute*** among the States the [NEVI Formula Program funds] so that each State receives" the amount determined by the formula. *Id.* at 1422 (emphasis added). Indeed, as explained below, even in the limited circumstances a State may become ineligible to receive its share of NEVI Formula Program funds for a particular fiscal year, the IIJA requires the Secretary to distribute all lawfully withheld or

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

8

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

withdrawn funds to local jurisdictions within that State, or to other States, for the congressionally mandated purpose of building out EV charging infrastructure. *See id.* at 1422-23.

46.    Congress established a single prerequisite for a State to receive its share of the NEVI Formula Program funding appropriated by Congress: Each State must submit a State Electric Vehicle Infrastructure Deployment Plan, by a deadline established by the Secretary, describing how it "intends to use funds distributed to the State . . . to carry out the [NEVI Formula] Program for each fiscal year in which funds are made available." *Id.* at. 1422.

47.    The IIJA further requires the Secretary, within 90 days of the statute's enactment, and in coordination with the Secretary of Energy, to develop "guidance for States and localities to strategically deploy electric vehicle charging infrastructure" consistent with the NEVI Formula Program provisions of the IIJA ("NEVI Formula Program Guidance"). *Id.* at 1423.

48.    The FHWA issued NEVI Formula Program Guidance on February 10, 2022, and has updated the guidance annually. The FHWA issued the most recent update on June 11, 2024.

**B.    Process to Distribute Nondiscretionary NEVI Formula Program Funds to States**

49.    NEVI Formula Program funds are distributed in accordance with a well-defined process. The first step in this process was the congressional **appropriation**, which authorized the FHWA to incur financial obligations that will result in immediate or future disbursements of funds from the U.S. Treasury. *See* 2 U.S.C. § 622(2)(A)(i). In the IIJA, Congress appropriated $5 billion, "to remain available until expended," to carry out the NEVI Formula Program in accordance with specific directives and subject to express constraints. 135 Stat. at 1421.

50.    Next, the U.S. Office of Management and Budget ("OMB"), which administers the federal budget, **apportioned** the funds appropriated by Congress by dividing the $5 billion

9                    ATTORNEY GENERAL OF WASHINGTON
                                                                              Environmental Protection Division
                                                                              800 Fifth Avenue STE 2000
                                                                              Seattle, WA 98104
                                                                              206-464-7744

appropriation across five fiscal years and distributed the funds to the FHWA. *See* U.S. Gov't Accountability Off., GAO-05-734SP, *A Glossary of Terms Used in the Federal Budget Process,* at 12-13 (Sept. 2005) ("Budget Glossary").[2] The FHWA, which is within the U.S. Department of Transportation ("U.S. DOT"), annually certifies a further apportionment. This further apportionment includes setting aside the funds for NEVI Formula Program administration of the and an additional grant program. The FHWA then divides the remaining funds for that fiscal year among the States according to the non-discretionary statutory formula.

51.    The IIJA's formula explicitly requires the Secretary to apportion NEVI Formula Program funds among the States, such that each receives a share of funding proportional to the combined amount that the FHWA distributes in Federal-aid highway apportionments.[3, 4] 135 Stat. at 1422 (citing 23 U.S.C. § 104(c) and § 165). Those amounts are fixed in statute based on historical apportionments and congressionally determined shares, 23 U.S.C. §§ 104(c), 165. Neither the Secretary nor the FHWA, nor any other part of the Executive Branch has discretion to determine the amount of funding apportioned to any State under the NEVI Formula Program.

52.    After reviewing each State Electric Vehicle Infrastructure Deployment Plan submitted, the FHWA notifies each State by letter that its funds for the fiscal year(s) covered by the Plan are "available for obligation."[5]

53.    An **obligation** is a "definite commitment that creates a legal liability of the government for the payment of goods and services ordered or received, or a legal duty on the

---

[2] Available at https://www.gao.gov/assets/gao-05-734sp.pdf.
[3] Puerto Rico's share is equal to the amount the FHWA distributes in Puerto Rico Highway Program funding.
[4] *See, e.g.*, FHWA, Notice: Apportionment of Fiscal Year (FY) 2022 Highway Infrastructure Program Funds for the National Electric Vehicle Infrastructure Formula Program Pursuant to the Infrastructure Investment and Jobs Act (Feb. 10, 2022), a true and accurate copy of which is attached hereto as Exhibit A.
[5] *See, e.g.*, FHWA Letter to Washington State, Approval of Washington State Electric Vehicle Infrastructure Deployment Plan (September 14, 2022), a true and accurate copy of which is attached hereto as Exhibit B.

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

10

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1    part of the United States that could mature into" such a liability; an "expenditure," also known

2    as a "disbursement," is the actual spending of federal funds. Budget Glossary at 45, 48, 70.

3        54.    States **obligate** their share of apportioned NEVI Formula Program funds by

4    submitting to the FHWA an authorization request for specific activities. So long as the

5    activities for which a State requests authorization meet the minimum standards and

6    requirements to be funded by NEVI Formula Program funds, *see* 23 C.F.R. Part 680, the

7    FHWA must approve State's requests for authorization. Upon FHWA authorization, NEVI

8    Formula Program funds are obligated for those activities. When the State submits to the

9    FHWA expenses incurred for those activities, it can draw down the obligated funds, which are

10   then **disbursed** into State accounts. The FHWA's authority to withhold or withdraw those

11   funds is tightly conscribed by the IIJA.

12       55.    By way of analogy, the amounts made "available for obligation" are like the

13   credit limit on a credit card; the obligation is the swipe of the credit card at a point-of-sale

14   device; and the disbursement is the transfer of funds to pay the bill.

**C.    Congress Expressly Prescribed the Circumstances and Procedures Under Which the Federal Highway Administration is Authorized to Withhold or Withdraw NEVI Formula Program Funds from States**

17       56.    Congress expressly limited the Secretary's discretion to withhold or withdraw

18   NEVI Formula Program funds from States. The Secretary must distribute to each State its

19   share of NEVI Formula Program funds unless the State fails to timely submit its State Electric

20   Vehicle Infrastructure Deployment Plan or if the Secretary "determines a State has not taken

21   action to carry out its [State P]lan." 135 Stat. at 1422.

22       57.    In addition to clear substantive parameters, Congress imposed strict procedural

23   requirements the Secretary must follow: "[P]rior to the Secretary making a determination that a

24   State has not taken actions to carry out its plan, the Secretary shall notify the State, consult

25   with the State, and identify actions that can be taken to rectify concerns, and provide at least 90

26   days for the State to rectify concerns and take action to carry out its [State P]lan." *Id.* Then, if

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

11

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

the Secretary still makes a determination that the State has not taken actions to carry out its State Plan, the Secretary must give additional notice and an opportunity to be heard before withholding or withdrawing any funds: "The Secretary shall provide notice to a State on the intent to withhold or withdraw funds not less than 60 days before withholding or withdrawing any funds, during which time the State[] shall have an opportunity to appeal a decision to withhold or withdraw funds directly to the Secretary." *Id.*

58.    To further cement that NEVI Formula Program funds must be distributed for the purpose of building EV charging infrastructure, the IIJA expressly mandates that the Secretary redistribute all funds lawfully withheld or withdrawn from a State in a given fiscal year to other jurisdictions. To redistribute withheld or withdrawn funds, the Secretary may "award such funds on a competitive basis to local jurisdictions within the State for use on projects that meet the eligibility requirements." *Id.* If the Secretary cannot fully award these funds to local jurisdictions within the State, "any such funds remaining **shall be distributed** among other States . . . in the same manner as funds distributed for that fiscal year." *Id.* at 1422-23 (emphasis added). Whatever the scenario, the NEVI Formula Program funds appropriated by Congress must always be distributed to support State or local government EV charging infrastructure projects.

59.    Congress did not give the Secretary authority to suspend or revoke its approval of State Electric Vehicle Infrastructure Deployment Plans and certainly did not authorize the FHWA to suspend or revoke approval of every State Plan categorically. If a State submits a Plan by the deadline, the FHWA must provide that State with its share of NEVI Formula Program funds for the fiscal year(s) covered by that Plan unless the State fails to take action to carry out the Plan **_and_** the Secretary follows the required statutory procedures, including but not limited to notice and an opportunity to appeal prior to any redistribution of the funds.

/ / /

/ / /

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

12

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

**D.**    **Plaintiff States Submitted State Electric Vehicle Infrastructure Deployment Plans for Fiscal Years 2022 through 2025, and the Federal Highway Administration Made NEVI Formula Program Funds Available for Obligation**

60.    Consistent with the IIJA, the deadlines established by the Secretary, and the NEVI Formula Program Guidance, States prepared and submitted to the FHWA their State Electric Vehicle Infrastructure Deployment Plans describing how they intended to use their share of funds to carry out the NEVI Formula Program. The FHWA approved the States' Plans making their shares of NEVI Formula Program funds available to the States for obligation.

61.    In total, as of February 6, 2025, the FHWA made $3.27 billion available for obligation for fiscal years 2022 through 2025, including approximately $1.1 billion made available for obligation to Plaintiff States.[6]

62.    Washington, through the Washington State Department of Transportation ("WSDOT"), submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans covering the first four fiscal years of NEVI Formula Program funds apportioned by the FHWA, representing federal fiscal years 2022 through 2025.

63.    The FHWA approved Washington's initial Electric Vehicle Infrastructure Deployment Plan, which covered fiscal years 2022 and 2023 in a letter dated September 14, 2022. The FHWA approved the State's two subsequent plans covering fiscal years 2024 and 2025 on September 29, 2023, and November 15, 2024, respectively. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal Year . . . funds are now available to Washington State for obligation."

64.    Colorado submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans covering the first four years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal years 2022 through 2025.

---

[6] U.S. Department of Transportation, Federal Highway Administration Fiscal Management Information System, *NEVI Formula Program Status of Funds* (Feb. 6, 2025), a true and accurate copy of which is attached hereto as Exhibit C. Also available at https://www.fhwa.dot.gov/environment/nevi/resources/nevi-formula-program-status-funds-feb-6-24.pdf (last accessed May 5, 2025).

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Ave STE 2000
Seattle, WA 98104
206-464-7744

65.    Colorado's first Plan, developed over the course of 2022 in partnership between the Colorado Department of Transportation ("CDOT") and the Colorado Energy Office ("CEO"), and with the input and engagement from a broad range of stakeholders, establishes the State of Colorado's overall approach to the investment of approximately $57 million of NEVI Formula Program funds over five years.

66.    The FHWA approved Colorado's initial State Electric Vehicle Infrastructure Deployment Plan, which covered fiscal years 2022 and 2023 in a letter dated September 14, 2022. Colorado submitted additional State Electric Vehicle Infrastructure Deployment Plans and Plan updates covering fiscal years 2024 and 2025. These Plans and Plan updated were approved on September 29, 2023, and November 11, 2024. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal Year . . . funds are now available to Colorado for obligation."

67.    California submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans covering the first four fiscal years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal years 2022 through 2025.

68.    California's initial Plan, developed by Caltrans and CEC, forecast the need for 1.2 million EV charging ports for light-duty vehicles and 157,000 charging ports for medium- and heavy-duty vehicles to meet California's ambitious transportation electrification policies, and detailed California's plans to leverage public funding and private investment to build out the State's charging infrastructure, including $384 million from the NEVI Formula Program.[7] The FHWA approved California's initial Plan in a letter dated September 14, 2022.

69.    California updated its State Electric Vehicle Infrastructure Deployment Plan annually, with the most recent update submitted in August 2024. The FHWA approved each of California's annual updates on September 14, 2022, September 29, 2023, and November 15,

---

[7] In California's 2024 State Plan, this projection was updated to 1 million light-duty EV charging ports and 114,500 medium- and heavy-duty EV charging ports.

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

2024. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal Year …

funds are now available to California for obligation."

70.    Arizona, through the Arizona Department of Transportation ("ADOT"),

submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans covering the

first four fiscal years of NEVI Formula Program funds apportioned by the FHWA, representing

fiscal years 2022 through 2025.

71.    The FHWA approved Arizona's 2022, 2023, and 2024 State Plans in letters

dated September 14, 2022, September 29, 2023, and November 15, 2024, respectively, making

funds available for obligation for fiscal years 2022 through 2025. In each approval letter, the

FHWA explicitly stated: "With this approval, Fiscal Year … funds are now available to

Arizona for obligation."

72.    The District of Columbia ("District"), through the District Department of

Transportation ("DDOT"), submitted to the FHWA its Electric Vehicle Infrastructure

Deployment Plans covering the first four fiscal years of NEVI Formula Program funds

apportioned by the FHWA, representing fiscal years 2022 through 2025.

73.    The FHWA approved the District's 2022 Plan on September 14, 2022. The

District submitted additional Plans and Plan updates for later fiscal years, which the FHWA

approved in September 2023 and November 2024, making funds available for fiscal years 2024

and 2025. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal

Year. . . funds are now available to the District of Columbia for obligation."

74.    Delaware, through the Delaware Department of Transportation ("DelDOT"),

submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans covering the

first four fiscal years of NEVI Formula Program funds apportioned by the FHWA, representing

fiscal years 2022 through 2025.

75.    The FHWA approved Delaware's State Plans and Plan updates on

September 14, 2022, September 29, 2023, and November 15, 2024. In each approval letter, the

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL                              15                    ATTORNEY GENERAL OF WASHINGTON
                                                                        Environmental Protection Division
                                                                        800 Fifth Avenue STE 2000
                                                                        Seattle, WA 98104
                                                                        206-464-7744

1   FHWA explicitly stated: "With this approval, Fiscal Year. . . funds are now available to

2   Delaware for obligation."

3       76.     Hawaiʻi, through the Hawaiʻi Department of Transportation ("HDOT"),

4   submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans covering the

5   first four fiscal years of NEVI Formula Program funds apportioned by the FHWA, representing

6   fiscal years 2022 through 2025.

7       77.     The FHWA approved Hawaiʻi's State Plans on September 27, 2022, October 2,

8   2023, and November 15, 2024. In each approval letter, the FHWA explicitly stated: "With this

9   approval, Fiscal Year. . . funds are now available to Hawaiʻi for obligation."

10      78.     Illinois, through the Illinois Department of Transportation ("IDOT"), submitted

11  to the FHWA State Electric Vehicle Infrastructure Deployment Plans covering the first four

12  fiscal years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal

13  years 2022 through 2025.

14      79.     The FHWA approved Illinois's Plans on September 27, 2022, September 29,

15  2023, and November 15, 2024. In each approval letter, the FHWA explicitly stated: "With this

16  approval, Fiscal Year. . . funds are now available to Illinois for obligation."

17      80.     Kentucky, through the Kentucky Transportation Cabinet ("KYTC"), submitted

18  to the FHWA State Electric Vehicle Infrastructure Deployment Plans covering the first four

19  fiscal years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal

20  years 2022 through 2025.

21      81.     The FHWA approved Kentucky's State Plans on September 14, 2022,

22  September 29, 2023, and November 25, 2024. In each approval letter, the FHWA explicitly

23  stated: "With this approval, Fiscal Year . . . funds are now available to Kentucky for

24  obligation."

25      82.     Maryland, through the Maryland State Highway Administration ("MSHA"),

26  submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans covering the

first four years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal years 2022 through 2025.

83.    The FHWA approved Maryland's first Plan, covering fiscal years 2022 and 2023 on September 14, 2022. The FHWA approved Maryland's Plans for fiscal years 2024 and 2025 on September 29, 2023, and November 15, 2024, respectively. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal Year. . . funds are now available to Maryland for obligation."

84.    Michigan, through the Michigan Department of Transportation ("MDOT"), submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans in August 2022, August 2023, and July 2024, covering the first four years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal years 2022 through 2025.

85.    The FHWA approved Michigan's State Plans each year, making funds available for obligation. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal Year. . . funds are now available to Michigan for obligation."

86.    Minnesota, through the Minnesota Department of Transportation ("MnDOT"), submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans covering the first four years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal years 2022 through 2025.

87.    The FHWA approved Minnesota's State Plans in letters dated September 14, 2022, September 29, 2023, and November 15, 2024. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal Year. . . funds are now available to Minnesota for obligation."

88.    New Jersey, through the New Jersey Department of Transportation ("NJDOT"), submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans and Plan updates covering the first four years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal years 2022 through 2025. New Jersey submitted its initial State

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL                                    17                ATTORNEY GENERAL OF WASHINGTON
                                                                                          Environmental Protection Division
                                                                                          800 Fifth Avenue STE 2000
                                                                                          Seattle, WA 98104
                                                                                          206-464-7744

Plan in August 2022 and has updated its State Plans annually, with the most recent update submitted in September 2024.

89.    The FHWA approved New Jersey's State Plans in letters dated September 27, 2022, October 2, 2023, and November 15, 2024. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal Year . . . funds are now available to New Jersey for obligation."

90.    New Mexico, through the New Mexico Department of Transportation ("NMDOT"), submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans covering the first four years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal years 2022 through 2025.

91.    The FHWA approved New Mexico's State Plans on October 4, 2023, and November 15, 2024. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal Year. . . funds are now available to New Mexico for obligation."

92.    New York, through the State Department of Transportation, ("NYSDOT"), submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans covering the first four years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal years 2022 through 2025.

93.    The FHWA approved New York's initial State Electric Vehicle Infrastructure Deployment Plan, which covered fiscal years 2022 and 2023 in a letter dated September 27, 2022. The FHWA approved New York's two subsequent Plans covering fiscal years 2024 and 2025 on September 29, 2023, and November 15, 2024, respectively. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal Year . . . funds are now available to New York State for obligation."

94.    North Carolina, through the North Carolina Department of Transportation ("NCDOT"), submitted State Electric Vehicle Infrastructure Deployment Plans to the FHWA

/ / /

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL                                    18                    ATTORNEY GENERAL OF WASHINGTON
                                                                            Environmental Protection Division
                                                                            800 Fifth Avenue STE 2000
                                                                            Seattle, WA 98104
                                                                            206-464-7744

covering the first four fiscal years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal years 2022 through 2025.

95.     The FHWA approved North Carolina's State Plans on September 27, 2022, September 29, 2023, and November 15, 2024. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal Year. . . funds are now available to North Carolina for obligation."

96.     Oregon, through the Oregon Department of Transportation ("ODOT"), submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans covering the first four years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal years 2022 through 2025.

97.     Oregon's first Plan was intended to cover all five years of NEVI Formula Program funding. In a letter dated September 14, 2022, the FHWA approved funding for fiscal years 2022 and 2023 based on that Plan. Oregon subsequently submitted Plans covering fiscal years 2024 and 2025, and the FHWA approved these Plans in letters dated September 29, 2023, and November 15, 2024, respectively. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal Year . . . funds are now available to Oregon for obligation."

98.     Pennsylvania, through the Pennsylvania Department of Transportation ("PennDOT"), submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans covering the first four fiscal years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal years 2022 through 2025.

99.     The FHWA approved Pennsylvania's State Plans for fiscal years 2022 through 2025. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal Year. . . funds are now available to Pennsylvania for obligation."

100.     Rhode Island, through the Rhode Island Department of Transportation ("RIDOT"), submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

19

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

covering the first four years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal years 2022 through 2025.

101.    The FHWA approved Rhode Island's State Plans in letters dated September 14, 2022, September 29, 2023, and November 15, 2024. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal Year . . . funds are now available to Rhode Island for obligation."

102.    Vermont, through the Vermont Agency of Transportation ("VTrans"), submitted to the FHWA State Electric Vehicle Infrastructure Development Plans covering the first four years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal years 2022 through 2025.

103.    The FHWA approved Vermont's initial Plan and Plan updates in letters dated September 27, 2022, September 29, 2023, and November 15, 2024. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal Year . . . funds are now available to Vermont for obligation."

104.    Wisconsin, through the Wisconsin Department of Transportation ("WisDOT"), submitted to the FHWA State Electric Vehicle Infrastructure Deployment Plans covering the first four years of NEVI Formula Program funds apportioned by the FHWA, representing fiscal years 2022 through 2025.

105.    The FHWA approved Wisconsin's first Plan, which covered fiscal years 2022 and 2023, in a letter dated September 14, 2022. Wisconsin submitted additional State Electric Vehicle Infrastructure Deployment Plans and Plan updates for later fiscal years.

106.    The FHWA approved Wisconsin's subsequent Plans and Plan updates on September 29, 2023, and November 15, 2024, making funds available for obligation for fiscal years 2024 and 2025. In each approval letter, the FHWA explicitly stated: "With this approval, Fiscal Year . . . funds are now available to Wisconsin for obligation."

/ / /

E.      The Unleashing American Energy Executive Order

107.    On January 20, 2025, the President issued an executive order entitled *Unleashing American Energy*. Exec. Order No. 14,154, 90 Fed. Reg. 8353.

108.    In the Executive Order, the President declared it "the policy of the United States to 'eliminate the electric vehicle (EV) mandate' and promote true consumer choice, which is essential for economic growth and innovation, by removing regulatory barriers to motor vehicle access; by ensuring a level regulatory playing field for consumer choice in vehicles; by terminating, where appropriate, state emissions waivers that function to limit sales of gasoline-powered automobiles; and by considering the elimination of unfair subsidies and other ill-conceived government-imposed market distortions that favor EVs over other technologies and effectively mandate their purchase by individuals, private businesses, and government entities alike by rendering other types of vehicles unaffordable." *Id.*

109.    To "[t]erminat[e] the Green New Deal," and effectuate his own policy priorities, including the "eliminat[ion of] the electric vehicle (EV) mandate," the President ordered all agencies to "immediately pause the disbursement of funds appropriated through . . . [IIJA], including but not limited to funds for electric vehicle charging stations made available through the National Electric Vehicle Infrastructure Formula Program." *Id.* at 8357.

110.    The President further directed all agencies to "review their processes, policies, and programs for issuing grants, loans, contracts, or any other financial disbursements of such appropriated funds for consistency with the law and [the President's energy policy priorities] outlined in section 2 of the [Executive Order]." *Id.*

111.    The President also ordered agency heads to submit to the Directors of OMB and the National Economic Council ("NEC") a report detailing the agencies' review, including "recommendations to enhance their alignment with [the President's energy policy priorities] set forth in section 2." The President made clear that agencies were not to disburse any funds appropriated under the IIJA "until the Director of OMB and Assistant to the President for

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL
21
ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

Economic Policy have determined that such disbursements are consistent with any review recommendations they have chosen to adopt." *Id.*

112.    In short, the President directed agencies to withhold congressionally appropriated funds, including NEVI Formula Program funds, as a tool to terminate programs the President dislikes.

113.    But agencies have no authority to rescind or revise statutes, or to withhold funds duly appropriated by Congress based on the President's disagreement with the policies and priorities of Congress.

114.    Indeed, several federal district courts have already enjoined agency actions effectuating the President's directive to withhold IIJA and IRA funds as *ultra vires*, contrary to law, and arbitrary and capricious. *See State of New York v. Trump*, No. 1:25-cv-00039-JJM-PAS, ECF No. 161 (D.R.I. Mar. 6, 2025) (granting preliminary injunction against categorical freezes of obligated funds); *Woonasquatucket River Watershed Council v. U.S. Dept. of Agric.*, No. 1:25-cv-00097-MSM-PAS, ECF No. 45 (D.R.I. Apr. 15, 2025) (same); *Nat'l Council of Nonprofits v. Off. of Mgmt. and Budget*, No. 1:25-cv-00239-LLA, ECF No. 51 (D.D.C. Feb. 25, 2025).

**F.    The Federal Highway Administration Implemented the President's Directive by Retroactively and Unlawfully Revoking All State Electric Vehicle Infrastructure Deployment Plan Approvals**

115.    Consistent with the President's directive to illegally withhold all IIJA funding, including NEVI Formula Program funds, on February 6, 2025, the FHWA informed States that the current NEVI Formula Program Guidance and all prior versions were rescinded. A true and accurate copy of the FHWA Letter is attached hereto as Exhibit D.

116.    The FHWA gave no rationale for rescinding the NEVI Formula Program Guidance, other than stating that the "new leadership" at the U.S. DOT had "decided to review the policies underlying the implementation of the NEVI Formula Program."

/ / /

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

22

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

117.    The FHWA Letter further stated that the "FHWA is updating the NEVI Formula Program Guidance to align with current U.S. DOT policy and priorities, including those set forth in DOT Order 2100.7." A true and accurate copy of DOT Order 2100.7 is attached hereto as Exhibit E.

118.    Unlike the factors Congress enumerated in the IIJA to inform the Secretary's development of the NEVI Formula Program Guidance, such as "the distance between publicly available electric vehicle charging infrastructure," "connections to the electric grid," and "long-term operation and maintenance," 135 Stat. at 1423, DOT Order 2100.7 requires the U.S. DOT—and therefore the FHWA—to, for example, "prioritize projects and goals that . . . give preference to communities with marriage and birth rates higher than the national average . . . ."

119.    In the FHWA Letter, the FHWA suggests that it "aims to have [an] updated draft NEVI Formula Guidance published for public comment in the spring." The Agency states it will, at some unknown date, after the close of a public comment period of unknown length "publish updated final NEVI Formula Guidance that responds to comments received."

120.    Without citing any legal authority, the FHWA further explains that "[a]s a result of the rescission of the NEVI Formula Program Guidance, [the] FHWA is also immediately suspending the approval of all State Electric Vehicle Infrastructure Deployment [P]lans for all fiscal years. Therefore, effective immediately, no new obligations may occur under the NEVI Formula Program until the updated final NEVI Formula Program Guidance is issued and new State [P]lans are submitted and approved."

121.    By announcing that the updated final NEVI Formula Program Guidance—if it ever comes—will include "[i]nstructions for the submission of new State [P]lans for all fiscal years," the FHWA made clear it has no intention of reapproving any previously approved plan. The FHWA's so-called "suspension" is therefore a revocation of all prior State Plan approvals.

/ / /

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL                        23                ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

122.    The FHWA's actions are consistent with multiple executive orders that demonstrate that this Administration's policy goals conflict with the NEVI Formula Program itself, and the recission of the NEVI Formula Program Guidance represents mere pretext for the FHWA's real objective—implementing the President's directive to illegally withhold NEVI Formula Program funds.

123.    In the Executive Order, the President declared it the policy of the United States to eliminate the "electric vehicle (EV) mandate," including, in the words of the order, any "unfair subsidies and other ill-conceived government-imposed market distortions that favor EVs over other technologies and effectively mandate their purchase." Exec. Order No. 14,154, 90 Fed. Reg. at 8353. The President's explicit directive to withhold funds "for electric vehicle charging stations made available through the National Electric Vehicle Infrastructure Formula Program" indicates he considers federal assistance for the construction of EV charging infrastructure—despite that being Congress's express objective—to represent one such "market distortion." The President's anti-EV pronouncements likewise include his declaration of an unfounded national "energy emergency," announcing the Administration's focus on prioritizing and maximizing the nation's use of fossil fuels, Exec. Order No. 14,156, 90 Fed. Reg. 8433 (Jan. 29, 2025), and his denouncement of state policies that "burden[]" the "use" of domestic oil resources in the *Protecting American Energy from State Overreach* executive order, Exec. Order No. 14,260, 90 Fed. Reg 15513 (Apr 14, 2025).

124.    The President directed the FHWA to unlawfully withhold funds for "electric vehicle charging stations made available through the National Electric Vehicle Infrastructure Formula Program." Exec. Order No. 14,154, 90 Fed. Reg. at 8357. The FHWA lacks authority under the IIJA to withhold NEVI Formula Program funds from States except in the exclusive circumstances expressly set forth by Congress in the IIJA. It thus contrived a way to implement the President's directive—in direct conflict with the statute and without lawful and reasoned explanation for its actions.

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

24

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

**G.     Unlawfully Revoking All State Electric Vehicle Infrastructure Deployment Plans Approval Harms Plaintiff States**

125.     The FHWA's retroactive and unlawful revocation of all State Electric Vehicle Infrastructure Deployment Plan approvals and illegal withholding or withdrawing of statutorily appropriated and apportioned NEVI Formula Program funds "made available to [a State] for obligation" has harmed and will continue to harm Plaintiff States and their residents in myriad ways.

126.     In total, the FHWA is withholding approximately $2.74 billion of the $3.27 million in NEVI Formula Program funds available to the States for obligation for fiscal years 2022 through 2025. Collectively, Plaintiff States have been immediately and indefinitely deprived of access to approximately $1 billion in available NEVI Formula Program funds for those four fiscal years.

**Washington**

127.     Washington, through the WSDOT, was apportioned under the NEVI Formula an approximate total of $71 million in funds over five years dedicated to carrying out the NEVI Formula Program. Washington's shares of NEVI Formula Program funds for fiscal years 2022 through 2025 (approximately $55 million) were made available to Washington to obligate upon FHWA approval of Washington's State Electric Vehicle Infrastructure Deployment Plans covering those fiscal years.

128.     Washington is a national leader in electric vehicles, remaining in the top five for EV adoption for more than a decade. The State has proactively invested in EV charging infrastructure for many years to reduce the environmental effects of the transportation sector.

129.     Transportation is the largest source of carbon pollution in Washington, contributing approximately twenty-two percent (22%) of total air pollution and thirty-nine percent (39%) of greenhouse gas ("GHG") emissions throughout the State. Pollution from

/ / /

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

25

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

combustion engine vehicle emissions causes health problems, such as cancer and asthma, and contributes to climate change.

130.    To help combat climate change and protect the health and welfare of its residents, Washington has adopted zero-emission vehicle standards that require a percentage of the vehicles sold in Washington to be zero emissions, starting with the 2025 model year. The State has also adopted California's vehicle emissions standards, which increases zero emissions vehicle sales of passenger cars, light-duty trucks, and medium-duty vehicles to one-hundred percent (100%) by 2035.

131.    In response to the FHWA's unlawful revocation of its State Electric Vehicle Infrastructure Deployment Plan approvals and its unlawful withholding of NEVI Formula Program funds to implement the President's directive, Washington was forced to cease work related to the NEVI Formula Program.

132.    In October 2024, WSDOT issued a notice of funding opportunity ("NOFO") and request for proposals ("RFP") for up to $25 million in projects funded through the NEVI Formula Program for EV charging infrastructure along five key corridors (I-90, US-97, US-2, US-195, and US-395). The NOFO/RFP closed on January 31, 2025. WSDOT received 40 proposals but because Washington does not have funds to cover these projects in the absence of its share of the NEVI Formula Program funding, the State has not been able to select a single awardee.

133.    As a result of the FHWA's unlawful actions, the State of Washington has been immediately and indefinitely deprived of access to approximately $55 million if its available NEVI Formula Program funds that Congress expressly directed toward to the State to build out its EV charging infrastructure. All current and future NEVI Formula Program NOFOs, RFPs, and all proposed EV charging infrastructure projects in Washington are therefore on hold indefinitely. The FHWA's unlawful actions thus create costly delays in project implementation

/ / /

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

26

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

and erode industry confidence in Washington's ability to fund EV charging infrastructure

projects, which will hamper the State's ability to find project partners in the future.

134.    The FHWA's unlawful actions to revoke Washington's State Electric Vehicle

Infrastructure Deployment Plan approvals and withhold the State's share of available NEVI

Formula Program funds significantly impede Washington's ability to develop a statewide

network of EV charging infrastructure. Widespread, publicly accessible, and reliable EV

charging infrastructure is critical to promote EV adoption and ensure the success of

Washington's clean car programs, which aim to improve air quality and combat climate change

to protect the health and the welfare of its residents.

**California**

135.    California, through Caltrans, was apportioned a total of approximately $384

million in funds over five fiscal years dedicated to carrying out the NEVI Formula Program.

California's share of NEVI Formula Program funds for fiscal years 2022 through 2025

(approximately $302 million) was made available to California to obligate upon the FHWA's

approval of California's State Electric Vehicle Infrastructure Deployment Plans covering those

fiscal years.

136.    Caltrans and CEC jointly implement the State's Electric Vehicle Infrastructure

Deployment Plans to support California's environmental, public health, and transportation

policies. California's efforts to promote the widespread adoption of zero-emitting EVs are

critical to its Climate Change Scoping Plan, developed to meet the California Legislature's

GHG reduction targets, and its attainment of federal ambient air quality standards, which

require significant measures to reduce smog precursors like nitrogen oxides and particulate

matter. Failure to attain and maintain these ambient concentrations not only increases the

public health risks, including cardiovascular and respiratory illnesses, it also risks

noncompliance penalties to the State, including the loss of highway funds. 42 U.S.C. §§ 7409,

7410, 7509(b); 89 Fed. Reg. 16,202, 16,223-49 (Mar. 6, 2024) (detailing health effects of

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

27

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1    particulate matter); 83 Fed. Reg. 17,226, 17,232-46 (Apr. 18, 2018) (health effects of nitrogen

2    oxides).

3    137.    Under California's Assembly Bill 118, which created the Clean Transportation

4    Program administered by CEC, CEC prepares an annual Zero-Emission Vehicle Infrastructure

5    Plan setting forth the State's goals for the charging and fueling infrastructure for zero-emission

6    vehicles (including EVs) that will support the State's climate and air pollution policies, and

7    CEC's strategies for building out that infrastructure. In the 2024 Zero-Emission Vehicle

8    Infrastructure Plan, CEC projected 7.1 million plug-in passenger EVs in California in 2030 and

9    15.2 million in 2035.

10    138.    The EV charging infrastructure needed to support California drivers is

11    significant. Fast charging is particularly important along long-distance travel corridors, where

12    drivers place a premium on quickly recharging their vehicles for the next leg of their journey.

13    California's State Electric Vehicle Infrastructure Deployment Plans and its Zero-Emission

14    Vehicle Infrastructure Plans thus focus NEVI Formula Program funds on building out a

15    statewide network of fast charging ports along major travel corridors. CEC estimates that

16    NEVI Formula Program funds will support the deployment of roughly 7,500 charging ports by

17    2030.

18    139.    These fast charging ports serve a demand for EV charging infrastructure that

19    would otherwise have to be met by a substantially larger number of slower Level 2 charging

20    ports. A 2023 modeling analysis showed that if California builds out 63,000 additional fast

21    charging ports, 400,000 fewer Level 2 charging ports are needed to meet the State's EV

22    demand by 2030. Without its share of NEVI Formula Program funds, the success of

23    California's zero-emission transportation policies will be seriously impeded, and California

24    will be forced to identify other, less cost-effective funding sources.

25    140.    In October 2023, CEC opened its first solicitation for NEVI Formula Program

26    funded projects in California. That first solicitation closed in September 2024 with awards

totaling $36.6 million to fund projects along the State's busiest transportation corridors. Most of the awards from that solicitation have been finalized in award agreements executed between CEC and the awardees. A second solicitation closed in March 2025, and application evaluation is underway. A third round of solicitation is slated to open later this year.

141.    EV charging infrastructure projects funded through the NEVI Formula Program in California generally proceed in three phases: "preliminary engineering," "right of way," and "construction." Several California awardees from the first NEVI Formula Program solicitation are ready to move into their construction phases; others are proceeding with environmental reviews and obtaining necessary rights of way. These awardees have expressed concern to Caltrans and CEC that the actions announced in the FHWA Letter will prevent them from being reimbursed for their costs, and they have therefore delayed proceeding with construction.

142.    One awardee has requested to withdraw its project because the FHWA is withholding NEVI Formula Program funding. If the awardee withdraws, the charging project it proposed will be delayed significantly, if not abandoned altogether.

143.    Another awardee reported to CEC that it had letters of intent or memoranda of understanding with several site hosts—i.e., locations where the awardee could build a charging station—but those site hosts decided not to enter into site host agreements once they learned the FHWA was withholding California's NEVI Formula Program funds. This too will result in the delay or possible failure of that project.

144.    The withholding of NEVI Formula Program funds threatens the successful execution of grant agreements with the awardees of California's second solicitation and will likely result in potential applicants declining to participate in the third solicitation at all.

145.    As a result of the FHWA's unlawful revocation of State Electric Vehicle Infrastructure Deployment Plan approvals and illegal withholding of NEVI Formula Program funds, California has been immediately and indefinitely deprived of access to approximately

/ / /

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL                    29                    ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

$300 million of its available NEVI Formula Program funds that Congress expressly directed toward to the State to build out its EV charging infrastructure.

146.    The FHWA confirmed the effect of its action in denying Caltrans's request to obligate funds for construction of a charging station in San Diego. In an email dated March 31, 2025, the FHWA notified Caltrans that "[a]s a result of the February 6[th] [NEVI Notice]," "no funds are available for obligation." A true and accurate copy of this email is attached hereto as Exhibit F.

**Colorado**

147.    Colorado, through CDOT, was apportioned approximately $57 million in funds over five years dedicated to carrying out the NEVI Formula Program. Colorado's annual shares of NEVI Formula Program funds for fiscal years 2022 through 2025 were made available to Colorado to obligate upon FHWA approval of Colorado's State Electric Vehicle Infrastructure Deployment Plans covering those fiscal years. CEO has contracted with CDOT to implement projects for the first four fiscal years of apportioned funding, representing approximately $44.5 million.

148.    Acting in reliance on the FHWA's approval of its Plans, which, consistent with the IIJA, NEVI Formula Program Guidance, and the FHWA's representations, made NEVI Formula Program funds available for obligation until expended, Colorado has awarded approximately $33 million for approved projects. It has contractual obligations with awardees for $18 million. However, the FHWA has only distributed $8 million in NEVI Formula Program funds to Colorado. The FHWA is now unlawfully and indefinitely withholding Colorado's remaining NEVI Program Formula funds on the basis of its illegal revocation of Colorado's State Electric Vehicle Infrastructure Deployment Plan approvals.

149.    Colorado has long supported the deployment of EVs and other zero-emission vehicles (ZEVs) across multiple vehicle classes as a means of reducing the environmental effects of the transportation sector and achieving its State GHG reduction targets.

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

30

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

150.    Widespread EV adoption is limited by the availability of publicly accessible EV charging ports. As a result, Colorado State agencies, local governments, nonprofits, and the private sector have been collaborating to fund, construct, and operate more than 1,500 Level 2 and fast charging ports across the State over the past decade. Colorado intended to utilize the additional funding appropriated by Congress and apportioned to the States under the NEVI Formula Program to deploy EV charging infrastructure in the gaps remaining in its charging station network, including in rural and other underserved communities. Colorado also intended to upgrade existing charging ports in need of greater capacity and address the growing demand for charging in parts of the State that already see higher EV adoption and usage. Finally, Colorado expected to use its share of NEVI Formula Program funding to help lay the groundwork for future charging projects focused on medium- and heavy-duty commercial users.

151.    The FHWA's unlawful actions to revoke Colorado's State Electric Vehicle Infrastructure Deployment Plan approvals and its unlawful withholding of NEVI Formula Program funds significantly impedes Colorado's ability to develop a statewide network of EV charging stations. Such a network is necessary to promote EV adoption as required by Colorado's legislature and executive branch, which have enacted ambitious emissions reduction goals for the transportation sector. The FHWA's unlawful actions interfere with existing projects, and sow uncertainty that undermines confidence in Colorado's ability to fund EV charging infrastructure projects and creates costly delays in project implementation.

**Arizona**

152.    Arizona, through ADOT, was apportioned an approximate total of $76 million over five fiscal years to carry out the NEVI Formula Program's goals. Arizona's shares of NEVI Formula Program funds for fiscal years 2022 through 2025 (approximately $60 million) were made available to Arizona to obligate upon FHWA's approval of Arizona's State Electric Vehicle Infrastructure Deployment Plans covering those fiscal years.

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL                              31                    ATTORNEY GENERAL OF WASHINGTON
                                                                        Environmental Protection Division
                                                                        800 Fifth Avenue STE 2000
                                                                        Seattle, WA 98104
                                                                        206-464-7744

153.    Transportation was the single largest contributing factor to GHG emissions in Arizona in 2021. As a result, Arizona has prioritized public fleet electrification and developing publicly available EV charging infrastructure. These two initiatives are estimated to reduce cumulative GHG emissions by almost 3 million metric tons between 2025 and 2050. Funding from the NEVI Formula Program is critical to achieving these emission-reduction goals.

154.    On January 19, 2025, ADOT issued a solicitation for 35 prospective EV charging station locations identified in its 2023 and 2024 State Plans. ADOT spent a significant amount of funds and staff time preparing this solicitation, which it had to cancel after the FHWA announced its unlawful actions.

155.    As a result of the FHWA's unlawful actions, Arizona has been immediately and indefinitely deprived of access to approximately $48 million of its available NEVI Formula Program funds.

**District of Columbia**

156.    The District of Columbia, through DDOT, was apportioned approximately $16.7 million over five fiscal years to carry out the NEVI Formula Program's goals. The District's shares of NEVI Formula Program funds for fiscal years 2022 through 2025 (approximately $13 million) were made available to the District to obligate upon FHWA's approval of the District's Electric Vehicle Infrastructure Deployment Plans covering those fiscal years.

157.    The District acted in reliance on the FHWA complying with the IIJA to obligate and disburse the District's share of NEVI Formula Program funds to build a robust, reliable, and interconnected charging network across all eight District Wards to promote EV adoption.

158.    Specifically, DDOT planned to build out a reliable network of NEVI Formula Program compliant fast charging stations, to install at least one fast charging station in each Ward, and to have a robust stakeholder and public engagement to help identify additional regional priorities and how best to use any remaining NEVI Formula Program funds.

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL                          32                ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

159.    As a direct result of the FHWA's unlawful actions, the District has been immediately and indefinitely deprived of access to approximately $9.5 million of its available NEVI Formula Program funds, and its ability to develop a District-wide network of EV charging stations and help support develop a local workforce with experience in EV charging infrastructure installation, maintenance, and repair has been significantly impeded.

**Delaware**

160.    The transportation sector is the largest source of GHG emissions in Delaware. One of the commitments of Delaware's Climate Action Plan is to minimize transportation related emissions and transition to vehicles reliant on clean and renewable energy. This goal, along with federal investment in EVs and their charging stations, will increase Delaware's resiliency to the damaging environmental effects of climate change, reduce harmful emissions, and create a network of accessible EV charging infrastructure that is accessible to everyone in the State.

161.    Delaware's General Assembly has enacted statutory provisions for sharing State vehicle charging infrastructure, 29 *Del. C.* Section 8062, an electric vehicle rebate program, Section 8064, and incentives to residential users to install chargers, Section 8065.

162.    As a result of the FHWA's unlawful actions, Delaware has been immediately and indefinitely deprived of access to approximately $3.8 million of its available NEVI Formula Program funds and its ability to develop a statewide network of EV charging stations has been seriously impeded.

**Hawai'i**

163.    Hawai'i, through Hawai'i Department of Transportation, ("HDOT"), was apportioned approximately $18 million over five fiscal years to carry out the NEVI Formula Program's goals.

164.    Hawai'i has long been a leader in EV adoption, which is essential to reducing GHG emissions that contribute to climate change. For example, charging sessions at the

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

33

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

Kahului station and Aloha Tower station—built using NEVI Formula Program funds—

providing approximately 806,912 kWh roughly translates to a reduction of nearly 528,000

kilograms of GHGs omitted into the atmosphere. That amount of GHG emission reduction is

equivalent to the amount of carbon sequestered by 14,600 trees.

165.    Hawai'i relies on the NEVI Formula Program funds apportioned to the State to

help transition to a sustainable transportation future and meet the State's renewable energy

goals by increasing availability of fast, affordable, and dependable EV charging.

166.    As a result of the FHWA's unlawful actions, Hawai'i has been immediately and

indefinitely deprived of access to approximately $2 million of its available NEVI Formula

Program funds and its ability to develop a statewide network of EV charging stations has been

significantly impeded.

**Illinois**

167.    Illinois's State Plans detail the State's approach to expending its total share of

the NEVI Formula Program funds to build out an EV charging network in service of the State's

goal of one million EVs on the road by 2030. 20 ILCS 627/45(a)(1).

168.    Through IDOT, Illinois has contractual obligations for $25.4 million for

approved NEVI Formula Program funded projects. IDOT is currently evaluating applications

from a NOFO that closed on January 31, 2025, and intends to award up to $24 million to

complete build out of EV charging infrastructure along Illinois's AFCs. Additionally, IDOT is

in final negotiations with a consultant to assist with construction oversight of awarded and

obligated NEVI Formula Program funded projects. To pay for these consultant services and

proceed with EV charging infrastructure projects, IDOT will need to obligate additional NEVI

Formula Program funds, which the FHWA is unlawfully withholding.

169.    Consistent with the IIJA and the FHWA's representations, IDOT has acted in

reliance on NEVI Formula Program funding to cover contractual obligations related to EV

charging infrastructure projects. Illinois does not have funds to cover these projects in the

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

34

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1    absence of its share of the NEVI Formula Program funding. To date, the FHWA has not

2    distributed any NEVI Formula Program funds to IDOT.

3    **Kentucky**

4    170.    Kentucky, through KYTC, was apportioned approximately $69 million over

5    five fiscal years to carry out the NEVI Formula Program's goals. Kentucky's share of NEVI

6    Formula Program funds for fiscal years 2022 through 2025 (approximately $55 million) were

7    made available to Kentucky to obligate upon FHWA approval of Kentucky's State Electric

8    Vehicle Infrastructure Deployment Plans covering those fiscal years.

9    171.    Kentucky's implementation of its State Plans through KYTC consisted of

10   competitive processes to identify and select qualified Developer Teams to design, build,

11   operate, and maintain EV charging stations across the state along AFCs to build out a reliable

12   functioning EV charging network. By way of FHWA-approved Requests for Proposals, KYTC

13   received hundreds of proposals and has active contracts with Developer Teams for 47 EV

14   charging station sites totaling $32,189,011. An additional Request for Proposals intended to

15   complete the NEVI-required "build-out" of the AFC was scheduled to be released in February

16   2025.

17   172.    As a result of the FHWA's unlawful actions, Kentucky has been immediately

18   and indefinitely deprived of access to approximately $18 million of its available NEVI

19   Formula Program funds, and its ability to develop a statewide network of EV charging stations

20   has been significantly impeded.

21   173.    The illegal withholding of these funds has rendered Kentucky unable to obligate

22   the necessary funding to administer and oversee its active contracts. Already obligated funding

23   cannot be adjusted to include Construction Engineering and Inspection costs due to FHWA's

24   restriction on obligations, hindering KYTC's ability to effectively manage the EV charging

25   stations' development and operations. The revocation of the remaining apportioned funding

26   risks interruption of all construction activities and/or operations of these EV charging stations.

FIRST AMENDED COMPLAINT –                35              ATTORNEY GENERAL OF WASHINGTON
NO. 2:25-cv-00848-TL                                          Environmental Protection Division
                                                                 800 Fifth Avenue STE 2000
                                                                    Seattle, WA 98104
                                                                       206-464-7744

**Maryland**

174. In 2020, transportation was the source of over one third of Maryland's GHG emissions and a significant source of the air pollutants that form smog. Maryland is committed to increasing registrations of EVs to address these pollution issues and the State has seen tremendous growth in the number of registered EVs over the past five years from 14,930 EVs in 2020 to 132,973 EVs to date in 2025—an increase of 891 percent (891%). The State envisions further growth in EV adoption over the next decade with a goal of registering 1.1 million passenger EVs by 2031 and the implementation of the State's Advanced Clean Cars II regulation.

175. Maryland was apportioned approximately $69 million in NEVI Formula Program funds for fiscal years 2022 through 2026 and roughly $49 million of those funds were available for obligation to Maryland upon the FHWA's approval of Maryland's State Electric Vehicle Infrastructure Deployment Plans covering fiscal years 2022 through 2025. These funds would go towards completing the buildout of fast charging infrastructure along Maryland's designated AFCs before building out Level 2 charging infrastructure in areas of the State without such infrastructure.

176. The FHWA previously authorized the obligation of approximately $14.5 million of NEVI Formula Program funds for Round 1 design-build procurement and administration, as designated in Maryland's State Plans. Those funds will support the construction of public charging infrastructure at only 22 of the 50 sites needed to complete the State's AFCs.

177. On December 17, 2024, MSHA launched its Round 2 procurement and simultaneously requested that the FHWA authorize the obligation of $475,000 to support Round 2. MSHA's December 17, 2024, RFP was originally slated to close on March 26, 2025.

178. As a result, however, of the FHWA's unlawful actions, Maryland has been immediately and indefinitely deprived of access to approximately $34.5 million of its available NEVI Formula Program funds and the State has been forced to delay the deadline for Round 2

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

36

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

proposal submissions. Based on Round 1 procurement data and available market estimates, MSHA estimates that the FHWA's withholding of its remaining NEVI Formula Program funds would jeopardize the buildout of 180 additional fast charging ports along AFCs and 1,611 additional Level 2 charging ports in Maryland communities.[8]

179.    The delay in Round 2 procurement is also expected to increase costs to build charging infrastructure at the 29 sites targeted by that procurement. This increase in cost will necessarily reduce the total number of charging ports that can be built at sites away from AFCs. And this reduction in charging infrastructure may, in turn, lead to reduced adoption of EVs in the State, harming Maryland's ability to meet its emission reduction goals and implement its Advanced Clean Cars II regulation.

**Michigan**

180.    Michigan, through MDOT, was apportioned approximately $110 million over five fiscal years to carry out the NEVI Formula Program's goals. Michigan's shares of NEVI Formula Program funds for fiscal years 2022 through 2025 (approximately $87 million) were made available to Michigan to obligate upon approval of Michigan's State Electric Vehicle Infrastructure Deployment Plans covering those fiscal years.

181.    FHWA previously authorized the obligation of approximately $58 million of MDOT's apportioned NEVI Formula Program funds.

182.    MDOT used these obligated funds to carry out its State Plans and the purposes of the NEVI Formula Program by putting out its Round 1 Request for Proposals on August 31, 2023, seeking proposals for the installation of up to 43 NEVI charging stations in Michigan. MDOT has entered into approximately 26 contracts and intends to enter into up to 8 additional contracts as the result of its Round 1 solicitation.

/ / /

_____

[8] This MSHA estimate of fast charging and Level 2 charging ports includes infrastructure planned for development using the funds the FHWA is currently withholding unlawfully and Maryland's apportioned share of funds for fiscal year 2026.

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

37

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

183.    MDOT issued a Round 2 Request for Proposals on November 20, 2024, seeking proposals for the installation of up to 48 NEVI charging stations. MDOT has announced selections for Round 2 and is currently working toward contract execution for the selected vendors.

184.    However, as a result of the FHWA's unlawful actions, Michigan has been immediately and indefinitely deprived of access to approximately $29 million of its available NEVI Formula Program funds, which the State intends to use to support a Round 3 solicitation to install up to an additional 65 EV charging stations.

185.    The loss of its NEVI Formula Program funds will significantly impede MDOT's ability to develop a statewide network of EV charging stations.

**Minnesota**

186.    Transportation is the largest source of carbon emissions in Minnesota. The State is seeing more frequent extreme weather events, drought, smoke from forest fires and potential loss of several species due to warming rivers and lakes as a result of climate change. To mitigate the damaging effects of climate change, MnDOT set interim GHG emissions targets in the Statewide Multimodal Transportation Plan for 2025, 2030, 2035, and 2040. The Minnesota legislature updated the State goal to include interim targets, which align with the Statewide Multimodal Transportation Plan and the State's Climate Action Framework. Minnesota's Next Generation Energy Act of 2007, Minnesota Statutes, section 216H.02 requires Minnesota to reduce GHG emissions statewide to net zero by 2050.

187.    To decrease transportation sector GHG emissions, Minnesota needs to invest in a range of strategies, including vehicle electrification, increasing travel options, and low carbon infrastructure and systems management. The State identified increased EV adoption as one way to reduce GHG emissions from transportation. A reliable statewide EV charging network is required to help alleviate Minnesota residents' range anxiety and encourage

/ / /

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

38

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1    EV adoption. The FHWA's unlawful actions jeopardize Minnesota's ability to reduce GHG

2    emissions from transportation and ultimately put its climate change mitigation goals at risk.

3        188.    In reliance on the FHWA's compliance with the IIJA, MnDOT included NEVI

4    Formula Program funds as a set-aside in its State Transportation Improvement Program

5    ("STIP"). The 2025-2028 STIP includes the entire $68 million in funds apportioned to

6    Minnesota under the NEVI Formula Program. When individual projects are identified, funds

7    are broken out from the set-aside, reviewed through Metropolitan Planning Organization

8    ("MPO") processes, and modified in local Transportation Improvement Plans and the STIP,

9    before federal obligation.

10        189.    As of January 10, 2025, the FHWA had authorized obligation of NEVI Formula

11    Program funds for 19 projects in Minnesota. A Round 1 RFP was opened December 2023 and

12    closed April 2024. Round 1 resulted in 12 executed contracts to build 12 EV charging stations.

13    Work on these projects is continuing.

14        190.    A Round 2 RFP was opened October 2024 and closed January 2025. In April

15    2025, MnDOT awarded an additional 12 conditional awards to build an additional 12 EV

16    charging stations. MnDOT is taking steps towards executing contracts for these projects, which

17    will result in a total of 24 fully executed contracts in summer 2025.

18        191.    As stated previously, the FHWA has only obligated funds for 19 of these 24

19    projects.

20        192.    As a result of the FHWA's unlawful action, which the Agency announced just

21    before the MPO process for the five Round 2 projects without authorized obligations was

22    complete, Minnesota cancelled those processes. To fulfill MnDOT's commitment to

23    encouraging EV use as a means to combat climate change, State funds were identified to move

24    forward with Round 2 conditional awards.

25        193.    However, Minnesota's Electric Vehicle Infrastructure Needs Assessment, which

26    resulted in the identification of future EV charging infrastructure projects throughout

1    Minnesota, was completed in reliance on the State receiving its entire share of NEVI Formula

2    Program funds—all $68 million. These projects are on hold.

3        194.    In addition, the majority of work to establish replicable and accountable

4    frameworks for procurement and implementation of the NEVI Formula Program has already

5    been done. The next step is to construct the tangible benefits for the public. Should any one of

6    the three partners (federal, state, or awardee) back out at this time, it will have been a

7    considerable waste of public and private resources and the benefits of a reliable statewide

8    network of EV charging infrastructure will not be realized.

9        **New Jersey**

10        195.    As a result of the FHWA's unlawful actions, New Jersey has been immediately

11    and indefinitely deprived of access to approximately $73 million of its available NEVI

12    Formula Program funds.

13        196.    Relying on the FHWA's statutory obligation to disburse NEVI Formula

14    Program funds, the Agency's approval of New Jersey's State Plans, and its prior

15    authorizations, NJDOT awarded in December 2024 a publicly advertised contract for the

16    development, planning, design, installation, five-year operation, and maintenance of 76 NEVI

17    Formula Program compliant EV charging stations along 19 designated AFCs.

18        197.    In the absence of the NEVI Formula Program funds the FHWA is unlawfully

19    withholding, NJDOT cannot move forward with this initiative, and New Jersey is impeded

20    from meeting its EV charging infrastructure goals, which are aimed at reducing environmental

21    harms stemming from the transportation sector.

22        **New Mexico**

23        198.    The NEVI Formula Program joined numerous other climate action efforts

24    occurring in New Mexico. In January 2019, New Mexico Governor Lujan Grisham signed

25    Executive Order (EO) 2019-003, announcing New Mexico will continue to support the 2015

26    Paris Agreement goals and setting a statewide goal to reduce GHG emissions by at least forty-

1    five percent (45%) by 2030, relative to 2005 levels. EO 2019-003 also created the Interagency

2    Climate Change Task Force ("CCTF") to direct the efforts of multiple state agencies to reduce

3    GHG emissions, improve air quality, and protect natural resources.

4          199.    The CCTF established ten interagency Climate Action Teams to propose, plan,

5    and implement strategies. The CCTF has identified transportation decarbonization, including

6    electrification, as key to reaching state GHG reduction goals. State agencies, including

7    NMDOT, have been working together to advance decarbonization strategies, and recent

8    successes include the May 2022 adoption of a Clean Cars Rule.

9          200.    As a member of the CCTF and in support of statewide goals, NMDOT is also

10   actively working to build a climate action program that includes resiliency planning,

11   developing carbon reduction strategies, implementing multimodal plans, and updating facilities

12   with energy efficiency technologies and solar.

13         201.    The deployment of EVs and EV charging infrastructure in New Mexico will

14   improve quality of life across the State by reducing GHG emissions and air pollution.

15         202.    As a result of the FHWA's unlawful actions, New Mexico has been

16   immediately and indefinitely deprived of access to approximately $18.5 million of its available

17   NEVI Formula Program funds. Without that funding, New Mexico's carefully planned efforts

18   to build a network of EV charging infrastructure across the State to ensure all residents have

19   the ability to choose an EV will be wasted and the State is unlikely to achieve its goal of

20   building a future transportation system that serves all its people, including those in

21   disadvantaged communities.

22         **New York**

23         203.    New York, through NYSDOT was apportioned a total of approximately $175.5

24   million in funds over five fiscal years (fiscal years 2022 through 2026) dedicated to carrying

25   out the NEVI Formula Program. New York's share of NEVI Formula Program funds for fiscal

26   years 2022 through 2025 (approximately $138 million) was made available to New York to

obligate upon the FHWA's approval of New York's State Electric Vehicle Infrastructure Deployment Plans covering those first four fiscal years.

204.    NYSDOT engaged the Power Authority of New York to perform the first set of NEVI Formula Program funded projects in New York. That procurement concluded on September 8, 2023, wherein NYSDOT obligated $16.1 million to fund 23 initial projects along some of the State's busiest transportation corridors. Eleven stations are operational and the remaining 12 stations are in development.

205.    NYSDOT also engaged the New York State Energy Research and Development Authority ("NYSERDA") to conduct two solicitations for the next stage of NEVI Formula Program funded projects in New York.

206.    NYSERDA issued its first competitive solicitation, Program Opportunity Notice ("PON") 5865, in September 2024 calling for proposals to develop fast charging stations along designated AFCs in New York with a focus on areas north of and including I-84. PON 5865 made $21.5 million in NEVI Formula Program funds available to proposers. Proposals in response to PON 5865 were received by December 4, 2024. NYSERDA's evaluation of PON 5865 proposals is complete.

207.    In December 2024, NYSERDA issued a second solicitation for NEVI Formula Program funded fast charging station proposals, PON 5866, which focused on the areas around New York City, Long Island, and the lower Hudson Valley. PON 5866 made $28.5 million in NEVI Formula Program funds available to proposers. Proposals in response to PON 5866 were received by March 18, 2025. NYSERDA's evaluation of PON 5866 proposals is in progress.

208.    On or about April 28, 2025, NYSDOT reviewed its unobligated NEVI Formula Program fund balance—estimated to be approximately $120 million for fiscal years 2022 through 2025 as NYSDOT had obligated approximately $17.7 million of its apportionment for those years as of that date—and discovered such funds unavailable for obligation in the FHWA portal.

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

209.    As a direct result of the FHWA's actions, New York has been immediately and indefinitely deprived of access to approximately $120 million of its available NEVI Formula Program funds, NYSDOT and NYSERDA cannot move forward under the two recently issued PONs, and all future uses of NEVI Formula Program funding are now on hold indefinitely.

210.    NEVI Formula Program funded EV charging infrastructure projects are critical to the economy and health of New York by broadening the availability of charging for all makes and models of EVs, addressing climate change, and protecting the health and welfare of New York's residents.

**North Carolina**

211.    The transportation sector is the largest source of GHG emissions in North Carolina. North Carolina has made commitments to minimize transportation-related emissions by encouraging the use of vehicles that rely on clean and renewable energy, including through Governor Cooper's Executive Orders 90, 271, and 246, and plans resulting from them, as well as signing on to the Multi State Medium- and Heavy-Duty ZEV Memorandum. In addition, the State has passed legislation, House Bill 951 ("Energy Solutions for North Carolina," S.L. 2021-165), which provides the North Carolina Utilities Commission authority to facilitate the build out of electrical vehicle charging infrastructure.

212.    NCDOT and the North Carolina Department of Environmental Quality have prioritized (1) electrifying public and state fleets and (2) building a publicly accessible fast-charging network. To facilitate this, North Carolina's State Plans are designed to expand access to convenient, reliable, and affordable electric vehicle charging.

213.    North Carolina, through NCDOT, was apportioned approximately $109 million in NEVI Formula Program funds for fiscal years 2022-2026. The first four apportionments (fiscal years 2022-2025) made roughly $86 million available to obligate. NCDOT released its NEVI Round 1 Request for Proposals on 11 priority "cluster" sites and issued conditional

/ / /

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

43

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

awards on September 9, 2024; a second cluster map was published on December 4, 2024, in preparation for Round 2.

214.    As a direct result of FHWA's unlawful actions, NCDOT could only proceed with the $5.9 million already tied to nine construction contracts, leaving roughly $103 million of North Carolina's apportioned funds (approximately $80 million of which was made available for NC to obligate) inaccessible forcing NCDOT to pause work on the forthcoming Round 2 solicitation.

### **Oregon**

215.    Oregon, through ODOT, was apportioned approximately $52 million in funds over five fiscal years (fiscal years 2022 through 2026) dedicated to carrying out the NEVI Formula Program. Oregon's share of NEVI Formula Program funds for fiscal years 2022 through 2025 (approximately $41 million) were made available to Oregon to obligate upon the FHWA's approval of Oregon's State Electric Vehicle Infrastructure Deployment Plans covering those fiscal years.

216.    For nearly 20 years, Oregon has actively pursued multi-pronged strategies to reduce harmful GHG emissions in the State. In 2019, the Oregon Legislature passed Senate Bill 1044, setting specific light-duty vehicle electrification goals for the State. The legislation established the following goals: 250,000 registered zero-emission vehicles by 2025, over one million by 2030 (50% of new vehicle sales), and 2.5 million by 2035 (90% of new vehicle sales). Installing publicly available EV charging stations throughout the State is essential for Oregon to meet its electrification goals. Oregon has determined it needs 8,000-13,000 public fast charging ports and 12,000-50,000 public Level 2 charging ports by 2030 to reach its goals. Oregon planned to use its NEVI Formula Program funds to develop a total of eleven AFCs, each to contain publicly accessible charging and alternative fueling infrastructure.

217.    ODOT has thus far obligated approximately $26 million of its approximately $41 million in available NEVI Formula Program funds for planning, preliminary engineering,

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL                                   44                    ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1  and construction phases for the installation of EV charging stations in eleven major Oregon
2  corridors.

3    218.    As a result of the FHWA's unlawful actions, ODOT has been immediately and
4  indefinitely deprived of more than $12 million of its available NEVI Formula Program funds.
5  Without those funds, ODOT cannot develop eight of the eleven corridors, representing a loss
6  of at least 40 fast charging stations, or a minimum of 160 charging ports. This accounts for
7  roughly seventy-five percent (75%) of the estimated number of stations ODOT planned to
8  develop. If the FHWA continues to withhold Oregon's NEVI Formula Program funds, the
9  State cannot move forward with the projects described in its State Plans and is highly unlikely
10 to meet its goals of significantly reducing GHG emissions through transportation
11 electrification.

12    **Pennsylvania**

13    219.    Pennsylvania, through PennDOT, was apportioned approximately $171.5 million
14 over five fiscal years to carry out the NEVI Formula Program. Pennsylvania's share of
15 congressionally-appropriated and apportioned NEVI Formula Program funds included $25.4
16 million for fiscal year 2022 and $36.5 million, annually, for fiscal years 2023 through and
17 including 2026.

18    220.    In January 2025, PennDOT had authority to obligate $134.9 million of NEVI
19 funding. At the time, PennDOT had obligated approximately $77 million to build out its AFC,
20 leaving a balance of $58 million PennDOT was legally authorized to obligate.

21    221.    FHWA's illegal actions have prevented it from accessing $58 million of NEVI
22 Formula Program funds.

23    222.    As a direct result of FHWA's unlawful actions, PennDOT and Governor
24 Shapiro have been immediately and indefinitely deprived of access to $58 million of
25 congressionally-appropriated and apportioned funds to carry out their State Plans, and they
26 have had to incur costs and obligations without knowing whether or when FHWA would honor

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL                    45              ATTORNEY GENERAL OF WASHINGTON
                                                         Environmental Protection Division
                                                         800 Fifth Avenue STE 2000
                                                         Seattle, WA 98104
                                                         206-464-7744

its legal obligations. Relief is necessary so that PennDOT can carry out its carefully-tailored State Plans that benefit Pennsylvania residents and meet transportation goals beneficial to those residents.

**Rhode Island**

223.   Rhode Island's State Electric Vehicle Infrastructure Deployment Plans were designed to establish a reliable, accessible, and interconnected EV fast charging network along critical transportation corridors, beginning with the designated Alternative Fuel Corridor (I-95) and expanding statewide. The Plans aimed to reduce range anxiety, promote EV adoption, support GHG emissions reductions, prioritize investments in disadvantaged communities, and prepare the State's workforce and infrastructure for a sustainable, zero-emission transportation future. Each Plan was sequentially structured to build upon prior progress, moving from AFC compliance to equitable and sustainable statewide EV infrastructure expansion.

224.   During Phase 1, for AFC buildout, infrastructure was deployed through a competitive procurement process with a selected vendor. The project was fully completed, all invoices were paid, and all contractual obligations were fulfilled. No pending invoices, encumbrances, or outstanding deliverables remain.

225.   Acting in reliance on the FHWA's compliance with the IIJA, the State issued a Phase 2 Request for Applications (RFA) in November 2024 to award $10 million to eligible public, tribal, higher education, and nonprofit entities. As a result of the FHWA's unlawful actions, Rhode Island halted the open Phase 2 RFA process.

226.   Forcing the closure of an active RFA period caused immediate disruption as many applicants had already initiated or completed their applications. Rhode Island has been unable to award funds to communities and public entities that invested time and resources preparing proposals.

227.   The short- and long-term harms to Rhode Island resulting from the FHWA's unlawful actions are significant and numerous. Rhode Island has been immediately and

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

46

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

indefinitely deprived of access to more than $16 million of its available NEVI Formula Program funds.

228.    Rhode Island is steadfast in its commitment to combat climate change and its harmful effects. To that end, the 2021 Act on Climate sets aggressive decarbonization requirements for the State. *See* R.I. Gen. Laws § 42-6.2-1, et. seq. This includes mandates that statewide GHG emissions reach forty-five percent (45%) below 1990 levels by 2030; eighty percent (80%) below 1990 levels by 2040, and that the State achieves net-zero emissions by 2050. *See* R.I. Gen. Laws § 42-6.2-9.

229.    In furtherance of its climate goals, Rhode Island is also firmly committed to reducing transportation-sector GHG emissions and advancing transportation electrification as a critical element of its broader climate strategy. Transportation emissions account for over thirty percent (30%) of Rhode Island's total GHG emissions, making it the largest single source of emissions in the state. Delays in EV infrastructure deployment caused by the FHWA's unlawful actions jeopardize the State's ability to meet its GHG reduction mandates under the Act on Climate, as well as other regional air quality improvement goals.

230.    In addition, future EV charging infrastructure projects are likely to face increased construction, equipment, and labor costs due to inflation and ongoing supply chain instability.

231.    The uncertainty caused by the FHWA's unlawful actions also stands to reduce the pool of capable partners willing to engage in future solicitations. Moreover, workforce development efforts, including EV technician training and pipeline programs associated with Phase 2 of the program in Rhode Island, have been delayed, undermining economic development opportunities tied to growth of the clean transportation sector.

232.    Reopening or redesigning paused solicitations will also require additional State resources and will extend project delivery timelines.

/ / /

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

47

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

**Vermont**

233.    Vermont, through VTrans, was apportioned an approximate total of $21 million in funds over five fiscal years dedicated to carrying out the NEVI Formula Program. Vermont's shares of NEVI Formula Program funds for fiscal years 2022 through 2025 were made available to Vermont to obligate upon the FHWA's approval of its State Electric Vehicle Infrastructure Deployment Plans covering those fiscal years. The first four fiscal years of apportioned funding equaled approximately $16.7 million.

234.    Vermont has long supported the deployment of EVs and other ZEVs across multiple vehicle classes as a means of reducing the environmental effects of the transportation sector and achieving its State GHG emissions reduction targets. For example, Vermont's Global Warming Solutions Act requires Vermont to significantly reduce GHG emissions below historic levels in the coming decades, and Vermont has prepared a Climate Action Plan to identify steps to meet those goals. Development of EV charging infrastructure to support transportation electrification is a Climate Action Plan priority.

235.    Acting in reliance on the FHWA's approval of its State Plans, which, consistent with the IIJA, NEVI Formula Program Guidance, and the FHWA's representations, made NEVI Formula Program funds available for obligation until expended, Vermont, among other things, awarded EV fast charging port projects totaling approximately $9.3 million. Without its NEVI Formula Program funds, Vermont cannot fund all of the projects the State has awarded.

**Wisconsin**

236.    In response to the FHWA's unlawful actions, Wisconsin was forced to cease work related to 15 NEVI Formula Program awards and a current RFP issued to solicit proposals for additional NEVI Formula Program funded projects.

237.    In January 2024, WisDOT issued a NOFO and RFP through the NEVI Formula Program for charging infrastructure along Wisconsin's approved AFCs. The NOFO/RFP closed on May 23, 2024. WisDOT issued 53 awards. As a result of the FHWA's unlawful

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

48

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1    actions, WisDOT cannot take any further action on 15 of these awards, which represents

2    approximately $7.3 million.

3         238.    On October 14, 2024, WisDOT issued a second RFP with the intention of

4    issuing awards in Spring 2025. As a result of the FHWA's unlawful actions, WisDOT cannot

5    issue any awards under this RFP.

6         239.    WisDOT has been immediately and indefinitely deprived of access to

7    approximately $62.65 million of its available NEVI Formula Program funds. In the absence of

8    those funds, WisDOT cannot fund the 15 projects awarded under its January 2024 RFP or issue

9    any new awards to carry out EV charging infrastructure projects.

10         240.    NEVI Formula Program funded EV charging infrastructure projects are critical

11    to the economy and health of Wisconsin by broadening the availability of EV charging for all

12    makes and models of EVs, which helps address climate change and protects the health and

13    welfare of Wisconsin's residents.

14         241.    Even if the FHWA issues new final NEVI Formula Program Guidance in the

15    very near future, Plaintiff States will shoulder the unnecessary cost and burden of developing

16    new State Electric Vehicle Infrastructure Deployment Plans despite having invested months

17    and significant resources developing its previous plans.

18    <b>CAUSES OF ACTION</b>

19    <b>COUNT I</b>

<b>Violation of the Administrative Procedure Act – In Excess of Statutory Authority</b>

20    <b>Revocation of State Plan Approvals and Withholding of Funds</b>

21         242.    Plaintiff States incorporate by reference the allegations contained in the

22    preceding paragraphs.

23         243.    Each of the Defendants is an "agency" as defined in 5 U.S.C. § 551(1).

24         244.    Under the APA, the court "shall . . . hold unlawful and set aside agency action,

25    findings, and conclusions found to be . . . "in excess of statutory jurisdiction, authority, or

26    limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL
     49
ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

245.    An agency may not take any action that exceeds the scope of its statutory authority.

246.    Neither the IIJA nor any other federal statute or regulation authorizes the Defendants to suspend or revoke State Electric Vehicle Infrastructure Deployment Plan approvals, either individually or categorically.

247.    Neither the IIJA nor any other federal statute or regulation authorizes the Defendants to categorically withhold or withdraw NEVI Formula Program funds.

248.    Each of Defendants' actions represents the consummation of their decision-making and is therefore a final agency action justiciable under the APA.

249.    Accordingly, the Defendants' actions to categorically "suspend" or revoke all State Electric Vehicle Infrastructure Deployment Plan approvals and to categorically withhold or withdraw NEVI Formula Program funds exceed Defendants' statutory authority and must be set aside.

250.    Plaintiff States are all aggrieved persons suffering a legal wrong or adversely affected by the federal Defendants' conduct under 5 U.S.C. § 702 and are entitled to declaratory and injunctive relief pursuant to 28 U.S.C. § 2201.

## COUNT II
**Violation of the Administrative Procedure Act – Arbitrary and Capricious and Not in Accordance with Law**
**Revocation of State Plan Approvals and Withholding of Funds**

251.    Plaintiff States incorporate by reference the allegations contained in the preceding paragraphs.

252.    Each of the Defendants is an "agency" as defined in 5 U.S.C. § 551(1).

253.    The APA requires that a court "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

/ / /

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL                          50                    ATTORNEY GENERAL OF WASHINGTON
                                                                   Environmental Protection Division
                                                                   800 Fifth Avenue STE 2000
                                                                   Seattle, WA 98104
                                                                   206-464-7744

254.    Agency action is not in accordance with the law if the action contravenes or otherwise fails to implement the statutory directives of Congress consistent with the statute's text, structure, and purpose.

255.    Agency action is arbitrary and capricious if the agency fails to articulate a reasoned explanation for its action, fails to consider reasonable alternatives, fails to consider important factors, and/or considers factors Congress did not intend it to consider. Agency action is also arbitrary and capricious if, when departing from a prior policy, an agency fails to display awareness it is changing its position, fails to consider serious reliance interests, or fails to demonstrate that there are good reasons for the new policy, which also must be permissible under the statute.

256.    Agency action taken on pretextual grounds violates the APA's requirements of reasoned agency decision-making.

257.    The Defendants made no factual or legal findings, nor did they provide any reasoned basis for their actions to categorically "suspend" or revoke all State Electric Vehicle Deployment Plan approvals.

258.    The Defendants' sole stated rationale for their action to "suspend" or revoke all State Electric Vehicle Deployment Plan approvals—that the recission of the NEVI Formula Program Guidance necessitated the retroactive and categorical "suspension" or revocation of all State Electric Vehicle Deployment Plan approvals—is a contrived, irrational, and insufficient explanation and thus not a reasoned basis for the action.

259.    The Defendants failed to consider whether "suspending" or revoking all State Electric Vehicle Deployment Plan approvals was consistent with the purpose and objectives of the IIJA and the NEVI Formula Program as established by Congress.

260.    The Defendants failed to engage in reasoned consideration of any individual State Electric Vehicle Deployment Plan before categorically "suspending" or revoking all Plan approvals and did not provide reasoned explanation for doing so.

261.    Likewise, Defendants failed to engage in reasoned, individualized consideration of any State Electric Vehicle Deployment Plan or any actions taken by Plaintiff States to carry out those Plans before categorically withdrawing or withholding NEVI Formula Program funds.

262.    The Defendants failed to consider obvious, reasonable, and lawful alternatives to their actions, such as complying with the requirements of the IIJA and honoring their prior approval of Plaintiff States' State Electric Vehicle Infrastructure Deployment Plans for fiscal years 2022 through 2025 while updating NEVI Formula Program Guidance to govern the submission of fiscal year 2026 Plans.

263.    The Defendants' stated rationale for their action to "suspend" or revoke all State Electric Vehicle Deployment Plan approvals and their failure to consider reasonable alternatives exposes the pretextual nature of the Defendants' actions. Upon information and belief—and as a matter of common sense—the Defendants "suspended" or revoked all State Electric Vehicle Infrastructure Deployment Plan approvals to implement the President's directive to withhold funds "for electric vehicle charging stations made available through the National Electric Vehicle Infrastructure Formula Program . . . ." Exec. Order 14154, 90 Fed. Reg. at 8357.

264.    The Defendants failed to consider Plaintiff States' serious reliance interests, including on the FHWA's prior approvals of their State Plans and the States' expectation that the FHWA would distribute their NEVI Formula Program funds as required.

265.    The Defendants therefore failed to consider the consequences of categorically "suspending" or revoking approval of all State Plans and categorically withholding or withdrawing NEVI Formula Program funds.

266.    The Defendants also failed to demonstrate good reasons for their change in position and their new position directly conflicts with the IIJA and is therefore impermissible under the statute.

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

52

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

267.    Each of Defendants' actions represents the consummation of their decision-making and is therefore a final agency action justiciable under the APA.

268.    Accordingly, the Defendants' actions to categorically "suspend" or revoke all State Electric Vehicle Infrastructure Deployment Plan approvals and to categorically withhold or withdraw NEVI Formula Program funds must be set aside as arbitrary, capricious, and not in accordance with law.

269.    Plaintiff States are all aggrieved persons suffering a legal wrong or adversely affected by the federal Defendants' conduct under 5 U.S.C. § 702 and are entitled to declaratory and injunctive relief pursuant to 28 U.S.C. § 2201.

## COUNT III

**Violation of the Administrative Procedure Act – Not in Accordance with Law and Without Observance of Procedure Required By Law**
**Withholding of Funds**

270.    Plaintiff States incorporate by reference the allegations contained in the preceding paragraphs.

271.    Each of the Defendants is an "agency" as defined in 5 U.S.C. § 551(1).

272.    The APA requires that a court "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law . . . [or] without observance of procedure required by law" 5 U.S.C. § 706(2)(A), (D).

273.    Agency action is not in accordance with the law if the action contravenes or otherwise fails to implement the statutory directives of Congress consistent with the statute's text, structure, and purpose.

274.    Judicial review of an agency's procedural compliance is "exacting." *See Kern Cnty. Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006).

275.    The IIJA provides an exclusive list of circumstances in which the Defendants may withhold or withdraw from a State its share of NEVI Formula Program funds for a fiscal year.

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

53

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

276.    The Defendants may withhold a State's funds if it fails to timely submit a State Electric Vehicle Infrastructure Deployment Plan. After a State has submitted its Plan, the Defendants may withhold or withdraw a State's funds for the fiscal year(s) covered by the Plan only after determining that the State has not taken actions to carry out that Plan, and only after following all statutorily required procedure.

277.    Specifically, before determining that a State has not taken actions to carry out its Plan, the Defendants must comply with the strict procedural requirements set out in the IIJA, including to "notify the State, consult with the State, and identify actions that can be taken to rectify concerns, and provide at least 90 days for the State to rectify concerns and take action to carry out its plan." 135 Stat. at 1422.

278.    After making a determination that a State has not taken action to carry out its Plan, the Defendant must comply with additional procedural requirements before withholding or withdrawing NEVI Formula Program funds from the State. Specifically, the Defendants must give a further 60 days' notice, an opportunity to be heard, and an opportunity to appeal before withholding or withdrawing any funds." *Id.*

279.    The Defendants' action to prohibit obligations of NEVI Formula Program funds made available for obligation through the FHWA's approval of each State's State Electric Vehicle Infrastructure Deployment Plans constitutes a withdrawal or withholding of NEVI Formula Program funds.

280.    The Defendants have therefore withdrawn and withheld NEVI Formula Program funds from Plaintiff States without making the statutorily required determination that Plaintiff States have not taken action to carry out their plans and without following any statutorily required procedure.

281.    The Defendants failed to provide notice, consult with Plaintiff States, or identify any concerns with Plaintiff States' actions to carry out their State Electric Vehicle Infrastructure Deployment Plans.

54

282.    The Defendants failed to provide at least 90 days for Plaintiff States to rectify any concerns, failed to provide the statutorily required 60-day notice to Plaintiff States on their intent to withhold or withdraw funds, and failed to provide any opportunity to appeal the FHWA's decision to withhold or withdraw funds.

283.    Rather than follow the procedure to withhold or withdraw funds set forth by Congress in the IIJA, the Defendants achieved their goal of withholding NEVI Formula Program funds by prohibiting new obligations on the basis of their own unlawful "suspension" or revocation of all State Electric Vehicle Infrastructure Deployment Plan approvals, which was predicated solely on their recission of the NEVI Formula Program Guidance.

284.    Each of Defendants' actions represents the consummation of their decision-making and is therefore a final agency action justiciable under the APA.

285.    Accordingly, Defendants' action to withhold or withdraw NEVI Formula Program funds must therefore be set aside as not in accordance with law and without observance of procedure required by law.

286.    Plaintiff States are all aggrieved persons suffering a legal wrong or adversely affected by the federal Defendants' conduct under 5 U.S.C. § 702 and are entitled to declaratory and injunctive relief pursuant to 28 U.S.C. § 2201.

### COUNT IV
**Violation of the Separation of Powers Doctrine, Usurping Congressional Authority**
**Revocation of State Plan Approvals and Prohibition on Obligations**

287.    Plaintiff States incorporate by reference the allegations contained in the preceding paragraphs.

288.    Congress possesses exclusive power to legislate. Article I, Section 1 of the Constitution states that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and a House of Representatives." U.S. Const. art. I, § 1; *see Clinton v. City of New York*, 524 U.S. 417, 438 (1998) ("There is no provision in the Constitution that authorizes the President to enact, to amend, or to repeal statutes.").

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL                    55                    ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

289.    The Constitution also "grants the power of the purse to Congress, not the President." *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1231 (9th Cir. 2018); *see* U.S. Const. art. I, §9, cl. 7 (Appropriations Clause); U.S. Const. art. I, § 8, cl. 1 (Spending Clause).

290.    The Constitution strictly controls how legislation enacted by Congress and signed into law by the President may be amended or repealed. Article I of the Constitution prescribes a "single, finely wrought and exhaustively considered[] procedure" for enacting such an amendment or repeal: passage of a new bill by both houses of Congress and presentment to the President for his signature or veto. *Immigration & Naturalization Serv. v. Chadha*, 462 U.S. 919, 951 (1983); *see* U.S. Const. art. I, § 7, cl. 2, 3. The Constitution identifies specific roles for the Executive in the lawmaking process, via the Recommendation Clause and the Presentment Clause, which creates the President's veto power; outside these roles, the Executive Branch has no authority to change the law to suit the President's policy. U.S. Const. art. II, § 3; *id*. § 7, cl. 2; *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587 (1952) ("In the framework of our Constitution, the President's power to see that the laws are faithfully executed refutes the idea that he is to be a lawmaker. The Constitution limits his functions in the lawmaking process to the recommending of laws he thinks wise and the vetoing of laws he thinks bad."); *cf. Perry v. Merit Sys. Prot. Bd*., 582 U.S. 420, 441 (2017) (Gorsuch, J., dissenting) ("If a statute needs repair, there's a constitutionally prescribed way to do it. It's called legislation. To be sure, the demands of bicameralism and presentment are real and the process can be protracted. But the difficulty of making new laws isn't some bug in the constitutional design: it's the point of the design, the better to preserve liberty.").

291.    Consistent with these principles, the Executive acts at the lowest ebb of his constitutional authority and power when he acts contrary to the will of Congress by attempting to unilaterally decline to spend appropriated funds. *See Youngstown*, 343 U.S. at 637-638 (1952) (Jackson, J., concurring).

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

56

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

292.    The Executive's authority is particularly limited where, as here, Congress mandated that the Defendants disburse congressionally appropriated NEVI Formula Program funds to States in amounts in accordance with a specific formula, and the Defendants' actions are incompatible with congressional directive. Congress established the NEVI Formula Program and appropriated funds for the express purpose of providing the States with funding for EV charging infrastructure and directed precise amounts to each State leaving no discretion for the Executive Branch with respect to those amounts.

293.    Congress has generally provided for a procedure by which the Executive may propose to Congress to either rescind or cancel funds. *See* Congressional Budget and Impoundment Control Act of 1974, 2 U.S.C. §§ 682 *et seq*. Congress also specifically prescribed the exclusive grounds for which the Defendants could withhold or withdraw NEVI Formula Program funds from a State and the procedure with which the Defendants must comply before doing so. Congress also mandated that funds lawfully withheld or withdrawn from a State be redistributed to other States and local jurisdictions for EV infrastructure development.

294.    The Impoundment Control Act precludes the Executive from refusing to spend or distribute congressionally appropriated funds, instead requiring the President to "propose[]" any rescission to Congress (which Congress must then affirmatively approve). 2 U.S.C. §§ 683, 684(a). The Impoundment Control Act also does not authorize the Executive to defer funding for the reasons the Defendants invoke here. As described above, the Administration generally opposes the IIJA, and the NEVI Formula Program specifically, on policy grounds. Accordingly, the Executive's authority is at its "lowest ebb." *See Youngstown*, 343 U.S. at 637-638 (Jackson, J., concurring).

295.    The Defendants' actions to "suspend" or revoke all State Electric Vehicle Infrastructure Deployment Plan approvals and to categorically withhold or withdraw NEVI Formula Program funds violate the constitutional separation of powers doctrine and

57

1  impermissibly arrogates to the Executive legislative and spending powers reserved to

2  Congress.

3       296.    Federal courts possess the power in equity to grant injunctive relief "with

4  respect to violations of federal law by federal officials." *Armstrong v. Exceptional Child Ctr.,*

5  *Inc.*, 575 U.S. 320, 327 (2015). Plaintiff States are "entitled to invoke the equitable jurisdiction

6  to restrain enforcement" of unconstitutional acts by federal officials. *Panama Ref. Co. v. Ryan*,

7  293 U.S. 388, 414 (1935). Federal courts may also set aside agency action found to be

8  "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

9       297.    Plaintiff States are all aggrieved persons suffering a legal wrong or adversely

10  affected by the Defendants' conduct under 5 U.S.C. § 702.

11       298.    Pursuant to 5 U.S.C. § 706(2)(B) and 28 U.S.C. § 2201, Plaintiff States are

12  entitled to a declaration that the Defendants' actions to categorically "suspend" or revoke all

13  State Electric Vehicle Infrastructure Deployment Plan approvals and to categorically withhold

14  or withdraw NEVI Formula Program funds violate the constitutional separation of powers

15  doctrine and impermissibly arrogate to the Executive power reserved to Congress.

16                                **COUNT V**
   **Violation of Take Care Clause**
17  **Revocation of State Plan Approvals and Withholding of Funds**

18       299.    Plaintiff States incorporate by reference the allegations contained in the

19  preceding paragraphs.

20       300.    The Take Care Clause provides that the Executive must "take Care that the

21  Laws be faithfully executed." U.S. Const. art. II, § 3; *Utility Air Reg. Grp. v. EPA*, 573 U.S.

22  302, 327 (2014) ("Under our system of government, Congress makes laws and the President

23  . . . 'faithfully execute[s]' them.").

24       301.    The Executive Branch violates the Take Care Clause where it declines to

25  execute or otherwise undermines statutes enacted by Congress and signed into law. *See In re*

26  *United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 551 (D.C. Cir. 1999) ("[T]he President

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

58

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1    is without authority to set aside congressional legislation by executive order."); *Kendall v.*

2    *United States*, 37 U.S. 524, 613 (1838) (rejecting argument that by charging the President with

3    faithful execution of the laws, the Take Care clause "implies a power to forbid their

4    execution").

5         302.    The Defendants' actions to carry out President Trump's directive to

6    "[t]erminat[e] the Green New Deal," and specifically his directive to withhold funds

7    appropriated through the IIJA for EV charging infrastructure violates the Take Care Clause of

8    the Constitution.

9         303.    The Defendants' actions to categorically "suspend" or revoke all State Electric

10   Vehicle Infrastructure Deployment Plans approvals and to categorically withhold or withdraw

11   NEVI Formula Program funds are contrary to the Executive's duty to faithfully execute the

12   IIJA as enacted by Congress and therefore violate the Take Care Clause.

13        304.    Federal courts possess the power in equity to grant injunctive relief "with

14   respect to violations of federal law by federal officials." *Exceptional Child Ctr., Inc.*, 575 U.S.

15   at 327. Plaintiff States are "entitled to invoke the equitable jurisdiction to restrain enforcement"

16   of unconstitutional acts by federal officials. *Panama Ref. Co.*, 293 U.S. at 414. Federal courts

17   may also set aside agency action found to be "contrary to constitutional right, power, privilege,

18   or immunity." 5 U.S.C. § 706(2)(B).

19        305.    Plaintiff States are all aggrieved persons suffering a legal wrong or adversely

20   affected by the Defendants' conduct under 5 U.S.C. § 702.

21        306.    Pursuant to 5 U.S.C. § 706(2)(B) and 28 U.S.C. § 2201, Plaintiff States are

22   entitled to a declaration that the Defendants' actions to categorically "suspend" or revoke all

23   State Electric Vehicle Infrastructure Deployment Plan approvals and to categorically withhold

24   or withdraw NEVI Formula Program funds violate the Take Care Clause.

25   / / /

26   / / /

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

59

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

**COUNT VI**
**Common Law Ultra Vires**
**Conduct Outside the Scope of Statutory Authority Conferred on the Executive**
**Revocation of State Plan Approvals and Withholding of Funds**

307.    Plaintiff States incorporate by reference the allegations contained in the preceding paragraphs.

308.    Plaintiff States have a non-statutory right of action to have action taken in excess of legal authority declared unlawful.

309.    Agency or executive officer action taken in excess of legal authority is *ultra vires*.

310.    A court reviewing executive action has an independent duty to determine what the law is and whether executive officers invoking statutory authority exceed their statutory power. *Exceptional Child Ctr., Inc.*, 575 U.S. at 327.

311.    Neither the IIJA nor any other federal statute or regulation authorizes the Defendants to suspend or revoke State Electric Vehicle Infrastructure Deployment Plan approvals, either individually or categorically.

312.    Neither the IIJA nor any other federal statute or regulation authorizes the Defendants to categorically withhold or withdraw NEVI Formula Program funds.

313.    The Defendants have therefore acted contrary to law and *ultra vires* by categorically "suspending" or revoking all State Electric Vehicle Infrastructure Deployment Plan approvals and categorically withholding or withdrawing NEVI Formula Program funds.

314.    Federal courts possess the power in equity to grant injunctive relief "with respect to violations of federal law by federal officials." *Exceptional Child Ctr., Inc.*, 575 U.S. at 327. Plaintiff States are "entitled to invoke the equitable jurisdiction to restrain enforcement" of unconstitutional acts by federal officials. *Panama Ref. Co.*, 293 U.S. at 414.

315.    Pursuant to 28 U.S.C. § 2201, Plaintiff States are entitled to a declaration that Defendants' actions to categorically "suspend" or revoke all State Electric Vehicle

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

60

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1 Infrastructure Deployment Plans and to categorically withhold or withdraw NEVI Formula

2 Program funds are *ultra vires*.

### PRAYER FOR RELIEF

4    WHEREFORE, Plaintiff States pray that the Court:

5    a.  Declare the Defendants' actions to categorically "suspend" or revoke all State

6        Electric Vehicle Infrastructure Deployment Plan approvals and to categorically

7        withhold or withdraw NEVI Formula Program funds violate the APA.

8    b.  Declare the Defendants' actions to categorically "suspend" or revoke all State

9        Electric Vehicle Infrastructure Deployment Plan approvals and to categorically

10       withhold or withdraw NEVI Formula Program funds violate the separation of

11       powers doctrine and the Take Care Clause of the U.S. Constitution.

12   c.  Declare the Defendants' actions to categorically "suspend" or revoke all State

13       Electric Vehicle Infrastructure Deployment Plan approvals and to categorically

14       withhold or withdraw NEVI Formula Program funds are contrary to the law,

15       outside the Defendants' authority, and therefore unlawful under the common law

16       *ultra vires* doctrine.

17   d.  Vacate the Defendants' actions to categorically "suspend" or revoke Plaintiff

18       States' Electric Vehicle Infrastructure Deployment Plan approvals and to

19       categorically withhold or withdraw NEVI Formula Program funds.

20   e.  Preliminarily and permanently enjoin the Defendants from "suspending" or

21       revoking Plaintiff States' Electric Vehicle Deployment Plan approvals.

22   f.  Preliminarily and permanently enjoin the Defendants from withholding or

23       withdrawing NEVI Formula Program funds for any reason not set forth in the

24       IIJA or applicable FHWA regulations, and without following the IIJA's

25       procedural requirements, including by refusing to review and process Plaintiff

26       / / /

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

61

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1          States' requests for authorization to obligate funds for specific EV charging

2          infrastructure development activities in the normal course.

3      g.  Preliminarily and permanently enjoin the Defendants from implementing any

4          requirement, policy, or guidance that contravenes congressional intent and

5          directive in making authorization request decisions and obligating funds for

6          specific activities.

7      h.  Preliminarily and permanently enjoin the Defendants from implementing or

8          effectuating through any action the directive in the Executive Order to withhold

9          or withdraw NEVI Formula Program funds in contravention of the express

10          congressional mandates in the IIJA.

11     i.  Retain jurisdiction to ensure compliance with the orders of this Court.

12     j.  Award the Plaintiff States their reasonable fees, costs, and expenses, including

13         attorneys' fees, pursuant to 28 U.S.C. § 2412.

14     k.  Grant other such relief as this Court may deem proper.

15

16     DATED this 1st day of August 2025.

17                                     **NICHOLAS W. BROWN**
                                       Attorney General for the State of Washington

18
                                       *s/ Caitlin M. Soden*
19                                     CAITLIN M. SODEN, WSBA # 55457
                                       LEAH A. BROWN, WSBA # 45803
20                                     TERA HEINTZ, WSBA #54921
                                       CRISTINA SEPE, WSBA #53609
21                                     Assistant Attorneys General
                                       800 Fifth Avenue, Suite 2000
22                                     Seattle, Washington 98104
                                       (206) 464-7744
23                                     caitlin.soden@atg.wa.gov
                                       leah.brown@atg.wa.gov
24                                     tera.heintz@atg.wa.gov
                                       cristina.sepe@atg.wa.gov
25
                                       *Attorneys for the State of Washington*
26

1

**ROB BONTA**
Attorney General for the State of California

2

3
By: /s/ *Theodore A. McCombs*
THEODORE A. MCCOMBS, SBN 316243
Deputy Attorney General

4
DAVID ZAFT, SBN 237365*
Acting Supervising Deputy Attorney General

5
ROBERT SWANSON, SBN 295159
NATALIE COLLINS, SBN 338348

6
ELIZABETH JONES, SBN 326118
ELIZABETH SONG, SBN 326616

7
Deputy Attorneys General
(619) 738-9003

8
theodore.mccombs@doj.ca.gov

9
*Attorneys for the State of California*

10

11

12

**PHILIP J. WEISER**
Attorney General for the State of Colorado

By: /s/ *Carrie Noteboom*
CARRIE NOTEBOOM, CBA # 52910
Assistant Deputy Attorney General
DAVID MOSKOWITZ, CBA # 61336
Deputy Solicitor General
JESSICA L. LOWREY, CBA # 45158
First Assistant Attorney General
SARAH WEISS, NYSBA # 4898805
Senior Assistant Attorney General
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6000
carrie.noteboom@coag.gov
david.moskowitz@coag.gov
jessica.lowrey@coag.gov
sarah.weiss@coag.gov
FAX: (720) 508-6040

*Attorneys for the State of Colorado*

13

**KRISTIN K. MAYES**
Attorney General for the State of Arizona

14

15
By: /s/ *Lauren Watford*
LAUREN WATFORD, SBA # 037346
Assistant Attorney General

16
Arizona Attorney General's Office
2005 North Central Avenue

17
Phoenix, Arizona 85004
(602) 542-3333

18
Lauren.Watford@azag.gov

19
*Attorneys for the State of Arizona*

20

21

22

23

24

25

26

**KATHLEEN JENNINGS**
Attorney General of the State of Delaware

By: /s/ *Vanessa L. Kassab*
IAN R. LISTON, DSBA # 5507
Director of Impact Litigation
RALPH K. DURSTEIN III, DSBA # 0912
VANESSA L. KASSAB, DSBA # 5612
Deputy Attorneys General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

*Attorneys for the State of Delaware*

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

63

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1

**BRIAN L. SCHWALB**
Attorney General

2

**ANNE E. LOPEZ**
Attorney General for the State of Hawaiʻi

3

By: */s/ Lauren Cullum*
LAUREN CULLUM, DCB # 90009436
Special Assistant Attorney General

4

Office of the Attorney General
for the District of Columbia

5

400 6th Street, N.W., 10th Floor
Washington, D.C. 20001

6

Email: lauren.cullum@dc.gov

7

*Attorneys for the District of Columbia*

By: */s/ Kalikoʻonālani D. Fernandes*
DAVID D. DAY, HSBA # 9427
Special Assistant to the Attorney General
KALIKOʻONĀLANI D. FERNANDES,
HSBA # 9964
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov

8

9

*Attorneys for the State of Hawaiʻi*

10

**KWAME RAOUL**
Attorney General for the State of Illinois

11

12

By: */s/ Jason E. James*
JASON E. JAMES, ISBA ARDC # 6300100
Assistant Attorney General

13

Office of the Attorney General
Environmental Bureau

14

201 W. Pointe Drive, Suite 7
Belleville, IL 62226

15

Phone: (217) 843-0322
Email: jason.james@ilag.gov

16

17

*Attorneys for the State of Illinois*

**OFFICE OF THE GOVERNOR** *ex rel.*
**ANDY BESHEAR**
in his official capacity as Governor of the
Commonwealth of Kentucky

By: */s/ Travis Mayo*
S. TRAVIS MAYO, KBA # 92628*
General Counsel
Taylor Payne, KBA # 93524*
Chief Deputy General Counsel
Laura C. Tipton, KBA # 92527*
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov

18

19

20

*Counsel for the Office of the Governor*

21

22

23

24

25

26

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

64

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

2

3     By: /s/ *Steven J. Goldstein*
STEVEN J. GOLDSTEIN, MSBA #
1612130206

4     *Assistant Attorney General*
Office of the Attorney General of Maryland

5     200 Saint Paul Place, 20th Floor
Baltimore, MD 21202

6     (410) 576-6414
sgoldstein@oag.state.md.us

7

8     *Attorneys for the State of Maryland*

9

10    **KEITH ELLISON**
Attorney General for the State of Minnesota

11

12    By: /s/ *Peter N. Surdo*
PETER N. SURDO, MSBA # 339015

13    Special Assistant Attorney General
Environmental and Natural Resources
Division

14    445 Minnesota Street, Suite 1800
Saint Paul, Minnesota 55101

15    651-757-1061
peter.surdo@ag.state.mn.us

16

17    *Attorneys for the State of Minnesota*

18

19

20

21

22

23

24

25

26

**DANA NESSEL**
Attorney General of Michigan

By: /s/ *Michael J. Dittenber*
Michael J. Dittenber (MI Bar No. P72238)*
Neil Giovanatti (MI Bar No. P82305)*
*Assistant Attorneys General*
Michigan Department of Attorney General
425 W. Ottawa
Lansing, MI 48933
(517) 335-5805
DittenberM@michigan.gov
GiovanattiN@michigan.gov

*Attorneys for the State of Michigan*

**MATTHEW J. PLATKIN**
Attorney General for the State of New Jersey

By: /s/ *Morgan L. Rice*
MORGAN L. RICE, NJSBA Bar #
018782012
JUSTINE M. LONGA, NJSBA Bar #
305062019
*Deputy Attorneys General*
RACHEL U. DOOBRAJH, NJSBA #
020952002
*Assistant Attorney General*
Office of the Attorney General
25 Market Street
Trenton, NJ 08625
(609) 696-4527
Morgan.Rice@law.njoag.gov
Justine.Longa@law.njoag.gov
Rachel.Doobrajh@law.njoag.gov

*Attorneys for the State of New Jersey*

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

65

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

**RAÚL TORREZ**
Attorney General for the State of New Mexico

By: /s/ *Amy Senier*
AMY SENIER, MBA # 672912
Senior Counsel
New Mexico Department of Justice
P.O. Drawer 1508
Santa Fe, NM 87504-1508
505-490-4060
asenier@nmdoj.gov

*Attorneys for the State of New Mexico*

**JEFF JACKSON**
Attorney General of the State of North
Carolina

LAURA HOWARD
Chief Deputy Attorney General

By: /s/ *Daniel T. Wilkes*
DANIEL WILKES, NCSB # 46500*
Assistant Deputy Attorney General
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
919-716-6415
dwilkes@ncodoj.gov

*Counsel for State of North Carolina*

**JENNIFER C. SELBER**
General Counsel

By: /s/ *Stephen R. Kovatis*
STEPHEN R. KOVATIS, PBA # 209495*
Deputy General Counsel
Governor's Office of General Counsel
30 North Third Street, Suite 200
Harrisburg, PA 17101
Phone: 717-602-0943
Email: skovatis@pa.gov

*Counsel for Governor Josh Shapiro*

**LETITIA JAMES**
Attorney General of the State of New York

By: /s/ *Kyle Burns*
KYLE BURNS, NYSBA # 5589940
Environmental Protection Bureau
28 Liberty Street
New York, NY 10005
(212) 416-8451

*Attorneys for the State of New York*

**DAN RAYFIELD**
Attorney General of the State of Oregon

By: /s/ *Sara Van Loh*
SARA VAN LOH OSB # 044398
Senior Assistant Attorney General
100 SW Market Street
Portland, Oregon 97201
Tel (971) 673-1880
Fax (971) 673-5000
Sara.VanLoh@doj.oregon.gov

*Attorneys for State of Oregon*

**PETER F. NERONHA**
Attorney General of Rhode Island

By: /s/ *Nicholas M. Vaz*
NICHOLAS M. VAZ, RIBA # 9501
Special Assistant Attorney General
Office of the Attorney General
Environmental and Energy Unit
150 South Main Street
Providence, Rhode Island 02903
(401) 274-4400 ext. 2297
nvaz@riag.ri.gov

*Attorneys for State of Rhode Island*

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

66

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

**CHARITY R. CLARK**
Attorney General of the State of Vermont

By: /s/ *Jonathan T. Rose*
JONATHAN T. ROSE, VBA # 4415
Solicitor General
Office of the Vermont Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3171
Jonathan.rose@vermont.gov

*Attorneys for Plaintiff State of Vermont*

**JOSHUA L. KAUL**
Attorney General for the State of Wisconsin

By: /s/ *Frances R. Colbert*
FRANCES R. COLBERT, WI SBN #
1050435 **
Assistant Attorney General
Public Protection Unit
17 West Main Street
Madison, Wisconsin 53703
608-266-9595
Frances.Colbert@wisdoj.gov
*Attorneys for Plaintiff State of Wisconsin*

*Pro hac vice applications forthcoming
**Pro hac vice application pending

FIRST AMENDED COMPLAINT –
NO. 2:25-cv-00848-TL

67

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744