The Honorable Tana Lin

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

STATE OF WASHINGTON, STATE OF COLORADO, STATE OF CALIFORNIA, STATE OF ARIZONA, STATE OF DELAWARE, DISTRICT OF COLUMBIA, STATE OF HAWAI'I, STATE OF ILLINOIS, OFFICE OF THE GOVERNOR *ex rel.* Andy Beshear, in his official capacity as Governor of the COMMONWEALTH OF KENTUCKY, STATE OF MARYLAND, STATE OF MICHIGAN, STATE OF MINNESOTA, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF NORTH CAROLINA, STATE OF OREGON, Governor Josh Shapiro, in his official capacity as Governor of the COMMONWEALTH OF PENNSYLVANIA, STATE OF RHODE ISLAND, STATE OF VERMONT, STATE OF WISCONSIN,

     *Plaintiffs,*

 and

SIERRA CLUB, NATURAL RESOURCES DEFENSE COUNCIL, CLIMATE SOLUTIONS, SOUTHERN ALLIANCE FOR CLEAN ENERGY, CLEANAIRE NC, WEST END REVITALIZATION ASSOCIATION, PLUG IN AMERICA,

     *Plaintiff-Intervenors,*

Case No. 2:25-cv-00848-TL

CLIMATE SOLUTIONS' MOTION TO RECONSIDER INTERVENTION ORDER

Noted for consideration:
August 6, 2025

---

CLIMATE SOLUTIONS' MOTION TO RECONSIDER INTERVENTION ORDER
CASE NO. 2:25-CV-00848-TL

- 1 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA 98104*
*(206) 343-7340*

v.

U.S. DEPARTMENT OF TRANSPORTATION,

SEAN DUFFY, in his official capacity as Secretary of the U.S. Department of Transportation,

FEDERAL HIGHWAY ADMINISTRATION, and

GLORIA M. SHEPHERD, in her official capacity as Executive Director and Acting Administrator of the Federal Highway Administration,

*Defendants.*

# INTRODUCTION

Pursuant to LR 7(h), intervenor Climate Solutions respectfully moves this Court to reconsider the portion of its intervention order finding that Climate Solutions "cannot satisfy the first element for associational standing" because it does not have "members." *See* ECF 120, Order on Motion to Intervene ("Order"), at 5–6. Although motions to reconsider are disfavored, LCR 7(h)(1), the Court should reconsider this part of its ruling because it constitutes manifest legal error. *Id.* A non-member organization can establish associational standing where it is "sufficiently identified with and subject to the influence" of individuals who are the "functional equivalent of members." *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1110–11 (9th Cir. 2003). The Ninth Circuit has also recognized associational standing for non-member environmental organizations that have a "personal stake in the outcome of the controversy." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1096–97 (9th Cir. 2021). The evidence that Climate Solutions submitted with the motion to intervene easily meets this standard.

CLIMATE SOLUTIONS' MOTION TO RECONSIDER
INTERVENTION ORDER
CASE NO. 2:25-CV-00848-TL

- 2 -

*Earthjustice*
810 Third Ave., Suite 610
Seattle, WA 98104
(206) 343-7340

Climate Solutions acknowledges that the Court granted it permissive intervention and hence for purposes of this case the practical significance of the ruling is limited. However, Climate Solutions is a regular litigant in state and federal courts. A ruling that it lacks standing based on its lack of a formal membership-based structure could be cited adversely in a future case. Accordingly, Climate Solutions respectfully asks that this Court reconsider the portion of its Order finding that Climate Solutions' organizational structure precludes a finding of associational standing.[1]

ARGUMENT

The issue of Climate Solutions' structure and eligibility for associational standing based on membership did not arise in the briefing on the motion to intervene. While federal defendants objected to intervenors' standing generally, they did not argue that Climate Solutions lacked standing due to its lack of members, and hence intervenors had no reason to address it in their reply.

I. THE NINTH CIRCUIT PROVIDES FOR ASSOCIATIONAL STANDING FOR NON-MEMBERSHIP ORGANIZATIONS.

The Ninth Circuit first addressed the issue of associational standing for non-membership organizations in *Mink*, 322 F.3d at 1110. One of the plaintiffs there, Oregon Advocacy Center, was a law organization established to represent the right of people with disabilities. The individuals that Oregon Advocacy Center sought to represent were not "members" of the organization, nor did they control the organization's activities and finances. *Id.* at 1110. The Ninth Circuit nonetheless rejected the attack on the Center's standing as "overly formalistic,"

---

[1] Specifically, Climate Solutions asks the Court to delete from the Order the discussion at page 5, lines 21–24 to page 6, lines 1–12, and the naming of "Climate Solutions" on page 16, line 10 and page 23, line 22.

CLIMATE SOLUTIONS' MOTION TO RECONSIDER
INTERVENTION ORDER
CASE NO. 2:25-CV-00848-TL

*Earthjustice*
810 Third Ave., Suite 610
Seattle, WA 98104
(206) 343-7340

- 3 -

1  finding that in light of the Center's mission and focus, its constituents were the "functional
2  equivalent of members for purposes of associational standing." *Id.* This was true even though its
3  constituents did not have "all of the indicia of membership" that a court would normally look to.
4  For example, they did not finance the organization, nor did they exclusively choose or serve in
5  the entity's leadership. *Id.* at 1111. Even so, the Center was "sufficiently identified with and
6  subject to the influence of those it seeks to represent" that it had a "personal stake in the outcome
7  of the controversy." *Id.* Indeed, the Court observed that the organization in the foundational case
8  on associational standing—*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342–44
9  (1977)—was similarly not a membership organization, but a state agency. There, the U.S.
10 Supreme Court found that the agency's apple grower constituents "possess all of the indicia of
11 membership" in an organization, such as financing its activities and serving in leadership.

12      The Ninth Circuit returned to the issue in *Rousseau*, addressing the question of whether
13 an environmental organization—Public Employees for Environmental Responsibility (PEER)—
14 could establish associational standing despite the fact that its organizational structure did not
15 include "members." The Court found that PEER established associational standing because it
16 "served a specialized segment of the community"—public employees concerned about exposure
17 to environmental risk—and that its constituents were the "primary beneficiaries" of the
18 organization's activities. 985 F.3d at 1096–97. Indeed, the Court cautioned that it was not
19 necessary that the "organization be subject to the influence of those it seeks to represent," even
20 though that is one of the indicia of membership that courts should consider. The "ultimate
21 consideration" is whether the organization has a "personal stake in the outcome of the
22 controversy." *Id.* In that case, the close connection between the organization's mission and the
23 interests of its non-member constituents was sufficient to meet this standard.

24 CLIMATE SOLUTIONS' MOTION TO RECONSIDER
   INTERVENTION ORDER
   CASE NO. 2:25-CV-00848-TL

*Earthjustice*
810 Third Ave., Suite 610
Seattle, WA 98104
(206) 343-7340

District Courts in this Circuit regularly apply this standard to find that non-membership organizations satisfy the criteria for associational standing. *See, e.g.*, *G.G. by & through A.G. v. Meneses*, 638 F. Supp. 3d 1231, 1241 (W.D. Wash. 2022) (disability rights organization had the "functional equivalent of members" for standing purposes); *March for Our Lives Idaho v. McGrane*, 697 F. Supp. 3d 1029, 1042 (D. Idaho 2023) (student gun control organization had associational standing when it alleged that it had "hundreds of supporters and volunteers registered with the organization . . . who guide the organization's priorities and activities"); *Coal. on Homelessness v. San Francisco*, No. 22-cv-05502-DMR, 2025 WL 1667130, at *7 (N.D. Cal. June 12, 2025) (homeless advocacy organization has associational standing despite "a 'bottom up' structure that is deliberately informal, where unhoused people's needs 'direct the organization's advocacy agenda'") (cleaned up); *compare Hindu Am. Found., Inc. v. Kish*, No. 2:22-cv-01656-DAD-JDP, 2023 WL 5629296, at *5 (E.D. Cal. Aug. 31, 2023) (while "formal membership is not always required for organizational standing," allegations in complaint were not specific enough to show that organization was "sufficiently identified" with its claimed constituents).

II.   CLIMATE SOLUTIONS SATISFIES THE *MINK-ROUSSEAU* STANDARD FOR ASSOCIATIONAL STANDING.

Like the organizations in the cases cited above, Climate Solutions is not organized as a formal membership organization. Instead, it is a narrowly focused clean energy non-profit whose work is carried out through the financial support of donors and by volunteers. *See* Decl. of Gregg Small ("Small Decl.") (ECF 77 at 254), ¶¶ 4–5. Mr. Small's declaration reveals that Climate Solutions meets all of the criteria that courts apply when assessing whether there is a sufficient nexus between the organization's mission and its constituents' interests. Through the support and

CLIMATE SOLUTIONS' MOTION TO RECONSIDER
INTERVENTION ORDER
CASE NO. 2:25-CV-00848-TL

- 5 -

*Earthjustice*
810 Third Ave., Suite 610
Seattle, WA 98104
(206) 343-7340

1  direction of its supporters, Climate Solutions has devoted considerable resources to advocating
2  for the adoption of electric vehicles ("EVs") and the build-out of the EV charging network in the
3  Pacific Northwest. It publishes reports on the issue and has led advocacy in the region for
4  widespread adoption of EVs and associated charging networks. *Id.* at ¶ 7. The organization's
5  work is facilitated by contributions from its supporters and work from its volunteers, who
6  include individuals, businesses, and other charitable organizations who share Climate Solution's
7  mission of promoting a clean energy transition, including greater use of EVs. *Id.* at ¶ 4. This is a
8  considerably closer financial relationship than in *Mink*, in which the organizations' constituents
9  did not fund *any* of the organization's activities, and puts it on all fours with *Hunt*, 432 U.S. at
10 345 (associational standing where apple growers "finance its activities").

11 Climate Solutions' work is carried out in close partnership and ongoing dialogue with its
12 supporters and partners, with the organization holding itself accountable to all of its stakeholders.
13 Small Decl. ¶ 4. These efforts to hear from and respond to its various supporters are detailed in
14 Mr. Small's declaration. *Id.* at ¶ 5 (discussing stakeholder "meetings" "webinars, conferences,
15 forums and events," "research and analysis," and "advocacy coalitions"). If the Ninth Circuit can
16 find associational standing even when the entity provides *no* evidence that it is "subject to the
17 influence" of its constituents, *Rousseau*, 985 F.3d at 1097, the evidence that Climate Solutions is
18 in fact deeply engaged with and responsive to its constituents and supporters makes the case for
19 standing even stronger.

20 Finally, Climate Solutions' financial supporters make up the leadership of the
21 organization. The Board of Directors, which formally governs the organization and oversees its
22 strategy, is comprised of financial supporters. Small Decl. ¶ 4. And Mr. Small, the executive
23 director, is himself a long-standing financial supporter, *id.* at ¶12, further highlighting the close

CLIMATE SOLUTIONS' MOTION TO RECONSIDER
INTERVENTION ORDER
CASE NO. 2:25-CV-00848-TL

- 6 -

*Earthjustice*
810 Third Ave., Suite 610
Seattle, WA 98104
(206) 343-7340

nexus between the organization and its financial supporters—even if they are not formally labeled "members." *Compare Mink*, 322 F.3d at 1112 (people with disabilities constitute "majority" of board of directors and 60% of advisory board). In short, as the leading regional organization promoting adoption of EVs and build out of the EV charging network in the Pacific Northwest, Climate Solutions, representing its volunteers, supporters, and funders, has a significant "personal stake in the outcome" of this case. *Rousseau*, 985 F.3d at 1097. Accordingly, it can demonstrate associational standing under the law of this Circuit.[2]

## CONCLUSION

For the foregoing reasons, the Court should reconsider its ruling that Climate Solutions "cannot satisfy the first element for associational standing," Order at 5, because it lacks members.

Respectfully submitted this 6th day of August, 2025.

*s/ Jan E. Hasselman*
JAN E. HASSELMAN, WSBA #29017
Earthjustice
810 Third Avenue, Suite 610
Seattle, WA 98104
Tel: (206) 343-7340
jhasselman@earthjustice.org

*Counsel for Plaintiff-Intervenor Climate Solutions*

---

[2] Once the perceived barrier to associational standing is reconsidered, there is no need to further assess Climate Solutions' standing. That is because this Court has already found that several of Climate Solutions' co-litigants have established Article III standing, and "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement" with regard to other parties *See Rumsfeld v. Forum for Acad. & Instit. Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006).

CLIMATE SOLUTIONS' MOTION TO RECONSIDER
INTERVENTION ORDER
CASE NO. 2:25-CV-00848-TL
- 7 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*