1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Honorable Tana Lin

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON

STATE OF WASHINGTON, *et al.*,

                              Plaintiffs,

and

SIERRA CLUB, *et al.*,

                    Plaintiff-Intervenors,

v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION, *et al.*,

                              Defendants.

Case No. 25-cv-00848-TL

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AS TO
PLAINTIFFS' AND INTERVENORS'
CLAIMS

Noted for consideration:
October 8, 2025

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS..................................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION ............................................................................................................................ 1

    I.    Statutory And Factual Background............................................................................... 2

    II.   Procedural History ....................................................................................................... 3

LEGAL STANDARD....................................................................................................................... 4

ARGUMENT .................................................................................................................................... 5

    I.    All Claims Are Moot. ................................................................................................... 5

    II.   A Nationwide Injunction Is Not Warranted. ............................................................... 7

    III.  FHWA's Actions Have Been Within The Bounds Of Its Statutory Authority.................. 9

         1.   FHWA Has The Statutory Authority to Issue, Rescind, and Update NEVI Program
            Guidance. .................................................................................................... 10

         2.   FHWA Has The Authority To Suspend State Plans for Unobligated Funds Pending
            the Issuance of New Guidance................................................................... 14

    IV.  Defendants Are Entitled To Summary Judgment On The APA Claims. ......................... 15

         1.   Defendants Have Not Taken Any Final, Discrete Agency Action. ............................. 16

         2.   Defendants Have Not Exceeded Their Statutory Authority. ....................................... 19

         3.   Defendants' Decisions Have Not Been Contrary To Law Or Arbitrary And
            Capricious. .................................................................................................. 19

         4.   Defendants Have Not Failed To Observe Any Procedure Required By Law............. 20

    V.   The Constitutional And Ultra Vires Claims Fail. ............................................................. 21

         1.   The Separation of Powers Claims Fail Because Plaintiffs And Intervenors Cannot
            Enforce The Impoundment Control Act. .................................................... 23

          2.   The Take Care Clause Claims Also Fail Because There Has Been No Such Violation.
            ...................................................................................................................... 25

CONCLUSION.............................................................................................................................. 27

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Advanced Integrative Med. Sci. Inst., PLLC v. Garland*, 24 F.4th 1249 (9th Cir. 2022) ............ 17

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) ................................................................... 5

*Am. Trucking Associations v. Atchison, T. & S. F. Ry. Co.*, 387 U.S. 397 (1967) ...................... 13

*Am. Whitewater v. Tidwell*, 770 F.3d 1108 (4th Cir. 2014) .............................................. 16

*Arrington v. Daniels*, 516 F.3d 1106 (9th Cir. 2008) ....................................................... 19

*Baker v. Carr*, 369 U.S. 186 (1962) ............................................................................... 25

*Bennett v. Spear*, 520 U.S. 154 (1997) .......................................................................... 17

*Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103 (1948) ........................... 17, 26

*Ciba–Geigy Corp. v. EPA*, 801 F.2d 430 (D.C. Cir. 1986) ............................................... 18

*City of San Diego v. Whitman*, 242 F.3d 1097 (9th Cir. 2001) ......................................... 18

*Clinton v. Jones*, 520 U.S. 681 (1997) .......................................................................... 26

*Crickon v. Thomas*, 579 F.3d 978 (9th Cir. 2009) ......................................................... 19

*Dalton v. Specter*, 511 U.S. 462 (1994) .................................................................... 22, 26

*Demery v. Arpaio*, 378 F.3d 1020 (9th Cir. 2004) ............................................................ 5

*Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891 (2020) ............. 15

*EPA v. Brown*, 431 U.S. 99 (1977) ............................................................................... 17

*F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) ...................................... 13, 15

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) .................................................... 7

*Free Enter. Fund v. Pub Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010) ............................... 26

*Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc,*, 528 U.S. 167 (2000) ......................... 7

ii

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

*Friends of the Wild Swan, Inc. v. Dir. of United States Fish & Wildlife Serv.*, 745 Fed. App'x 718 (9th Cir. 2018) .................................................................................................... 17

*Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125 (9th Cir. 2005) ............................................. 5

*Global Health Council v. Trump*, No. 25-5097, 2025 WL 2326021 (D.C. Cir. Aug. 13, 2025) ........................................................................................ 22, 24

*Grand Council of Crees (of Quebec) v. FERC*, 198 F.3d 950 (D.C. Cir. 2000)........................... 8

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)........................................................................ 26

*Lujan v. National Wildlife Fed'n*, 497 U.S. 871 (1990) ............................................................ 16

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803).......................................................... 25, 26

*Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475 (1866) ......................................................... 25, 26

*Morrison v. Olson*, 487 U.S. 654 (1988) .................................................................................. 26

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ............................................................................................... 16, 20

*Nat'l Treasury Employees Union v. Vought*, No. 25-5091, 2025 WL 2371608 (D.C. Cir. Aug. 15, 2025) ................................................................................................ 22

*Occidental Eng'g Co. v. INS*, 753 F.2d 766 (9th Cir. 1985)........................................................ 5

*Ohio Valley Env't Coal. v. Aracoma Coal Co.*, 556 F.3d 177 (4th Cir. 2009)........................... 16

*Partridge v. Reich*, 141 F.3d 920 (9th Cir. 1998). ....................................................................... 5

*Printz v. United States*, 521 U.S. 898 (1997)........................................................................... 26

*River Runners for Wilderness v. Martin*, 593 F.3d 1064 (9th Cir. 2010) .................................... 20

*S. California All. of Publicly Owned Treatment Works v. EPA*, 8 F.4th 831 (9th Cir. 2021) ...... 18

*Solar Energy Indus. Ass'n v. FERC*, 80 F.4th 956 (9th Cir. 2023)............................................. 13

*Trump v. CASA, Inc.*, No. 24A884, 2025 WL 1773631 (U.S. June 27, 2025) .............................. 8

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997 (9th Cir. 2021) ......... 17

*Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1 (2015).......................................................... 9

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 598-7409

1

**STATUTES**

2 U.S.C. § 681 ................................................................................................................ 24

2 U.S.C. § 683 ................................................................................................................ 23

2 U.S.C. § 684 ................................................................................................................ 23

2 U.S.C. § 687 ................................................................................................................ 24

2 U.S.C. § 688 ................................................................................................................ 24

23 U.S.C. § 106 .............................................................................................................. 17

5 U.S.C. § 702 .................................................................................................................. 7

5 U.S.C. § 705 .................................................................................................................. 9

5 U.S.C. § 706 ................................................................................................................ 16

Pub. L. No. 117-58, 135 Stat. 429 (2021) ............................................................... passim

**RULES**

Fed. R. Civ. P. 56(a) ........................................................................................................ 4

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. II ...................................................................................................... 25, 26

iv

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

**INTRODUCTION**

The Federal Highway Administration ("FHWA"), an operating administration of the Department of Transportation ("DOT"), is statutorily required to develop and implement guidance for the National Electric Vehicle Infrastructure ("NEVI") Formula Program.  Since the NEVI Program was enacted in 2021, the former administration issued four guidance documents imposing requirements beyond the statutory text that embodied that Administration's policies and priorities.  In February 2025, in an effort to re-align the NEVI Program to be consistent with current Administration policies, FHWA rescinded all former guidance, suspended the approval of State plans submitted under rescinded guidance, and temporarily paused new obligations pending its issuance of updated guidance.  FHWA has permitted reimbursement of existing obligations.  Plaintiffs—twenty States and the District of Columbia—seek re-instatement of their State deployment plans and FHWA's resumed processing of their requests for new obligations.

FHWA has now issued updated NEVI Program guidance, which renders all claims moot. Pursuant to the newly streamlined guidance, States can submit deployment plans that set forth how they intend to comply with three minimal statutory and regulatory requirements.  The guidance instructs FHWA to approve those plans so long as the minimum requirements are satisfied.  Because Plaintiffs are able to obtain approval for their NEVI Program deployment plans and submit new obligation requests pursuant to those approved plans, there is no case or controversy to be resolved by the Court.

Moreover, on the merits, all claims fail.  FHWA's decision to re-align the NEVI Program to be consistent with new Administration policies is fully within its statutory authority because the statute explicitly authorizes and requires DOT to issue such guidance.  Defendants' decisions pursuant to that statutory authority do not violate the Administrative Procedure Act ("APA") or the Constitution.  Moreover, FHWA has not taken final action that is redressable under the APA.

1

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

FHWA's decision to review and update NEVI guidance is merely an interim step that ultimately manifested into final agency action in the form of new guidance and will continue to generate final agency actions through new obligation approvals. Defendants are, therefore, entitled to summary judgment on all claims.

Intervenors—various non-profit organizations who claim their general environmental interests have been impaired by NEVI Program delays—seek to expand that relief nationwide. To the extent the Court is inclined to grant any relief, it should be tailored to the particular Plaintiff States that joined this litigation and that are able to establish that their infrastructure deployment projects have been harmed by Defendants' actions with respect to the NEVI Program.

## BACKGROUND

### I.   Statutory And Factual Background

The Infrastructure Investment and Jobs Act ("IIJA") established the NEVI Program "to provide funding to States to strategically deploy electric vehicle charging infrastructure and to establish an interconnected network to facilitate data collection, access, and reliability." Pub. L. No. 117-58, 135 Stat. 429, 1421 (2021). DOT, through FHWA, is required to develop "guidance for States and localities to strategically deploy electric vehicle charging infrastructure." *Id*. at 1423. Each State must submit a plan to FHWA "in such form and such manner" as FHWA requires, describing how the State "intends to use funds distributed to the State" in "carry[ing] out the Program for each fiscal year in which funds are made available." *Id*. at 1422.

As of February 2025, $2,743,391,957.25 of the $3,270,000,000 available under the NEVI Program—83.9% of the funds—remained unobligated. *See* DOT_0118. On February 6, 2025, FHWA rescinded all prior NEVI Program guidance. DOT_0120. FHWA explained that it was

2

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

"updating the NEVI Formula Program Guidance to align with current U.S. DOT policy and priorities."  DOT_0120–21.  FHWA suspended "the approval of all State Electric Vehicle Infrastructure Deployment plans" submitted under rescinded guidance and temporarily paused new obligations "until the updated final NEVI Formula Program Guidance is issued and new State plans are submitted and approved."  *Id.*  However, "reimbursement of existing obligations [was] allowed in order to not disrupt current financial commitments."  *Id.*  On August 11, 2025, FHWA published updated guidance for State plans, which was effective immediately.  *See* FHWA, *National Electric Vehicle Infrastructure Formula Program Interim Final Guidance*, available at https://www.fhwa.dot.gov/environment/nevi/resources/NEVI-Interim-Final-Program-Guidance-8-11-2025.pdf ("Interim Final Guidance").  The guidance imposes no new requirements not already set out in the statute or binding regulations.  *Id.*

## II.    Procedural History

Plaintiffs and Intervenors challenge Defendants' decision to suspend all deployment plans approved under now-rescinded guidance and temporarily pause new obligations while NEVI Program guidance is updated.  *See* Am. Compl., ECF No. 124; Interv. Compl., ECF No. 76-1.  Plaintiffs claim that Defendants' actions violate the APA and the Constitution.  Am. Compl. at 49–61.  Plaintiffs seek *inter alia* a declaration that Defendants' actions are unlawful, an order vacating Defendants' decision to suspend the approval of Plaintiff States' deployment plans and to temporarily pause Plaintiff States' new obligations, and a permanent injunction mandating that Defendants re-instate Plaintiff States' deployment plans and process Plaintiff States' new obligations pursuant to those plans.  *Id.* at 56–57.  Intervenors assert similar claims but seek broader, nationwide relief.  *See, e.g.*, Interv. Compl. at 35 ("Order Defendants to make NEVI Formula Program funding apportioned to the States for fiscal years 2022-2025 immediately available to States for obligation.").

3

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

On June 24, 2025, the Court entered a preliminary injunction, enjoining Defendants from suspending or revoking the previously-approved deployment plans for fourteen of the Plaintiff States.  ECF No. 60 at 65.  The Court ordered that the deployment plans for these Plaintiff States were to be restored "to the legal status they were in prior to the February 6, 2025" and that Defendants were enjoined from "refusing to review and/or process requests for authorization to obligate funds for specific EV charging infrastructure development activities" for these States. *Id*. at 65–66.  The Court noted that "three Plaintiffs—the District of Columbia, Minnesota, and Vermont—did not proffer any evidence—such as a declaration from a state (or District) official—that demonstrates the irreparable harm that would befall them absent injunctive relief." *Id*. at 62.  The Court, therefore, found that [a]lthough these three Plaintiffs, like the others, established sufficient *injury* to satisfy the ripeness requirement, . . . they have not provided any testimony, beyond what is alleged in the complaint, that demonstrates, say, a delayed or canceled project, a budget thrown into chaos, or a withdrawn request for proposals." *Id*. at 62–63.  The Court further stated:  "Given that the injunctive relief here will likely be rendered moot once Defendants follow through on their stated intention to issue new NEVI Formula Program guidance that comports with the current administration's policies, and states submit their new state deployment plans, the Court is not overly concerned that certain Plaintiff States' deployment plans will for the near-term future be active, while other states' deployment plans will remain revoked." *Id*. at 63.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Generally, judicial review of agency action is limited to review of the record on which the administrative decision was based."  *Partridge v. Reich*, 141 F.3d 920, 926 n.4 (9th

4

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

1  Cir. 1998).  "[T]he function of the district court is to determine whether or not as a matter of law

2  the evidence in the administrative record permitted the agency to make the decision it did."

3  *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985).

## ARGUMENT

### I.   All Claims Are Moot.

Defendants' issuance of revised NEVI Program guidance renders this case moot.  A case

becomes moot if "changes in the circumstances that prevailed at the beginning of litigation have

forestalled any occasion for meaningful relief."  *Gator.com Corp. v. L.L. Bean, Inc*., 398 F.3d

1125, 1129 (9th Cir. 2005) (en banc) (internal quotation omitted).  Where a plaintiff seeks

injunctive relief, a case "is normally moot upon the termination of the conduct at issue" unless

"there is a likelihood of recurrence."  *Demery v. Arpaio*, 378 F.3d 1020, 1025–26 (9th Cir.

2004).  Such a case is "no longer a 'Case' or 'Controversy' for purposes of Article III . . . [n]o

matter how vehemently the parties continue to dispute the lawfulness of the conduct that

precipitated the lawsuit[.]"  *Already, LLC v. Nike, Inc*., 568 U.S. 85, 91 (2013).

Here, the revised NEVI Program guidance has, in effect, granted the relief that Plaintiffs

seek.  Plaintiffs claim that "they have been immediately and indefinitely deprived of access to

approximately $1 billion in available NEVI Formula Program funds" for fiscal years 2022

through 2025. Am. Compl. ¶ 126; *see also* Interv. Compl. ¶ 74 ("Lifting the freeze on the flow of

NEVI formula funds and allowing States to resume implementation of their State NEVI Plans to

develop additional fast and reliable charging station projects along Alternative Fuel Corridors

would redress Plaintiff-Intervenors' injuries and their members' injuries.").  Plaintiffs and

Intervenors ask the Court, among other things, to enjoin Defendants' suspension of State

deployment plans.  Am. Compl. at 61; Interv. Compl. at 34.

5

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

1    However, as the Court noted, "injunctive relief [] will likely be rendered moot once

2  Defendants follow through on their stated intention to issue new NEVI Formula Program

3  guidance that comports with the current administration's policies, and states submit their new

4  state deployment plans." ECF No. 110 at 63.  FHWA has since issued updated guidance that

5  closely tracks the minimal statutory and regulatory requirements, minimizes State deployment

6  requirements, affords the States more deployment flexibility, and streamlines the State plan

7  approval process.  *See* Interim Final Guidance.  As of August 11, 2025, States were encouraged

8  to immediately submit deployment plans and FHWA Division Offices were instructed to approve

9  those plans after confirming that the plans implemented the three statutory and regulatory

10  requirements—(1) per the IIJA, "[a] description of how the State intends to use NEVI Program

11  funds for each fiscal year"; (2) per 23 CFR § 680.112(d), a Community Engagement Outcomes

12  Report; and (3) per 23 CFR § 680.106(h), "[a] description of physical and cybersecurity

13  strategies."  *Id*. at 3 ("The Division should confirm that the content requirements noted above

14  have been satisfied, and, if so, provide approval.  FHWA will only review the three required

15  items listed under Plan Content.").

16    As a result, all States—including those not part of this litigation—are currently able to

17  submit NEVI Program plans that reflect the updated guidance.  FHWA will review and approve

18  those plans so long as they meet the statutory and regulatory requirements enumerated in the

19  updated guidance, all of which were already included in prior NEVI Program guidance.  *See id*.

20  And because, unlike the prior guidance, the updated guidance reflects the current

21  Administration's policy priorities, there is no likelihood of recurrence because Defendants lack

22  any incentive to revoke guidance reflecting the current Administration's priorities.  The claims

23  regarding NEVI Program guidance revocation, the temporary suspension of State deployment

24  plans, and the States' inability to submit new requests for obligations are, therefore, moot.

6

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

## II.    A Nationwide Injunction Is Not Warranted.

Intervenors seek re-instatement of all State deployment plans and resumption of FHWA's processing of new obligations for all States, even those that are not parties to this suit. *See* ECF No. 76-1. Intervenors do not have standing to seek such sweeping relief. To establish standing, a party must show "(i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). Only 21 States have joined this litigation, and preliminary relief was only granted as to 14 States. *See* ECF No. 110 at 65. Other States, such as Massachusetts, did not join this case because they immediately obligated all NEVI funds once they were available, and those financial commitments have not been impacted. *See* Prel. Inj. Hrg. Tr. at 17:18–20. Intervenors' request for nationwide relief—even as to States that have potentially not suffered any injury from Defendants' alleged actions and whose progress on deployment projects may be unrelated to the availability of NEVI funds—does not pass muster under Article III.

Intervenors' generalized interest in the development of EV infrastructure is not sufficiently concrete and particularized to justify relief for States that failed to show that Defendants' policy decisions impacted their NEVI plans. Nor is any general deficiency in the EV grid traceable to Defendants' decisions or redressable by the relief sought because there has been no showing that Defendants' NEVI Program decisions impacted non-party States' EV infrastructure plans. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 181 (2000) ("The relevant showing for purposes of Article III standing . . . is not injury to the environment but injury to the plaintiff.").[1]

---

[1] Defendants maintain that Intervenors are not within the IIJA's zone of interest. *See* 5 U.S.C. § 702 (A plaintiff must be "adversely affected or aggrieved by agency action within the meaning

7

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 598-7409

1        To the extent the Court is inclined to grant any relief, it should be narrowly tailored to

2   only address the injuries to parties in this case.  In *Trump v. CASA, Inc.*, the Supreme Court

3   addressed "universal injunctions," which are injunctions that bar the defendant from enforcing "a

4   law or policy against *anyone*," in contrast to an injunction that bars the defendant from enforcing

5   the challenged law or policy against the plaintiff.  No. 24A884, 2025 WL 1773631, at *4 (U.S.

6   June 27, 2025).  The governing principle is that a court granting equitable relief "may administer

7   complete relief *between the parties*."  *Id*. at *11 (quotation omitted).  "[T]he question is not

8   whether an injunction offers complete relief to everyone potentially affected by an allegedly

9   unlawful act; it is whether an injunction will offer complete relief *to the plaintiffs before the*

10  *court*."  *Id*.  And even then, "[c]omplete relief is not a guarantee—it is the maximum a court can

11  provide."  *Id*. at *12.  The Supreme Court explained that "[w]hen a federal court enters a

12  universal injunction against the Government, it improperly intrudes on a coordinate branch of the

13  Government and prevents the Government from enforcing its policies against nonparties," and

14  _____

15  of a relevant statute.").  The NEVI Program was enacted "to provide funding to States to
    strategically deploy electric vehicle charging infrastructure and to establish an interconnected

16  network to facilitate data collection, access, and reliability."  135 Stat. at 1421.  While the
    general public may ultimately benefit from that infrastructure, the Federal Government and the

17  States are the only parties subject to the statute and governed by its provisions.  *See Grand*
    *Council of Crees (of Quebec) v. FERC*, 198 F.3d 950, 955 (D.C. Cir. 2000) (a plaintiff "who is

18  not itself the subject of the agency action is outside the zone of interests only if its interests are
    'so marginally related to or inconsistent with the purposes implicit in the statute that it cannot

19  reasonably be assumed that Congress intended to permit the suit.'" (citation omitted)).  This
    point is salient as to the States that did not join this suit—Intervenors cannot step into those

20  States' shoes to speculatively claim that their EV projects have stalled due to Defendants' NEVI
    Program decisions and to insist on relief that those States have not sought.  It is only the States

21  that have any right to NEVI Program funds that can seek relief.  Several States are party to this
    litigation, and their rights and obligations under the statutory scheme can be appropriately

22  assessed by this Court.  But Intervenors should not be permitted to expand the scope of this
    litigation to States that have made no indication that their EV projects have in any way been

23  impacted by Defendants' policy decisions.

24

8

DEFENDANTS' MOTION FOR SUMMARY                    U.S. Department of Justice
SUMMARY JUDGMENT AS TO PLAINTIFFS'               Civil Division, Federal Programs Branch
AND INTERVENORS' CLAIMS                          1100 L Street, N.W.
Case No. 25-cv-00848-TL                          Washington, D.C.  20005
                                                 (202) 598-7409

that intrusion is sufficient to demonstrate irreparable harm warranting a stay.  *Id*. at \*14; *see id*. at \*15.  And because limiting an injunction to plaintiffs causes them no harm, "the balance of equities does not counsel against awarding the Government interim relief."  *Id*.

Similarly, Section 705 is constrained by the same traditional equitable principles as the Judiciary Act of 1789.  *See id*. at \*13.  And just as those principles foreclose universal preliminary injunctions, they also foreclose universal relief under § 705.  *See id.* at \*11 ("'Complete relief' is not synonymous with 'universal relief.'  It is a narrower concept:  The equitable tradition has long embraced the rule that courts generally may administer complete relief *between the parties*.") (cleaned up).

Intervenors improperly seek an order that would extend to NEVI Program participants that are not parties to this litigation and that, as Plaintiffs have admitted, may not have been impacted by Defendants' decisions.  *See* Prel. Inj. Hrg. Tr. at 17:11–22.  Intervenors' request for nationwide relief is not adequately tethered to any actual injuries suffered by the non-party States—the only entities with any right to NEVI funds.  Accordingly, under *CASA*, any relief must be confined to the particular plaintiffs who filed the instant suit and demonstrated entitlement to relief, whereas the Court would "lack authority to issue" broader equitable "relief that extended beyond the parties."  *See CASA*, 2025 WL 1773631, at \*7, 13.  That limitation on courts' equitable authority also constrains relief granted under 5 U.S.C. § 705.

## III.    FHWA's Actions Have Been Within The Bounds Of Its Statutory Authority.

"[W]hen the President acts pursuant to an express or implied authorization of Congress, his authority is at its maximum, for it includes all that he possesses in his own right plus all that Congress can delegate." *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 10 (2015).  Through the IIJA, Congress charged FHWA with the authority to "develop guidance for States and localities to strategically deploy electric vehicle charging infrastructure."  135 Stat. at 1423.  In

9

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

developing that guidance, FHWA may consider "any [] factors" it deems necessary. *Id.* Each State must submit a plan to FHWA "in such form and such manner" as FHWA requires, describing how it "intends to use funds distributed to the State" in "carry[ing] out the Program for each fiscal year in which funds are made available." *Id.* at 1422. As a result, the IIJA confers on FHWA authority to manage and administer the NEVI Program, as well as to establish and update the guidance under which States must operate. *See* Prel. Inj. Ord. at 41 ("[T]he Court agrees with Defendants that barring an agency from revising previously promulgated guidance 'would mean that agencies could never correct past actions, and instead would be perpetually bound by policies with which they disagree.'" (citing ECF No. 93 at 19)). Those guidance documents are imbued with policy decisions appropriately committed to the Executive. Defendants are entitled to summary judgment on all claims because FHWA's actions to superintend controlling NEVI Program policy have been fully consistent with its statutory mandate.

### 1. FHWA Has The Statutory Authority to Issue, Rescind, and Update NEVI Program Guidance.

Between 2022 and 2024, FHWA promulgated four guidance documents. *See* DOT_0001, 39, 77, 114. Those documents provide that "each State is required to submit [a deployment plan] that describes how the State intends to use its apportioned NEVI Formula Program funds in accordance with this guidance." DOT_0001. The guidance documents emphasized that "[n]o NEVI Formula Program funds shall be obligated by a State until FHWA approves that State's Plan." *Id.*; DOT_0006 ("No State may obligate its apportioned NEVI Formula Funds for EV charging infrastructure projects until that State's Plan has been submitted to the Joint Office and approved by FHWA, but staffing and development of the Plan will be eligible for reimbursement." (footnote omitted)).

10

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 598-7409

In accordance with FHWA's statutory authority, each NEVI Program guidance document imposed requirements beyond the IIJA text.  For example, the February 2022 guidance required that States "target at least 40 percent of the benefits towards disadvantaged communities," utilize "hiring preferences or innovative contracting approaches authorized by law to maximize job creation and economic benefits for local communities," and install "EV charging infrastructure no greater than 1 mile from Interstate exits or highway intersections along designated corridors." DOT_0018–19, 21; *see also* DOT_0055 ("To help meet the workforce needs of the NEVI Formula Program, each Plan should also consider steps that will grow and diversify their local workforce. This includes utilizing innovative contracting approaches authorized by law to maximize job creation and economic benefits for local communities. This also includes taking proactive steps to encourage broader participation among women, Black, Latino, Asian American Pacific, Indigenous, and other underrepresented groups in the development of those workforces."). And each subsequent guidance expressly superseded previous guidance.  *See, e.g.*, DOT_0077 ("The attached guidance supersedes the guidance that was issued on June 2, 2023.").

Starting in early in 2025, new leadership began reviewing FHWA programs to ensure that they comply with the current Administration's policies.  *See* DOT_0120–21.  FHWA noted that between fiscal years 2022 and 2025, a total of $3,270,000,000 was made available to the States.  *See* DOT_0118.  During that time, only $526,608,042.75 was obligated—merely 16.1% of the amount available.  *Id*.  As a result, new FHWA leadership would be responsible for entering into contracts and administering 83.9% of NEVI Program funds pursuant to policies that the agency determined did not comport with the current Administration's priorities.  *See id*.  Notably, any long-term, ongoing infrastructure project—even if certain portions are initiated in the upcoming fiscal year with funds pursuant to updated guidance—necessarily implicates multiple State plans submitted and approved under various former guidance documents.  Without rescinding prior

11

1  guidance, current agency leadership would, therefore, be required to give effect to guidance

2  documents it disagrees with in administering current and future obligations.  Accordingly,

3  FHWA rescinded the guidance documents previously issued while it worked to update and

4  promulgate new, draft guidance for public comment.  *See* DOT_0120–21.  State deployment

5  plans submitted under withdrawn guidance were suspended because they were submitted and

6  approved pursuant to rescinded guidance documents that conflict with current Administration

7  policies.  DOT_0121.

8          FHWA temporarily paused new obligations while Program guidance is updated to ensure

9  that the deployment plans remain consistent with current guidance, DOT_0121, but did not

10  thereby withdraw or withhold funds within the meaning of the IIJA, *see* 135 Stat. at 1422.  The

11  IIJA vests the Secretary with discretion to ensure that the State deployment plans accord with

12  guidance set out by the agency, including wide latitude as to the timing and framework for such

13  approvals.  Notably, even as to the one deadline set by the IIJA that FHWA's guidance must

14  initially be promulgated within 90 days of the statute's enactment the IIJA did not order that

15  funds immediately become available to the States or otherwise impose any penalties if the

16  agency had failed to do so.  *See* 135 Stat. at 1422.  So too the IIJA requires that States submit

17  deployment plans to FHWA "in such form and manner" FHWA "requires" by the "deadline"

18  FHWA "shall establish," but does not require FHWA to establish any deadline by which it must

19  then review and approve those plans.  *See id.*  The IIJA thus contemplates that there will be

20  periods in which funds are not immediately available for obligation by the States while FHWA is

21  reviewing the compatibility of the States' deployment plans with current guidance.

22          Moreover, in rescinding guidance and suspending plans submitted under that guidance,

23  FHWA's decisions did not impact funds that had been obligated by the States pursuant to

24  binding contracts with the Federal Government.  *See* DOT_0120.  Instead, the suspension

12

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

included an express carveout: "reimbursement of existing obligations will be allowed in order to not disrupt current financial commitments."  DOT_0121.  The statutory authority to develop and promulgate guidance necessarily includes the authority to revisit and reevaluate past guidance, particularly in the absence of a specific statutory restriction.  *See* Prel. Inj. Ord. at 41.  To hold otherwise would mean that agencies could never change past actions, but instead would be perpetually bound by policies with which they disagree.  *See F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513–14 (2009) (In evaluating agency action resulting from "a policy change," a court is "not to substitute its judgment for that of the agency," and should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." (cleaned up )); *Am. Trucking Associations v. Atchison, T. & S. F. Ry. Co.*, 387 U.S. 397, 416 (1967) (Agencies "are neither required nor supposed to regulate the present and the future within the inflexible limits of yesterday."); *Solar Energy Indus. Ass'n v. FERC*, 80 F.4th 956, 979 (9th Cir. 2023) ("The APA does not require regulatory agencies to establish rules of conduct to last forever, and agencies may adapt their rules and policies to the demands of changing circumstances.  An agency may change its position for any number of reasons, such as a change in factual circumstances or a shift in its policy priorities." (cleaned up)).

In short, the NEVI Program statute affords FHWA the authority to control Program guidance, which includes control over past and present guidance and plans approved thereunder. On August 11, 2025, FHWA published interim final guidance, and States are now free to submit plans for review and approval.  Once FHWA has approved States' re-submitted deployment plans, States may submit new obligation requests.  To be clear, NEVI Program funds remain fully available until they are expended and States did not forfeit any funds while new obligations were paused.  *See* 135 Stat. at 1421.  FHWA issued a temporary, programmatic pause on new obligations pending its update of NEVI Program guidance writ large.  That update is now

13

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

complete.  Throughout the update process, FHWA's review of NEVI Program guidance has been entirely consistent with its statutory authority to create and promulgate NEVI Program guidance.

### 2. FHWA Has The Authority To Suspend State Plans for Unobligated Funds Pending the Issuance of New Guidance.

All claims in this case are predicated on the notion that FHWA does not have the authority to suspend State deployment plans and to temporarily pause new obligations while it updates NEVI Program guidance.  *See* Am. Compl. ¶¶ 246, 258, 279, 295, 303; Interv. Compl. ¶¶ 106, 111, 136, 148, 153.  FHWA's authority to suspend State plans for unobligated funds pending the issuance of updated guidance stems from and is inextricably intertwined with its statutory obligation to promulgate NEVI Program guidance in the first instance and its authority to re-visit and amend that guidance.  Congress required the issuance of guidance for a program that necessarily extends across multiple administrations and delegated the issuance of that guidance to the agency tasked with administering the program.  *See* 135 Stat. at 1423.  And as a matter of practice, FHWA routinely updates such guidance. To permit new obligations under prior plans that no longer align with Administration priorities would divest Defendants of their statutory authority to control NEVI Program guidance.  *See id*.  And it would superimpose a new restriction on FHWA's routine practice of updating guidance.  Further, Congress did not establish a pass-through statute that merely assigned Defendants ministerial tasks; instead, it granted FHWA significant discretion in implementing the NEVI Program and setting its policies and priorities.  Had Congress intended for administrations to merely acquiesce to the initial guidance, it would have expressly authorized such statutory language by providing that FHWA could only issue guidance once.  It did not.  Accordingly, FHWA has the authority to briefly suspend State plans while it updates the congressionally required guidance, and all claims purporting to dispense with that authority fail.

14

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

In exercising its statutorily authorized control over NEVI Program guidance, FHWA incorporated appropriate administrative safeguards and considered reliance interests.  And to avoid disruptions to current financial commitments until it reviews and approves States' updated plans, FHWA will continue to appropriately distribute NEVI Program funds that were already obligated.  States that planned to obligate funds under plans submitted pursuant to previous guidance will be able to do so once FHWA approves their new plans.  Additionally, because NEVI funds do not expire, States will not be at risk of losing apportioned NEVI funds due to a lapse in the period of availability.  This balancing: suspending future obligations pending new guidance while allowing previously incurred obligations to proceed without interference comports with the APA's limited requirement for reasoned decision-making.  *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1913 (2020) ("When an agency changes course, . . .  it must be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account." (quotations omitted)); *Fox Television* 556 U.S. at 515 (An agency "need not demonstrate to a court's satisfaction that the reasons for the new policy are *better* than the reasons for the old one; it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better, which the conscious change of course adequately indicates." (emphasis supplied)).  In exercising its statutory authority to suspend State deployment plans for unobligated funds, FHWA met its procedural obligations under the APA and appropriately considered reliance interests. As a result, the Court should enter summary judgment in Defendants' favor.

## IV.   Defendants Are Entitled To Summary Judgment On The APA Claims.

Under the APA, the Court may set aside an agency action if the Court finds that challenged action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

15

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

with the law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C)–(D). The Court's review is "ultimately narrow and highly deferential" and focused on "ensur[ing] that the agency has 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action.'" *Am. Whitewater v. Tidwell*, 770 F.3d 1108, 1115 (4th Cir. 2014) (citations omitted). The agency need only "provide[] an explanation of its decision that includes a rational connection between the facts found and the choice made" to have its decision sustained. *Id.* (quoting *Ohio Valley Env't Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009)). A court "is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Defendants renew their arguments that there are threshold grounds for dismissal and that, in any event, Plaintiffs' merits claims are incorrect.

### 1. Defendants Have Not Taken Any Final, Discrete Agency Action.

The APA permits judicial review of Executive Branch decisions only when those decisions result in "agency action" that is "final." 5 U.S.C. §§ 704, 706(2); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 882 (1990). This limitation ensures that courts do not engage in "general judicial review of [an agency's] day-to-day operations." *Lujan*, 497 U.S. at 899. Agency action is final only if two conditions are met: (1) the agency action marks "the 'consummation' of the agency's decisionmaking process"—it must not be of a merely tentative or interlocutory nature, and (2) the "action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted); *Friends of the Wild Swan, Inc. v. Dir. of United States Fish & Wildlife Serv.*, 745 F. App'x 718, 720 (9th Cir. 2018) ("[C]ourts are to focus on the practical and legal

16

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 598-7409

effects of the agency action, so as to determine finality in a pragmatic and flexible manner." (cleaned up)).  The APA expressly excludes "preliminary, procedural, or intermediate agency action[s] or ruling[s]." 5 U.S.C. § 704.

An "agency's action is final and thus reviewable when the agency has rendered its last word on the matter in question." *Advanced Integrative Med. Sci. Inst., PLLC v. Garland*, 24 F.4th 1249, 1257 (9th Cir. 2022) (cleaned up).  In contrast, decisions that are "preliminary" in nature are "not directly reviewable." *See* 5 U.S.C. § 704.  "[They] may be a step, which if erroneous will mature into a prejudicial result." *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 112 (1948).  But that does not make the decisions themselves the "consummation of the administrative process" reevaluating the agency's priorities. *Id*. at 113; *see EPA v. Brown*, 431 U.S. 99, 104 (1977) ("For [courts] to review [agency actions] not yet promulgated, the final form of which has only been hinted at, would be wholly novel.").

The first *Bennett* prong is not met when, as here, the agency action at issue "merely 'facilitates the *beginning* of the [] review process for proposed' agency action." *Id*. (emphasis in original) (citing *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1008 (9th Cir. 2021)).  The obligation of NEVI funds has several prerequisites.  The IIJA first requires that FHWA issue NEVI Program implementation guidance.  135 Stat. at 1423.  The States then must submit deployment plans to FHWA that conform with the statutory requirements and FHWA guidance. *Id*. at 1422.  Once FHWA approves a State plan, the State may obligate its apportioned funds. *See id*.; *see also, e.g.*, DOT_0001.  Upon obligation of funds through the execution of a project agreement, a State may expend NEVI Program funds. *See* 23 U.S.C. § 106(a)(3).

When FHWA paused new obligations, it had not asserted its ultimate administrative position with respect to NEVI Program guidance. Rather, it had merely stated that it was

17

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

1  reviewing NEVI guidance and evaluating whether it accorded with current policies and

2  priorities. *See* DOT_0120–21. FHWA has re-issued NEVI guidance, and pursuant to that

3  guidance, States may submit updated deployment plans and requests for obligations for

4  particular projects. Final agency action will not be taken until FHWA authorizes or affirmatively

5  denies obligations, which is a prerequisite to States' ability to enter into binding agreements with

6  third parties for the expenditure of NEVI Program funds. Because FHWA's interim decisions

7  issuing prior guidance will be subsumed by its ultimate consideration of State obligations

8  submitted pursuant to updated guidance, its preliminary steps to review NEVI Program guidance

9  do not mark the consummation of its administrative process. *See City of San Diego v. Whitman*,

10  242 F.3d 1097, 1102 (9th Cir. 2001) (considering whether agency action was "subject to further

11  agency consideration or possible modification" in ascertaining finality (quoting *Ciba–Geigy*

12  *Corp. v. EPA*, 801 F.2d 430, 436–37 (D.C. Cir. 1986)).

13      Moreover, prong two of the *Bennett* test turns on whether the agency's actions result in

14  "concrete consequences." *S. California All. of Publicly Owned Treatment Works v. EPA*, 8 F.4th

15  831, 836 (9th Cir. 2021). That threshold is not cleared if "subsequent agency decision making is

16  necessary to create any practical consequences." *Id.* at 837 (citing *Whitman*, 242 F.3d at 1102).

17  Here, concrete consequences arise later in the NEVI apportionment process. FHWA has not

18  disturbed "existing obligations," which would "disrupt current financial commitments."

19  DOT_0121. Instead, FHWA took preliminary action. It rescinded prior guidance and suspended

20  portions of State plans related to *unobligated* funds submitted under that guidance while it

21  updated the relevant guidance. This pause illustrates the lack of final agency action: subsequent

22  action—FHWA's now-complete issuance of updated guidance, its approval of State plans under

23  the recently-updated guidance, its approval of States' requests for obligation, and ultimately its

24  approval of specific funding requests—is necessary to create any legal ability to disburse funds.

18

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 598-7409

Although the renewed NEVI Program guidance may manifest in a final agency action further downstream, Plaintiffs cannot maintain this suit now by speculating about the contours of that future action.

### 2. Defendants Have Not Exceeded Their Statutory Authority.

As previously explained, Defendants did not exceed their statutory authority in rescinding prior guidance documents, suspending State plans while guidance is updated, and temporarily pausing new obligations. Under the IIJA, FHWA has the authority to withdraw previously issued NEVI Program guidance that does not comport with the current Administration's policies, to update and re-align Program guidance as the agency deems appropriate while within the statutory contours, and to temporarily pause new obligations while Program guidance is updated. *See supra* Argument part III. FHWA's decision to ensure that the agency is not tasked with administering prospective obligations in direct contravention with current Administration policies is not in violation of the APA.

### 3. Defendants' Decisions Have Not Been Contrary To Law Or Arbitrary And Capricious.

Defendants' actions are in accordance with law for the same reasons that they are within the bounds of their statutory authority. *See supra* Argument part III.

Similarly, FHWA's decisions were neither arbitrary nor capricious. Review under the arbitrary and capricious standard is "narrow," *Arrington v. Daniels*, 516 F.3d 1106, 1112–13 (9th Cir. 2008), and "highly deferential," *Crickon v. Thomas*, 579 F.3d 978, 982 (9th Cir. 2009). A court must "presum[e] the agency action to be valid and affirm[] … if a reasonable basis exists for [the agency's] decision." *Id*. A reasonable basis exists so long as "the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made." *Id*. The agency's decision "need only be reasonable, not the best or most reasonable,

19

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 598-7409

decision." *River Runners for Wilderness v. Martin*, 593 F.3d 1064, 1070 (9th Cir. 2010).  A

court, moreover, may not "substitute its judgment for that of the agency." *Motor Vehicle Mfrs.*,

463 U.S. at 43.

Here, FHWA acted in accordance with its statutory authority in revoking guidance

documents that did not comply with the current Administration's policies and in deciding to

issue new guidance documents.  In reaching that conclusion, FHWA acknowledged that 83.9%

of NEVI Program funds remained unobligated, meaning that the States had not established any

legal right to those particular funds.  *See* DOT_0118.  FHWA, therefore, concluded that it could

re-align NEVI Program guidance writ large without impacting existing financial commitments.

*See* DOT_0121.  In considering the States' reliance interests stemming from existing financial

commitments for ongoing deployment projects, FHWA determined that its update of NEVI

Program guidance would have no impact on existing obligations.  *See id.*  Moreover, in deciding

to streamline NEVI Program guidance to more closely align with the express statutory text and

purpose, FHWA concluded that the participating States and the public would benefit from the

opportunity to comment, while still making the guidance effective immediately.  *See id.*

Specifically, FHWA concluded that the opportunity to comment would give all interested parties

the opportunity to weigh in how the majority of the NEVI funds would be utilized and how the

guidance could be optimized to fulfill the statutory purpose.  *See id.*  The comment period would

also give States the opportunity to express any reliance interests they believe to be impaired by

the updated guidance, while still permitting the guidance to go into effect immediately.  *See id.*

### 4.  Defendants Have Not Failed To Observe Any Procedure Required By Law.

Plaintiffs contend that Defendants have "withdrawn and withheld NEVI Formula

Program funds from Plaintiff States without making the statutorily required determination that

20

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

Plaintiff States have not taken action to carry out their plans and without following any statutorily required procedure." Am. Compl. ¶ 280; *see also* Interv. Compl. ¶ 98. Specifically, Plaintiffs point to IIJA provisions, claiming that "Defendants failed to provide at least 90 days for Plaintiff States to rectify any concerns, failed to provide the statutorily required 60-day notice to Plaintiff States on their intent to withhold or withdraw funds, and failed to provide any opportunity to appeal the FHWA's decision to withhold or withdraw funds." Am. Compl. ¶ 282. However, the process for withdrawal or withholding of funds under the IIJA is inapplicable. Under the IIJA, if a State fails to submit a plan as required or FHWA "determines a State has not taken action to carry out its plan," the agency may "withhold or withdraw" funds from the State and may "award such funds on a competitive basis to local jurisdictions within the State." 135 Stat. at 1422. In this case, FHWA has not withdrawn or withheld any NEVI funds. Instead, FHWA made the threshold decision to update NEVI Program guidance pursuant to its authority to issue guidance and administer State deployment plans. This decision is independent of the States' submission of deployment plans under previously issued guidance and is unrelated to the States' performance under those guidance documents. Indeed, FHWA's February 6, 2025 letter expressly states that because the agency "is suspending the existing State plans, States will be held harmless for not implementing their existing plans." DOT_0121. Because the IIJA's procedural provision is inapplicable, Count III is without merit.

## V.    The Constitutional And Ultra Vires Claims Fail.

As a threshold matter, the constitutional and *ultra vires* claims are merely Plaintiffs' statutory and APA claims re-packaged, and essentially argue that Defendants' actions do not comport with the applicable statutes, and therefore should be denied. *See, e.g.*, Am. Compl. ¶ 303 ("The Defendants' actions . . . are contrary to the Executive's duty to faithfully execute the

21

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

1  IIJA."); Interv. Compl. ¶ 136 ("Defendants' actions . . . directly contravene Congress's directives

2  in the IIJA and other statutes.").

3      As the Supreme Court has confirmed, "claims simply alleging that the President has

4  exceeded his statutory authority are not 'constitutional' claims." *Dalton v. Specter*, 511 U.S.

5  462, 473 (1994).  In *Dalton*, the Supreme Court rejected the proposition that "whenever the

6  President acts in excess of his statutory authority, he also violates the constitutional separation of

7  powers doctrine." *Id*. at 471.  Not "every action by the President, or by another executive

8  official, in excess of his statutory authority is ipso facto in violation of the Constitution." *Id*. at

9  472.  In reaching this conclusion, the Supreme Court carefully "distinguished between claims of

10  constitutional violations and claims that an official has acted in excess of his statutory authority."

11  *Id*. (collecting cases).  The Constitution is implicated only if executive officers rely on it as "[t]he

12  only basis of authority" or if the officers rely on an unconstitutional statute.  *Id*. at 473 & n.5; *see*

13  *Global Health Council v. Trump*, No. 25-5097, 2025 WL 2326021, at *1 (D.C. Cir. Aug. 13,

14  2025) (applying *Dalton* in concluding that the plaintiffs "may not bring a freestanding

15  constitutional claim if the underlying alleged violation and claimed authority are statutory" and

16  "may not reframe this fundamentally statutory dispute as an ultra vires claim either"); *Nat'l*

17  *Treasury Employees Union v. Vought*, No. 25-5091, 2025 WL 2371608, at *20 (D.C. Cir. Aug.

18  15, 2025) ("[T]he only constitutional source of executive authority in this case is the President's

19  obligation to take care that the statutes governing the [agency] are faithfully executed. And as

20  *Dalton* made clear, a claim that executive officials have not discharged such a responsibility

21  under the Take Care Clause gives rise at most to an *ultra vires* claim." (internal citation

22  omitted)).

23      Here, Plaintiffs' and Intervenors' claims focus entirely on their contentions that FHWA

24  has not acted consistent with its statutory obligations under the IIJA.  Indeed, they expressly and

22

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

repeatedly point to the IIJA to argue that Defendants' actions have exceeded the statutory text and purpose.  *See, e.g.*, Am. Compl. ¶ 303 ("The Defendants' actions to categorically 'suspend' or revoke all State Electric Vehicle Infrastructure Deployment Plans approvals and to categorically withhold or withdraw NEVI Formula Program funds are contrary to the Executive's duty to faithfully execute the IIJA as enacted by Congress and therefore violate the Take Care Clause."); Interv. Compl. ¶ 147 ("Defendants acted contrary to and in defiance of congressional will by nullifying State NEVI Plans and indefinitely blocking access to NEVI formula funds already apportioned to the States for obligation for fiscal years 2022-2025.").  The constitutional and *ultra vires* claims thus amount to little more than an attempt to re-state a statutory claim in constitutional parlance, and should therefore be rejected.

### 1. The Separation of Powers Claims Fail Because Plaintiffs And Intervenors Cannot Enforce The Impoundment Control Act.

Plaintiffs' and Intervenors' separation of powers theory is that Defendants' temporary pause on new obligations amounts to an impoundment.  *See* Am. Compl. ¶¶ 287–98; Interv. Compl. ¶¶ 139–40.  This claim can only be understood as arising under the Impoundment Control Act, which provides a framework for guiding inter-Branch engagement on certain decisions regarding the obligation of appropriated funds—a process that is ongoing. The Act does not confer any judicially enforceable rights on third parties, and any attempt to enforce the Act via the garb of an amorphous constitutional claim ought be rejected.

The Impoundment Control Act directs the President to notify Congress when he proposes to defer or rescind appropriated funds, *see* 2 U.S.C. §§ 683(a), 684(a), which allows Congress to determine how to respond given the particular circumstances of a specific proposal.  The statute specifies particular forms of legislative action that Congress may undertake to address proposed rescissions.  *See id*. § 688.  To the extent that the Impoundment Control Act contemplates

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

litigation to enforce any obligation to spend appropriated funds, it provides for suits brought by

the Comptroller General, an official within the Legislative Branch.  2 U.S.C. § 687.  And the

statute imposes limitations on any such suit that reinforce Congress's desire to control any

response to the Executive's actions: no such suit may be brought until the Comptroller General

files "an explanatory statement" of "the circumstances giving rise to the" contemplated suit

"with the Speaker of the House of Representatives and the President of the Senate" and then "25

calendar days of continuous session of the Congress" elapse.  *Id*.  Regardless of whether such a

suit would be cognizable under Article III and the separation of powers, the statute does not

contemplate enforcement at the behest of private parties.  And the statute certainly does not

contemplate that private parties would be entitled to bring enforcement actions without regard to

the procedural limitations that Congress imposed for the Comptroller General.  *See Block v.*

*Cmty. Nutrition Inst.*, 467 U.S. 340, 347 (1984).

Emphasizing the point, the Impoundment Control Act expressly provides that "[n]othing

contained in this Act, or in any amendments made by this Act, shall be construed" as "affecting

in any way the claims or defenses of any party to litigation concerning any impoundment."  2

U.S.C. § 681. That provision makes clear Congress's intent that third parties cannot rely on the

statute's provisions to generate a judicially enforceable right to compel spending that did not

otherwise exist.  *See Glob. Health Council*, 2025 WL 2326021, at *10 ("[T]he ICA created a

complex scheme of notification of the Congress, congressional action on a proposed rescission or

deferral and suit by a specified legislative branch official if the executive branch violates its

statutory expenditure obligations . . . As in *Block*, it does not make sense that the Congress

would craft a complex scheme of interbranch dialogue but *sub silentio* also provide a backdoor

for citizen suits at any time and without notice to the Congress of the alleged violation." (internal

citations omitted)).

24

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

In short, permitting the parties here to challenge the Executive Branch's spending decisions through a separation of powers claim alleging, in essence, a violation of the Impoundment Control Act would "severely disrupt" the statute's "complex and delicate" enforcement scheme. *Block*, 467 U.S. at 348. It is thus "clear that Congress intended that" any response to the Executive's actions in this sphere should "be confined to" the Legislative Branch-directed responses undertaken "in accordance with" the statute's scheme. *Id*. Plaintiffs and Intervenors should not be able to ignore the restrictions that this statute imposes—ones negotiated by the political branches—solely by artful pleading, when they seek a broader remedy.

## 2. The Take Care Clause Claims Also Fail Because There Has Been No Such Violation.

The Constitution vests the President with broad, discretionary authority to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. The Supreme Court has recognized that the President's duty when exercising his power to see that the laws are faithfully executed is "purely executive and political," and not subject to judicial direction. *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 499 (1866); *see Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 165–66 (1803) ("[T]he President is invested with certain important political powers, in the exercise of which he is to use his own discretion, and is accountable only to his country in his political character.").

To hold otherwise would upset the separation of powers and allow judicial superintendence over executive power that the Clause commits to the President alone. *Baker v. Carr*, 369 U.S. 186, 217 (1962) (Courts lack jurisdiction over a claim where there is "a textually demonstrable constitutional commitment of the issue to a coordinate political department."); *see also Dalton*, 511 U.S. at 474–75 (judicial review of discretionary Presidential decisions "is not available"); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 577 (1992) (holding that it would be

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 598-7409

improper for the courts to take over the President's duty to "take Care that the Laws be faithfully executed" (quoting U.S. Const. art. II, § 3)); *Marbury*, 5 U.S. (1 Cranch) at 170 ("The province of the court is, solely, to decide on the rights of individuals, not to enquire how the executive, or executive officers, perform duties in which they have a discretion. Questions, in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court."); *Chi. & S. Air Lines*, 333 U.S. at 114 (refusing to review the President's decision that "embod[ied] Presidential discretion as to political matters beyond the competence of the courts to adjudicate"); *Mississippi*, 71 U.S. (4 Wall.) at 499.

Nor does the Take Care Clause provide a basis to review the actions of subordinate Executive Branch officials. The Clause speaks only to the President, not to his subordinates, and ensures that the President is principally responsible for the actions of the Executive Branch and directly accountable to the people through the political process. *See Free Enter. Fund v. Pub Co. Acct. Oversight Bd.*, 561 U.S. 477, 492–93 (2010) ("It is his responsibility to take care that the laws be faithfully executed."); *id.* at 495–97; *see also Printz v. United States*, 521 U.S. 898, 922 (1997); *Morrison v. Olson*, 487 U.S. 654, 689–90 (1988); *Clinton v. Jones*, 520 U.S. 681, 712–13 (1997) (Breyer, J., concurring). A subordinate Executive officer cannot violate the President's duty to faithfully execute the laws. To the extent Plaintiffs and Intervenors seek to challenge the legality of Defendants' conduct, they cannot do so through the Take Care Clause, but must do so, if at all, through the APA, which in this case presents separate insurmountable obstacles.

//

//

//

26

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409

1

## CONCLUSION

2          For all the reasons discussed herein, the Court should enter summary judgment in

3   Defendants' favor as to all claims.

4          Dated:  August 26, 2025

5                                                Respectfully submitted,

6
                                                 BRETT A. SHUMATE
7                                                Assistant Attorney General
                                                 Civil Division
8
                                                 JOSEPH E. BORSON
9                                                Assistant Branch Director
                                                 Federal Programs Branch
10

11                                               _/s/ Heidy L. Gonzalez_
                                                 HEIDY L. GONZALEZ (FL Bar No. 1025003)
12                                               *Trial Attorney*
                                                 U.S. Department of Justice
13                                               Civil Division, Federal Programs Branch
                                                 1100 L Street, N.W.
14                                               Washington, DC  20005
                                                 Tel. (202) 598-7409
15                                               heidy.gonzalez@usdoj.gov

16

17                                               *Attorneys for Defendants*

18                                               *I certify that this memorandum*
                                                 *contains 8,398 words, in compliance*
19                                               *with the Local Civil Rules*

20

21

22

23

24

27

DEFENDANTS' MOTION FOR SUMMARY
SUMMARY JUDGMENT AS TO PLAINTIFFS'
AND INTERVENORS' CLAIMS
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409