1

2

3

4

5

The Honorable Tana Lin

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

STATE OF WASHINGTON, et al.,

                PLAINTIFFS,

    v.

U.S. DEPARTMENT OF
TRANSPORTATION, et al.,

                DEFENDANTS.

NO.  2:25-cv-00848-TL

PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR:
OCTOBER 8, 2025

ORAL ARGUMENT
REQUESTED

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT – NO. 2:25-CV-00848

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND AND STATEMENT OF UNDISPUTED FACTS ............................. 2

        A.  Congress Mandated that FHWA Distribute NEVI Formula Program Funds to States for Strategic Deployment of Electric Vehicle Charging Infrastructure ......... 2

        B.  FHWA Approved States' Implementation Plans and Made Funds Available for Obligation ................................................................................................. 4

        C.  After President Trump Directed Elimination of an "Electric Vehicle Mandate," FHWA Abruptly Revoked All State Plans and Categorically Withheld NEVI Formula Program Funds, Harming Plaintiff States ........................ 5

III.    STANDARD OF REVIEW ..................................................................................... 8

IV.     ARGUMENT ....................................................................................................... 9

        A.  Plaintiff States' Claims are Appropriate for Resolution on Summary Judgment ...... 9

            1.  Plaintiffs have suffered injuries establishing ripeness and standing ................. 9

            2.  Defendants took final agency action ............................................................ 10

                a.  Defendants' actions mark the consummation of the agency's decisionmaking process ..................................................................... 11

                b.  Legal consequences have flowed from, and rights and obligations have been determined by, Defendants' actions ........................................ 12

        B.  Plaintiffs Are Entitled to Summary Judgment on their APA and *Ultra Vires* Claims ........................................................................................................ 13

            1.  Defendants' actions were in excess of statutory authority .............................. 13

                a.  Defendants lack authority to withhold funds for reasons not set forth in the IIJA ..................................................................................... 13

                b.  Defendants lack authority to revoke State Plans, or to categorically withhold NEVI funds on the basis of revoked State Plans ......................... 15

                c.  Defendants' actions violate common law *ultra vires* doctrine ................. 17

                d.  Defendants' actions were arbitrary and capricious ................................... 17

                e.  Defendants acted "without observance of procedure required by law" and "not in accordance with law" ................................................... 21

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

2.      Defendants' failure to follow the IIJA's statutory mandate violates the
        separation of powers and the Take Care Clause ................................................ 22

V.      REMEDY .................................................................................................................. 24

VI.     CONCLUSION ......................................................................................................... 25

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

# TABLE OF AUTHORITIES

## Cases

*Abbott Laboratories v. Gardner*,
387 U.S. 136, 148-49 (1967),
*abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) ............................. 9

*AIDS Vaccine Advocacy Coal. v. U.S. Dep't of State*,
766 F. Supp. 3d 743 (D.D.C. 2025) ............................................................... 21

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ......................................................................................... 8

*Ass'n of Irritated Residents v. U.S. Env't Prot. Agency*,
10 F.4th 937 (9th Cir. 2021) .......................................................................... 10

*Bennett v. Spear*,
520 U.S. 154 (1997) ................................................................................. 10, 13

*Bishop Paiute Tribe v. Inyo County*,
863 F.3d 1144 (9th Cir. 2017) ......................................................................... 9

*Califano v. Sanders*,
430 U.S. 99 (1977) ........................................................................................... 9

*Califano v. Yamasaki*,
442 U.S. 682 (1979) ....................................................................................... 25

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1990) ......................................................................................... 8

*City & Cnty. of San Francisco v. Trump*,
897 F.3d 1225 (9th Cir. 2018) ....................................................... 9, 22, 23, 24

*City & County of San Francisco v. Trump*,
779 F. Supp. 3d 1077 (N.D. Cal. Apr. 24, 2025) ........................................... 23

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020) ............................................................................... 17, 20, 21

*E. Bay Sanctuary Covenant v. Biden*,
993 F.3d 640 (9th Cir. 2021) ......................................................................... 25

*FCC v. Prometheus Radio Project*,
592 U.S. 414 (2021) ....................................................................................... 17

*In re United Mine Workers of Am. Int'l Union*,
190 F.3d 545 (D.C. Cir. 1999) ....................................................................... 24

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT – NO. 2:25-CV-00848

iii

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

*Kendall v. United States*,
   37 U.S. (12 Pet.) 524 (1838) ................................................................... 24

*Kern Cnty. Farm Bureau v. Allen*,
   450 F.3d 1072 (9th Cir. 2006) ................................................................. 21

*Lyng v. Nw. Indian Cemetery Protective Ass'n*,
   485 U.S. 439 (1988) ................................................................................. 22

*Martin Luther King, Jr. Cnty. v. Turner*,
   No. 2:25-CV-814, 2025 WL 1582368, at *15 (W.D. Wash. June 3, 2025) .......................... 23

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ...................................................................... 17, 18, 19

*Nat'l Council of Nonprofits v. Off. Of Mgmt. & Budget*,
   775 F. Supp. 3d 100 (D.D.C. 2025) ................................................... 11, 19

*Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*,
   595 U.S. 109 (2022) ................................................................................. 13

*Nat'l Lab. Rels. Bd. v. Siren Retail Corp.*,
   99 F.4th 1118, 1123 (9th Cir. 2024) ........................................................ 10

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
   538 U.S. 803 (2003) ................................................................................. 10

*National Association of Home Builders v. Norton*,
   340 F.3d 835 (9th Cir.2003) ....................................................................... 8

*New York v. Trump*,
   769 F. Supp. 3d 119 (D.R.I. 2025) ........................................................... 11

*Norfolk & Western R. Co. v. Train Dispatchers*,
   499 U.S. 117 (1991) ................................................................................. 20

*Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*,
   465 F.3d 977 (9th Cir. 2006) ............................................................. 11, 12

*Paulsen v. Daniels*,
   413 F.3d 999 (9th Cir. 2005) ..................................................................... 25

*Prutehi Litekyan: Save Ritidian v. U.S. Dep't of the Airforce*,
   128 F.4th 1089 (9th Cir. 2025) ........................................................... 10, 11

*Raj & Co. v. U.S. Citizenship & Immigr. Servs.*,
   85 F. Supp. 3d 1241 (W.D. Wash. 2015) ...................................................... 8

*S. Cal. All. Of Publicly Owned Treatment Works v. U.S. Env't Prot. Agency*,
   8 F.4th 831 (9th Cir. 2021) ....................................................................... 12

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT – NO. 2:25-CV-00848

iv

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

*Saliba v. U.S. Sec. & Exch. Comm'n,*
    47 F.4th 961 (9th Cir. 2022) ......................................................................... 11

*Trump v. CASA, Inc.,*
    145 S. Ct. 2540 (2025) ................................................................................... 25

*United States v. Yakima Tribal Ct.,*
    806 F.2d 853 (9th Cir. 1986) ......................................................................... 17

*Washington v. Trump,*
    768 F. Supp. 3d 1239 (W.D. Wash. Feb. 28, 2025) ..................................... 23

*Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.,*
    No. C25-97, 2025 WL 1116157, at *16 (D.R.I. Apr. 15, 2025) .................... 11

*Youngstown Sheet & Tube Co. v. Sawyer,*
    343 U.S. 579 (1952) (Jackson, J., concurring) ...................................... 22, 23, 24

## Statutes

23 U.S.C. § 104(c) .................................................................................................. 2

23 U.S.C. § 165 ...................................................................................................... 2

28 U.S.C. § 2201 .................................................................................................. 25

5 U.S.C. § 704 ...................................................................................................... 13

5 U.S.C. § 706 ...................................................................................................... 25

5 U.S.C. § 706(2)(C) ............................................................................................ 13

5 U.S.C. § 706(2)(D) ............................................................................................ 21

Pub. L. No. 117-58, 135 Stat. 429 (2021) .................................................... passim

## Other Authorities

90 Fed. Reg. 39025 (Aug. 13, 2025) .................................................................. 6, 9

*Advance Construction of Federal-Aid Projects,*
    73 Fed. Reg. 50194 (Aug. 26, 2008) ............................................................ 20

Exec. Order No. 14,154,
    90 Fed. Reg. 8353 (Jan. 20, 2025) ............................................................. 5, 16

U.S. Const. art. I, § 8, cl. 1 .................................................................................. 22

U.S. Const. art. II, § 3 .......................................................................................... 22

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT – NO. 2:25-CV-00848

v

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

U.S. Department of Transportation, Federal Highway Administration, National Electric
    Vehicle Infrastructure (NEVI) Interim Final Program Guidance (Aug. 11, 2025) ........ passim

U.S. Department of Transportation, Mission, DOT Orders, DOT Order 2100.7,
    "Ensuring Reliance Upon Sound Economic Analysis in Department of
    Transportation Policies, Programs, and Activities" (Jan. 29, 2025),................................. 6, 20

**Rules**

Fed. R. Civ. P. 56(a) ..................................................................................................................... 8

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT – NO. 2:25-CV-00848

vi

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

# I.    INTRODUCTION

In 2021, Congress created the National Electric Vehicle Infrastructure ("NEVI") Formula Program, mandating that $5 billion be apportioned under a statutory formula and distributed to States to develop a nationwide network of electric vehicle charging infrastructure. On February 6, 2025, Defendants illegally halted this program, retroactively revoking their approvals of the State Plans which Plaintiffs submitted to access their dedicated shares of NEVI funds, and categorically withholding those funds. This Court recently found that Plaintiffs States' Administrative Procedure Act ("APA") and separation-of-powers claims were likely to succeed on the merits and granted a preliminary injunction as to the fourteen Plaintiff States that submitted declarations providing evidence of irreparable harm.

The Court should affirm the rulings in its PI Order and grant Plaintiff States summary judgment on all claims alleged in their Complaint. The operative facts are not in dispute, making resolution on summary judgment appropriate. Defendants' actions are ultra vires and in excess of statutory authority and contrary to law under the APA because they contradict statutory direction, as set forth in the Infrastructure Investment and Jobs Act ("IIJA"), to distribute funds to the States in specific amounts, for specific purposes. The statute does not allow for the revocation of State Plan approvals and expressly limits the circumstances in which Defendants can withhold funds, none of which apply here. Defendants' actions are also arbitrary and capricious under the APA because they are not reasonably explained, rely on factors not intended by Congress, and fail to consider Plaintiffs States' serious reliance interests. Defendants also failed to consider alternatives to their sweeping actions. Finally, Defendants' actions violate separation-of-powers principles and the Take Care Clause because Defendants refuse to faithfully execute a clear congressional mandate to spend funds. The Court should therefore grant Plaintiff States' motion for summary judgment, declare Defendants' actions unlawful, vacate those actions, and order the requested injunctive relief as to all Plaintiff States.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT – NO. 2:25-CV-00848

1

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

## II.    BACKGROUND AND STATEMENT OF UNDISPUTED FACTS

### A.    Congress Mandated that FHWA Distribute NEVI Formula Program Funds to States for Strategic Deployment of Electric Vehicle Charging Infrastructure

On November 15, 2021, President Biden signed into law the Bipartisan Infrastructure Law, enacted as the IIJA. Pub. L. No. 117-58, 135 Stat. 429 (2021). Through the IIJA Congress appropriated $5 billion, mandating that those funds "*shall* be to carry out [the NEVI] Formula Program" and must "remain available until expended . . . for each of fiscal years 2022 through 2026" (emphasis added). 135 Stat. 1421. The Program was designed to "provide funding to States to strategically deploy electric vehicle charging infrastructure and to establish an interconnected network to facilitate data collection, access, and reliability." *Id.*

The NEVI program represents the most transformative investment in EV charging in United States history and is expected to put the country on a path to a nationwide network of 500,000 EV chargers by 2030, including by building out charging infrastructure along FHWA-designated Alternative Fuel Corridors. As set forth in the initial NEVI program guidance, this national network will accelerate adoption of EVs, including for those who cannot reliably charge at home; reduce transportation-related greenhouse gas emissions; and position U.S. industries to lead global transportation electrification efforts. Dkt. #115-2 (Administrative Record) at p.5.

Congress directed the Secretary of Transportation ("Secretary") to distribute NEVI funds to States according to a specific statutory formula—the same formula used to distribute federal highway funds. The Secretary must "distribute among the States the [NEVI funds] so that each State receives" the amount determined by the formula for fiscal years 2022 through 2026. 135 Stat. at 1422. Those amounts are fixed in statute based on historical apportionments and congressionally determined shares. 23 U.S.C. §§ 104(c), 165.

/ / /

/ / /

Congress established a single prerequisite for a State to receive its share of the NEVI funds: Each State must submit a State Electric Vehicle Infrastructure Deployment Plan, by a deadline established by the Secretary, describing how it "intends to use funds distributed to the State . . . to carry out the [NEVI Formula] Program for each fiscal year in which funds are made available." 135 Stat. at 1422. The statute does not authorize the Secretary to suspend or revoke approval of previously approved State Plans.

The IIJA also expressly limits Defendants' ability to withhold or withdraw NEVI funds from States. Specifically, the Secretary must distribute to each State its apportioned share of funds unless the State fails to timely submit a State Plan or the Secretary "determines a State has not taken action to carry out its [P]lan." *Id.* If the Secretary seeks to withhold or withdraw a State's funds because the State has not taken actions to carry out its Plan, the Secretary "shall notify the State, consult with the State, and identify actions that can be taken to rectify concerns, and provide at least 90 days for the State to rectify concerns and take action to carry out its [P]lan." *Id.* If, after that process, the Secretary still makes a determination that the State has not taken actions to carry out its Plan, the Secretary must give additional notice and an opportunity to be heard before withholding or withdrawing any funds: "[T]he Secretary shall provide notice to a State on the intent to withhold or withdraw funds not less than 60 days before withholding or withdrawing any funds, during which time the States shall have an opportunity to appeal a decision to withhold or withdraw funds directly to the Secretary." *Id.*

Further, the IIJA mandates an alternative path for distributing funds lawfully withheld or withdrawn from a State in a given fiscal year. In that instance, the Secretary will "award such funds on a competitive basis to local jurisdictions within the State for use on projects that meet the eligibility requirements." *Id.* If the Secretary cannot fully award these funds to local jurisdictions within the State, "any such funds remaining shall be distributed among other States . . . in the same manner as funds distributed for that fiscal year." *Id.* at 1422-23. In other words, the statute directs that NEVI funds must be distributed to support State or local

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT – NO. 2:25-CV-00848

3

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1    government EV charging infrastructure development to carry out the purpose of the NEVI

2    Program.

3        The IIJA also directs the Secretary to develop "guidance for States and localities to

4    strategically deploy electric vehicle charging infrastructure" consistent with the NEVI Formula

5    Program provisions of the IIJA ("NEVI Formula Program Guidance") within 90 days of the

6    law's enactment. *Id.* at 1423. The Federal Highway Administration ("FHWA" or "Agency")

7    issued NEVI Formula Program Guidance on February 10, 2022, Dkt. #115-2, at p.5, and has

8    updated the guidance annually. On August 11, 2025, FHWA issued interim final guidance that

9    purports to supersede all previous guidance documents with respect to the NEVI program.[1] The

10   interim final guidance confirms the IIJA appropriation of $5 billion for the NEVI Formula

11   Program for fiscal years 2022 through 2026 and its distribution among the States on a formula

12   basis. The interim final guidance purports to require all States, including those States whose

13   plans are in an approved status pursuant to this Court's PI Order, to submit within 30 days a

14   State Electric Vehicle Infrastructure Deployment Plan covering all unobligated funds,

15   including for fiscal years 2022-2025.

16   **B.    FHWA Approved States' Implementation Plans and Made Funds Available for**
          **Obligation**

17

18       Consistent with the IIJA, the deadlines established by the Secretary, and the NEVI

19   Formula Program Guidance, Plaintiff States prepared and submitted to the FHWA State

20   Electric Vehicle Infrastructure Deployment Plans for the first four fiscal years of the program.

21   *See* Dkt. #110 (Order on Motion for Preliminary Injunction), at pp.13-14 (collecting citations

22   to declarations in support of Motion for Preliminary Injunction); Carroll Decl. ¶6; Cownie

23   Decl. ¶6; Gray Decl. ¶5; Hildebrandt Decl. ¶9; Malik Decl. ¶7; Perchlik Decl., ¶10; Wieferich

24   Decl. ¶6. The FHWA approved the States' Plans and the approval letters stated that "[w]ith this

25
          ———————————
26       [1] U.S. Department of Transportation, Federal Highway Administration, National Electric Vehicle
     Infrastructure (NEVI) Program (Aug. 11, 2025), https://www.fhwa.dot.gov/environment/nevi/resources/NEVI-
     Interim-Final-Program-Guidance-8-11-2025.pdf.

1  approval, Fiscal Year . . . funds are now available to [each State] for obligation." *See, e.g.*, Dkt.

2  #1-7, at p.2; Cownie Decl. ¶7; Gray Decl. ¶6; Hildebrandt Decl. ¶10; Malik Decl. ¶8; *see also*

3  Transcript of June 17, 2025, Preliminary Injunction Oral Argument, 26:7-13. As of February 6,

4  2025, the FHWA made $3.27 billion available for obligation for fiscal years 2022 through

5  2025, including approximately $1.5 billion made available for obligation to Plaintiff States.

6  Dkt. #115-2, at p.118.

7  **C.    After President Trump Directed Elimination of an "Electric Vehicle Mandate,"
   FHWA Abruptly Revoked All State Plans and Categorically Withheld NEVI
8      Formula Program Funds, Harming Plaintiff States**

9      On January 20, 2025, President Trump issued an executive order entitled *Unleashing*

10  *American Energy*. Exec. Order No. 14,154, 90 Fed. Reg. 8353. Through this Executive Order,

11  the President ordered all agencies to "immediately pause the disbursement of funds

12  appropriated through . . . [the IIJA], including but not limited to funds for electric vehicle

13  charging stations made available through the National Electric Vehicle Infrastructure Formula

14  Program." *Id.* at 8357. The President further directed all agencies to "review their processes,

15  policies, and programs for issuing grants, loans, contracts, or any other financial disbursements

16  of such appropriated funds for consistency with the law and [the President's energy policy

17  priorities] outlined in section 2 of the [Executive Order]." *Id.* The President also ordered

18  agency heads to submit to the Directors of the Office of Management and Budget ("OMB")

19  and the National Economic Council a report detailing the agencies' review, including

20  "recommendations to enhance their alignment with [the President's energy policy priorities]

21  set forth in section 2." *Id.* The President told agencies not to disburse any funds appropriated

22  under the IIJA "until the Director of OMB and Assistant to the President for Economic Policy

23  have determined that such disbursements are consistent with any review recommendations they

24  have chosen to adopt." *Id.*

25      On February 6, 2025, the FHWA informed States it had rescinded the current NEVI

26  Formula Program Guidance and all prior versions. Dkt. #115-2, at p.124 ("FHWA Letter").

1   The FHWA Letter stated that the "new leadership" at the U.S. DOT had "decided to review the

2   policies underlying the implementation of the NEVI Formula Program" and that the "FHWA is

3   updating the NEVI Formula Program Guidance to align with current U.S. DOT policy and

4   priorities, including those set forth in DOT Order 2100.7."[2] *Id.*, 124-25. The letter also stated

5   that FHWA "aims to have [an] updated draft NEVI Formula Guidance published for public

6   comment in the spring" and that it would "publish updated final NEVI Formula Guidance that

7   responds to comments received" through a public comment period. *Id.*, 125. Finally, without

8   citing any statutory authority that would allow FHWA to categorically suspend or revoke

9   approval of every State Plan, the letter announced that "[a]s a result of the rescission of the

10  NEVI Formula Program Guidance, [the] FHWA is also immediately suspending the approval

11  of all State Electric Vehicle Infrastructure Deployment [P]lans for all fiscal years. Therefore,

12  effective immediately, no new obligations may occur under the NEVI Formula Program until

13  the updated final NEVI Formula Program Guidance is issued and new State [P]lans are

14  submitted and approved." *Id.*

15          On August 13, 2025, well after the timeframe indicated in the FHWA Letter, FHWA

16  provided notice and a request for comments on revised NEVI Formula Program Interim Final

17  Guidance. 90 Fed. Reg. 39025 (Aug. 13, 2025). Again, without citing any statutory authority

18  that would allow for the categorical suspension or revocation of past State Plan approvals, the

19  revised NEVI Formula Program Interim Final Guidance requires states to submit a plan

20  covering "all unobligated funding for fiscal years 2022-2026."[3]

21          Following the issuance of the FHWA Letter, Plaintiff States were not able to access

22  their apportioned NEVI funding. *See* Dkt. #5 (Plaintiffs' Motion for Preliminary Injunction), at

---

23          [2] U.S. Department of Transportation, Mission, DOT Orders, DOT Order 2100.7, "Ensuring Reliance
24  Upon Sound Economic Analysis in Department of Transportation Policies, Programs, and Activities" (Jan. 29,
     2025), https://www.transportation.gov/sites/dot.gov/files/2025-02/DOT_2100.7-
25  Ensuring_Reliance_Upon_Sound_Economic_Analysis_in_DOT_Policies.pdf.
             [3]U.S. Department of Transportation, Federal Highway Administration, National Electric Vehicle
26  Infrastructure (NEVI) Program (Aug. 11, 2025), https://www.fhwa.dot.gov/environment/nevi/resources/NEVI-
     Interim-Final-Program-Guidance-8-11-2025.pdf at 3.

p.20 (citing declarations demonstrating that the unavailability of NEVI funds prevents states from proceeding with solicitations and awarding funds to projects); Dkt. #12 (Hastings Decl.) ¶18; Dkt. #10 (Kelly Decl.) ¶¶11-13, 16; Dkt. #8 (Lam Decl.) ¶¶11-13; Carroll Decl. ¶¶10-12; Cownie Decl. ¶¶9, 15; Gray Decl. ¶15; Hildebrandt Decl. ¶¶15-16; Malik Decl. ¶19; Perchlik Decl. ¶19; Wieferich Decl. ¶¶ 13-14; *see also* Dkt. #110, at pp.55-56. Plaintiff States have demonstrated how the disruption in NEVI funding interfered with their ability to implement infrastructure projects set forth in their previously approved State Electric Vehicle Infrastructure Deployment Plans. Dkt. #110, at pp.19-30, 55-56 (discussing evidence submitted in support of Motion for Preliminary Injunction); Carroll Decl. ¶¶11-14; Cownie Decl. ¶¶16-17; Gray Decl. ¶¶16-17; Hildebrandt Decl. ¶¶16-17; Malik Decl. ¶¶20-24; Perchlik Decl. ¶¶20-22; Wieferich Decl. ¶¶16-18. The sudden unavailability of NEVI funds also interfered with Plaintiff States' ability to budget, plan for the future, and properly serve their residents. Dkt. #110 at p.59. In addition, Plaintiff States have provided evidence demonstrating the administrative burdens resulting from Defendants' categorical revocation of their previously approved State Plans. *See* Dkt. #5 at pp.23-24; Dkt. #110 at pp.59-60; *see also* Cownie Decl. ¶16; Gray Decl. ¶¶12-13, 16-17; Hildebrandt Decl. ¶17; Malik Decl. ¶¶20, 24; Perchlik Decl. ¶20.

Plaintiff States filed their Complaint and Motion for Preliminary Injunction on May 7, 2025. The Court heard oral argument from the Parties on June 17, 2025. The Court granted Plaintiff States' motion except as to those States that had not filed a declaration. Dkt. #110, at pp.62-63. On August 1, 2025, Plaintiff States filed an amended complaint adding Michigan, North Carolina, the Office of the Governor of the Commonwealth of Kentucky, and the Governor of the Commonwealth of Pennsylvania as Plaintiffs. Dkt. #124. Accompanying this Motion, Plaintiff States submit declarations from officials in Kentucky, Michigan, Minnesota, North Carolina, Pennsylvania, Vermont, and the District of Columbia setting forth those Plaintiffs' specific injuries resulting from Defendant's actions. *See generally* Carroll Decl.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT – NO. 2:25-CV-00848                    7          ATTORNEY GENERAL OF WASHINGTON
                                                              Environmental Protection Division
                                                              800 Fifth Avenue STE 2000
                                                              Seattle, WA 98104
                                                              206-464-7744

1   (Pennsylvania); Cownie Decl. (Minnesota); Gray Decl. (Kentucky); Hildebrandt Decl. (North

2   Carolina); Malik Decl. (District of Columbia); Perchlik Decl. (Vermont); Wieferich Decl.

3   (Michigan).

### III.    STANDARD OF REVIEW

5           Courts may resolve APA challenges through summary judgment. *Raj & Co. v. U.S.*

6   *Citizenship & Immigr. Servs.*, 85 F. Supp. 3d 1241, 1244 (W.D. Wash. 2015). Summary

7   judgment is proper where "the movant shows that there is no genuine dispute as to any material

8   fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson*

9   *v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). Viewing disputed facts in a light most

10  favorable to the non-moving party, a fact is material if it would affect the outcome under

11  governing law. *Id.* at 247-48.

12          In an APA case, judicial review of an agency action is confined to the administrative

13  record. *National Association of Home Builders v. Norton,* 340 F.3d 835, 841 (9th Cir.2003).

14  "The function of the district court on summary judgment is consequently 'to determine

15  whether or not as a matter of law the evidence in the administrative record permitted the

16  agency to make the decision it did.'" *Raj & Co.*, 85 F. Supp. 3d at 1244–45 (quoting

17  *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985)). For non-APA claims, the

18  summary judgment movant bears the initial burden of demonstrating the absence of a genuine

19  issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1990). Although the nonmoving

20  party need not show that the disputed issue should be resolved in its favor, it must demonstrate

21  that there are genuine factual issues that "properly can be resolved only by a finder of fact

22  because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby,*

23  *Inc.*, 477 U.S. at 250.

24   / / /

25   / / /

26   / / /

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT – NO. 2:25-CV-00848

8

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

# IV.    ARGUMENT

## A.    Plaintiff States' Claims are Appropriate for Resolution on Summary Judgment

### 1.    Plaintiffs have suffered injuries establishing ripeness and standing

The ripeness doctrine exists to prevent courts "from entangling themselves in abstract disagreements over administrative policies," to "protect the agencies from judicial interference until an administrative decision has been formalized," and to avoid such judicial review until "its effects [are] felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)). The issues presented in this case satisfy both constitutional and prudential ripeness, because they are "definite and concrete, not hypothetical or abstract," and "withholding court consideration" would cause "hardship" to Plaintiff States. *Bishop Paiute Tribe v. Inyo County*, 863 F.3d 1144, 1153-54 (9th Cir. 2017).

Here, as the Court has found, the record makes clear that the practical effect of Defendants' actions was to halt the NEVI program, depriving Plaintiff States of expected and relied-upon funding. Dkt. #110, at pp.18-19. The FHWA Letter announced a final decision to revoke the States' previously approved State Plans and the related decision to cease all new NEVI Program obligations.. Dkt. #115-2, at pp.120-21. This had immediate, definite, and concrete effects on Plaintiff States. Prior to the FHWA Letter, Plaintiff States were able to obligate their NEVI funds as directed by the IIJA; after the Letter, they could not, resulting in an injury-in-fact. Dkt. #110, at pp.31-32 (citing *City and County of San Franciso*, 897 F.3d at 1235).

Next, although Defendants have issued revised NEVI Formula Program Interim Final Guidance, 90 Fed. Reg. 39025 (Aug. 13, 2025), neither the issuance of that guidance nor any ongoing guidance process is relevant to the ripeness analysis. Plaintiff States' injuries stem from Defendants' illegal revocation of State Plan approvals and the withholding of NEVI funds appropriated and previously made available to States for obligation. Any process

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT – NO. 2:25-CV-00848                    9                    ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1    Defendants are undertaking to update guidance has no bearing on the legality or illegality of

2    these actions, legal issues the Court can resolve without additional factual development. Dkt.

3    #110, at p.33; *see also Nat'l Park Hosp. Ass'n v. Dep't of Interio*r, 538 U.S. 803, 812 (2003).

4        For the same reasons, all Plaintiff States have established standing. *See Ass'n of*

5    *Irritated Residents v. U.S. Env't Prot. Agency*, 10 F.4th 937, 944 (9th Cir. 2021) (citations

6    omitted) (because the constitutional component of ripeness overlaps with the injury in fact

7    analysis for Article III standing, both inquiries are largely the same). As the Court found in

8    issuing a preliminary injunction, Plaintiff States have standing because Defendants blocked

9    their access to NEVI funds to which they were entitled. Dkt. #110, at pp.31-32. In addition, all

10   Plaintiff States have submitted evidence of their injuries resulting from Defendants'

11   withholding of expected funding that disrupted planned, and often partially completed,

12   infrastructure projects. *See* Dkt. #110, at pp.19-30 (detailing the state-specific evidence

13   submitted with Plaintiff States' Motion for Preliminary Injunction); Carroll Decl. ¶¶10-14;

14   Cownie Decl. ¶¶15-17; Gray Decl. ¶¶14-18; Hildebrandt Decl. ¶¶13, 16-17; Malik Decl. ¶¶19-

15   24; Perchlik Decl. ¶¶19-22; Wieferich Decl. ¶¶14-18.

16       **2.    Defendants took final agency action**

17       As this Court properly found in its PI order, Dkt. #110, at p.34, Defendants' actions

18   satisfy both conditions of "final agency action": first, "the action [marks] the consummation of

19   the agency's decisionmaking process"; and second, "the action [is] one by which 'rights or

20   obligations have been determined,' or from which legal consequences will flow." *Bennett v.*

21   *Spear*, 520 U.S. 154, 177-178 (1997). In determining whether an agency action was final,

22   courts consider factors "such as whether the action amounts to a definitive statement of the

23   agency's position, whether it has a direct and immediate effect on the day-to-day operations of

24   the subject party, and if immediate compliance . . . is expected." *Prutehi Litekyan: Save*

25   *Ritidian v. U.S. Dep't of the Airforce*, 128 F.4th 1089, 1108 (9th Cir. 2025) (quoting *Nat'l Lab.*

26   *Rels. Bd. v. Siren Retail Corp.*, 99 F.4th 1118, 1123 (9th Cir. 2024)). Finality is interpreted "in

1    a pragmatic and flexible manner," "focus[ing] on the practical and legal effects of the agency

2    action." *Saliba v. U.S. Sec. & Exch. Comm'n*, 47 F.4th 961, 967 (9th Cir. 2022).

         **a.**     **Defendants' actions mark the consummation of the agency's decisionmaking process**

5    Defendants' actions represent the endpoint of their decisionmaking regarding the

6    previously approved State Plans and the States' ability to obligate NEVI funds made available

7    as a result of those approvals. Defendants are not "still in the middle of trying to figure out

8    [their] position" with respect to these plans or funds; rather, they have definitively revoked

9    their State Plan approvals and definitively prohibited the obligations of funds made available

10    as a result of those approvals. *Prutehi Litekyan: Save Ritidian v. U.S. Dep't of the Airforce*,

11    128 F.4th 1089, 1109 (9th Cir. 2025). Having taken this "definitive position," Defendants "put

12    [that position] into effect" by issuing the FHWA Letter. O*regon Nat. Desert Ass'n v. U.S.*

13    *Forest Serv.*, 465 F.3d 977, 984-85 (9th Cir. 2006).

14    The issuance of the interim final guidance bears no relation to the finality of

15    Defendants' challenged actions. Any new guidance, and any future State Plans related to that

16    guidance, are irrelevant to the fact that Defendants' decisionmaking is complete with regard to

17    the previously approved State Plans and States' receipt of funds made available under those

18    Plan approvals.

19    Defendants' actions are even more obviously final than the withholding of funds on an

20    allegedly temporary basis—which courts have repeatedly found constitutes final agency action.

21    *Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*, 778 F. Supp. 3d 440, 467-

22    69 (D.R.I. Apr. 15, 2025); *New York v. Trump*, 769 F. Supp. 3d 119, 135-37 (D.R.I. 2025);

23    *Nat'l Council of Nonprofits v. Off. Of Mgmt. & Budget*, 775 F. Supp. 3d 100, 123-24 (D.D.C.

24    2025). Here, Defendants went beyond instituting an allegedly temporary funding freeze; they

25    revoked approval of Plaintiffs' State Plans with no prospect of revisiting that decision and will

26    not allow Plaintiffs to obligate funds until an entirely new series of agency actions—the

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT – NO. 2:25-CV-00848

11

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1  issuance of new guidance and the approval of new State Plans—has taken place. *See* Dkt.

2  #115-2 at p.121 (FHWA Letter at 2) ("[N]o new obligations may occur under the NEVI

3  Formula Program until the updated final NEVI Formula Program Guidance is issued and new

4  State plans are submitted and approved.").

5          **b.  Legal consequences have flowed from, and rights and obligations**
           **have been determined by, Defendants' actions**

6

7          The legal consequences of Defendants' actions are stated in the FHWA Letter itself:

8  "effective immediately" upon issuance of the letter, States were denied access to the vast

9  majority of statutorily mandated—and available—funds.  Dkt. #115-2 at p.121 (FHWA Letter

10  at 2). Further, under the terms of the Letter, States would necessarily have to take further

11  action to access their funding despite having already complied with the statute's minimal

12  requirements.  *Id*; *see also* Dkt. #28, Meredith Decl. at ¶ 39 (describing the cost and burden of

13  developing new State Plans).

14          In addition, Defendants' actions have yielded a "direct and immediate . . . effect on

15  [Plaintiffs'] day-to-day business." *Oregon Nat. Desert Ass'n*, 465 U.S. at 987; *see S. Cal. All.*

16  *Of Publicly Owned Treatment Works v. U.S. Env't Prot. Agency*, 8 F.4th 831, 836 (9th Cir.

17  2021) ("Courts must 'make Bennett prong-two determinations based on the concrete

18  consequences an agency action has or does not have.'"). Before February 6, about $1.5 billion

19  was available for the States to obligate for NEVI projects; after February 6, that number

20  dropped to zero. *See* Dkt. #1-8, Exhibit C. This loss of funds has caused consequences,

21  including the cancellation of an already-prepared solicitation for EV charging stations

22  (Dkt. #11, Ward Decl. ¶19); the inability to execute already-awarded contracts (Dkt. #17, Patel

23  Decl. ¶19); the inability to hire a planned full-time employee (Dkt. #28, Meredith Decl. ¶37);

24  and, as of June 3, 2025, 21 out of 58 host sites in California refusing to sign agreements with

25  awardees (Dkt. #100, O'Dea Decl. ¶6; *see also* Dkt. #5, at pp.18-22; Dkt. #99 (Plaintiffs'

26  Reply in Support of Motion for Preliminary Injunction), at 10-12 [collecting evidence of

1   harm]). Because Defendants' actions have these and other "direct and appreciable legal

2   consequences," and because they represent the consummation of Defendants' decisionmaking

3   process, they represent "final agency action" that is reviewable under the APA. *Bennett*, 520

4   U.S. at 178; *see also* 5 U.S.C. § 704.

5   **B.**     **Plaintiffs Are Entitled to Summary Judgment on their APA and *Ultra Vires* Claims**

6            **1.**     **Defendants' actions were in excess of statutory authority**

7            By unilaterally revoking all State Plans and withholding congressionally mandated

8   funding, Defendants acted in excess of their statutory authority and contrary to the IIJA.

9   "Administrative agencies are creatures of statute. They accordingly possess only the authority

10  that Congress has provided." *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety*

11  *& Health Admin.*, 595 U.S. 109, 117 (2022). Under the APA, a court "shall . . . hold unlawful

12  and set aside agency action, findings, and conclusions found to be . . . in excess of statutory

13  jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

14  Through the IIJA, Congress has set forth "clear statutory instructions" for the distribution of

15  NEVI funds and mandated that these funds be made available to the States until expended. *See*

16  Dkt. #110 at p.41. Nothing in the paltry administrative record filed by Defendants justifies

17  their departure from these clear instructions. Nor does the IIJA, or any other federal law,

18  authorize Defendants to revoke all State Plans and categorically withhold NEVI funding.

19  Because Defendants' actions contravene the IIJA's clear statutory commands, Plaintiff States

20  are entitled to summary judgment both on their APA claim that Defendants acted in excess of

21  statutory authority and on their *ultra vires* common law claim on the same grounds.

22            **a.**     **Defendants lack authority to withhold funds for reasons not set forth**

23                          **in the IIJA**

24            The statutory language of the IIJA is "straightforward," "with no room to improvise."

25  Dtk. #110, at pp.40, 41. It "obligates Defendants to distribute the NEVI Formula funds,"

26  specifying precisely "how much, to whom, and for what purpose." *Id*. In the IIJA, Congress

1    mandated that $5 billion, "to remain available until expended for amounts made available for

2    each of fiscal years 2022 through 2026, **shall** be to carry out" the NEVI Formula Program.

3    135 Stat. at 1421-22 (emphasis added). Congress limited Executive discretion by providing

4    that the Secretary "**shall** distribute among the States the [NEVI funds] so that each State

5    receives" the amount determined by the formula. *Id*. at 1422 (emphasis added). Thus, the IIJA

6    contains a clear and affirmative expression of congressional intent that the NEVI funds

7    appropriated to the States be made available for obligation.

8         Indeed, Congress restricted Defendants' ability to "withhold or withdraw" a State's

9    share of NEVI funding to two narrow circumstances, neither of which apply here. *See id.*

10   Under the IIJA, Defendants may withhold or withdraw NEVI funds only if (1) a State fails to

11   timely submit a State Plan, or (2) a State "has not taken actions to carry out its plan." *Id*.

12   Congress also set strict parameters on the exercise of this power, including compliance with

13   "substantial procedural requirements," such as notice, consultation, and a right to appeal.

14   Dkt. #11, at pp.9-10. And, in the limited circumstances where a State's NEVI funding is

15   lawfully withdrawn or withheld, Congress requires the Secretary to redistribute those funds to

16   local jurisdictions within the same State, or to other States, for the same fiscal year, and for the

17   same purpose of building out EV charging infrastructure. 135 Stat. at 1422-23. Recently, the

18   Government Accountability Office ("GAO"), a nonpartisan congressional watchdog agency,

19   reviewed the statutory authority for the NEVI program and confirmed that, "unless the

20   Secretary invokes the authority in IIJA to withhold or withdraw funds therefor, such funds are

21   directed by IIJA to the states." Dkt. #101-1, Ex. 1 ("GAO Report"), at p.16. "In short, the

22   statute requires that NEVI Formula funds will be spent by someone, somewhere, on EV

23   infrastructure." Dkt. #110, at p.10.

24        Given this carefully circumscribed statutory scheme, Defendants lack the discretionary

25   authority to categorically withhold funds for reasons not set forth in the IIJA. "Federal

26   agencies and departments can spend, award, or suspend money based only on the power

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT – NO. 2:25-CV-00848                    14            ATTORNEY GENERAL OF WASHINGTON
                                                             Environmental Protection Division
                                                             800 Fifth Avenue STE 2000
                                                             Seattle, WA 98104
                                                             206-464-7744

1  Congress has given to them—they have no other spending power." *New York v. Trump*, 769 F.

2  Supp. 3d 119, 119 (D.R.I. Mar. 6, 2025), *stay pending appeal denied*, 133 F.4th 51 (1st Cir.

3  2025)). Defendants' imposition of a sweeping freeze of all unobligated NEVI funding violates

4  the APA because it exceeds the limits of their authority and is contrary to the IIJA.

5  **b.    Defendants lack authority to revoke State Plans, or to categorically withhold NEVI funds on the basis of revoked State Plans**

6

7  Similarly, Defendants lack the authority to take *post hoc* actions categorically revoking

8  State Plans. There exists "no authority for suspending State Plans in the statutory text (or

9  caselaw)." Dkt. #110, at p.42. But even if there were, the IIJA entitles States to their full share

10  of NEVI funding for a given fiscal year, so long as States properly and timely submit their

11  Plans for that year. *See* 135 Stat. at 1422. The IIJA grants ministerial approval authority only to

12  ensure the State Plans are "in such form and in such manner" as the Secretary requires. *Id.* This

13  language simply "authorizes the Secretary to dictate the information included in the plan and

14  the deadline for submission." GAO Report p. 10. It does not give Defendants license to

15  withhold NEVI funds when State Plans have been properly and timely submitted, or to

16  otherwise exercise discretionary approval authority. *See id.* ("IIJA does not include a

17  discretionary approval provision."). Here, Plaintiff States each submitted compliant Plans by

18  the deadline established by the Secretary. *See* Dkt. #110, at pp.13-14 (collecting citations to

19  declarations in support of Motion for Preliminary Injunction); Carroll Decl. ¶6; Cownie Decl.

20  ¶6; Gray Decl. ¶5; Hildebrandt Decl. ¶9; Malik Decl. ¶7; Perchlik Decl., ¶10; Wieferich Decl.

21  ¶6. Nothing in the IIJA authorizes Defendants to revoke State Plans once they are submitted

22  and finalized, much less to withhold congressionally appropriated NEVI funding on this basis.

23  Nor does the decision to revise NEVI guidance justify revocation of State Plan

24  approvals or a categorical withholding of funds. The IIJA does not tether the State Plans' legal

25  force to the guidance in effect at the time the Plans were submitted. The NEVI guidance is

26  simply guidance, not binding regulation that governs the viability of State Plans. Defendants'

position further presumes that guidance must be rescinded before it can be revised. Dkt. #110, at p.42. But when FHWA previously updated the guidance, the new guidance superseded the guidance it replaced, and only new State Plans were expected to conform to the new guidance. *Id*. at 42-43 (citing Dkt. #93-1 at p.81); *see also* Dkt. #115-2, at pp.39-40, 77-78. FHWA did not revoke prior Plans or cancel projects under those Plans. *Id*. at 43. Moreover, Defendants' decision to rescind current NEVI guidance does not imply the much broader authority to retroactively revoke all State Plans and to categorically withhold NEVI funding. Such a result would exceed Defendants' limited authority under the IIJA: "The language of the statute . . . is straightforward. It obligates Defendants to distribute the NEVI Formula funds . . . It does not permit a categorical freeze premised on the Department of Transportation's realignment with new executive policies, and it does not contemplate the Secretary's revocation of State Plans that FHWA has already approved." Dkt. #110, at p.41.

Defendants may argue that the funding freeze is merely a brief suspension, rather than a dereliction of clear statutory duties. Dkt. #110, at p.43. Yet the current funding "suspension" is neither routine nor brief. The President directed Defendants to "immediately pause the disbursement of funds . . . made available through the [NEVI] Formula Program." Exec. Order No. 14,154, 90 Fed. Reg. 8353, 8357 (Jan. 20, 2025). This is no routine suspension, as Defendants' interim final guidance makes clear that the "suspension" will only end if State Plans are submitted and approved.[4] Defendants have no authority to withhold funds on this basis. And far from brief, under the Defendants' own telling, the "suspension" will last until after the preparation and approval of new State Plans. Dkt. #115-2, at p.121. Such a result contravenes the IIJA's clear statutory command to make NEVI funding available for obligation to the States for each of fiscal years 2022 through 2025. *See* 135 Stat. at 1421-22.

---

[4] U.S. Department of Transportation, Federal Highway Administration, National Electric Vehicle Infrastructure (NEVI) Program (Aug. 11, 2025), https://www.fhwa.dot.gov/environment/nevi/resources/NEVI-Interim-Final-Program-Guidance-8-11-2025.pdf at 3.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT – NO. 2:25-CV-00848                    16                    ATTORNEY GENERAL OF WASHINGTON
                                                                     Environmental Protection Division
                                                                     800 Fifth Avenue STE 2000
                                                                     Seattle, WA 98104
                                                                     206-464-7744

1

    **c.  Defendants' actions violate common law *ultra vires* doctrine**

2

   Agency action taken in excess of legal authority is *ultra vires*. *See United States v.*

3

*Yakima Tribal Ct.*, 806 F.2d 853, 859 (9th Cir. 1986). Plaintiffs are entitled to summary

4

judgment on their *ultra vires* common law claim on the same basis as set forth above.[5]

5

Defendants' actions to categorically revoke all State Plan approvals and to categorically

6

withhold or withdraw NEVI funds exceed their statutory authority, and therefore violate the

7

common law *ultra vires* doctrine.

8

    **d.  Defendants' actions were arbitrary and capricious**

9

   To survive arbitrary-and-capricious review, agency actions must be "reasonable and

10

reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). An

11

agency action is arbitrary and capricious where "the agency has relied on factors which

12

Congress has not intended it to consider, entirely failed to consider an important aspect of the

13

problem, offered an explanation for its decision that runs counter to the evidence before the

14

agency, or is so implausible that it could not be ascribed to a difference in view or the product

15

of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,

16

463 U.S. 29, 43 (1983). When an agency changes an existing policy, its reasoned analysis must

17

consider any "serious reliance interests" engendered by the existing policy and "alternatives

18

that are within the ambit of the existing policy." *Dep't of Homeland Sec. v. Regents of the*

19

*Univ. of Cal.*, 591 U.S. 1, 30 (2020) (internal quotations and brackets omitted). The paltry

20

reasoning Defendants offered in the FHWA Letter does not meet this standard. Defendants

21

acted arbitrarily and capriciously because they did not adequately explain their actions, relied

22

on factors Congress didn't intend for them to consider, and entirely failed to consider reliance

23

interests or alternatives.

24

25

   [5] The Court need not reach Plaintiffs' common law *ultra vires* claim, however, if it finds that Plaintiffs

26

are entitled to summary judgment on their claim under the APA that Defendants' actions were in excess of authority.

PLAINTIFFS' MOTION FOR SUMMARY   17   ATTORNEY GENERAL OF WASHINGTON
JUDGMENT – NO. 2:25-CV-00848       Environmental Protection Division
                   800 Fifth Avenue STE 2000
                   Seattle, WA 98104
                   206-464-7744

1    The only reasoning Defendants can point to for the sweeping revocation of all State

2    Plan approvals for all fiscal years and the categorical withholding of NEVI funds is an

3    unfounded assertion in the FHWA Letter that these actions are necessary "as a result of the

4    recission of" the NEVI Guidance, which FHWA is updating "to align with current U.S. DOT

5    policy and priorities, including those set forth in DOT Order 2100.7 . . . ." Dkt. #115-2, at

6    pp.120-21. Defendants' reasoning is inadequate in multiple respects.

7        First, the FHWA Letter does not reasonably explain Defendants' actions. Defendants

8    offer no explanation for how the policies in DOT Order 2100.7 could be relevant to

9    implementing a formula funding program that Congress established for a very specific purpose

10   and that is subject to precise directives. 135 Stat. at 1422-3. The FHWA Letter insinuates that

11   the existing Guidance is out of alignment with "current U.S. DOT policy and priorities," but

12   never explains how or why that requires the Guidance to be revised. *See* Dkt. #110, at pp.47-48

13   ("It is not evident that FHWA considered relevant factors that informed its decision" and the

14   FHWA Letter "does not explain . . . why [the Guidance] needs to be rescinded.") Moreover,

15   even if it were reasonable to revise the Guidance to align with new policy priorities, the Letter

16   does not explain how those possible revisions warrant the retroactive revocation of all State

17   Plan approvals and the categorical withholding of funds from obligation. *See State Farm*, 463

18   U.S. at 43 (an agency flunks the "reasoned decisionmaking" test when it has failed to draw a

19   "rational connection" between the problem it has identified and the solution it has chosen).

20   Changed Executive Branch priorities cannot alter the Federal aid highway formula that

21   determines States' apportionments, *see* 135 Stat. at 1422, nor can changed priorities provide

22   any grounds to withhold or withdraw statutorily mandated funds from States. *See id.* There is

23   therefore no reasonable explanation provided in the FHWA Letter, or even possible under the

24   law, for Defendants' sudden and categorical revocation of State Plan approvals and

25   withholding of funds.

26

1    Defendants cannot correct this flaw by asserting that "it was reasonable to pause the

2  obligation of future funds for a short time while ensuring that the guidance comports with

3  statutory and policy requirements." Dkt. #93 (Defendants' Opposition to Plaintiffs' Motion for

4  Preliminary Injunction), at p.2. This reasoning glosses over the fact that Defendants not only

5  "paused" funding to review guidance, but also disapproved State Plans and will require States

6  to prepare new ones. Dkt. #115-2, at p.121. Further, this rationale does not grapple with

7  "important aspect[s] of the problem," *State Farm*, 463 U.S. at 43, such as the practical

8  consequences of requiring states to revisit and resubmit State Plans that had already been

9  approved, all while funds are held hostage and industry loses confidence in the program.

10  Defendants' explanation cannot justify their actions. *See Nat'l Council of Nonprofits v. OMB*,

11  775 F. Supp. 3d 100, 124-25 (D.D.C. Feb. 25, 2025).

12    Second, Defendants have relied on factors Congress did not intend them to consider.

13  *State Farm*, 463 U.S. at 43. Defendants tied the revocation of State Plans and withholding of

14  funds to the rescission and reformation of NEVI Guidance to account for changing "policy and

15  priorities." Dkt. #115-2, at pp.120-21. However, the IIJA does not give Defendants discretion

16  to approve or reject State Plans, much less revoke previously approved State Plans, on the

17  basis of rescinding program Guidance. *See* 135 Stat. at 1422. Nor does the IIJA allow

18  Defendants to withhold funds outside the process specified in the statute. *See id.* Any Guidance

19  updates to account for shifting policies[6] cannot rewrite the IIJA to provide Defendants

20  authority to revoke State Plans or to justify their actions to do so.

21 _____

22    [6] Defendants have argued that policy considerations may be incorporated into the Guidance because the IIJA allows the Secretary of Transportation to consider "any other factors, as determined by the Secretary" when developing Guidance. Transcript of June 17, 2025, Preliminary Injunction Oral

23  Argument, 33:25-34:1 (citing 135 Stat. at 1423). But this does not explain how revisions to the Guidance could allow FHWA to disapprove State Plans and withhold funding obligations. Moreover, the policies listed in DOT Order 2100.7 do not properly fall within the ambit of the "other factors" that

24  may be considered. 135 Stat. at 1423. The purpose of the Guidance is to help States and localities

25  "strategically deploy electric vehicle charging infrastructure, consistent with this paragraph in this Act." 135 Stat. at 1422. Therefore, the Guidance must assist States in advancing the NEVI Formula

26  Program's purpose and building the EV charging infrastructure for which Congress designated funds.

1    Third, Defendants transparently did not consider the "serious reliance interests" of

2    Plaintiff States under their existing policy. *Regents*, 591 U.S. at 30; Dkt. #110, at p.48 (the

3    FHWA Letter was "completely silent" as to any reliance interests). Defendants had a

4    longstanding existing policy of faithfully disbursing statutorily mandated and apportioned

5    NEVI funds: Defendants approved State Plans each year with a statement that funds for that

6    fiscal year were available for obligation, *see, e.g.*, Meredith Decl., Dkt. #28 ¶¶24-25 & 28-1

7    (Exs. 4-6, pp. 173-181), and States were able to obligate those funds without issue, *see, e.g.*,

8    Shishido Decl., Dkt. #13 ¶12; Nelson Decl., Dkt. #20 ¶16. Plaintiff States made significant

9    investments in reliance on that policy. Plaintiff States developed State Plans, Dkt. #5 at 4

10   (summarizing declarations), and they ran solicitations and entered into binding awards based

11   on the availability of apportioned, but not-yet-obligated, funds, *id.* at 19 (same); *see also*

12   *Advance Construction of Federal-Aid Projects*, 73 Fed. Reg. 50194 (Aug. 26, 2008) (states

13   may utilize the Advanced Construction process to approve projects prior to obligating their

14   apportioned funds). When Defendants changed their policy to revoke previously approved

15   State Plans and categorically withhold funding, they did not consider how this drastic change

16   would hamper the NEVI Program. *See generally* Dkt. #115-2, at pp.120-21. For example,

17   Defendants' actions prevented States from proceeding with solicitations to award funds and

18   have increased the costs of or altogether scuttled already-awarded projects, all making it harder

19   for Plaintiff States to successfully implement their State Plans. Dkt. #5, at pp.20-21 (collecting

20   and summarizing declarations). This failure independently rendered Defendants' actions

21   arbitrary and capricious. *See*, *e.g.*, *AIDS Vaccine Advocacy Coal. v. U.S. Dep't of State*, 766 F.

22

23   The "other factors" that can influence the Guidance follow more specific terms, so must be similar in

24   kind—*i.e.*, related to the "strategic[] deploy[ment]" of EV charging infrastructure. *Norfolk & Western R. Co. v. Train Dispatchers*, 499 U.S. 117, 129 (1991). The policies in DOT Order 2100.7 do not relate

25   to deployment of EV charging infrastructure. By Defendants' own admission, "local compliance or cooperation with Federal immigration enforcement" has nothing to do with administration of the NEVI

26   Formula Program. Transcript of June 17, 2025, Preliminary Injunction Oral Argument, 35:17. Nor do "vaccine and mask mandates" or "marriage and birth rates." DOT Order 2100.7, Dkt. #1-10 at § 5(f).

1  Supp. 3d 74, 82-83 (D.D.C. 2025) (agency arbitrarily failed to consider reliance interests of

2  plaintiffs that would have to shutter programs or furlough staff due to funding suspension).

3          Fourth, as with reliance interests, Defendants never mentioned, let alone considered,

4  alternatives to revoking all State Plans for all fiscal years and categorically withholding NEVI

5  funds. Dkt. #110, at p.48 (the FHWA Letter did not demonstrate consideration of "any

6  alternatives beyond the wholesale rescission of the guidance and revocation of the State

7  Plans."); *see also* Dkt #115-2, at pp.120-21. Defendants' decision was especially inexplicable

8  because the FHWA Letter left unaddressed an obvious alternative "within the ambit of the

9  existing" policy, *Regents*, 591 U.S. at 30: leaving approved State Plans in place and continuing

10 to obligate apportioned funds while revising the Guidance for future State Plan submissions.

11 This is the process FHWA previously followed when it updated guidance: only new State

12 Plans were expected to conform to new guidance. S*ee, e.g.*, Dkt. #115-2, at pp.39-40, 77-78.

13 This alternative would have enabled Defendants to carry out their stated objective of

14 "review[ing] the policies underlying the implementation" of the program, Dkt. #115-2, at

15 p.120, without revoking approvals and withholding funds.

16          **e.      Defendants acted "without observance of procedure required by law"**
                   **and "not in accordance with law"**
17

18          Defendants' actions further violate the APA because Defendants failed to observe the

19 procedural safeguards required by law. *See* 5 U.S.C. § 706(2)(D) (prohibiting agency action

20 taken "without observance of procedure required by law").  The APA also prohibits agency

21 action "not in accordance with law." *Id*. § 706(2)(A). Under the APA, "review of an agency's

22 procedural compliance is exacting." *See Kern Cnty. Farm Bureau v. Allen*, 450 F.3d 1072,

23 1076 (9th Cir. 2006).  As set forth above, the IIJA has specific procedures for the withholding

24 or withdrawal of NEVI funds. Defendants failed to follow these procedures.

25

26

1    **2.    Defendants' failure to follow the IIJA's statutory mandate violates the
      separation of powers and the Take Care Clause[7]**

2

3    Defendants' actions to categorically withhold NEVI funds, contrary to statutory

4    direction, violate bedrock separation-of-powers principles and the Take Care Clause. "The

5    President's power, if any . . . must stem either from an act of Congress or from the Constitution

6    itself." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952) (Jackson, J.,

7    concurring). Neither the IIJA nor the Constitution authorize Defendants to categorically

8    withhold from the States NEVI funds expressly appropriated to be allocated according to a

9    specific statutory formula. Instead, the IIJA expressly directs Defendants to distribute those

10   funds, and their failure to do so violates the statute, the Take Care Clause and thus the

11   separation-of-powers doctrine.

12   Article I of the Constitution vests the federal spending power exclusively in Congress.

13   *See* U.S. Const. art. I, § 8, cl. 1. The Executive Branch has no authority to withhold or

14   condition congressionally-mandated funds, except where Congress provides it. Instead, the

15   Executive has a corresponding obligation to "take Care that the Laws be faithfully executed."

16   U.S. Const. art. II, § 3. And "[b]ecause Congress's legislative power is inextricable from its

17   spending power, the President's duty to enforce the laws necessarily extends to

18   appropriations." *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1234 (9th Cir. 2018).

19   As the Ninth Circuit has instructed, Justice Robert Jackson's *Youngstown* concurrence

20   provides the operative test in the spending context:

21       When the President takes measures incompatible with the expressed or implied
         will of Congress, his power is at its lowest ebb, for then he can rely only upon

22       his own constitutional powers minus any constitutional powers of Congress
         over the matter. Courts can sustain exclusive presidential control in such a case

23       only by disabling the Congress from acting upon the subject. Presidential claim

---

24   [7] This Court need not reach Plaintiffs' constitutional arguments should it rule in favor of Plaintiffs'
     APA claims. "A fundamental and longstanding principle of judicial restraint requires that courts avoid

25   reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Nw. Indian
     Cemetery Protective Ass'n*, 485 U.S. 439, 443 (1988).

26

1  to a power at once so conclusive and preclusive must be scrutinized with
2  caution, for what is at stake is the equilibrium established by our constitutional
   system.

3  *City & Cnty. of San Francisco*, 897 F.3d at 1233 (quoting *Youngstown*, 343 U.S. at 637-38

4  (Jackson, J., concurring)).

5      In *City and County of San Francisco*, the Ninth Circuit held that "because Congress has

6  the exclusive power to spend and has not delegated authority to the Executive . . . , the

7  President's 'power is at its lowest ebb,'" and that "when it comes to spending, the

8  President has none of 'his own constitutional powers' to 'rely' upon." *Id.* at 1233-34 (quoting

9  *Youngstown* 343 U.S. at 637). The court thus concluded that "[a]bsent congressional

10  authorization, the Administration may not redistribute or withhold properly appropriated funds

11  in order to effectuate its own policy goals." *Id.* at 1235. Courts across the country have since

12  found repeatedly that similar efforts by the Executive Branch to interfere with Congress's

13  spending power were likely unconstitutional. *See, e.g.*, *City & County of San Francisco v.

14  Trump*, 779 F. Supp. 3d 1077, 1082 (N.D. Cal. Apr. 24, 2025) (plaintiffs likely to prevail in

15  demonstrating that the Trump administration violated separation of powers in withholding

16  federal funding); *Martin Luther King, Jr. Cnty. v. Turner*, No. 2:25-CV-814, 2025 WL

17  1582368, at *15 (W.D. Wash. June 3, 2025) (plaintiffs likely to succeed on claim that DOT's

18  imposition of conditions on DOT funding violated separation of powers); *Washington v.

19  Trump*, 768 F. Supp. 3d 1239, 1262-63 (W.D. Wash. Feb. 28, 2025) (plaintiffs likely to

20  succeed on merits of argument that executive orders barring the receipt of federal funds to

21  medical institutions that provide gender-affirming care to youth violated constitutional

22  separation-of-powers principles).

23      Here, Defendants' actions violate separation of powers and the Take Care Clause.

24  Congress provided a clear mandate to Defendants in passing the IIJA: So long as states meet

25  the program requirements explicitly set forth in the IIJA—as Plaintiff States have all done

26  here—Defendants must distribute NEVI funds in accordance with the statute's carefully

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT – NO. 2:25-CV-00848

23

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

prescribed formula. *See* 135 Stat. at 1422. The IIJA sets out exclusive circumstances under which Defendants may withhold funds—none of which are present here—leaving Defendants no discretion to interfere with the statutorily established funding scheme. *Id.* But Defendants directly contravened Congress's direction, categorically withholding NEVI funds from the States based solely on their unlawful, retroactive revocation of NEVI State Plan approvals. Like the defendants in *City of San Francisco* (and as this Court has previously recognized), Defendants' power was "at its lowest ebb," when they withheld States' NEVI funds because Defendants have no constitutional spending powers on which to rely. *See City and County of San Francisco*, 897 F.3d at 1233-34; *Youngstown*, 343 U.S. at 637-38; Dkt. #110, at p.52 ("Under *City and County of San Francisco*, implementing the [NEVI funding] pause was an inappropriate seizure of Congress's budgetary authority."). Likewise, by refusing to carry out the IIJA's clear congressional directive, Defendants have failed to "take Care that the Laws be faithfully executed" and therefore violated the Take Care Clause. *See Kendall v. United States*, 37 U.S. (12 Pet.) 524, 613 (1838) (rejecting argument that by charging the Executive with faithful execution of the laws, the Take Care Clause "implies a power to forbid their execution"); *In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 551 (D.C. Cir. 1999) ("[T]he President is without authority to set aside congressional legislation by executive order.").

## V.    REMEDY

The Court should grant declaratory, injunctive, and vacatur relief. As set forth in the Proposed Final Judgment, the permanent injunction should parallel the relief granted in the Court's PI Order. It should also extend to all Plaintiff States, as each Plaintiff State has submitted declaratory evidence demonstrating that Defendants' actions have caused them harm. *See* Dkt. #7-13, pp.15-18, 20, 22-24, 26, 28, 100, Carroll Decl.; Cownie Decl.; Gray Decl.; Hildebrandt Decl.; Malik Decl.; Perchlik Decl.; Wieferich Decl. An injunction covering

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT – NO. 2:25-CV-00848                    24                    ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1  all Plaintiff States is therefore necessary to afford the States "complete relief." *Trump v. CASA,*

2  *Inc.*, 145 S. Ct. 2540, 2557 (2025); *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).

3        Plaintiffs are also entitled to vacatur. Section 706(2) of the APA provides that federal

4  courts reviewing agency action "shall" "hold unlawful and set aside agency action . . . found to

5  be . . . not in accordance with law." 5 U.S.C. § 706. Vacatur is the ordinary remedy for APA

6  violations. *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 681 (9th Cir. 2021); *Paulsen v.*

7  *Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005).

8        Finally, Plaintiffs' requested declaratory relief is appropriate because this case presents

9  an "actual controversy," thus vesting the Court with discretion to declare the parties' rights. 28

10  U.S.C. § 2201.

## VI.    CONCLUSION

12        Plaintiff States respectfully request that the Court grant their motion.

13        Certification of Conferral - I certify pursuant to Judge Lin's November 1, 2024,
Standing Order for All Civil Cases that the parties have met and conferred prior to the filing of

14  this motion.

15        DATED this 26th day of August 2025.

16      I certify that this memorandum contains
8,381 words, in compliance with the Local

17  Civil Rules.

18  **NICHOLAS W. BROWN**
Attorney General for the State of Washington

19  *s/ Caitlin M. Soden*
CAITLIN M. SODEN, WSBA # 55457

20  LEAH A. BROWN, WSBA # 45803
TERA HEINTZ, WSBA #54921

21  CRISTINA SEPE, WSBA #53609
Assistant Attorneys General

22  800 Fifth Avenue, Suite 2000
Seattle, Washington 98104

23  206-464-7744
caitlin.soden@atg.wa.gov

24  leah.brown@atg.wa.gov
tera.heintz@atg.wa.gov

25  cristina.sepe@atg.wa.gov

26  *Attorneys for the State of Washington*

PLAINTIFFS' MOTION FOR SUMMARY    25    ATTORNEY GENERAL OF WASHINGTON
JUDGMENT – NO. 2:25-CV-00848                       Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1  | **ROB BONTA**
   | Attorney General for the State of California

2

3  | By: /s/ *Theodore A. McCombs*
   | THEODORE A. MCCOMBS, SBN 316243
   | Deputy Attorney General

4  | DAVID ZAFT, SBN 237365
   | Acting Supervising Deputy Attorney General

5  | ROBERT SWANSON, SBN 295159
   | NATALIE COLLINS, SBN 338348

6  | ELIZABETH JONES, SBN 326118
   | ELIZABETH SONG, SBN 326616

7  | Deputy Attorneys General
   | (619) 738-9003

8  | theodore.mccombs@doj.ca.gov

9  | *Attorneys for the State of California*

10

11

12

13

**PHILIP J. WEISER**
Attorney General for the State of Colorado

By: /s/ *Carrie Noteboom*
CARRIE NOTEBOOM, CBA # 52910
Assistant Deputy Attorney General
DAVID MOSKOWITZ, CBA # 61336
Deputy Solicitor General
JESSICA L. LOWREY, CBA # 45158
First Assistant Attorney General
SARAH WEISS, NYSBA # 4898805
Senior Assistant Attorney General
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6000
carrie.noteboom@coag.gov
david.moskowitz@coag.gov
jessica.lowrey@coag.gov
sarah.weiss@coag.gov
FAX: (720) 508-6040

*Attorneys for the State of Colorado*

12  | **KRISTIN K. MAYES**
13  | Attorney General for the State of Arizona

14  | By: /s/ *Lauren Watford*
15  | LAUREN WATFORD, SBA # 037346
    | Assistant Attorney General
16  | Arizona Attorney General's Office
    | 2005 North Central Avenue
17  | Phoenix, Arizona 85004
    | (602) 542-3333
18  | Lauren.Watford@azag.gov

19  | *Attorneys for the State of Arizona*

**KATHLEEN JENNINGS**
Attorney General of the State of Delaware

By: /s/ *Vanessa L. Kassab*
IAN R. LISTON, DSBA # 5507
Director of Impact Litigation
RALPH K. DURSTEIN III, DSBA # 0912
VANESSA L. KASSAB, DSBA # 5612
Deputy Attorneys General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

*Attorneys for the State of Delaware*

20

21

22

23

24

25

26

1

**BRIAN L. SCHWALB**
Attorney General

2

By: /s/ *Lauren Cullum*

3

LAUREN CULLUM, DCB # 90009436
Special Assistant Attorney General

4

Office of the Attorney General
for the District of Columbia

5

400 6th Street, N.W., 10th Floor
Washington, D.C. 20001

6

Email: lauren.cullum@dc.gov

7

*Attorneys for the District of Columbia*

8

9

10

**KWAME RAOUL**

11

Attorney General for the State of Illinois

12

By: /s/ *Jason E. James*
JASON E. JAMES, ISBA ARDC # 6300100

13

Assistant Attorney General
Office of the Attorney General

14

Environmental Bureau
201 W. Pointe Drive, Suite 7

15

Belleville, IL 62226
Phone: (217) 843-0322

16

Email: jason.james@ilag.gov

17

*Attorneys for the State of Illinois*

18

19

20

21

22

23

24

25

26

**ANNE E. LOPEZ**
Attorney General for the State of Hawaiʻi

By: /s/ *Kalikoʻonālani D. Fernandes*
DAVID D. DAY, HSBA # 9427
Special Assistant to the Attorney General
KALIKOʻONĀLANI D. FERNANDES,
HSBA # 9964
Solicitor General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov

*Attorneys for the State of Hawaiʻi*

**OFFICE OF THE GOVERNOR** *ex rel.*
**ANDY BESHEAR**
in his official capacity as Governor of the
Commonwealth of Kentucky

By: /s/ *Travis Mayo*
S. TRAVIS MAYO, KBA # 92628
General Counsel
Taylor Payne, KBA # 93524*
Chief Deputy General Counsel
Laura C. Tipton, KBA # 92527
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov

*Counsel for the Office of the Governor*

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT – NO. 2:25-CV-00848                    27                    ATTORNEY GENERAL OF WASHINGTON
                                                                     Environmental Protection Division
                                                                     800 Fifth Avenue STE 2000
                                                                     Seattle, WA 98104
                                                                     206-464-7744

1

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

2

By: /s/ *Steven J. Goldstein*

3

STEVEN J. GOLDSTEIN, MSBA #
1612130206

4

*Assistant Attorney General*
Office of the Attorney General of Maryland

5

200 Saint Paul Place, 20th Floor
Baltimore, MD 21202

6

(410) 576-6414
sgoldstein@oag.state.md.us

7

8

*Attorneys for the State of Maryland*

9

10

11

12

13

14

**KEITH ELLISON**
Attorney General for the State of Minnesota

15

By: /s/ *Peter N. Surdo*
PETER N. SURDO, MSBA # 339015

16

Special Assistant Attorney General
Environmental and Natural Resources

17

Division
445 Minnesota Street, Suite 1800

18

Saint Paul, Minnesota 55101
651-757-1061

19

peter.surdo@ag.state.mn.us

20

*Attorneys for the State of Minnesota*

21

22

23

24

25

26

**DANA NESSEL**
Attorney General of Michigan

By: /s/ *Michael J. Dittenber*
Michael J. Dittenber (MI Bar No. P72238)
Neil Giovanatti (MI Bar No. P82305)
*Assistant Attorneys General*
Michigan Department of Attorney General
425 W. Ottawa
Lansing, MI 48933
(517) 335-5805
DittenberM@michigan.gov
GiovanattiN@michigan.gov

*Attorneys for the State of Michigan*

**MATTHEW J. PLATKIN**
Attorney General for the State of New Jersey

By: /s/ *Morgan L. Rice*
MORGAN L. RICE, NJSBA Bar #
018782012
JUSTINE M. LONGA, NJSBA Bar #
305062019
*Deputy Attorneys General*
RACHEL U. DOOBRAJH, NJSBA #
020952002
*Assistant Attorney General*
Office of the Attorney General
25 Market Street
Trenton, NJ 08625
(609) 696-4527
Morgan.Rice@law.njoag.gov
Justine.Longa@law.njoag.gov
Rachel.Doobrajh@law.njoag.gov

*Attorneys for the State of New Jersey*

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT – NO. 2:25-CV-00848                28                ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
206-464-7744

1

2   **RAÚL TORREZ**
    Attorney General for the State of New Mexico

3

    By: /s/ *Amy Senier*
4   AMY SENIER, MBA # 672912
    Senior Counsel
5   New Mexico Department of Justice
    P.O. Drawer 1508
6   Santa Fe, NM 87504-1508
    505-490-4060
7   asenier@nmdoj.gov

8   *Attorneys for the State of New Mexico*

9

10  **JEFF JACKSON**
    Attorney General of the State of North
11  Carolina

12  LAURA HOWARD
    Chief Deputy Attorney General

13
    By: /s/ *Daniel T. Wilkes*
14  DANIEL WILKES, NCSB # 46500*
    Assistant Deputy Attorney General
15  North Carolina Department of Justice
    PO Box 629
16  Raleigh, NC 27602
    919-716-6415
17  dwilkes@ncodoj.gov

18  *Counsel for State of North Carolina*

19

    **JENNIFER C. SELBER**
20  General Counsel

21  By: /s/ *Stephen R. Kovatis*
    STEPHEN R. KOVATIS, PBA # 209495
22  Deputy General Counsel
    Governor's Office of General Counsel
23  30 North Third Street, Suite 200
    Harrisburg, PA  17101
24  Phone: 717-602-0943
    Email: skovatis@pa.gov
25
    *Counsel for Governor Josh Shapiro*
26

**LETITIA JAMES**
Attorney General of the State of New York

By: /s/ *Kyle Burns*
KYLE BURNS, NYSBA # 5589940
Environmental Protection Bureau
28 Liberty Street
New York, NY 10005
(212) 416-8451

*Attorneys for the State of New York*

**DAN RAYFIELD**
Attorney General of the State of Oregon

By: /s/ *Sara Van Loh*
SARA VAN LOH OSB # 044398
Senior Assistant Attorney General
100 SW Market Street
Portland, Oregon 97201
Tel (971) 673-1880
Fax (971) 673-5000
Sara.VanLoh@doj.oregon.gov

*Attorneys for State of Oregon*

**PETER F. NERONHA**
Attorney General of Rhode Island

By: /s/ *Nicholas M. Vaz*
NICHOLAS M. VAZ, RIBA # 9501
Special Assistant Attorney General
Office of the Attorney General
Environmental and Energy Unit
150 South Main Street
Providence, Rhode Island 02903
(401) 274-4400 ext. 2297
nvaz@riag.ri.gov

*Attorneys for State of Rhode Island*

1   **CHARITY R. CLARK**                          **JOSHUA L. KAUL**
    Attorney General of the State of Vermont      Attorney General for the State of Wisconsin
2
    By: /s/ *Jonathan T. Rose*                    By: /s/ *Frances R. Colbert*
3   JONATHAN T. ROSE, VBA # 4415                  FRANCES R. COLBERT, WI SBN #
    Solicitor General                             1050435
4   Office of the Vermont Attorney General        Assistant Attorney General
    109 State Street                              Public Protection Unit
5   Montpelier, VT 05609                          17 West Main Street
    (802) 828-3171                                Madison, Wisconsin 53703
6   Jonathan.rose@vermont.gov                     608-266-9595
                                                  Frances.Colbert@wisdoj.gov
7   *Attorneys for Plaintiff State of Vermont*
                                                  *Attorneys for Plaintiff State of Wisconsin*
8   *Pro hac vice application pending*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26