The Honorable Tana Lin

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

STATE OF WASHINGTON, et al.,

*Plaintiffs,*

and

SIERRA CLUB, et al.,

*Plaintiff-Intervenors,*

v.

U.S. DEPARTMENT OF TRANSPORTATION, et al.,

*Defendants.*

Case No. 2:25-cv-00848-TL

PLAINTIFF-INTERVENOR PUBLIC INTEREST ORGANIZATIONS' MOTION FOR SUMMARY JUDGMENT

Noted for consideration:
October 8, 2025

*Sierra Club
50 F St. NW
Washington, DC 20001
(202) 417-7260*

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

BACKGROUND & STATEMENT OF UNDISPUTED FACTS.................................................... 2

LEGAL STANDARDS ........................................................................................................... 5

    I.     THE ADMINISTRATIVE PROCEDURE ACT..................................................... 5

    II.    SUMMARY JUDGMENT ................................................................................. 5

ARGUMENT ........................................................................................................................ 5

    I.     PLAINTIFF-INTERVENORS HAVE STANDING........................................... 5

    II.    DEFENDANTS UNLAWFULLY FROZE THE NEVI FORMULA
           PROGRAM.................................................................................................. 6

    III.   VACATUR AND INJUNCTIVE RELIEF ARE WARRANTED ....................... 9

          A.   The Default APA Remedy of Vacatur is Appropriate Here ...........................9

          B.   In Addition to Vacatur, This Court Should Enter a Permanent
              Injunction ..................................................................................................11

          C.   Plaintiff-Intervenors Meet the Standard for a Permanent Injunction ............14

                1.   Plaintiff-Intervenors Face Irreparable Harm ......................................14

                2.   The Equities and Public Interest Strongly Favor Injunctive
                     Relief..............................................................................................18

          D.   The Harm Caused by Defendants Extends Across All NEVI
              Jurisdictions with Unobligated FY 2022–2025 Funds ...................................18

CONCLUSION.................................................................................................................. 20

PLAINTIFF-INTERVENORS'
MOTION FOR SUMMARY
JUDGMENT
CASE NO. 2:25-cv-00848-TL

- ii -

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

1

2

# TABLE OF AUTHORITIES

**Cases**

*350 Mont. v. Haaland*,
   50 F.4th 1254 (9th Cir. 2022) ................................................................. 9

*Alaska Ctr. for the Env't v. Browner*,
   20 F.3d 981 (9th Cir. 1994) ............................................................. 13, 19

*Alliance for the Wild Rockies v. U.S. Forest Serv.*,
   907 F.3d 1105 (9th Cir. 2018) ................................................................. 9

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*,
   988 F.2d 146 (D.C. Cir. 1993) ............................................................... 10

*Am. Trucking Ass'ns v. City of L.A.*,
   559 F.3d 1046 (9th Cir. 2009) ............................................................... 17

*Ariz. Dream Act Coal. v. Brewer*,
   757 F.3d 1053 (9th Cir. 2014) ......................................................... 15, 16

*Cal. Cmtys. Against Toxics v. EPA*,
   688 F.3d 989 (9th Cir. 2012) ................................................................. 10

*Cal. Rest. Ass'n v. City of Berkeley*,
   89 F.4th 1094 (9th Cir. 2024) ............................................................... 15

*Cal. Wilderness Coalition v. U.S. Dep't of Energy*,
   631 F.3d 1072 (9th Cir. 2011) ............................................................... 10

*California v. Azar*,
   911 F.3d 558 (9th Cir. 2018) ................................................................. 19

*California v. Bureau of Land Mgmt.*,
   286 F. Supp. 3d 1054 (N.D. Cal. 2018) ................................................ 17

*CC Distribs., Inc. v. United States*,
   883 F.2d 146, 280 U.S. App. D.C. 74 (D.C. Cir. 1989) ........................ 15

*City & Cnty. of San Francisco v. Trump*,
   897 F.3d 1225 (9th Cir. 2018) ................................................................. 9

*Coal. to Protect Puget Sound Habitat*,
   466 F. Supp. 3d 1217 (W.D. Wash. 2020), *aff'd*, No. 20-35712 (9th Cir. 2021) ......... 11, 13, 14

*Cohen v. Brown Univ.*,
   991 F.2d 888 (1st Cir. 1993) ................................................................. 17

PLAINTIFF-INTERVENORS'
MOTION FOR SUMMARY
JUDGMENT                                          - iii -
CASE NO. 2:25-cv-00848-TL

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

*Competitive Enter. Inst. v. NHTSA*,
  901 F.2d 107 (D.C. Cir. 1990) .................................................................................... 16

*Ctr. for Auto Safety v. NHTSA*,
  793 F.2d 1322 (D.C. Cir. 1986) .................................................................................. 15

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
  140 S. Ct. 1891 (2020) ................................................................................................ 10

*Diamond Alternative Energy, LLC v. EPA*,
  145 S. Ct. 2121 (2025). ................................................................................................. 6

*E. Bay Sanctuary Covenant v. Biden*,
  993 F.3d 640 (9th Cir. 2021) ................................................................................. 9, 16

*E. Bay Sanctuary Covenant v. Garland*,
  994 F.3d 962 (9th Cir. 2019) ...................................................................................... 18

*E. Bay Sanctuary Covenant v. Trump*,
  932 F.3d 742 (9th Cir. 2018) ...................................................................................... 18

*eBay, Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) .................................................................................................... 14

*Epic Games, Inc. v. Apple, Inc.*,
  67 F.4th 946 (9th Cir. 2023) ....................................................................................... 16

*FCC v. Prometheus Radio Project*,
  592 U.S. 414 (2021) ...................................................................................................... 8

*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*,
  98 F.4th 1180 (9th Cir. 2024) ..................................................................................... 19

*Idaho Watersheds Project v. Hahn*,
  307 F.3d 815 (9th Cir. 2002) ...................................................................................... 14

*Keith v. Volpe*,
  858 F.2d 467 (9th Cir. 1988) ...................................................................................... 15

*Kinney-Coastal Oil Co. v. Kieffer*,
  277 U.S. 488 (1928) ................................................................................................. 9, 19

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*,
  941 F.2d 970 (9th Cir. 1991) ...................................................................................... 19

*Leonard v. Clark*,
  12 F.3d 885 (9th Cir. 1993), as amended (Mar. 8, 1994) ............................................ 5

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ...................................................................................................... 6

PLAINTIFF-INTERVENORS'
MOTION FOR SUMMARY
JUDGMENT                            - iv -
CASE NO. 2:25-cv-00848-TL

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

*Martin Luther King, Jr. Cnty. v. Turner,*
   No. 2:25-cv-814, 2025 U.S. Dist. LEXIS 155762 (W.D. Wash. 2025) ................................... 18

*Monsanto Co. v. Geertson Seed Farms,*
   561 U.S. 139 (2010) ........................................................................................................ 13

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.,*
   463 U.S. 29 (1983) .......................................................................................................... 8

*N. Plains Res. Council v. U.S. Army Corps of Eng'rs,*
   460 F. Supp. 3d 1030 (D. Mont. 2020) ........................................................................... 13

*Nat. Res. Def. Council v. EPA,*
   735 F.3d 873 (9th Cir. 2013) ........................................................................................... 17

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.,*
   524 F.3d 917 (9th Cir. 2008) ........................................................................................... 13

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.,*
   886 F.3d 803 (9th Cir. 2018) ........................................................................................... 14

*Nw. Env't Def. Ctr. v. Bonneville Power Admin.,*
   477 F.3d 668 (9th Cir. 2007) ........................................................................................... 7

*Nw. Envtl. Advocates v. EPA,*
   537 F.3d 1006 (9th Cir. 2008) ................................................................................... 10, 13

*Occidental Eng'g Co. v. Immigration & Naturalization Serv.,*
   753 F.2d 766 (9th Cir. 1985) ........................................................................................... 5

*Paulsen v. Daniels,*
   413 F.3d 999 (9th Cir. 2005) ........................................................................................... 11

*Pollinator Stewardship Council v. EPA,*
   806 F.3d 520 (9th Cir. 2015) ................................................................................... 10, 11

*Portland Audubon Soc'y v. Endangered Species Comm.,*
   984 F.2d 1534 (9th Cir. 1993) ......................................................................................... 3

*Raj & Co. v. United States Citizenship & Immigration Servs.,*
   85 F. Supp. 3d 1241 (W.D. Wash. 2015) ......................................................................... 5

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.,*
   944 F.2d 597 (9th Cir. 1991) ........................................................................................... 15

*Rumsfeld v. Forum for Acad. & Instit. Rts., Inc.,*
   547 U.S. 47 (2006) .......................................................................................................... 6

*San Antonio Cmty. Hosp. v. S. Cal. Dist. Council of Carpenters,*
   125 F.3d 1230 (9th Cir. 1997) ......................................................................................... 17

PLAINTIFF-INTERVENORS'
MOTION FOR SUMMARY
JUDGMENT
CASE NO. 2:25-cv-00848-TL

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

\- v -

*Sierra Club v. Trump*,
    929 F.3d 670 (9th Cir. 2019) ................................................................. 8

*Teton Historic Aviation Found. v. U.S. Dep't of Def.*,
    785 F.3d 719 (D.C. Cir. 2015) ............................................................. 15

*Thompson v. U.S. Dep't of Labor*,
    885 F.2d 551 (9th Cir. 1989) ................................................................. 3

*Trump v. CASA, Inc.*,
    No. 24A886, 145 S. Ct. 2540 (2025) .............................................. 9, 19

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
    578 U.S. 590 (2016) ............................................................................. 7

*Valle del Sol Inc. v. Whiting*,
    732 F.3d 1006 (9th Cir. 2013) ............................................................. 18

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977) ........................................................................... 15

*Washington v. Trump*,
    768 F. Supp. 3d 1239 (W.D. Wash. 2025) ......................................... 18

**Statutes**

Pub. L. No. 117–58, 135 Stat. 429 (2021) ........................................ 14, 19

5 U.S.C. § 702 ............................................................................................ 5

5 U.S.C. § 706(2)(A) ....................................................................... 5, 7, 8, 9

5 U.S.C. § 706(2)(B) ............................................................................. 5, 9

5 U.S.C. § 706(2)(C) ................................................................................. 5

5 U.S.C. § 706(2)(D) ................................................................................. 5

23 U.S.C. § 106(a)(2) ............................................................................. 13

**Rules**

Fed. R. Civ. P. 56 ...................................................................................... 1

**Other Authorities**

90 Fed. Reg. 39025 (Aug. 13, 2025) ...................................................... 12

Exec. Order 14154, 90 Fed. Reg. 8353 (Jan. 20, 2025) ..................... 3, 12

U.S. Const. art. II, § 3 ................................................................................ 8

PLAINTIFF-INTERVENORS'
MOTION FOR SUMMARY
JUDGMENT                              - vi -
CASE NO. 2:25-cv-00848-TL

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

**PLAINTIFF-INTERVENOR PUBLIC INTEREST ORGANIZATIONS'**
**MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56, Plaintiff-Intervenor Public Interest Organizations[1] respectfully move for summary judgment on all issues. This motion is based on the administrative record (Dkt. #115) and on Plaintiff-Intervenors' declarations, including those filed with their Motion to Intervene (Dkt. #77) and those submitted with this motion.

## INTRODUCTION

For more than six months, Defendants have obstructed States' efforts to build a nationwide electric vehicle (EV) charging network by freezing billions of dollars that Congress appropriated for that task. Defendants took these actions to implement an executive order that expressly targets the National Electric Vehicle Infrastructure (NEVI) Formula Program and declares a policy of "[t]erminating the Green New Deal" and "eliminat[ing] the 'electric vehicle (EV) mandate.'" By halting the NEVI Formula Program, Defendants have denied Plaintiff-Intervenors' members access to the infrastructure needed to operate their EVs—restricting mobility and EV use, raising travel costs, and endangering health and safety.

This Court has already found that Plaintiff-Intervenors have standing and that Defendants' actions—revoking States' NEVI implementation plans and cutting off access to NEVI funds—were likely taken without legal authority, without a reasoned basis, and in violation of separation-of-powers. With an administrative record that only confirms the absence of a lawful basis for the challenged actions, summary judgment should now be entered.

---

[1] Plaintiff-Intervenors include the Sierra Club, Natural Resources Defense Council, Climate Solutions, Southern Alliance for Clean Energy, CleanAIRE NC, West End Revitalization Association, and Plug In America.

PLAINTIFF-INTERVENORS'
MOTION FOR SUMMARY
JUDGMENT                                    - 1 -
CASE NO. 2:25-cv-00848-TL

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

The Court should declare Defendants' actions unlawful, vacate them, and permanently enjoin Defendants from withholding funds for any reason not authorized by the Infrastructure Investment and Jobs Act (IIJA). Defendants' new Interim Final NEVI Guidance only underscores the need for relief: It maintains the freeze on unobligated fiscal year 2022–2025 funds for all States[2] and conditions release of money to which States are already entitled on resubmission and approval of plans. Meanwhile, the Trump Administration's priorities and the binding directives that compelled Defendants' February 6, 2025, freeze of NEVI funds remain in effect. An injunction is essential to carry out Congress's mandate and ensure the national EV charging network is built without further unlawful interference. Because the freeze continues to cause harm in every NEVI jurisdiction where unobligated funds were frozen, the Court's remedy should match that scope.

## BACKGROUND & STATEMENT OF UNDISPUTED FACTS

To avoid duplication, Plaintiff-Intervenors adopt the Background and Statement of Undisputed Facts in the Plaintiff States' Motion for Summary Judgment. Dkt. #142.

Plaintiff-Intervenors further note the following undisputed facts concerning NEVI's operation and the impacts of Defendants' NEVI freeze across all NEVI jurisdictions with unobligated Fiscal Year 2022–2025 funds:

- Each State[3] prepared and submitted—and Defendants issued approval letters for—NEVI Plans on three occasions: in 2022, for Fiscal Years (FY) 2022 and 2023; in 2023, for FY

---

[2] Pursuant to this Court's June 24, 2025 Order on Motion for Preliminary Injunction (Dkt. #110), fourteen States currently have access to unobligated fiscal year 2022–2025 funds; Defendants' new Interim Final NEVI Guidance does not address the tension with this Court's order.
[3] As used here, and consistent with the NEVI Formula Program provisions in the Infrastructure Investment and Jobs Act, the term "States" refers to all 50 states, Puerto Rico, and the District of Columbia.

PLAINTIFF-INTERVENORS'
MOTION FOR SUMMARY
JUDGMENT                                        - 2 -
CASE NO. 2:25-cv-00848-TL

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

2024; and in 2024, for FY 2025. *See* AR at 118; Garcia 2d Supp. Decl. ¶ 6, Exs. 1, 2 & 3 (approval letters for all fiscal years).[4]

- Each State has taken steps in furtherance of its approved NEVI Plans. Garcia 2d Supp. Decl. ¶ 7.

- On his first day in office, President Trump signed an Executive Order titled Unleashing American Energy, Exec. Order 14154, 90 Fed. Reg. 8353, 8357 (Jan. 20, 2025), declaring it "the policy of the United States" to "eliminate the 'electric vehicle (EV) mandate'" and to "[t]erminat[e] the Green New Deal." The order directed all agencies to "immediately pause the disbursement of funds appropriated through the . . . [IIJA], including but not limited to funds for electric vehicle charging stations made available through the [NEVI] Formula Program." *Id.* at 8357.

- On January 29, 2025, the U.S. Department of Transportation (U.S. DOT) issued an "Implementation Memo" directing all operating administrations to identify programs subject to multiple executive orders—including the Unleashing American Energy Executive Order—within 10 days and to begin "all lawful actions necessary to rescind, cancel, revoke, and terminate" them.[5] That same day, U.S. DOT issued Order 2100.7, the

---

[4] These letters are provided for the Court's convenience. Plaintiff-Intervenors submit that the approval letters should have been included in the administrative record, as the "'whole record' [for APA review] includes everything that was before the agency pertaining to the merits of its decision." *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (quoting *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555–56 (9th Cir. 1989)). Nonetheless, because approval of each State's plans can be inferred from other materials in the record. *See* AR at 118, the Court can resolve the case on the record as currently constituted.

[5] U.S. Dep't of Transp., Memorandum for Secretatrial [sic] Officers and Heads of Operating Administrations (Jan. 29, 2025), at https://www.transportation.gov/sites/dot.gov/files/2025-01/Signed%20Secretarial%20Memo_%20Implementation%20of%20Executive%20Orders%20Addressing%20Energy%20Climate%20Change%20Diversity%20and%20Gender.pdf.

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

"Ensuring Reliance Order," which requires U.S. DOT-supported programs, "to the maximum extent permitted by law," to prioritize compliance with "goals and objectives" set by the President. Dkt. #124-5 at 1–2.

- The February 6 Letter, by its terms and confirmed by Defendants' statements at hearing on the preliminary injunction, suspended all States' NEVI plans, AR at 120–21; Hrg. Tr. 29:22–30:1, thereby interrupting program implementation in all States with unobligated NEVI funds.

- On August 11, 2025, Defendants released new Interim Final NEVI Guidance,[6] which took effect on August 13, 2025. 90 Fed. Reg. 39025 (Aug. 13, 2025). The guidance maintains the freeze on FY 2022–2025 funds that have not yet been obligated and directs all States to resubmit prior-year plans or submit new ones for FHWA approval in order to access those unobligated funds. Interim Final NEVI Guidance at 3. It imposes a 30-day deadline for States to submit plans but sets no deadline for Defendants to approve them. *Id.* at 4.

- Currently, more than $1.88 billion of unobligated FY 2022–25 funds remain frozen for the States where the Court's preliminary injunction is not in effect. *See* AR at 118.

---

[6] U.S. Dep't of Transp., Fed. Highway Admin., National Electric Vehicle Infrastructure Program Interim Final Guidance (Aug. 11, 2025), https://www.fhwa.dot.gov/environment/nevi/resources/NEVI-Interim-Final-Program-Guidance-8-11-2025.pdf [hereinafter "Interim Final NEVI Guidance"].

PLAINTIFF-INTERVENORS'
MOTION FOR SUMMARY
JUDGMENT                                       - 4 -
CASE NO. 2:25-cv-00848-TL

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

**LEGAL STANDARDS**

I.    THE ADMINISTRATIVE PROCEDURE ACT

The Administrative Procedure Act (APA) authorizes judicial review where a person "suffer[s] legal wrong because of agency action." 5 U.S.C. § 702. It directs courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D). Courts must also set aside agency actions that are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B)–(C).

II.    SUMMARY JUDGMENT

In an APA matter, "the district court is reviewing a decision of an administrative agency which is itself the finder of fact." *Occidental Eng'g Co. v. Immigration & Naturalization Serv.*, 753 F.2d 766, 770 (9th Cir. 1985). "The function of the district court on summary judgment is consequently 'to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Raj & Co. v. United States Citizenship & Immigration Servs.*, 85 F. Supp. 3d 1241, 1244–45 (W.D. Wash. 2015) (quoting *Occidental*, 753 F.2d at 769).

**ARGUMENT**

I.    PLAINTIFF-INTERVENORS HAVE STANDING

The Court has already found that four Plaintiff-Intervenors have standing. Dkt. #120 at 18.[7] The Court specifically found injuries traceable to Defendants' suspension of plans under

---

[7] Under longstanding Ninth Circuit and Supreme Court precedent, standing for one entity in a multi-party case is sufficient to establish standing for the group as a whole. *See, e.g.*, *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993), as amended (Mar. 8, 1994) ("The general rule

which States planned to develop charging stations along particular routes. *Id.* at 13–14. Plaintiff-Intervenors' declarations now in the record establish particular injuries traceable to suspended NEVI plans across every NEVI jurisdiction not already represented by Plaintiff States for which FY2022–2025 funds have not been fully obligated. Garcia 2d Supp. Decl. ¶ 11 & tbl. 1. The Court has also found these injuries redressable, Dkt. #120 at 14, a conclusion reinforced by the "predictable, commonsense inference[]" that States will restart their programs once the freeze is lifted. *Diamond Alternative Energy, LLC v. EPA*, 145 S. Ct. 2121, 2136 (2025). This evidence establishes standing and supports a final judgment. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

II.    DEFENDANTS UNLAWFULLY FROZE THE NEVI FORMULA PROGRAM

Plaintiff-Intervenors are entitled to summary judgment on their claims that Defendants' actions are contrary to law and arbitrary and capricious under the APA; *see* Dkt. 76-1, ¶¶ 77–126; unconstitutional, because they violate the separation of powers and the Take Care Clause; *see id.* ¶¶127–48; and *ultra vires*, *see id.* ¶¶ 149–55. To avoid duplicative briefing, Plaintiff-Intervenors adopt the arguments that the Plaintiff States presented in their motion for summary judgment. *See* Dkt. #142 at 9–24. Plaintiff-Intervenors briefly summarize and supplement those arguments below.

---

applicable to federal court suits with multiple plaintiffs is that once the court determines that one of the plaintiffs has standing, it need not decide the standing of the others."); *Rumsfeld v. Forum for Acad. & Instit. Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement."). One Plaintiff-Intervenor, Climate Solutions, has moved for reconsideration of a portion of this Court's intervention order finding that it could not establish standing because it did not have "members." *See* Dkt. #126. In the alternative to reconsidering its intervention order, Plaintiff-Intervenors respectfully submit that Climate Solutions' standing could be clarified in this Court's summary judgment order.

PLAINTIFF-INTERVENORS'
MOTION FOR SUMMARY
JUDGMENT                     - 6 -
CASE NO. 2:25-cv-00848-TL

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

Initially, the Court has already rejected Defendants' arguments that the revocations of state plan approvals and categorical withholding of NEVI funding were not final agency action, Dkt. #110 at 34–38, and none of the arguments in Defendants' summary judgment brief warrant revisiting that conclusion; *see* Dkt. #141 at 16–19. FHWA's issuance of new Interim Final NEVI Guidance does not make its earlier revocations of State plan approvals and withholding of NEVI funding nonfinal. The new guidance purports to require States to resubmit NEVI plans to receive funding for earlier fiscal years, and for States not subject to the Court's preliminary injunction order, FHWA continues to withhold previously approved NEVI funding until they do so. *See* Interim Final NEVI Guidance at 3–4. Those revocations and the consequent withholding of funding have legal consequences for States' NEVI programs. Dkt. #110 at 38. Under "the 'pragmatic' approach" that the Supreme Court has "long taken to finality," the Defendants have taken final agency action. *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599 (2016).

Turning to the merits, Defendants' actions are contrary to law. 5 U.S.C. § 706(2)(A); *see also Nw. Env't Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 680 (9th Cir. 2007). As explained in both the Plaintiff States' brief, *see* Dkt. #142 at 13–17, and the Court's order on the motion for preliminary injunction, Dkt. #110 at 39–45, IIJA allows Defendants to withhold funding in limited circumstances (that are not present here) and only after observing procedures that Defendants have not followed here. *See* Dkt. #142 at 21. IIJA does not allow Defendants to rescind prior approvals of States' NEVI plans. *See id.* at 13–16; *see also* Dkt. #110 at 39–45. Defendants' actions were thus taken without statutory authority and are contrary to law under the APA.[8]

---

[8] Plaintiff-Intervenors also alleged that Defendants' actions were *ultra vires* because they were taken without statutory authority. Because a claim that agency action is contrary to law under the

PLAINTIFF-INTERVENORS'
MOTION FOR SUMMARY
JUDGMENT
CASE NO. 2:25-cv-00848-TL

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

Defendants' actions are also arbitrary and capricious. 5 U.S.C. § 706(2)(A); *see also FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021) (agency action must be "reasonable and reasonably explained."). As the Plaintiff States explained in their brief, *see* Dkt. #142 at 17–21, and the Court found in its preliminary injunction order, Dkt. #110 at 46–49, Defendants have not provided a rational explanation for its suspension of plan approvals and funding, considered factors that Congress did not intend for it to consider, failed to consider serious reliance interests on the NEVI program, and failed to consider alternatives other than revocation of the state plans. Those are the hallmarks of arbitrary and capricious agency action. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

While the Court need not resolve Plaintiff-Intervenors' constitutional claims if it concludes that relief is warranted under the APA, Defendants' actions ignore statutory constraints on agency action and are unconstitutional. *See Sierra Club v. Trump*, 929 F.3d 670, 698 (9th Cir. 2019) (discussing the APA's cause of action to review unconstitutional executive actions). The Plaintiff States have established that the revocation of state plan approvals and categorical withholding of NEVI funding violated the separation of powers by usurping Congress's authority to appropriate money. Dkt. #142 at 22–24. The Court also found that "implementing the pause was an inappropriate seizure of Congress's budgetary authority" and "likely violated the separation-of-powers doctrine." Dkt. #110 at 52.

Defendants' actions also violated the Take Care Clause, which requires that the President "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. "Because Congress's

---

APA overlaps with a claim for nonstatutory review of *ultra vires* action, the Court need not reach this claim if it finds that Intervenor-Plaintiffs are entitled to summary judgment on their APA claims. Cf. *Sierra Club v. Trump*, 929 F.3d 670, 698–700 (9th Cir. 2019) (discussing relationship between nonstatutory review and review under the APA).

PLAINTIFF-INTERVENORS'
MOTION FOR SUMMARY
JUDGMENT                                    - 8 -
CASE NO. 2:25-cv-00848-TL

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

1   legislative power is inextricable from its spending power, the President's duty to enforce the laws

2   necessarily extends to appropriations. Moreover, the obligation is an affirmative one, meaning

3   that failure to act may be an abdication of the President's constitutional role." *City & Cnty. of San*

4   *Francisco v. Trump*, 897 F.3d 1225, 1234 (9th Cir. 2018). The decision to freeze NEVI funds

5   and suspend States' NEVI plans without statutory authority intruded on Congress's authority and

6   is thus invalid under the APA. 5 U.S.C. § 706(2)(B).

7   III.   VACATUR AND INJUNCTIVE RELIEF ARE WARRANTED

8          The Court should vacate both challenged actions in the February 6 Letter. Vacatur is the

9   default remedy under the APA, *see* 5 U.S.C. § 706(2)(A), and no circumstances here justify

10  departing from that rule. In addition, the Court should order permanent injunctive relief to restore

11  NEVI implementation without further unlawful interference. Such relief is warranted by

12  Defendants' conduct and is necessary to provide "complete relief between the parties." *See*

13  *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2547 (2025) (quoting *Kinney-Coastal Oil Co. v. Kieffer*,

14  277 U.S. 488, 507 (1928)). Plaintiff-Intervenors, together with the Plaintiff States, have shown

15  harm from the freeze across all NEVI jurisdictions where unobligated NEVI funds were frozen.

16  The proper "party-specific" remedy is thus to enter injunctive relief that applies in each of those

17  jurisdictions. *See id.*

18         A.     **The Default APA Remedy of Vacatur is Appropriate Here**

19         Vacatur is the "presumptive remedy" for APA violations in this Circuit. *350 Mont. v.*

20  *Haaland*, 50 F.4th 1254, 1259 (9th Cir. 2022) (citing 5 U.S.C. § 706(2)(A)); *E. Bay Sanctuary*

21  *Covenant v. Biden*, 993 F.3d 640, 681 (9th Cir. 2021) ("[w]hen a reviewing court determines that

22  agency regulations are unlawful, the ordinary result is that the rules are vacated"); *Alliance for*

23  *the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105, 1121–22 (9th Cir. 2018) (explaining that

24  

PLAINTIFF-INTERVENORS'
MOTION FOR SUMMARY
JUDGMENT                                    - 9 -
CASE NO. 2:25-cv-00848-TL

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

the APA's "presumption of vacatur" must be "overcome" by the agency); *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1901 (2020) (vacating agency action that violated the APA).

Lesser remedies are warranted "only in limited circumstances" and when "equity demands"—such as where vacatur would cause environmental harm or where the agency could lawfully reach the same result on remand. *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015). Neither applies. In assessing whether to depart from the default, courts weigh the seriousness of the agency's errors against "the disruptive consequences of an interim change that may itself be changed." *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (quoting *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993)). Both factors support vacatur.

First, Defendants' errors are serious. In their February 6 Letter, Defendants imposed a sweeping freeze on a nationwide program without any factual or legal basis and unlawfully withheld funds without following required procedures. *See supra* at 6–9. Their actions also violated clear obligations under both the IIJA and the Constitution. *Id.* These are fundamental legal errors for which vacatur is the appropriate remedy. *See Nw. Envtl. Advocates v. EPA*, 537 F.3d 1006, 1026–27 (9th Cir. 2008) (affirming vacatur where the agency acted outside its authority and in defiance of Congress's clear intent); *Cal. Wilderness Coalition v. U.S. Dep't of Energy*, 631 F.3d 1072, 1095 (9th Cir. 2011) ("When a court determines that an agency's action failed to follow Congress's clear mandate the appropriate remedy is to vacate that action.").

Second, vacatur would not result in undue "disruption." Indeed, far from *causing* disruption, vacatur would bring an end to the damaging consequences of Defendants' actions in all impacted States. Restoring the status quo ante—as it existed before the February 6 Letter—

PLAINTIFF-INTERVENORS'
MOTION FOR SUMMARY
JUDGMENT                                    - 10 -
CASE NO. 2:25-cv-00848-TL

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

would allow States to resume NEVI implementation by reinstating their NEVI Plans and restoring access to funds. *See Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005) ("The effect of invalidating an agency rule is to reinstate the rule previously in force."). This, in turn, would help alleviate the ongoing harm to both Plaintiff-Intervenors and Plaintiff States, which spans all NEVI jurisdictions in which FY2022–2025 funds have not been fully obligated. *See infra* at 18–20.

Moreover, the "disruption" factor "is weighty only insofar as the agency may be able to rehabilitate its rationale" for the challenged action. *Coal. to Protect Puget Sound Habitat v. U.S. Army Corps of Eng'rs*, 466 F. Supp. 3d 1217, 1223–24 (W.D. Wash. 2020). Here, Defendants' actions cannot be reconciled with the APA, the IIJA, or the Executive Branch's constitutional duties. *See supra* at 6–9; Dkt. #142 at 9–24. As a result, their actions suffer from "fundamental flaws" that "make it unlikely" they could lawfully be imposed again. *Pollinator Stewardship Council*, 806 F.3d at 532. Vacatur is the appropriate remedy for the breadth of disruption Defendants have caused.

### B.    In Addition to Vacatur, This Court Should Enter a Permanent Injunction

In addition to vacating Defendants' actions, the Court should make permanent and extend to NEVI jurisdictions with unobligated FY2022–2025 funds the relief granted in Parts (1)(a) and (b) of its preliminary injunction order, which prohibits Defendants from withdrawing or withholding NEVI funds for any reason not authorized by the IIJA.[9] Dkt. #110 at 65–66. This

---

[9] As pertains to Part 1(b), the Court should enjoin Defendants from "[w]ithholding or withdrawing NEVI Formula Program funds" for any previously approved State Electric Vehicle Infrastructure Deployment Plans "for any reason not set forth in the IIJA or applicable FHWA regulations; or withholding or withdrawing NEVI Formula Program funds from a state without following the IIJA's substantive and procedural requirements, including by refusing to review and/or process requests for authorization to obligate funds for specific EV charging infrastructure development activities." Dkt. #110 at 65–66.

PLAINTIFF-INTERVENORS'
MOTION FOR SUMMARY
JUDGMENT                                        - 11 -
CASE NO. 2:25-cv-00848-TL

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

relief is necessary to ensure that NEVI implementation resumes across all impacted jurisdictions without further unlawful interference by Defendants—including by refusing to review and/or process obligation requests. Plaintiff-Intervenors ask the Court to enter narrowly tailored relief preventing Defendants from withholding or withdrawing funds through deviation from NEVI's governing legal framework.

Defendants' conduct during this case confirms the need for such relief. First, their new Interim Final NEVI Guidance maintains the freeze on FY 2022–2025 funds and improperly requires States to resubmit previously approved plans—doubling down on the unlawful actions taken in the February 6 Letter and already enjoined by this Court. Dkt. #110 at 65–66. The new guidance purports to "align[] with" the Unleashing American Energy Executive Order, 90 Fed. Reg. at 39026, which establishes a federal policy to "eliminate the 'electric vehicle (EV) mandate,'" directs an immediate pause in the disbursement of funds under the NEVI Formula Program, and requires that "no Federal funding be employed in a manner contrary to the principles outlined in this section, unless required by law." Exec. Order 14154, 90 Fed. Reg. 8353, 8353–54, 8357 (Jan. 20, 2025). The new guidance also relies on the U.S. DOT's January 29, 2025 memorandum regarding "Implementation of Executive Orders Addressing Energy, Climate Change, Diversity, and Gender," 90 Fed. Reg. at 39026, which directs U.S. DOT entities including FHWA to take "all lawful actions necessary to rescind, cancel, revoke, and terminate" programs targeted by the Unleashing American Energy Executive Order.

Second, at the preliminary injunction hearing, Defendants raised doubts about their duty to act on obligation requests. In response to the Court's question—whether anything would prevent the agency from "sitting on those requests indefinitely without acting on them"—counsel stated they were "not sure that the statute imposes a timing requirement," and committed only

PLAINTIFF-INTERVENORS'
MOTION FOR SUMMARY
JUDGMENT
CASE NO. 2:25-cv-00848-TL

- 12 -

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

that Defendants would "review the obligation request" in accordance with the Court's direction. *See* Hrg. Tr. 37:2–11; *see also* Dkt. #141 at 12 (stating that the IIJA "does not require FHWA to establish any deadline by which it must then review and approve those [state NEVI] plans"). But under governing law, Defendants are required to act on obligation requests "as soon as practicable" after submission. 23 U.S.C. § 106(a)(2).

Viewed together with the February 6 Letter, Defendants' positions raise a reasonable concern that, absent injunctive relief, Defendants may again stall NEVI implementation.

District courts have "broad latitude in fashioning equitable relief when necessary to remedy an established wrong." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917, 936 (9th Cir. 2008) (quoting *Alaska Ctr. for the Env't v. Browner*, 20 F.3d 981, 986 (9th Cir. 1994)). That discretion should be exercised here, where an injunction would "have [a] meaningful practical effect independent of … vacatur." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010).

Injunctive relief—often paired with vacatur—is a well-established tool to ensure compliance with statutory mandates. *See, e.g.*, *N. Plains Res. Council v. U.S. Army Corps of Eng'rs*, 460 F. Supp. 3d 1030, 1036 (D. Mont. 2020) (vacating and enjoining agency action to reflect the "potentially widespread harms" caused by Endangered Species Act violations and to further the statute's "core purposes"); *Nw. Envtl. Advocates*, 537 F.3d at 1026 (affirming vacatur and remedial order compelling EPA compliance with the Clean Water Act); *Browner*, 20 F.3d at 986 (affirming injunction requiring EPA action to fulfill the Clean Water Act's "congressional objectives").

Courts also routinely enjoin agencies to ensure they fulfill their statutory or regulatory obligations in a timely manner. *See, e.g.*, *Coal. to Protect Puget Sound Habitat*, 466 F. Supp. 3d

PLAINTIFF-INTERVENORS'
MOTION FOR SUMMARY
JUDGMENT                                             - 13 -
CASE NO. 2:25-cv-00848-TL

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

at 1227, *aff'd*, No. 20-35712 (9th Cir. 2021) (requiring prompt processing of permit applications during a temporary stay of vacatur); *Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 823, 834–35 (9th Cir. 2002) (affirming injunction requiring expedited completion of environmental reviews).

### C.    Plaintiff-Intervenors Meet the Standard for a Permanent Injunction

Plaintiff-Intervenors satisfy the traditional standard for permanent injunctive relief: they have suffered irreparable harm that cannot be remedied through monetary damages; the balance of hardships favors equitable relief; and the public interest supports entry of a permanent injunction. *See eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

#### 1.    Plaintiff-Intervenors Face Irreparable Harm

Irreparable harm is "determined by reference to the purposes of the statute being enforced." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 818 (9th Cir. 2018). This Court recognized in its preliminary injunction order that NEVI's purpose is "to strategically deploy electric vehicle charging infrastructure and to establish an interconnected network to facilitate data collection, access, and reliability." Dkt. #110 at 2 (citing Pub. L. 117–58, 135 Stat. 429, 1421). As the Court succinctly put it, NEVI's goal is to cure "range anxiety" for EV drivers. *Id.*

The February 6 Letter suspended all States' NEVI Plans. AR at 120–21; Hrg. Tr. 29:22–30:1. This action stripped States of access to funds and halted NEVI implementation activities nationwide. *See* AR at 121; Garcia 2d Supp. Decl. ¶ 7. As a result, Defendants' actions have injured Plaintiff-Intervenors—as this Court has already recognized. *See* Dkt. #120 at 6–14 (finding injury-in-fact traceable to Defendants' conduct). Specifically, the Court found that "Defendants' actions will likely deprive [Plaintiff-Intervenors'] members of the use of electric

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

vehicles," causing a range of economic, health, and consumer harms. *Id.* Each of these harms is irreparable.

- **Loss of benefit:** The record is replete with evidence that halted development of the NEVI network has impaired Plaintiff-Intervenors' members' ability to travel using EVs. Members reasonably relied on States' NEVI Plans when purchasing EVs, and the suspension of implementation deprives them—through delay—of the program's intended benefits. *See, e.g.*, Dkt. #120 at 9, 11; Dkt. #77 at 155–56 (¶9). The "loss of an opportunity to pursue a [government] benefit" is a well-recognized cognizable injury. *Teton Historic Aviation Found. v. U.S. Dep't of Def.*, 785 F.3d 719, 724 (D.C. Cir. 2015) (quoting *CC Distribs., Inc. v. United States*, 883 F.2d 146, 150 (D.C. Cir. 1989); *see Keith v. Volpe*, 858 F.2d 467 (9th Cir. 1988) (plaintiffs displaced by highway project had standing to challenge city's refusal to permit construction of replacement affordable housing); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 (1977) (similar). Such harms are intangible and not compensable with money damages. *See Ariz. Dream Act Coal.* v. *Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (citing *Rent-A-Ctr., Inc.* v. *Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)).

- **Consumer injury:** As the Court has recognized, the NEVI freeze limits members' use of their preferred vehicle technology: electric vehicles. *See* Dkt. #120 at 6–14. Such restrictions or limits on use or access to preferred technologies are well-recognized consumer injuries. *See, e.g.*, *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1100 (9th Cir. 2024); *Ctr. for Auto Safety v. NHTSA,* 793 F.2d 1322, 1323–24 (D.C. Cir. 1986) (finding standing for nonprofits that "promote energy conservation" to represent

PLAINTIFF-INTERVENORS'
MOTION FOR SUMMARY
JUDGMENT                                                - 15 -
CASE NO. 2:25-cv-00848-TL

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

members whose vehicle choices would "likely be less fuel efficient" under challenged rule); *Competitive Enter. Inst. v. NHTSA*, 901 F.2d 107, 113 (D.C. Cir. 1990) (similar). Such injuries are intangible, and thus irreparable.

- **Economic harm:** Plaintiff-Intervenors' members face irreparable economic harm from being unable to rely on their EVs for planned or preferred travel. When public chargers are unavailable or unreliable, members must take longer routes, use gas-powered vehicles, or resort to more expensive transportation—each of which increases costs. *See, e.g.*, Dkt. #120 at 11–12; Hammon Supp. Decl. ¶ 4. Members who purchased EVs to save on fuel and maintenance lose out on those savings while NEVI-funded infrastructure remains stalled. These ongoing injuries are irreparable because there is no "vehicle for recovery" under the APA. *E. Bay Sanctuary Covenant*, 993 F.3d at 677. Even if monetary relief were available, the injury remains irreparable because it "does not readily lend itself to calculable money damages." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1003 (9th Cir. 2023).

- **Quality of life impacts:** Impaired mobility negatively impacts quality of life. Members experience frustration, stress, and safety risks stemming from unreliable, crowded, poorly located, or slow public chargers. These deficiencies require burdensome trip planning, delay travel, increase the risk of being stranded, and often compel members to forgo or alter desired trips. Dkt. #76 at 5–6 (citing declarations). These harms—affecting everyday activities and causing stress and increased emotional burdens—are classic intangible injuries and qualify as irreparable. *See Ariz. Dream Act Coal.*, 757 F.3d at 1068 (finding irreparable harm where "Defendants' policy hinders Plaintiffs' ability to drive, and that this (in turn) hinders Plaintiffs' ability to work and engage in other everyday activities");

PLAINTIFF-INTERVENORS'
MOTION FOR SUMMARY
JUDGMENT                                          - 16 -
CASE NO. 2:25-cv-00848-TL

*Sierra Club
50 F St. NW
Washington, DC 20001
(202) 417-7260*

*Am. Trucking Ass'ns v. City of L.A.*, 559 F.3d 1046, 1059 (9th Cir. 2009) (finding "emotional damages and stress" constitute irreparable harm).

- **Health, safety and environmental impacts:** Plaintiff-Intervenors' members also face irreparable health, safety, and environmental harms. Some members suffer from asthma or other respiratory conditions worsened by vehicle pollution, while others live in communities disproportionately burdened by traffic emissions. Dkt. #76 at 6 (citing declarations). Delayed NEVI implementation slows the transition to cleaner vehicles and prolongs members' exposure to these pollutants. Hammon Supp. Decl. ¶ 7. Delays in NEVI implementation also heighten safety risks by limiting EV drivers' ability to evacuate during environmental disasters, particularly in rural or underserved areas—creating foreseeable threats to personal safety. Dkt. #76 at 7 (citing declarations). The Ninth Circuit has recognized health and safety harms from increased environmental exposure as cognizable injuries. *See Nat. Res. Def. Council v. EPA*, 735 F.3d 873, 878 (9th Cir. 2013) (collecting cases). These injuries are irreparable, *see California v. Bureau of Land Mgmt.*, 286 F. Supp. 3d 1054, 1074 (N.D. Cal. 2018) (finding health harm from air pollution irreparable and citing cases), as are the attendant emotional burdens and stress, *Am. Trucking Ass'ns*, 559 F.3d at 1059.

While each of these harms is independently irreparable, their cumulative impact underscores their irreparability. *See San Antonio Cmty. Hosp. v. S. Cal. Dist. Council of Carpenters*, 125 F.3d 1230, 1238 n.5 (9th Cir. 1997) (injuries "[t]aken together" can provide "sufficient evidence of substantial and irreparable injury"); *see also, e.g., Cohen v. Brown Univ.*, 991 F.2d 888, 905 (1st Cir. 1993) (affirming finding that "aggregate injury" or "cumulative severity" of harms was irreparable).

2.    *The Equities and Public Interest Strongly Favor Injunctive Relief*

The balance of equities and the public interest strongly support a permanent injunction. Where the government is a party, these factors merge, *E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 975 (9th Cir. 2019), and favor relief that ensures compliance with congressional mandates. *Id.* at 985. As this Court has already recognized, that principle applies here: Congress directed $5 billion to build a nationwide EV charging network through the IIJA, and that mandate remains in effect. Dkt. #110 at 60–61. The public has an interest in ensuring that the statutes "enacted by their representatives are not imperiled by executive fiat." *Id.* (citing *Washington v. Trump*, 768 F. Supp. 3d 1239, 1280 (W.D. Wash. 2025) (quoting *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018))).

Conversely, Defendants have no legitimate interest in a policy "imposed in violation of the APA and/or the Constitution." *Martin Luther King, Jr. Cnty. v. Turner*, No. 2:25-cv-814, 2025 U.S. Dist. LEXIS 155762, at *66 (W.D. Wash. Aug. 12, 2025) (citing *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (there is no legitimate government interest in violating federal law)). The public interest lies in lawful, uninterrupted NEVI implementation, which is facilitated by the narrow injunction Plaintiff-Intervenors seek.

**D.    The Harm Caused by Defendants Extends Across All NEVI Jurisdictions with Unobligated FY 2022–2025 Funds**

The injuries to Plaintiff-Intervenors from Defendants' freeze of the NEVI Formula Program—including restrictions on EV use and mobility, along with associated consumer and economic harms—extend across virtually every NEVI jurisdiction. *See* Garcia 2d Supp. Decl. tbl. 1 (identifying harms to member-declarants from the absence of planned NEVI stations in all NEVI jurisdictions except Hawai'i, Rhode Island, and the District of Columbia). When the injuries to the Plaintiff States are also considered, the irreparable harm caused by Defendants

PLAINTIFF-INTERVENORS'
MOTION FOR SUMMARY
JUDGMENT                               - 18 -
CASE NO. 2:25-cv-00848-TL

*Sierra Club
50 F St. NW
Washington, DC 20001
(202) 417-7260*

extends across all NEVI jurisdictions where unobligated FY 2022–2025 funds were frozen. *See* Dkt. #142 at 10 (establishing harm across 21 States, including Hawai'i, Rhode Island, and the District of Columbia).

This scope of injury should guide the scope of the Court's injunction. It is axiomatic that injunctive relief "must be tailored to remedy the specific harm alleged." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1195 (9th Cir. 2024) (citing *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991)). An injunction's scope must thus "be no broader and no narrower than necessary to redress the injury shown by the plaintiff[s]." *Id.* (quoting *California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018)).

That standard supports relief covering all NEVI jurisdictions where unobligated NEVI funds were frozen. Plaintiff-Intervenors and the Plaintiff States have "demonstrated representation and injury throughout the entire area for which they seek relief." *Browner*, 20 F.3d at 986 (upholding statewide injunctive relief where plaintiffs demonstrated statewide injury). Moreover, through the IIJA, Congress established a national EV infrastructure program with the express goal of creating an "interconnected network" of charging stations. Pub. L. No. 117-58, 135 Stat. 429, 1421 (2021). A gap in NEVI-funded infrastructure in any State can impair Plaintiff-Intervenors' members' ability to complete planned long-distance trips that pass through that State. Given that, "[t]o limit relief in this case … would unduly interfere with the statutory scheme established by Congress." *Browner*, 20 F.3d at 986.

As the Supreme Court recently affirmed, "[t]he equitable tradition has long embraced the rule that courts generally 'may administer complete relief between the parties.'" *Trump v. CASA*, 145 S. Ct. 2540, 2557 (2025) (quoting *Kinney-Coastal Oil Co. v. Kieffer*, 277 U.S. 488, 507 (1928) (emphasis omitted)). Here, to afford "complete relief" for the specific harms

PLAINTIFF-INTERVENORS'
MOTION FOR SUMMARY
JUDGMENT                                         - 19 -
CASE NO. 2:25-cv-00848-TL

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

demonstrated by Plaintiff-Intervenors and the Plaintiff States, an injunction should extend to all NEVI jurisdictions.

## CONCLUSION

For the foregoing reasons, the Motion should be granted.

Respectfully submitted,

*I certify that this memorandum contains*
*5,709 words, in compliance with the Local Civil Rules.*

<u>*s/ Jan E. Hasselman*</u>

JAN E. HASSELMAN, WSBA #29017
Earthjustice
810 Third Avenue, Suite 610
Seattle, WA 98104
Tel: (206) 343-7340
jhasselman@earthjustice.org

*Counsel for Plaintiff-Intervenors Sierra*
*Club, Climate Solutions, Southern Alliance*
*for Clean Energy, CleanAIRE NC, West End*
*Revitalization Association, and Plug In*
*America*

<u>*s/ Joshua Berman*</u>
<u>*s/ Joshua Stebbins*</u>

JOSHUA BERMAN
JOSHUA STEBBINS
Sierra Club
50 F St. NW, 8th Floor
Washington, DC 20001
Tel: (202) 650-6062
josh.berman@sierraclub.org
josh.stebbins@sierraclub.org

*Counsel for Plaintiff-Intervenor Sierra Club*

<u>*s/ Jennifer A. Sorenson*</u>

JENNIFER A. SORENSON, WSBA #60084
P.O. Box 31936
Seattle, WA 98103
Tel: (415) 361-9495
jen.sorenson@gmail.com

*Counsel for Plaintiff-Intervenor Natural*
*Resources Defense Council*

<u>*s/ Joseph Halso*</u>

JOSEPH HALSO
Sierra Club
1536 Wynkoop St., Suite 200
Denver, CO 80206
Tel: (303) 454-3365
joe.halso@sierraclub.org

*Counsel for Plaintiff-Intervenor Sierra Club*

PLAINTIFF-INTERVENORS'
MOTION FOR SUMMARY
JUDGMENT                                    - 20 -
CASE NO. 2:25-cv-00848-TL

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

_s/ Atid Kimelman_

ATID KIMELMAN
Natural Resources Defense Council
111 Sutter Street, 21st Floor
San Francisco, CA 94104
Tel: (415) 875-6100
akimelman@nrdc.org

_Counsel for Plaintiff-Intervenor Natural
Resources Defense Council_


_s/ Megan Kimball_
_s/ Kasey Moraveck_

MEGAN KIMBALL
KASEY MORAVECK
Southern Environmental Law Center
136 E Rosemary St., Suite 500
Chapel Hill, NC 27514
Tel: (919) 967-1450
mkimball@selc.org
kmoraveck@selc.org

_Counsel for Plaintiff-Intervenors
Southern Alliance for Clean Energy,
CleanAIRE NC, West End Revitalization
Association, and Plug In America_


DATED: September 2nd, 2025

_s/ Thomas Zimpleman_

THOMAS ZIMPLEMAN
Natural Resources Defense Council
1152 15th Street NW, Suite 300
Washington, D.C. 20005
Tel: (202) 289-6868
tzimpleman@nrdc.org

_Counsel for Plaintiff-Intervenor Natural
Resources Defense Council_


_s/ Garrett Gee_

GARRETT GEE
Southern Environmental Law Center
122 C Street NW, Suite 325
Washington, DC 20001
Tel: 202-828-8382
ggee@selc.org

_Counsel for Plaintiff-Intervenors
Southern Alliance for Clean Energy,
CleanAIRE NC, West End Revitalization
Association, and Plug In America_

PLAINTIFF-INTERVENORS'
MOTION FOR SUMMARY
JUDGMENT
CASE NO. 2:25-cv-00848-TL

- 21 -

_Sierra Club_
_50 F St. NW_
_Washington, DC 20001_
_(202) 417-7260_

**Certification of Conferral**

I, Joseph Halso, hereby certify, pursuant to Section III.G of the Court's Standing Order for All Civil Cases, that the parties have met and conferred prior to the filing of this motion.

*s/ Joseph Halso*

JOSEPH HALSO
Sierra Club
1536 Wynkoop St., Suite 200
Denver, CO 80206
Tel: (303) 454-3365
joe.halso@sierraclub.org

*Counsel for Plaintiff-Intervenor Sierra Club*

PLAINTIFF-INTERVENORS'
MOTION FOR SUMMARY
JUDGMENT                                    - 22 -
CASE NO. 2:25-cv-00848-TL

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*