Honorable Tana Lin

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON

STATE OF WASHINGTON, *et al.*,

    Plaintiffs,

and

SIERRA CLUB, *et al.*,

    Plaintiff-Intervenors,

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION, *et al.*,

    Defendants.

Case No. 25-cv-00848-TL

DEFENDANTS' OPPOSITION TO CLIMATE SOLUTIONS' MOTION TO RECONSIDER INTERVENTION ORDER

Noted for consideration:
September 23, 2025

DEFENDANTS' OPPOSITION TO CLIMATE
SOLUTIONS' MOTION TO RECONSIDER
INTERVENTION ORDER
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 598-7409

1     Throughout this litigation, Defendants have maintained—and continue to maintain—that
2 none of the Intervenors satisfy Article III's standing requirements. Intervenors cannot establish
3 associational standing because they do not have any members who can articulate any concrete
4 and particularized injury traceable to Defendants' alleged actions and redressable by the relief
5 sought. Defendants have asserted this argument at all stages of these proceedings. *See* Opp. to
6 Mot. to Interv., ECF No. 102, at 2; Defs' Mot. for Summ. Judg., ECF No. 141, at 7. Defendants
7 have thus not waived any associational standing arguments, including any arguments specifically
8 tailored to Climate Solutions' membership. Nor, in any event, could Defendants waive such an
9 argument, because standing is a jurisdictional requirement that is not subject to waiver. *See*
10 *Popa v. Microsoft Corp.*, No. 24-14, 2025 WL 2448824, at *2 n.2 (9th Cir. Aug. 26, 2025)
11 ("Because Article III standing is jurisdictional and can neither be waived by the parties nor
12 ignored by the court." (cleaned up)).

13     In ruling on the Motion to Intervene, this Court concluded that for purposes of
14 intervention as of right, Climate Solutions "cannot satisfy the first element for associational
15 standing, because the organization has not indicated that it has any members at all, let alone
16 members who would have standing to sue." Order on Mot. to Interv., ECF No. 120, at 5.
17 Climate Solutions now claims that this conclusion is "manifest legal error," and it should be
18 reversed, notwithstanding that—as it acknowledges—such a ruling would have no practical
19 impact in this case. *See* Mot. to Recon. at 3. And to the extent Plaintiffs are fearful about how
20 this ruling may be cited in the future, they will have the opportunity to argue the merits then,
21 when it may have real impact.

22     Defendants do not dispute that in the Ninth Circuit, for associational standing purposes,
23 an association may have standing to sue on behalf of its "functional equivalent of members" who
24 have "standing to present, in his or her own right, the claim (or the type of claim) pleaded by the

1

DEFENDANTS' OPPOSITION TO CLIMATE
SOLUTIONS' MOTION TO RECONSIDER
INTERVENTION ORDER
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 598-7409

association." *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1110, 12 (9th Cir. 2003) (cleaned up). But, even assuming that, Climate Solutions continues to lack standing. Climate Solutions' argument that "as the leading regional organization promoting adoption of EVs and build out of the EV charging network in the Pacific Northwest," it "has a significant personal stake in the outcome of this case" is unavailing. Mot. to Recon., ECF No. 126 at 7 (quotation omitted). Unlike the cases cited in its Motion to Reconsider, Climate Solutions is neither comprised, nor does it represent, functionally or otherwise, parties whose rights, benefits, and obligations flow directly from the NEVI Program. *See* Decl. of Greg Small ("Small Decl."), ECF No. 77, at 260 (claiming that Defendants' alleged actions impact Climate Solutions' general goal of "promoting the transition away from fossil-fuel burning vehicles").

First, the circumstances in *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977), are distinguishable. *See* Mot. to Recon. at 4. In *Hunt*, the Washington State Apple Advertising Commission challenged a North Carolina administrative regulation that concretely impacted all Washington apple shipments. 432 U.S. at 339. The Commission in that case is a state agency that "for all practical purposes, performs the functions of a traditional trade association representing the Washington apple industry": indeed, apple growers "elect the members of the Commission; they alone may serve on the Commission; they alone finance its activities, including the costs of this lawsuit, through assessments levied upon them"; and "annual assessments paid to the Commission are tied to the volume of apples grown and packaged." *Id*. at 344–45. The Supreme Court concluded that the North Carolina regulation would directly impact the Commission if it "results in a contraction of the market for Washington apples or prevents any market expansion that might otherwise occur, [such that] it could reduce the amount of the assessments due the Commission and used to support is activities." *Id*. Here, the fact that Climate Solutions and, as it asserts, its supporters, have

2

DEFENDANTS' OPPOSITION TO CLIMATE
SOLUTIONS' MOTION TO RECONSIDER
INTERVENTION ORDER
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 598-7409

"tracked the federal NEVI funding program closely" and feel that the pause on new obligations undermines organizational goals is not enough. These assertions are not tied to any appreciable impact stemming from Defendants' actions, unlike the pecuniary effects at issue in *Hunt*. And any purported stake in this litigation merely derived from Climate Solutions' generalized interest in the adoption of electric vehicles as a matter of policy is not comparable to the direct effects on the Commission's constituents in *Hunt*. Climate Solutions has failed to demonstrate that any of its constituents have any "personal stake" in the administration of NEVI funds that satisfies Article III requirements. *See id*. at 341.

Second, the holding in *Mink*, upon which Climate Solutions principally relies, does not help its argument. *See* Mot. to Recon. at 3. The organization in that case had statutorily conferred standing to assert claims on behalf of mentally incapacitated criminal defendants. *Mink*, 322 F.3d at 1109. The Ninth Circuit concluded that the organization had associational standing to lodge claims related to improper care on behalf of incapacitated individuals because those individuals are "the functional equivalent of members for purposes of associational standing." *Id*. at 1110. Specifically, the organization had "a statutorily mandated interest in the timely transfer of mentally incapacitated defendants" whose needs would be potentially unmet and any resources it allocated to represent those individuals would be impacted. *Id*. at 1112. In this case, Climate Solutions has failed to show that any of its constituents have any concrete and particularized claims with respect to the NEVI Program. Only the Federal Government and the States have any rights and obligations with respect to the NEVI Program. And whether part of this litigation or not, each state's policy decisions related to Climate Solutions' organizational goal of promoting "clean energy and clean transportation solutions," Small Decl. at 256, are not necessarily linked to the NEVI Program merely because those policy decisions potentially relate to EV infrastructure deployment. Climate Solutions' conclusory claim that its unidentified

3

DEFENDANTS' OPPOSITION TO CLIMATE
SOLUTIONS' MOTION TO RECONSIDER
INTERVENTION ORDER
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 598-7409

"supporters" share in the goal to deploy "clean energy" and that the NEVI Program would generally aid in this goal is nowhere near the type of direct injury to constituents considered in *Mink*, particularly where the organization in that case was statutorily authorized to represent potentially injured individuals. Indeed, were Climate Solutions' view of the law correct, associational standing would largely be open to all organizations that claim "supporters" in some general sense.

The Ninth Circuit underscored this point in *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075 (9th Cir. 2021). *See* Mot. to Recon. at 4. In *Rousseau*, an organization that "advocates for public employees concerned with environmental issues" filed a citizen's suit under the Toxic Substances Control Act after various incidents of PCB contamination at school facilities. 985 F.3d at 1081–82. The Court explained that the requirements for associational standing are met if "the organization is sufficiently identified with and subject to the influence of those it seeks to represent as to have a personal stake in the outcome of the controversy." *Id*. at 1096 (quoting *Mink*, 322 F.3d at 1111). Unlike Climate Solutions, which does not represent any constituents with any personal stake in the resolution of the issues in this litigation, the organization in *Rousseau* represented "public employees concerned about exposure to environmental risk at work" and those employees "were the primary beneficiaries of [the organization's] activities, including the prosecution of th[e] lawsuit." *Id*. at 1096–97. No such direct injury or relationship exists in this case.

The cases Climate Solutions cites emphasize Article III's standing requirements. *See also* Mot. to Recon. at 5 (collecting cases). Climate Solutions has failed to discern any "personal stake" in this litigation beyond its organization's general environmental interests and its constituents' purported support of those interests, which on this record, are not sufficiently tied to or affected by the NEVI Program. Any purported stake in this litigation does not satisfy

4

DEFENDANTS' OPPOSITION TO CLIMATE
SOLUTIONS' MOTION TO RECONSIDER
INTERVENTION ORDER
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 598-7409

Article III because it can only be derived from Climate Solutions' generalized interest in the adoption of electric vehicles as a matter of policy without any tether to injury caused by Defendants' alleged actions with respect to the NEVI Program.  *See* Small Decl. at 256.  Climate Solutions is thus not entitled to intervention, and its Motion to Reconsider should be denied.

Dated:  September 23, 2025

                                              Respectfully submitted,

                                              BRETT A. SHUMATE
                                              Assistant Attorney General
                                              Civil Division

                                              JOSEPH E. BORSON
                                              Assistant Branch Director
                                              Federal Programs Branch

                                              */s/ Heidy L. Gonzalez*
                                              HEIDY L. GONZALEZ (FL Bar No. 1025003)
                                              *Trial Attorney*
                                              U.S. Department of Justice
                                              Civil Division, Federal Programs Branch
                                              1100 L Street, N.W.
                                              Washington, DC  20005
                                              Tel. (202) 598-7409
                                              heidy.gonzalez@usdoj.gov

                                              *Attorneys for Defendants*

5

DEFENDANTS' OPPOSITION TO CLIMATE
SOLUTIONS' MOTION TO RECONSIDER
INTERVENTION ORDER
Case No. 25-cv-00848-TL

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
(202) 598-7409