The Honorable Tana Lin

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

STATE OF WASHINGTON, et al.,

                                        *Plaintiffs,*

and

SIERRA CLUB, et al.,

                                *Plaintiff-Intervenors,*

v.

U.S. DEPARTMENT OF TRANSPORTATION, et al.,

                                        *Defendants.*

Case No. 2:25-cv-00848-TL

PLAINTIFF-INTERVENOR
PUBLIC INTEREST
ORGANIZATIONS' RESPONSE
TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

Noted for consideration:
October 8, 2025

PLAINTIFF-INTERVENORS' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. 2:25-cv-00848-TL

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

    I.    DEFENDANTS' MOOTNESS ARGUMENTS FAIL FOR MULTIPLE, INDEPENDENT REASONS ................................................................. 2

    II.    PLAINTIFF-INTERVENORS' REQUESTED RELIEF IS PROPER AND APPROPRIATELY TAILORED. ............................................... 8

        A.   Vacatur is the Presumptive APA Remedy and Should Be Granted. ...............8

        B.   Plaintiff-Intervenors Seek Relief For Specific Injuries, Not a Universal Injunction. ....................................................9

    III.   PLAINTIFF-INTERVENORS HAVE STANDING FOR THE TAILORED RELIEF THEY SEEK. .................................................. 11

        A.   Defendants Give This Court No Reason to Revisit Its Standing Ruling.. ..........................................................11

        B.   Plaintiff-Intervenors' Injuries are Concrete and Particularized......................12

        C.   Plaintiff-Intervenors' Injuries are Traceable to Defendants' Unlawful Actions. ..........................................................13

        D.   Plaintiff-Intervenors Fall Squarely Within NEVI's Zone of Interests............15

    IV.   DEFENDANTS VIOLATED THE LAW BY CANCELING STATES' NEVI PLANS AND WITHHOLDING FUNDS. .................................. 16

        A.   Defendants Took Final Agency Action. .......................................................17

        B.   Defendants Lack Statutory Authority to Categorically Withhold NEVI Funds…..........................................................17

        C.   Defendants' Actions are Arbitrary and Capricious and Violate Required Procedures. ..................................................19

        D.   Defendants' Actions are Unconstitutional and Ultra Vires. ...........................22

CONCLUSION ............................................................................................................... 23

PLAINTIFF-INTERVENORS' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. 2:25-cv-00848-TL

- ii -

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

1

2

# TABLE OF AUTHORITIES

**Cases**

*350 Mont. v. Haaland*,
    29 F.4th 1158 (9th Cir. 2022) ........................................................................ 2, 3, 4

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*,
    988 F.2d 146 (D.C. Cir. 1993), ................................................................................ 8

*Already, L.L.C. v. Nike, Inc.*,
    568 U.S. 85 (2013) .................................................................................................. 2, 5

*Bell v. City of Boise*,
    709 F.3d 890 (9th Cir. 2013). ................................................................................ 5, 6

*Cal. Dep't of Water Res. v. FERC*,
    341 F.3d 906 (9th Cir. 2003) .................................................................................... 17

*Chafin v. Chafin*,
    568 U.S. 165 (2013) .................................................................................................... 2

*Clarke v. Sec. Indus. Ass'n*,
    497 U.S. 388 (1987) .................................................................................................. 16

*Coral Constr. Co. v. King Cty.*,
    941 F.2d 910 (9th Cir. 1991) ...................................................................................... 6

*Cty. of Los Angeles v. Davis*,
    440 U.S. 625 (1979) .................................................................................................... 2

*Dalton v. Specter*,
    511 U.S. 462 (1994) .............................................................................................. 22, 23

*Dames & Moore v. Regan*,
    453 U.S. 654 (1981) .................................................................................................. 19

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
    591 U.S. 1 (2020) .................................................................................................. 20, 21

*Diamond Alt. Energy, LLC v. EPA*,
    145 S. Ct. 2121 (2025) .............................................................................................. 14

*DOC v. New York*,
    588 U.S. 752 (2019) .................................................................................................. 14

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

PLAINTIFF-INTERVENORS' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. 2:25-cv-00848-TL

- iii -

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

*F.C.C. v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009).................................................................................. 21

*FBI v. Fikre*,
    601 U.S. 234 (2024)............................................................................. 7, 8

*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*,
    98 F.4th 1180 (9th Cir. 2024)................................................................. 10

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)........................................................................ 2, 5, 12

*Gator.com Corp. v. L.L. Bean, Inc.*,
    398 F.3d 1125 (9th Cir. 2005) ................................................................. 3

*Gorbach v. Reno*,
    219 F.3d 1087 (9th Cir. 2000) .............................................................. 18

*Grand Canyon Tr. v. Provencio*,
    26 F.4th 815 (9th Cir. 2022) ................................................................. 11

*Idaho Conservation League v. Bonneville Power Admin.*,
    83 F.4th 1182 (9th Cir. 2023) ............................................................... 15

*Ingle v. Circuit City Stores, Inc*,
    408 F.3d 592 (9th Cir. 2005) ................................................................. 12

*Lathan v. Brinegar*,
    506 F.2d 677 (9th Cir. 1974). ................................................................. 4

*Louisiana Pub. Serv. Comm'n v. F.C.C.*,
    476 U.S. 355 (1986)............................................................................. 20

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).............................................................................. 12

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
    567 U.S. 209 (2012)............................................................................. 16

*Medellín v. Texas*,
    552 U.S. 491 (2008)............................................................................. 19

*Murphy Co. v. Biden*,
    65 F.4th 1122 (9th Cir. 2023) ......................................................... 22, 23

PLAINTIFF-INTERVENORS' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. 2:25-cv-00848-TL

- iv -

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

*NRDC v. Regan*,
   67 F.4th 397 (D.C. Cir. 2023) ................................................................................. 18

*Nw. Envtl. Def. Ctr. v. Gordon*,
   849 F.2d 1241 (9th Cir. 1988) ............................................................................. 2, 4

*Ohio v. EPA*,
   603 U.S. 279 (2024) ................................................................................................ 21

*Rosebrock v. Mathis*,
   745 F.3d 963 (9th Cir. 2014) ................................................................................... 5

*Sierra Club v. Trump*,
   929 F.3d 670 (9th Cir. 2019) ................................................................................. 23

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*,
   968 F.3d 738 (9th Cir. 2020) ........................................................................... 14, 15

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ................................................................................................ 12

*Teton Historic Aviation Found. v. U.S. Dep't of Def.*,
   785 F.3d 719 (D.C. Cir. 2015) ............................................................................... 15

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025) ................................................................................................ 10

*United States v. Concentrated Phosphate Exp. Ass'n*,
   393 U.S. 199 (1968) .................................................................................................. 7

*United States v. Houser*,
   804 F.2d 565 (9th Cir. 1986) ................................................................................. 15

*United States v. Phillips*,
   367 F.3d 846 (9th Cir. 2004) ................................................................................. 11

*Uzuegbunam v. Preczewski*,
   592 U.S. 279 (2021) ................................................................................................ 15

*W.T. Grant Co.*,
   345 U.S. 629 (1953) .................................................................................................. 8

PLAINTIFF-INTERVENORS' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. 2:25-cv-00848-TL

- v -

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

**Statutes**

5 U.S.C. § 705 .......................................................................................................... 10

5 U.S.C. § 706 .......................................................................................................... 10

Pub. L. No. 117-58, 135 Stat. 429 (2021) .................................................... 18, 19, 22

**Regulations**

90 Fed. Reg. 39026 (Aug. 13, 2025) ............................................................................ 6

Exec. Order 14154, 90 Fed. Reg. 8353 (Jan. 20, 2025) ............................................ 3, 6

PLAINTIFF-INTERVENORS' RESPONSE
TO DEFENDANTS' MOTION FOR          - vi -
SUMMARY JUDGMENT
CASE NO. 2:25-cv-00848-TL

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

**INTRODUCTION**

After seven months, Defendants' unlawful actions and their controlling policies continue to jeopardize the NEVI program and harm Plaintiff-Intervenors' members.

This case has always been about Defendants' unlawful freeze of congressionally appropriated NEVI funds and their wholesale cancellation and forced resubmission of States' implementation plans—not about Defendants' undisputed ability to issue NEVI guidance. The February 6 Letter, issued under an Executive Order directing Defendants to "[t]erminat[e] the Green New Deal" and "eliminate the 'electric vehicle (EV) mandate,'" halted billions of dollars in funding and indefinitely disrupted the implementation of the NEVI program.

Although most States' resubmitted plans have now been approved—a process that was itself unnecessary and unlawful—Defendants have given no concrete assurance that they will actually permit States to obligate and spend their NEVI funds. Defendants have not rescinded the February 6 Letter, and the controlling Executive Order remains in place. Their mere approval of some resubmitted plans and vague assurances from counsel in this litigation about future intent to follow the law fall woefully short of a complete remedy or of carrying Defendants' heavy burden to demonstrate mootness. The unlawfulness of Defendants' actions, and the risk of recurrence, persists until the point when funds are obligated and secure from further interference.

To ensure lawful NEVI implementation, this Court should declare Defendants' actions in the February 6 Letter unlawful, vacate them, and enjoin Defendants from withholding or delaying obligation of NEVI funds for any reason not authorized by the Infrastructure Investment and Jobs Act (IIJA) in all States where fiscal year (FY) 2022–2025 funds remain unobligated. That relief is tightly tailored to Plaintiff-Intervenors' and Plaintiff States' injuries, in both scope and substance.

PLAINTIFF-INTERVENORS' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. 2:25-cv-00848-TL

- 1 -

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

On the merits, Defendants continue to argue that their ability to issue guidance operates as a sweeping license to cancel State plans, halt new obligations, and substitute their policy preferences for those of Congress. The Court has already rejected that argument and should do so again. So too with Defendants' standing arguments, which are foreclosed by the law of the case doctrine, improperly conflate standing with mootness, and fail on the merits. Plaintiff-Intervenors have demonstrated concrete, particularized injuries from halted NEVI projects across all jurisdictions where relief is sought, and their interests fall squarely within NEVI's zone-of-interests.

The Court should deny Defendants' motion and enter judgment for Plaintiff-Intervenors and the Plaintiff States.

<strong>ARGUMENT</strong>

I.    DEFENDANTS' MOOTNESS ARGUMENTS FAIL FOR MULTIPLE, INDEPENDENT REASONS.

"The burden of demonstrating mootness is a heavy one." *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244–45 (9th Cir. 1988) (citing *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). An action becomes moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *350 Mont. v. Haaland*, 29 F.4th 1158, 1168 (9th Cir. 2022) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). The party asserting mootness must also show "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already, L.L.C. v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

PLAINTIFF-INTERVENORS' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. 2:25-cv-00848-TL

- 2 -

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

Defendants cannot carry their heavy burden for multiple, independent reasons. **First,** Defendants' Interim Final NEVI Guidance[1] makes no substantive change to the unlawful actions challenged in the February 6 Letter.[2] The new guidance has prolonged Defendants' freeze on unobligated FY 2022–2025 funds by conditioning release on resubmission and approval of new State plans. Interim Final NEVI Guidance at 3. Far from curing the problem, the new guidance entrenches it—requiring States to refile plans to unlock nearly $2 billion in unobligated funds to which they are already entitled. *See* Dkt. #115 at 118. This continuing restriction defeats mootness. *See 350 Mont.*, 29 F.4th at 1169 (rejecting mootness where challenged agency action "neither disappeared nor [was] replaced" but was instead "expressly incorporated" into subsequent action).

Moreover, approval of resubmitted plans does not equate to obligation of funds—the only event that could render this controversy moot. Defendants have offered no assurance that funds will actually be obligated and have not rescinded the February 6 Letter, which halted new obligations. Adding to this uncertainty, the Executive Order that precipitated the February 6 Letter and directed Defendants to "terminate" EV incentives remains in force. Exec. Order 14154, 90 Fed. Reg. 8353 (Jan. 20, 2025) ("Unleashing EO"). Thus, despite Defendants' assertions, the "circumstances that prevailed at the beginning of litigation" have not materially changed. Dkt. #141 at 5 (quoting *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc)).

---

[1] U.S. Dep't of Transp. (USDOT), Fed. Highway Admin. (FHWA), National Electric Vehicle Infrastructure Program Interim Final Guidance (Aug. 11, 2025), https://www.fhwa.dot.gov/environment/nevi/resources/NEVI-Interim-Final-Program-Guidance-8-11-2025.pdf (*hereinafter* "Interim Final NEVI Guidance").

[2] *See* Dkt. #115 at 120-21 (USDOT, FHWA, Letter to State Dep't of Transp. Dirs. *Re: Suspending Approval of State Electric Vehicle Infrastructure Deployment Plans*, (Feb. 6, 2025) ("February 6 Letter")).

PLAINTIFF-INTERVENORS' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. 2:25-cv-00848-TL

- 3 -

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

**Second**, the answer to the "basic question" of mootness—whether "effective relief can be granted"—is plainly yes. *350 Mont.*, 29 F.4th at 1168. Defendants have only partially approved States' resubmitted NEVI plans. Dkt. #163 at 2 (noting plan approvals for 41 States). And even full approval of plans would not moot Plaintiff-Intervenors' claims, because it would not resolve Plaintiff-Intervenors' challenge to Defendants' prohibition on new obligations of funds. *See* Dkt. #76-1 at 23–33. That prohibition has stymied buildout of NEVI projects, causing delayed and denied access to EV charging that perpetuates injury to Plaintiff-Intervenors' members.

Unless States' obligation and NEVI project approval requests are processed and approved, "[t]he federal government is not obligated to fund [those] project[s]." *Lathan v. Brinegar*, 506 F.2d 677, 686 (9th Cir. 1974). Plaintiff-Intervenors' claims challenging Defendants' block on new obligations therefore are not—and cannot be—resolved absent judicial relief that ensures Defendants' lawful processing of States' obligation and project approval requests by enjoining Defendants from withholding funds for any reason not specified in the IIJA. *See Nw. Envtl. Def. Ctr*, 849 F.2d at 1244–45 ("[W]here the violation complained of may have caused continuing harm and where the court can still act to remedy such harm by limiting its future adverse effects, the parties clearly retain a legally cognizable interest in the outcome.").

**Third,** even if Defendants had fully restored access to funds and begun processing obligation requests for States not covered by the Court's preliminary injunction,[3] their voluntary

---

[3] The Supplemental Declaration of Emily Biondi, Dkt. #164 at 3, states: "As of September 26, 2025, States that are able to obligate NEVI Program funds under the preliminary injunction in this case or that have FHWA-approved Plans in effect pursuant to the August 11 guidance have obligated a total of $440,564,315.63 in NEVI Program funds since July 2, 2025." It appears that most, if not all, of these newly obligated funds are attributable to Plaintiff States that were able to obligate funds only because of this Court's preliminary injunction. Defendants present no specific evidence that they are now processing new obligation requests from non-Plaintiff States

PLAINTIFF-INTERVENORS' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. 2:25-cv-00848-TL

- 4 -

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

1    cessation of challenged conduct would not render this case moot. *See Already, L.L.C.*, 568 U.S.

2    at 91 (citing *Friends of the Earth, Inc.*, 528 U.S. at 190). The party asserting mootness must

3    show it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to

4    recur." *Already, L.L.C.*, 568 U.S. at 91. Defendants cannot come close.

5         Defendants' new guidance perpetuates, rather than cures, the February 6 Letter's

6    unlawful cancellation of States' NEVI plans and prohibition on new obligations. Despite this

7    Court's order enjoining those actions as to 14 Plaintiff States, the new guidance reimposes the

8    same "objectionable measures" as the February 6 Letter by withholding FY 2022-2025 funds

9    pending approval of new State plans. It therefore fails Defendants' own preferred voluntary-

10   cessation test by repeating "conduct similar to that challenged." *See* Dkt. 163 at 2 (citing

11   *Rosebrock v. Mathis*, 745 F.3d 963, 972 (9th Cir. 2014)).[4]

12        Even if the new guidance represented a true policy change, Defendants could not

13   establish that their "new policy is the kind of permanent change that proves voluntary cessation."

14   *Bell v. City of Boise*, 709 F.3d 890, 901 (9th Cir. 2013). In *Bell*, the court rejected mootness

15   arguments where "the authority to establish [the] policy … [was] vested entirely in [a

16   government agency]" and the new policy "could be easily abandoned or altered in the future."

17   *Id.*[5] Defendants' own strenuous assertion of unbounded authority over NEVI and its guidance

18   confirms the same risk here. *See, e.g.*, *Friends of the Earth, Inc.*, 528 U.S. at 190 (a government

19

20   in the ordinary course as required by IIJA following approval of plans submitted pursuant to the
     new August 11, 2025 Guidance.

21   [4] In *Rosebrock*, the court also considered whether "the policy change is evidenced by language
     that is broad in scope and unequivocal in tone," whether "the case in question was the catalyst

22   for … the new policy," and whether "the policy has been in place for a long time" at the point
     mootness was assessed. 745 F.3d at 972. Not one of those factors cuts in Defendants' favor here,

23   and it is telling that Defendants do not attempt to apply the *Rosebrock* factors in their brief. *See*
     Dkt. 163 at 2 (quoting *Rosebrock* but providing no analysis).

24

PLAINTIFF-INTERVENORS' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. 2:25-cv-00848-TL

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

policy that is "by its terms … not permanent" does not moot "an otherwise valid claim for injunctive relief"); *Bell*, 709 F.3d at 900 ("[A] case is not easily mooted where the government is otherwise unconstrained should it later desire to reenact the [offending] provision.") (quoting *Coral Constr. Co. v. King Cty.*, 941 F.2d 910, 928 (9th Cir. 1991)).

Worse, Defendants remain bound by the Unleashing EO, which expressly targets NEVI and announces a policy of "[t]erminating the Green New Deal" and "eliminat[ing] the 'electric vehicle (EV) mandate.'" Unleashing EO at 8353–54, 57. Defendants' own Federal Register notice announcing the new guidance explains that it "aligns with [the Unleashing EO] to eliminate previous mandates for EV charging," and a USDOT memorandum directing all component entities to take "all lawful actions necessary to rescind, cancel, revoke, and terminate" programs and funding agreements targeted by the Unleashing EO. 90 Fed. Reg. 39026 (Aug. 13, 2025); USDOT, Office of the Sec'y of Transp., Mem. for Secretarial Officers and Heads of Operating Administrations at 1 (Jan 29, 2025). NEVI thus remains directly in the crosshairs of the Administration's stated policy priorities.

Defendants' subsequent actions confirm this threat is not hypothetical. On March 12, 2025, USDOT ordered a pause and review of all unobligated grants to remove "EV charging infrastructure" from their scope, citing the policy priorities set forth in the Unleashing EO.[6] Recently, USDOT canceled a $20 million award for a City of Boston transportation project that included EV charging, deeming such infrastructure "no longer align[ed] with DOT priorities."[7]

---

[6] USDOT, Office of the Assistant Secretary for Transportation-Policy (OST-P), Attention: Heads of Secretarial Offices and Operating Administrations (OA) (Mar. 2025).

[7] Jaime Moore-Carrillo, *Federal government pulls $22 million in grants for projects in Roxbury and Mattapan*, BOSTON GLOBE, Sep. 19, 2025, www.bostonglobe.com/2025/09/19/metro/federal-government-pulls-22-million-grants-projects-roxbury-mattapan/.

PLAINTIFF-INTERVENORS' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. 2:25-cv-00848-TL

- 6 -

Sierra Club
50 F St. NW
Washington, DC 20001
(202) 417-7260

Similarly, in Michigan, a major electric utility reports indefinite delays in accessing funds for an $8.5 million charging initiative—despite a grant agreement signed in January—citing "Executive Orders signed by President Trump."[8] These examples underscore that a recurrence of the NEVI freeze would be consistent with Defendants' ongoing policies and actions—and Defendants cannot meet their heavy burden to demonstrate otherwise.

Against that backdrop, Defendants' vague assurances of continued program implementation, offered primarily by counsel, ring hollow. *See, e.g.*, Dkt. #141 at 1–2. Their latest declaration adds little—just two lines stating the review of plans "remains ongoing" and they are "working to promptly complete [it]," with no assurances concerning obligations. Dkt. #164 at 3.[9] Such sparse, litigation-driven statements are not sufficient to show mootness. *See, e.g.*, *FBI v. Fikre*, 601 U.S. 234, 242 (2024) (holding that the government's "sparse declaration fell short" of showing challenged conduct would not recur); *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968) (finding that a party's bare statement that it lacks incentive to repeat prior conduct "cannot suffice to satisfy the heavy burden of persuasion" to show mootness).

Defendants' claim that "there is no likelihood of recurrence" because "the updated guidance reflects the current Administration's policy priorities," Dkt. #141 at 6, is simply irreconcilable with the Administration's actual policies and conduct. Far from making it "absolutely clear" the challenged conduct will not recur, the evidence points squarely the other

---

[8] Direct Testimony of Neal T. Foley on behalf of DTE Electric Company, Michigan Pub. Serv. Comm'n, Case No. U-21860 at 29-30 (Apr. 24, 2025).
[9] The full text of Emily Biondi's Supplemental Declaration statements concerning future NEVI implementation reads as follows: "FHWA's review of Plans submitted pursuant to the August 11 guidance remains ongoing. FHWA is working to promptly complete its review of the Plans." Dkt. #164 at 3.

PLAINTIFF-INTERVENORS' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. 2:25-cv-00848-TL

- 7 -

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

1    way. The Supreme Court recently emphasized that a litigant must show that "no reasonable

2    expectation remains that [they] will return to [their] old ways." *Fikre*, 601 U.S. at 241 (quoting

3    *W.T. Grant Co.,* 345 U.S. 629, 632–33 (1953)). Defendants have not made—and cannot make—

4    that showing.

5    II.    PLAINTIFF-INTERVENORS' REQUESTED RELIEF IS PROPER AND
           APPROPRIATELY TAILORED.

6          Plaintiff-Intervenors ask this Court to declare Defendants' actions unlawful, to enter the

7    default APA remedy of vacatur, and to permanently enjoin Defendants from withholding funds

8    for any reason not authorized by the IIJA. Dkt. #150 at 2, 9–20; Dkt. #150-1 (Proposed Order).

9    For all the reasons set forth in Plaintiff-Intervenors' motion for summary judgment and below,

10   this relief is warranted given Defendants' unlawful actions, the breadth of disruption they

11   caused, and the resulting injuries to Plaintiff-Intervenors' members.

12        **A. Vacatur is the Presumptive APA Remedy and Should Be Granted.**

13         Defendants assert that "the APA does not permit vacatur of agency action," Dkt. #163 at

14   13–15, but cite no controlling authority for that proposition. Nor could they. As Plaintiff-

15   Intervenors' summary judgment brief explained, vacatur is the presumptive remedy for APA

16   violations in the Ninth Circuit. Dkt. #150 at 9–11 (citing cases). Departure from that rule is

17   warranted only in limited circumstances—and none are present here. *Id.* at 10–11. Both the

18   seriousness of Defendants' errors and the breadth of disruption caused by their actions support

19   vacatur under the test established by *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988

20   F.2d 146 (D.C. Cir. 1993), and adopted in this Circuit. *Id.* Defendants do not address the

21   numerous binding and on-point precedents supporting this conclusion. *See* Dkt. #163 at 13-15.

22         Plaintiff-Intervenors accordingly seek vacatur of the two unlawful actions in the February

23   6 Letter. First, the prohibition on new obligations of FY 2022-2025 funds, which has not been

24

PLAINTIFF-INTERVENORS' RESPONSE
TO DEFENDANTS' MOTION FOR          - 8 -
SUMMARY JUDGMENT
CASE NO. 2:25-cv-00848-TL

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

explicitly rescinded or superseded by the new guidance and at a minimum continues to cause

uncertainty. Second, Defendants' revocation of States' previously approved NEVI plans for

fiscal years 2022–2025. Vacating this action will place non-party States on equal footing with

Plaintiff States, reinstating their prior-year plans subject to any updates made by those States

under the latest guidance—just as in prior program years. *See* Dkt. #110 at 42–43 (describing

"seamless transition" of NEVI guidance and State plan updates in prior years).

## B. Plaintiff-Intervenors Seek Relief for Specific Injuries, Not a Universal Injunction.

A permanent injunction is necessary to prevent irreparable harm, Dkt. #150 at 14–17, and

warranted given the substantial risk of further unlawful interference, *id.* at 11–14; *supra* at 4-8.

The injunction sought by Plaintiff-Intervenors is carefully tailored to both Defendants' unlawful

conduct and the scope of demonstrated injury. Substantively, Plaintiff-Intervenors ask the Court

to prohibit Defendants from repeating the actions taken in the February 6 Letter by limiting

Defendants' ability to withhold obligation of funds to the narrow bases set forth in the IIJA. *See*

Dkt. #150-1.

As to scope, Plaintiff-Intervenors seek relief in all NEVI jurisdictions where Plaintiff-

Intervenors' members face ongoing harm from the NEVI freeze and/or remain at risk of further

unlawful interference. Dkt. #150 at 18–20. Plaintiff-Intervenors have shown injury in all States

where FY 2022–2025 funds were frozen and remain unobligated, except two—D.C. and Rhode

Island—each of which is a Plaintiff State. *Id.* at 18–19 (citing Dkt. 151, Garcia 2d Supp. Decl. ¶

11 & tbl. 1). Because Plaintiff States and Plaintiff-Intervenors seek the same relief, Plaintiff-

Intervenors' opening brief notes that the injunction should apply to *all* NEVI jurisdictions where

FY 2022–2025 funds were frozen and remain not fully obligated. *Id.* at 18–20. Contrary to

Defendants' contentions, *see* Dkt. #141 at 7, Plaintiff-Intervenors do not seek relief in

PLAINTIFF-INTERVENORS' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. 2:25-cv-00848-TL

- 9 -

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

1    Massachusetts and Maine, as those jurisdictions fully obligated their FY 2022–2025 NEVI funds

2    prior to the issuance of the February 6 Letter. *See* Dkt. #115 at 118.

3            For these reasons, Defendants are wrong to suggest that Plaintiff-Intervenors seek a

4    universal (or nationwide) injunction like the one addressed in *Trump v. CASA, Inc.*, 606 U.S. 831

5    (2025). *See* Dkt. #141 at 7–9; Dkt. #163 at 4–7. To the contrary, Plaintiff-Intervenors' summary

6    judgment brief made clear that the "scope of injury should guide the scope of the Court's

7    injunction," and that relief is sought only in jurisdictions where injury has been demonstrated.

8    Dkt. #150 at 19. As Plaintiff-Intervenors emphasized, "[i]t is axiomatic that injunctive relief

9    'must be tailored to remedy the specific harm alleged,'" and "[a]n injunction's scope must thus

10   'be no broader and no narrower than necessary to redress the injury shown by the plaintiff[s].'"

11   *Id.* (quoting *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1195 (9th

12   Cir. 2024)). Defendants' arguments regarding a universal injunction therefore miss the mark and

13   should be disregarded.[10]

14           In any event, Defendants' real objection appears not to be about the requested relief, but

15   about standing. *See* Dkt. #141 at 7 ("Intervenors do not have standing to seek such sweeping

16   relief."); Dkt. #163 at 4–7. Those arguments fail for the reasons explained below, *see infra* at 11-

17   15, and do not justify withholding relief. Because Plaintiff-Intervenors' requested injunction is

18   warranted, appropriately tailored, and necessary to prevent irreparable harm, it should be

19   granted.

20

---

21   [10] Defendants' motion twice suggests that Plaintiff-Intervenors seek relief under Section 705 of
22   the APA, 5 U.S.C. § 705, making similar arguments concerning "universal relief." Dkt. #141 at
     9. These arguments are irrelevant both because Plaintiff-Intervenors do not seek a universal
23   injunction, and because Plaintiff-Intervenors seek relief under Section 706, which directs courts
     to "set aside" agency actions found unlawful, not Section 705, which concerns only "relief
24   pending review." *Compare* 5 U.S.C. § 705 *with* 5 U.S.C. § 706.

PLAINTIFF-INTERVENORS' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. 2:25-cv-00848-TL

- 10 -

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7000*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

III.    PLAINTIFF-INTERVENORS HAVE STANDING FOR THE TAILORED RELIEF
        THEY SEEK.

To contest the relief sought by Plaintiff-Intervenors, Defendants recycle standing

arguments this Court has already rejected at the intervention stage. They assert—without new

argument or evidence—that Plaintiff-Intervenors' members' injuries are generalized, not

traceable to Defendants' actions, and outside NEVI's zone of interests. In doing so, Defendants

mischaracterize Plaintiff-Intervenors' standing arguments and evidentiary support.

Defendants' standing arguments fail at the threshold: this Court has already found

standing, and under the law of the case that ruling governs absent new evidence or law.

Defendants present none. Their arguments also conflate standing with mootness, where

Defendants—not Plaintiff-Intervenors—bear the heavy burden of persuasion. In any event, even

on their own terms, Defendants' arguments lack merit. Given their conclusory and superficial

nature, Plaintiff-Intervenors address these arguments only briefly.

**A. Defendants Give This Court No Reason to Revisit Its Standing Ruling.**

This Court has already found that Plaintiff-Intervenors have standing. Dkt. #120 at 18.

That legal conclusion should stand absent new law or evidence under the law of the case

doctrine, which generally "precludes a court from reconsidering an issue that it has already

resolved." *United States v. Phillips*, 367 F.3d 846, 856 (9th Cir. 2004). The Ninth Circuit has

found the doctrine "applie[s] to the issue of standing," *Grand Canyon Tr. v. Provencio*, 26 F.4th

815, 821 (9th Cir. 2022), and to issues decided during pretrial motions, *Phillips*, 367 F.3d at 856.

The doctrine should apply with full force here, as Defendants have not identified intervening

precedent, disputed the factual predicates underlying this Court's standing ruling, or made any

showing of error. *See Ingle v. Circuit City Stores, Inc*, 408 F.3d 592, 594 (9th Cir. 2005). In the

absence of such a showing, law of the case forecloses Defendants' arguments.

PLAINTIFF-INTERVENORS' RESPONSE
TO DEFENDANTS' MOTION FOR                          - 11 -
SUMMARY JUDGMENT
CASE NO. 2:25-cv-00848-TL

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

Defendants' arguments also improperly conflate standing with mootness, where it is Defendants—not Plaintiff-Intervenors—that bear "[t]he heavy burden of persuading the court" that a once-live controversy has become moot. *Friends of the Earth*, 528 U.S. at 189. Standing is assessed at the time a suit is filed, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n. 4 (1992), and has already been established here; subsequent events go to mootness, not to whether standing existed in the first place. Defendants' attempt to relitigate standing thus fails twice over: it is foreclosed by the law of the case and, as explained above, unsupported under the proper mootness standard. *See supra* at 2-8.

**B. Plaintiff-Intervenors' Injuries Are Concrete and Particularized.**

Plaintiff-Intervenors' opening brief detailed the wide range of harms caused by Defendants' unlawful NEVI freeze, including economic, consumer, health, and safety injuries. Dkt. #150 at 14–17. Each type of injury is well recognized in the caselaw, *see id.*, and the showing of is substantiated by more than fifty-five member declarations, *see* Dkt. #77, 151–59. Contrary to Defendants' repeated mischaracterizations and selective quotations, those declarations identify specific planned NEVI projects that were halted by the Defendants' actions, describe specific routes and trips disrupted by Defendants' NEVI freeze, explain the resulting harm to members' interests, and confirm that the harms are present, ongoing, and personal to each member—the hallmarks of concrete and particularized injury. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–40 (2016). (An injury—whether tangible or intangible—is "concrete" if it is "real, and not abstract;" and is "particularized" if it "affect[s] the plaintiff in a personal and individual way.").

Defendants scarcely address, let alone contest, the record evidence identifying trips on corridors where States' development of planned NEVI stations was indefinitely halted by

PLAINTIFF-INTERVENORS' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. 2:25-cv-00848-TL

- 12 -

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

Defendants' unlawful freeze. Instead, Defendants repeatedly attempt to dismiss Plaintiff-Intervenors' members' injuries as nothing more than a "generalized interest in the development of EV infrastructure." Dkt. #141 at 7; *see* Dkt. #163 at 5 (similar). This Court has already rejected that contention, holding at the intervention stage that "Defendants' blanket characterization of Movants' members' alleged harms as 'generalized' does not withstand scrutiny" and explaining that "a particularized harm does not become 'general' merely because Defendants have labeled it as such." Dkt. #120 at 7. Defendants provide no reason to revisit that conclusion here.

**C. Plaintiff-Intervenors' Injuries Are Traceable to Defendants' Unlawful Actions.**

Defendants suggest that Plaintiff-Intervenors' injuries are not "traceable to Defendants' decisions … because there has been no showing that Defendants' NEVI Program decisions impacted non-party States' EV infrastructure plans." Dkt. #141 at 7; *see* Dkt. #163 at 6–7 (similar). That claim is demonstrably false. By its terms—and as Defendants confirmed at the preliminary injunction hearing—the February 6 Letter suspended *all* States' NEVI Plans. Dkt. #115 at 120–21; Hrg. Tr. 29:22–30:1.

The obvious consequence of canceling those detailed implementation plans and withholding more than $2.7B in funds from States was to halt implementation activities nationwide—activities in which every State had engaged. *See* Garcia 2d Supp. Decl. ¶ 7. Indeed, for more than seven months, Defendants' actions have delayed, disrupted, and denied progress of those activities. These direct and "predictable effects" of Defendants' actions are precisely the kind of causal link courts routinely hold sufficient to establish standing. *See Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 749 (9th Cir. 2020) (quoting *DOC v. New York*, 588 U.S. 752, 768 (2019) and adopting reasoning that "standing is present when the

PLAINTIFF-INTERVENORS' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. 2:25-cv-00848-TL

- 13 -

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

1    theory of harm . . . 'relies . . . on the predictable effect of Government action on the decisions of

2    third parties'").

3          This Court has already recognized as much. In granting Plaintiff-Intervenors'

4    intervention motion, the Court found Plaintiff-Intervenors' members' injuries traceable to

5    Defendants' suspension of plans under and the resulting pause in States' development of specific

6    "downstream [charging] projects" along particular routes. Dkt. #120 at 13–14. And as Plaintiff-

7    Intervenors explained in their opening brief and accompanying declaration from Katherine

8    Garcia, the record evidence establishes particularized injuries tied to specific projects halted by

9    the suspension of NEVI Plans in every NEVI jurisdictions not already represented by Plaintiff

10   States where FY 2022–2025 funds were frozen and have not been fully obligated. *See* Dkt. #150

11   at 5–6, 18–19; Garcia 2d Supp. Decl. ¶ 11 & tbl. 1.

12         Defendants' only response is to ask this Court to suspend disbelief and accept that the

13   NEVI freeze had no "impact[] [on] deployment projects in any non-party State," Dkt. #163 at 5,

14   and instead coincided with a wholly unrelated—yet perfectly overlapping—seven-month lull in

15   NEVI implementation. That argument defies common sense. Every State had developed an

16   implementation plan and taken steps to carry it out; the notion that all simply stopped for reasons

17   unrelated to Defendants' freeze is implausible. *See Diamond Alt. Energy, LLC v. EPA*, 145 S. Ct.

18   2121, 2136 (2025) ("When third-party behavior is predictable, commonsense inferences may be

19   drawn.").

20         Here, as in *Diamond Alternative Energy*, common sense and record evidence also

21   demonstrate that Plaintiff-Intervenors' injuries are redressable. *Id.* at 2138 (finding it

22   "sufficiently predictable that [the requested relief] would likely redress fuel producers' injuries"

23   by removing an impediment to the use of their products). Defendants report that all but two

24

jurisdictions have now submitted new plans, Dkt. #164 at 2, confirming States' intent to resume

implementation after Defendants' unlawful freeze—implementation that can proceed smoothly

with the benefit of Plaintiff-Intervenors' requested relief.[11] States' concrete plans, combined with

their past actions and financial incentives, make continued development of NEVI projects a

"predictable effect of an order granting the relief [Plaintiff-Intervenors'] seek." *Skyline Wesleyan*

*Church*, 968 F.3d at 750; *see also Teton Historic Aviation Found. v. U.S. Dep't of Def.*, 785 F.3d

719, 727–28 (D.C. Cir. 2015) (finding redressability based on government agency's "past

behavior and . . . future incentives") (collecting cases).

### D.  Plaintiff-Intervenors Fall Squarely Within NEVI's Zone of Interests.

In a footnote in their motion for summary judgment, Defendants repeat the zone-of-

interests argument this Court already rejected at the intervention stage. Dkt. #141 at 7 n.1; Dkt.

#120 at 15–16. That ruling is law of the case and forecloses Defendants' attempt to relitigate a

pure question of law. *See, e.g., United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986) ("To

maintain consistency during the course of a single lawsuit, reconsideration of legal questions

previously decided should be avoided.").

Even if the Court were inclined to revisit the issue, it is not a close call. The zone-of-

interests test applies "only when a plaintiff's interests are … marginally related to or inconsistent

with the purposes implicit in the statute." *Match-E-Be-Nash-She-Wish Band of Pottawatomi*

---

[11] Defendants point to Florida and Wyoming—two States that have not acquiesced to
Defendants' demand to submit new plans—as supposed evidence that Defendants' NEVI freeze
had no impact on any non-party State. Dkt. #163 at 5. The irony is obvious: absent Defendants'
unlawful actions, those two States' previously approved plans would be in effect, and they would
be seven months further along in building the stations they planned to construct using FY 2022–
2025 funds. In any event, a party "is not required" to show "'full redress of [an] injury … as
'the ability to effectuate a partial remedy satisfies the redressability requirement.'" *Idaho
Conservation League v. Bonneville Power Admin.*, 83 F.4th 1182, 1191 (9th Cir. 2023) (quoting
*Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021)).

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

*Indians v. Patchak*, 567 U.S. 209, 224–25 (2012) (quoting *Clarke v. Sec. Indus. Ass'n*, 497 U.S. 388, 399 (1987)). This Court has already recognized that a primary purpose of NEVI—"to provide funding to States to strategically deploy electric vehicle charging infrastructure"—is also "the primary purpose of [Plaintiff-Intervenors'] complaint-in-intervention." Dkt. #120 at 15, 16. And Plaintiff-Intervenors have amply substantiated that they and their members seek to use and access the benefits of the NEVI network. *See, e.g.*, Dkt. #76 at 3–7, 9 (citing declarations). That direct alignment of asserted interests with statutory purpose easily satisfies the zone-of-interests test. *See Patchak*, 567 U.S. at 226–27.

Defendants' assertion that "only the States that have any right to NEVI Program funds can seek relief" and that NEVI's federal–state funding structure somehow negates Plaintiff-Intervenors' interests, Dkt. #141 at 8 n. 1, lacks any support in precedent and contradicts both the APA's presumption of reviewability and controlling case law. *Patchak*, 567 U.S. at 225 ("We do not require any indication of congressional purpose to benefit the would-be plaintiff.") (quoting *Clarke*, 497 U.S. at 399). For all these reasons, Defendants zone-of-interests arguments should again be rejected.

IV.    DEFENDANTS VIOLATED THE LAW BY CANCELING STATES' NEVI PLANS AND WITHHOLDING FUNDS.

The Plaintiff States' response brief addresses Defendants' statutory, APA, and constitutional arguments, Dkt. #165 at 7–17, and Plaintiff-Intervenors adopt those arguments to avoid duplication here. Plaintiff-Intervenors add the following points to supplement the Plaintiff States' arguments and to reply directly to Defendants' opposition brief (Dkt. #163). In short, Defendants' defense of the February 6 Letter misstates the scope of their statutory authority, minimizes the disruption their actions have caused to States and to the public, and disregards both flaws in their reasoning and their disregard of statutory procedures.

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

**A. Defendants Took Final Agency Action.**

This Court has already ruled that the February 6 Letter constitutes final agency action. Dkt. #110 at 38. As with other issues, Defendants now attempt to relitigate that conclusion without presenting new law or argument to justify revisiting it. Instead, they try again to reframe this case as one about NEVI guidance, asserting that the agency "had not asserted its ultimate administrative position with respect to NEVI Program guidance." Dkt. #141 at 17; *see* Dkt. 163 at 7–10. But Plaintiff States' and Plaintiff-Intervenors' claims are not directed at the guidance; they are directed at Defendants' cancellation of prior NEVI plan approvals and withdrawal of apportioned funding. Under the Ninth Circuit's test for finality, the February 6 Letter "amounts to a definitive statement of the agency's position" on prior approvals and funding availability, and it "ha[d] a direct and immediate effect on the day-to-day operations" of States, and in turn, on Plaintiff-Intervenors, by prohibiting new obligations of funds previously available. *Cal. Dep't of Water Res. v. FERC*, 341 F.3d 906, 909 (9th Cir. 2003); Garcia 2d Supp. Decl. ¶ 7. FHWA has thus taken final agency action.

**B. Defendants Lack Statutory Authority to Categorically Withhold NEVI Funds.**

Defendants fail to identify any statutory authority—express or implied—for their actions. The IIJA requires Defendants to make NEVI funds available to States that submit implementation plans and permits withholding only in narrow circumstances. Defendants' attempt to sidestep those limits and to locate implied authority in their responsibility to issue NEVI program guidance fails for several reasons.

First, Defendants' arguments are foreclosed by the IIJA's text. In NEVI, Congress created a formula-funding program for EV infrastructure designed to rapidly deliver funds to the States, specifying the annual amounts, the allocation formula, and a 90-day deadline for issuing

PLAINTIFF-INTERVENORS' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. 2:25-cv-00848-TL

- 17 -

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

guidance to support States' implementation plans. Pub. L. No. 117-58, 135 Stat. 429, 1422–23 (2021). Within that framework, the IIJA expressly provides procedures for withholding or withdrawing funds in limited cases: the USDOT Secretary may act only if a State fails to submit a plan or fails to carry it out, and even then must provide notice, consultation, and at least 90 days for correction. *Id.* By including these explicit procedures, Congress foreclosed any implied authority to withhold funds on policy grounds. *Gorbach v. Reno*, 219 F.3d 1087, 1094 (9th Cir. 2000) (en banc) (rejecting claim of "impl[ied] authority" to revoke citizenship that "would gravely upset [a] carefully constructed legislative arrangement."); *cf. NRDC v. Regan*, 67 F.4th 397, 401 (D.C. Cir. 2023) (the power to reconsider or revoke earlier agency actions must be conferred by Congress). That conclusion is reinforced by the IIJA's express provisions ensuring NEVI funds are used solely for their statutory purpose. *See* 135 Stat. at 1422–23, 25 (prohibiting transfer of funds and prescribing procedures for local administration if a State fails to act).

Second, the IIJA's directive to issue guidance does not create implied authority to cut off States' access to prior-year NEVI funds. The Court correctly rejected this argument when issuing the preliminary injunction. *See* Dkt. #110 at 42–44. Plaintiff States and Plaintiff-Intervenors do not challenge Defendants' ability to issue new, forward-looking guidance; they challenge the retroactive cancellation of already-approved State Plans and the categorical, indefinite withholding of funds already apportioned and made available to States for obligation. Defendants contend that their guidance authority implies power to cancel prior-year plans and to withhold prior-year funds. Dkt. #141 at 12. But the IIJA says nothing about Defendants' authority to approve or deny plans, and the Government Accountability Office determined earlier this year that Defendants' role in administering NEVI funding is ministerial, profoundly undercutting this claim. Dkt. #101-1, Ex. 1 at 9–11. In any event, the Court need not decide the

PLAINTIFF-INTERVENORS' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. 2:25-cv-00848-TL

- 18 -

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

scope of Defendants' authority to approve plans to find for plaintiffs. The salient issue is whether Defendants may categorically cancel plans and withhold funds already made available—and the statute's express provisions governing when Defendants may withhold, withdraw, or reallocate funds refutes any claim of implied authority.

Third, Defendants' past practice of issuing updated guidance for annual NEVI plan submissions does not—and cannot—justify their actions here. In prior years, Defendants never canceled approvals or withheld funds; instead, they allowed earlier guidance to remain in place until superseding guidance issued and "did not revoke or suspend plans approved under the old guidance," ensuring "a seamless transition from one regime to the next." Dkt. #110 at 42. And even if Defendants' prior actions suggested otherwise, those actions could not expand authority beyond what Congress expressly conferred in the IIJA. *See Medellín v. Texas*, 552 U.S. 491, 532 (2008) ("Past practice does not, by itself, create power") (quoting *Dames & Moore v. Regan*, 453 U.S. 654, 686 (1981)).

Finally, Defendants' suggestion that Congress envisioned the withholding of funds and cancellation of prior-year plans because it did not specifically prohibit them from issuing updated guidance, Dkt. #163 at 10–11, contradicts the established rule that "an agency literally has no power to act . . . unless and until Congress confers power upon it." *Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 374 (1986). Here again, Defendants' claim that it has an implied power to put the NEVI program in indefinite limbo while it updates its guidance overlooks the design of the statute.

## C. Defendants' Actions Are Arbitrary and Capricious and Violate Required Procedures.

On the merits of the APA claims, Defendants are again unable to draw a rational connection between the facts surrounding the NEVI program and their decision to cancel prior-

PLAINTIFF-INTERVENORS' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. 2:25-cv-00848-TL

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

year plans and prohibit new obligations of funds. *See* Dkt. #141 at 19–20. Defendants were

purportedly concerned that "83.9% of NEVI Program funds remained unobligated," *id.* at 20,

and that they did not want those funds expended in a way that "did not comport with the current

Administration's priorities," *id.* at 11. But Defendants have not grappled with the central

problem for this argument, which is that its February 6 Letter fails to reasonably explain why the

retroactive cancellation of prior plan approvals and withdrawal of apportioned funds were

necessary consequences of rescinding prior guidance. That deficiency is underscored by

Defendants' new guidance, which invites States to resubmit previously approved plans—

confirming those plans remain consistent with the IIJA and undercutting any claimed need for

cancellation. *See* Interim Final NEVI Guidance at 3.

Defendants engaged in no fact-finding and failed to explain why those prior-year

approvals thwarted current policy, nor did it consider alternatives which were "within the ambit

of the existing policy," such as issuing new guidance while leaving prior-year approvals in place,

as Defendants had done on several previous occasions. *Dep't of Homeland Sec. v. Regents of the

Univ. of Cal.*, 591 U.S. 1, 30 (2020) (citation modified) (agency acted arbitrarily by failing to

consider less drastic alternatives to program shutdown). Agency action such as this, which "is

not reasonable and reasonably explained" is arbitrary and capricious. *Ohio v. EPA*, 603 U.S. 279,

292 (2024) (citation modified).

Nor did Defendants consider the serious reliance interests of States and the public—

including Plaintiff-Intervenors' members—on the continued availability of NEVI funds. *See

Regents*, 591 U.S. at 30 (an agency must consider "whether there was legitimate reliance on the

[prior policy]"). Defendants claim that they considered reliance interests and came up with a

"balancing" of interests by "suspending future obligations pending new guidance while allowing

PLAINTIFF-INTERVENORS' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. 2:25-cv-00848-TL

- 20 -

*Sierra Club
50 F St. NW
Washington, DC 20001
(202) 417-7690*

previously incurred obligations to proceed." Dkt. #141 at 15. Defendants' February 6 Letter, however, does not explain how Defendants struck this balance or why they concluded it was appropriate. Instead, Defendants said only that "[a]s result of the rescission of the NEVI Formula Program Guidance, FHWA is also immediately suspending the approval of all State Electric Vehicle Infrastructure Deployment plans for all fiscal years," and that "effective immediately, no new obligations may occur under the NEVI Formula Program until the updated final NEVI Formula Program Guidance is issued and new State plans are submitted and approved." Dkt. #115 at 121. That perfunctory analysis does not come close to the agency's obligation to examine reliance interests, determine their significance, and weigh them against the "other interests and policy concerns" motivating a change in policy. *Regents*, 591 U.S. at 32; *see also F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (agency must provide a "more detailed justification . . . when its prior policy has engendered serious reliance interests that must be taken into account.").

Finally, Defendants argue that they did not ignore any required procedures, Dkt. #141 at 21, but that argument depends on its mistaken understanding of Defendants' authority under the IIJA. Defendants insist that "the process for withdrawal or withholding of funds under the IIJA is inapplicable" because "FHWA has not withdrawn or withheld any NEVI funds." *Id*. This claim defies common sense. The February 6 Letter barred States from accessing funds that had already been apportioned and were otherwise available for obligation, which is withholding under any definition. As this Court has already recognized, Defendants "withheld or withdr[ew]" funds "in a manner both procedurally and substantively different from that prescribed in the statute." Dkt. #110 at 41. Defendants have no authority to prohibit states from accessing allocated funding except when "a State fails to submit the plan required" or if the USDOT Secretary "determines a

PLAINTIFF-INTERVENORS' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. 2:25-cv-00848-TL

- 21 -

*Sierra Club
50 F St. NW
Washington, DC 20001
(202) 417-7260*

State has not taken action to carry out its plan," 135 Stat. at 1422, and only then if the State is given notice and an opportunity to cure. *Id*. Defendants make no argument that either situation applies here.

### D. Defendants' Actions Are Unconstitutional and Ultra Vires.

Defendants' actions also violated the constitutional separation of powers and the Take Care Clause and lack any lawful authority. Defendants' arguments to the contrary, Dkt. #141 at 21–26, do not withstand scrutiny. While the Court need not reach these constitutional claims if it grants complete relief under the APA, *see* Dkt. #150 at 8, they provide an additional basis to strike down Defendants' unlawful actions.

Defendants first contend that the complaints merely "repackage" statutory and APA claims and therefore do not state a constitutional violation. Dkt. #141 at 21. That argument overreads *Dalton v. Specter*, 511 U.S. 462 (1994). In *Murphy Co. v. Biden*, 65 F.4th 1122 (9th Cir. 2023), the Ninth Circuit explained that although "'an action taken by the President in excess of his statutory authority [does not] necessarily violate[ ] the Constitution,' specific allegations regarding separation of powers"—such as Executive intrusion on Congress's prerogatives—can suffice. *Id.* at 1130 (quoting *Dalton*, 511 U.S. at 473). There, the court found that "the core" claim "that the President violated separation of powers by directing the Secretary [] to act in contravention of a duly enacted law—could be considered constitutional and therefore reviewable." *Murph Co.*, 65 F.4th at 1130. The Ninth Circuit also cited their earlier opinion in *Sierra Club v. Trump*, 929 F.3d 670 (9th Cir. 2019), which determined that "a challenge to presidential action will be considered constitutional, and therefore justiciable," if it includes claims that the Executive Branch "'violat[ed] . . . constitutional separation of powers principles' because the President's action lacked both 'statutory authority' and 'background constitutional

PLAINTIFF-INTERVENORS' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. 2:25-cv-00848-TL

- 22 -

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

authority.'" *Murphy Co.*, 65 F.4th at 1120 (quoting *Sierra Club*, 929 F.3d at 696–97). Here, Plaintiff-Intervenors and Plaintiff States allege precisely that: Defendants acted with no statutory authority, and in doing so intruded on Congress's Spending Clause powers. *See* Dkt. #76-1 at 29–31; Dkt. #124 at 55–58. Under *Murphy* and *Sierra Club*, those allegations properly state a constitutional violation, notwithstanding Defendants' cramped reading of *Dalton*.

Defendants also argue that the constitutional claims fail because Plaintiff States and Plaintiff-Intervenors cannot enforce the Impoundment Control Act (ICA). Dkt. #141 at 23–25. But that misreads the claims. The constitutional violation here arises from Defendants' lack of any authority to cancel plan approvals and withdraw funding, not from any right to enforce the ICA. As the Plaintiff States explained in their opposition brief, the claims rest on the IIJA itself, not the ICA. *See* Dkt. #165 at 15. Defendants' arguments regarding the Take Care Clause are likewise addressed in the States' brief. *See id.* at 16. In any event, because Plaintiff States and Plaintiff-Intervenors prevail on their separation-of-powers claim based on the IIJA, the Court need not reach additional constitutional theories, if it is necessary to reach them at all.

## CONCLUSION

For the foregoing reasons, Plaintiff-Intervenors' motion should be granted, and the Court should hold Defendants' actions in the February 6 Letter unlawful, vacate them, and permanently enjoin Defendants from withholding or withdrawing NEVI Formula Funds for any reason not specified in IIJA, including by refusing to review or process obligation and project approval requests in States where FY 2022–2025 funds were frozen and remain unobligated.

/ / /

/ / /

/ / /

PLAINTIFF-INTERVENORS' RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. 2:25-cv-00848-TL

*Sierra Club*
*50 F St. NW*
*Washington, DC 20001*
*(202) 417-7260*

1    Respectfully submitted,

2    *I certify that this memorandum contains*
     *7,090 words, in compliance with the Local Civil Rules.*

3

4    s/ Jan E. Hasselman                              s/ Jennifer A. Sorenson

5    JAN E. HASSELMAN, WSBA #29017           JENNIFER A. SORENSON, WSBA #60084
     Earthjustice                                     P.O. Box 31936
6    810 Third Avenue, Suite 610               Seattle, WA 98103
     Seattle, WA 98104                                Tel: (415) 361-9495
     Tel: (206) 343-7340                              jen.sorenson@gmail.com
7    jhasselman@earthjustice.org

8    *Counsel for Plaintiff-Intervenors Sierra*       *Counsel for Plaintiff-Intervenor Natural*
     *Club, Climate Solutions, Southern Alliance*     *Resources Defense Council*
9    *for Clean Energy, CleanAIRE NC, West End*
     *Revitalization Association, and Plug In*
10   *America*

11   s/ Joshua Berman                                 s/ Joseph Halso
     s/ Joshua Stebbins
12                                                    JOSEPH HALSO
     JOSHUA BERMAN                                    Sierra Club
13   JOSHUA STEBBINS                                  1536 Wynkoop St., Suite 200
     Sierra Club                                      Denver, CO 80206
14   50 F St. NW, 8th Floor                           Tel: (303) 454-3365
     Washington, DC 20001                             joe.halso@sierraclub.org
15   Tel: (202) 650-6062
     josh.berman@sierraclub.org                       *Counsel for Plaintiff-Intervenor Sierra Club*
16   josh.stebbins@sierraclub.org

17   *Counsel for Plaintiff-Intervenor Sierra Club*

18   s/ Atid Kimelman                                 s/ Thomas Zimpleman

19   ATID KIMELMAN                                    THOMAS ZIMPLEMAN
     Natural Resources Defense Council         Natural Resources Defense Council
20   111 Sutter Street, 21st Floor             1152 15th Street NW, Suite 300
     San Francisco, CA 94104                          Washington, D.C. 20005
21   Tel: (415) 875-6100                              Tel: (202) 289-6868
     akimelman@nrdc.org                               tzimpleman@nrdc.org
22
     *Counsel for Plaintiff-Intervenor Natural*       *Counsel for Plaintiff-Intervenor Natural*
23   *Resources Defense Council*                      *Resources Defense Council*

24

PLAINTIFF-INTERVENORS' RESPONSE                     *Sierra Club*
TO DEFENDANTS' MOTION FOR        - 24 -             *50 F St. NW*
SUMMARY JUDGMENT                                    *Washington, DC 20001*
CASE NO. 2:25-cv-00848-TL                           *(202) 417-7260*

1

2    _s/ Megan Kimball_                          _s/ Garrett Gee_
     _s/ Kasey Moraveck_
3                                                GARRETT GEE
     MEGAN KIMBALL                               Southern Environmental Law Center
4    KASEY MORAVECK                              122 C Street NW, Suite 325
     Southern Environmental Law Center           Washington, DC 20001
5    136 E Rosemary St., Suite 500               Tel: 202-828-8382
     Chapel Hill, NC 27514                       ggee@selc.org
6    Tel: (919) 967-1450
     mkimball@selc.org                           _Counsel for Plaintiff-Intervenors_
7    kmoraveck@selc.org                          _Southern Alliance for Clean Energy,_
                                                 _CleanAIRE NC, West End Revitalization_
8    _Counsel for Plaintiff-Intervenors_          _Association, and Plug In America_
     _Southern Alliance for Clean Energy,_
9    _CleanAIRE NC, West End Revitalization_
     _Association, and Plug In America_
10

11     DATED: October 8th, 2025

12

13

14

15

16

17

18

19

20

21

22

23

24

_Sierra Club_
_50 F St. NW_
_Washington, DC 20001_
_(202) 417-7260_